# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

§
§ **CIVIL ACTION NO.** 1:19-cv-03003-TNM
§

**Mary B. HEATON, Lisa R. Brooks, Robin Hebert, William Hebert, Elizabeth Kormanyos, Individually and as Executor of the Estate of John Teal, Julia Ramey, Jerry Ramey, Individually and as Personal Representative of the Estate of Richard Ramey, Sarah Beverlin, Jackie Liller, Kathy Brown, Ricky Brown, Megan Brown, Victoria Brown, Christopher Brown, Gretchen Miller, Glenda Holleyman, Ross Holleyman, Christina Lapka, Kenneth Lapka, Michelle Lapka, William S. Lensing, William Sherrill, Lisa Hundley, Individually and as Personal Representative of the Estate of Curtis Lee Hundley, Jo Ann Wood, Allen Wood, Nathan Wood, Julie Wood, John Wood, Cody Wood, Sarah Kynoch, Individually and as Next Friend of S.K., a minor, Linda Kynoch, Michelle Sunke, Amy Kynoch, Susan K. Smith, Mark A. Smith, Lucas Smith, Matthew Smith, Mary Morr, Timothy J. Morr, Heather Rinks, Bryan Morr, Shane Morr, Donna Ward, Jack Colnot, Kelly Luisi, Frank Moscillo, Jenny M. Criscuolo, Robert M. Posivio, Maria Ramirez, Julia Ramirez-Arreguin, Ryan Linden, Amy Micks, Ken Micks, Rosa Jazmin, Basilio Eusebio, Barbara Babb, Levi Babb, Tanner Babb, Zoie Babb, Terry Babb, Nicole Kessler, Betty J. Knier-Tidwell, Richard Knier, Joy Kieffer, Erica Gibson, Connor Martin, Lucy Dillon, Berkley N Dillon, Robert N Dillon, Michael D. Dillon, Lloyd Morris, Margaret Shepherd, Elizabeth Hale, Lisa Ruiz, Individually and as Personal Representative of the Estate of Manuel Antonio Ruiz, Manuel Ruiz, Joshua Ruiz, and Jacobo Ruiz, Loren Clevenger, David Sebban, Laura Dallam, Samantha Rollins, Richard Oglesby, Brad Lee Jones, Daryl L. Linder, Gary Hubbell, Deanna House, Patricia Leemhuis, Kelly Holliday, Individually and as Next Friend of JU.H. and JA.H., minors, John Holliday Jr., Jeremiah Holliday, John Holliday III, Joshua Holliday, Jada Holliday, Josiah Holliday, Nancy Neff, William Neff, Shannon Neff, Shelia Towns, Individually and as Personal Representative of the Estate of Robin Towns, Robin L Towns, Leslie A. Towns, Carita K. Towns, Rheavan N. Towns, Laurie West, Dave Stelmat, Rebecca McCraw, Carisa R Girdwood, Patricia Smith, Thomas Smith, Caren Newman, Scottie Taylor, Lori Donahue, Victoria Croft, Robin Messer, Tyler A Croft, Melodie Hanson, Andrea L Whatley, Ramon Mora Sr., Maria T. Mora, Baltazar Mora, Paula McGeogh, Joshua Mattson, Individually and as Next Friend of, J.G. a minor, Johnnie Shull, Rebecca Shull, Breeon A Shull, Brandon J Shull, Sheila Ann Shull, Jason Bland, Brad Salisbury, Individually and as Next Friend of M.S., a minor, Deidre Salisbury, Robin Bogacz, Amy Crandel, Arvin A. Reyes, Individually and as Next Friend of, M.P. a minor, Marjorie Reyes, Priscila Reyes, Antonio Reyes Sr., Maria Reyes, Antonio Reyes Jr., Rosanna Gliz, Marlon Reyes, Jesusa Reyes-Guzman, Nathaniel Wayne Gay, Amanda Wayne, Peter Kudarauskas, Elizabeth Kudarauskas, Hardy P Mills IV, Danielle Mills, Cathy Mills, Juan Montoya, Fernando Tejada, Laniqua Tejada, Maria Tejada, Michael R Didonato, Individually and as Next Friend of S.R., a minor, Donna Didonato, Kathryn Barnes, James M. Slayton, Individually and as Next Friend of S.S. and A.S., minors, Megan Slayton, Gage Slayton, Calvin J. Mccloy, Brandan J. Bradley,**

1

Individually and as Next Friend of M.B., a minor, Jeroline Bradley, Jody Stedman, Nicholas Stedman, Robert Crossno, Angie Crossno, Russell S Stedman, Virgil Thomas, Michael Cramer, Nahir Cramer, Pamela Cramer, Michael Cramer, Megan Cramer, Vincent Reynolds, Dale D. Fair, Dana Fair, Nicholas A Mancino, Ian Mchugh, Betsy Lenahan, Ji Hun Kim, Grace Ji, Dana Kim, Fredolando Johnson, Jeremy Moore, Khandi Crawford, Kiambri Mason, Amber Mason, Addea Glover, Audrey Tarver, Willie Rogers, Bo Rogers, Bionca Rogers, Cinnamon Rogers, Luedella Rogers, Edd Rogers, Kenneth Earl Rich, Individually and as Next Friend of, K.R. a minor, Katherine Rich, Lisa Linton, Antonio Boies, Ora Boies, Andrea Johnson, Larry Clark, Andrea Clark, Joseph Darden, Anita Nunn, Robert Spinks, Individually and as Next Friend of J.S., a minor, Karen Spinks, Sevonne Spinks, Martin Jones, Ellis Martin, Stephanie Martin, Melissa Martin, Tabitha Martin, Shervayne Diaz, Joey Ragas, Danielle Diaz, Henry J. Young, Cornelia Thrower, Scott Fink, Individually and as Next Friend of G.B., a minor, Monica Bond-Fink, Daniel Bond-Fink, Thomas Fink, Felipe Castaneda Jr., Jonathan Green, Trista Green, Albert Dyk, Jeremy Bernheisel, Individually and as Next Friend of, J.B. a minor, Melva Pikes, Shakina Ellis, John G Garza, Claudia Marcela Mora Pineda, Eric Laninga, Elizabeth Laninga, Lucas Thuemmel, Clayton T. Crowell, Helen N. Smoaks, Shakala Smoaks, Christopher Sparks, Monica Rios, Ronnie L. Underwood, Betty Underwood, James W. Hull, Christina Hull, Teresa Hull, James Hull, Cory Donovan Martin, Hazen Martin, Hailey Martin, Keith Austin, Amber Austin, Roberto C. Cazares, Diego Cazares, Billy Setliff, Lisa Ayn Setliff, Donnie C. Hendricks, Individually and as Next Friend of L.H., a minor, Diana Hendricks, Brandon M. White, Joshua L. Wilding, Jessica Wilding, Pamela Lynn Wright, Makala Marie Gandy, Frederick J. Silvio, Shon R. Moore, Individually and as Next Friend of A.M., a minor, Renee Moore, John B. Odom, Sandra Dee Odom, Christopher Odom, Clayton Lewis Littleton, Michael Sandeep Wells, Allie Wells, Zachary Christopher Martinez, Jessica Martinez, Leslie Byrd Lowe, Individually and as Next Friend of, T.L. a minor, Jane R. Lowe, Deontae Gaskins, Joshua Lowe, Dustin Hershel Brown, Individually and as Next Friend of, L.B. a minor, Alexander Brown, Terri Guthrie, Hershel Brown, Robert Conley Fleming, April M Fleming, Nathan E Green, Brian William Howard, Sandra M. Howard, Adam Thomas Ritterbeck, Omar Rivera-Lugo, Mariuxi Rivera, Christopher R. Toey, Jordan Reese, Rudy Contreras, Jon Kone, Sarah Jesse-Kone, Alfred Pardo, Mary Figueroa, Yvon D. Singh, Ulrike Singh, Justin Adam Shephard, Edie M. Shephard, Kyle Rasche, Andrea Rasche, Bela F. Ponyi, Posie Williams, Bill Ponyi, Deandre Rush, Christopher Eggleston, David C. Underwood, Individually and as Next Friend of A.U. and T.U., minors, Walter Kroptavich, Matthew Johnson, Individually and as Next Friend of M.J., a minor, Heather Johnson, Brian Helm, Corey D. Irey, Willie L. Turner, Cassandra Snipes, Joseph Downing Sr., Sarah Downing, Joseph Downing Jr., John D. Shahin, Barbara Shahin, David Shahin, Amy Shahin, Mark Shahin, Christopher G. Gomes, Anthony W. McCann Jr., Nikolaus D. Oekerman, Sarah Oekerman, Keith Oekerman, Jeffrey Louis Kadis, Theresa Kadis, Shane B. Farlin, Sr., Luke Connally, Mary Connally, Chris Boyajian, Kendall E. Goerdt, Linda Goerdt, Patrick Goerdt, Michael W. O'Neal, Joseph O'Neal, Jillian Q. O'Neal, Cheyanne O'Neal, John Charles Brewer, John Christopher Brewer, Courtney Jill Brewer, Jordan Christine Brewer, John Curtis Brewer, William J. McBain, Tyson Hiner, Individually and as Next Friend of A.H., a minor, Joshua T. Santoro, Malisa Santoro, Christopher J. Camune,

Priscila Camune, Patrick Alan Danks, Individually and as Next Friend of, A.D. a minor, Carol Danks, Marco A. Morales, Brian K. Dean, Matthew B. Murray, Joseph F. Morcerf, Chandra Morcerf, Nelson Garcia, Matthew Garcia, Lydia Garcia, Jean-Louis Blackburn, John E. Watts, Angel D. Mateo, Anna Kuleshova, Elbros Samkough, Individually and as Next Friend of A.S., a minor, Meriem Samkough, Robert Scott Sabado, Michelle Sabado, Skyler Sabado, Crystal Sabado, Tiffany Sabado, David Cary Cook, Stephanie Denise Cook, David Carlos Cook, Dana Cook, Joanne Cook, Dan Cook, Donald Cook, Dan C. Cook, Gregory R. James, Cory Collins, Paula M Collins, Corey Q. Cornett, Justin Killingsworth, Kaci Killingsworth, Gina Hailey, Miranda Berckenhoff, Rodney Ohara, Mandy Ohara, Hailey Ohara, Cindy Wieberdink, Misty Ohara, Jason Ohara, Markeise Davis, Brenda Davis, Kadijah Davis, and Darrell Davis, Louis Joseph Jr., Joseph Louis III, Jasmine Joseph, Alan Ray, Marjorie Ray, Alan J. Ray, Noelle Ray, Nedra Ray, Alan R. Ray, Gregory Beddingfield, Gregory Beddingfield, Adrian Beddingfield, Viola Beddingfield, Victoria Beddingfield, Brian O'Toole, Ronald Barela, Lisa Gonzales, Gabriel Barela, Jeremy Barela, Jonathon Etterbeek, Laurilee Etterbeek, Alexei Etterbeek, Anastasia Etterbeek, Tatiana Etterbeek, Anthony C. Wisyanski, David Cantu, Rose V Cantu, Anselmo Cantu, Mario Cantu, Benjamin Rosario-Villegas, Kevin Keefe, Micah Wright, Trent Artis, Sheraon Artis, Shaun Artis, Derek Taylor, Ashley Artis, Paige Artis, Jared Luce, Johari Ginocchio, Elijah Ginocchio, Angelina Ginocchio, Joseph Mobbley, Charles Quigley, Julie Quigley, Kathleen Quigley, Allen Quigley, Matthew Ashmead, Cedric Frasier, Rickita Frasier, Shamia Frasier, Patrick Lesher, Migo Algailany, Trent Schapker, Shelby Schapker, Thomas F Schapker, Dane Schapker, Waylon White, Bobbie Parks, Thomas Vandeventer, Brian Dunn, Katie Dunn, Arthur Connor, Kelly Connor, Joseph Connor, Arthur W Connor, Samuel Connor, Elizabeth C Connor, Michael Williams, Dan Foot, Brandon Erickson, Dana Erickson, Jose Martinez, Lilia Martinez, Dave Rogers, Eric Johnson, Robert Schoch, Angela Schoch, Robert P Schoch, Alexander Schoch, Angela A Schoch, Gary Boggs, April Arguin, Timothy Christopher Osborn, Jacob Osborn, Alexus Osborn, Benjamin Stephens, Jason Blacken, Connie Blacken, Bill Blacken, James Zollman, James Perry, Jerry Martin, Kyon Young, Serral Martin, Sharronda Martin, Bobbie Hollis, Rama Toulon, John Hudson, Glenn Davis, Alice Davis, Dennis Brophy Jr., Brad Macy, Katrina Macy, Douglas Hernandez, Eugene Schwoch, Eric King, Jaidus N. King, Eric K. King, Michael Williams, Ernest Olidan, Daniel Sorrell, Corbin Foster, Hussein Alhrshawi, Corey Alderman, William Allen, Martin Roman, Robert Regis Weppelman, Demetrio Zamarripa, David C. Santos, Annie Santos, Bobby Cost, Concetta Cost, Eric Sheehan, Russel Dickerson, Amanda Dickerson, Charles C. Hoffman, Todd Olsen, Individually and as Next Friend of A.O., a minor, Christopher Lindgren, Katelin Lindgren, Philip L. Orrico, Derrick H. Smith, Mark A Lanton, David Johnson, Deanna Johnson, Chad Michael Heath, Individually and as Next Friend of, L.H. a minor, Cathy R Johnson-Heath, Martha Heath, Carl Heath III, Carl Heath IV, Orin Jackson, Anisa Jackson, James McKenzie, Mary McKenzie, Jashua McKenzie, Shemaiah McKenzie, Sergio Herrera, Maria Herrera, David Herrera, David Herrera, Daniel Herrera, Fernando Herrera, Luis Herrera, Ricardo Herrera, Duenean Pressley, Edward N. Litwinkowich, Denise Litwinkowich, Jimmy Alan James, Juan M. Maisonet, Jonathan Bailey, Javier Diaz, Kenneth Mackeprang, Robert Fisher, Individually and as Next Friend of, R.F. a minor, Brett Fisher, Brittni Fisher, Jeremy Holbrook, Henry J. Young, Corneila Thrower, John McCormick, Samuel Sparks

3

III, David Bennett, Carla Remmer, David Bennett Sr., Brittany Sanders, Andy Burdette, Individually and as Next Friend of E.B. a minor, Tabitha Burdette, Colby Burdette, William J. Smith, Muriel Irwin, Daniel Irwin, Daniel P. Irwin, Bryan Irwin, Brent E. Jeffries, Andrew J. Stofleth, Alan Smith, Kim Thelander, Ahmed Kouhail, Paul M. Morris, Andrea Morris, Randall T. Wackerly Jr., Deandre K. Brown, Daniel Fouch, Amber R. Moore, Bobby D. Estes, Individually and as Next Friend of J.E., a minor, Lakeisha Estes, David W Tanner Jr., George F. Barton, Heloisa Barton, Darby Day, Joshua Day, Nathaniel Day, Derek W Brown, Haley Brown, Wilber Mayer, Don Joseph Glory Jr., Sheena Renee Westmoreland, Travis J. Tysinger, Vince Lawrence Pelanca, Jayden Pelanca, Alyssa Pelanca, Keith Douglas Johnson, Mariela Johnson, Jeffrey Eugene Wikle, Aracelis Elena Wikle, Anthony Jeff Wikle, Stephanie Michelle Wikle, Joseph Bernard Morse III, Brian Daniel McCluskey, Jonathan R. James, Stuart Edward Riley Jr., Anita Riley, Ezekiel Riley, Amber G Koronkiewicz, Jerry Gilbert, Margaret Gilbert, Juan Castaneda, Maria Castaneda, Isaias Castaneda, Esmerelda Tatum, Eloy Castaneda, Justin Gaughan, Darby Lee Johnson, Christopher Shaun McCoig, Krystle McCoig, George Stiltner, Crystal Stiltner, Sarah Stiltner, Kayla Castegnetta, Eric Ryan Nichols, Anthony Snyder, Michael D. Rogers, Yilin Rogers, Elliott T. Ingram, John Roberts, Eva Roberts, Marquilo R. Rhynes, John A. Moore, Mike Bravo, Cecilia Colbeck, Natalie Montero, Jesse Lee Avent II, Harriet Avent, Leon D. Hernandez, Byron J. Owen, Charles T. Schertle, Christopher D. Williamson, Sandra Williamson, Arthur M. Orona, Samuel Lee Ayers, Shauna Ayers, Janite Ayers, Zacchaues Ayers, Erik M. Castillo, Individually and as Next Friend of T.C., a minor, Kristina Castillo, Kenny Ray Cox, Chance Wade Nix, Jennifer Nix, Alvin Lugo, Gretchen Padro, Jaime Padro, Nuvia Rodriguez, Jeffrey D. Shaw, Michael L. Lamon, Julia E. Lamon, Michael John Volkman, Christopher Allen Stephens, Olivia Stephens, Sarah Stephens, Brett A. Pelezo, Jason E. Davis, Barbara Davis, Cole Davis, Sarah Davis, Luke D. Melvin, Cody, Isaac McKee, Mark R. Espinosa, Orlando U. Andrews Sr., Daijah Andrews, Deborah Andrews, Linda Andrews, Frank James Wilson, Deadra Wilson, Randy Wilson, Paige Wilson, Jonathan Levi Wilmert, Brittany Wilmert, Jeremy Penman, Sean Johnson-Penman, Keith Moore, Drew W. Schmidt, Lisa Antonucci, William Schmidt, Caleb Schmidt, Kathy A. Ruddy, Allen Ruddy, Jesse Perry, Individually and as Next Friend of K.A., a minor, Melinda Perry, James E. Berube, Susan Berube, Makayla Berube, Schoen S. Flax, Fredy Mendoza, Vanessa Mendoza, Woodrow Mendoza, Andrea Mendoza, Chase E. Messer, Hector Perez, Jesse H. Emery, Gregory McIntyre, Kyle D. Zipf, Allyson M Zipf, Michael A. Stennis, Teona Stennis, Gloria Henry, Jason Mills, John T. Parker, Elizabeth Parker, Jonathan Niedringhaus, John E. Parker, Lisa Hastings, Cory Woodstock, Daniel Courtney, Andrew Courtney, Madison Courtney, Daniel Courtney Sr., John Reed, Jonathan Langford, Individually and as Next Friend of, C.D. a minor, Kristina Maria Langford, Ian Michael Langford, Joshua T. Webley, Kimberly Webley, Matthew Zeimys, Anthony T. Hartman, Individually and as Next Friend of L.H. and C.H., minors, Keshia Hartman, Owen J. Simpson, Luke Henderson, Michele Henderson, Quincy Clay Henderson, Xaviera Henderson, Raphael Henderson, Bryan Persinger, Sarah Persinger, Aaron Williams, Keith Krudwig, Nathan Krudwig, Roderick Pugh, Donald Scee, Amanda Morris, Favio Melendez, Francis Brennan, Nicholas D Bullard, Patrick Llamas, Daniel Gonzalez, David C. Hernandez, Timothy Reeves, Kimberly Alosi, John J Brown Jr., Marcel Dentremont, Sharelle Dentremont, Rodney Bennett, Matthew Salisbury,

**Individually and as Next Friend of M.S., a minor, Christian Salisbury, Chandra Salisbury, Claire Salisbury, Nancy Salisbury, Efrain Morales Jr., Delia Morales, Rory O'Brien, Danielle O'Brien, Linda O'Brien, Hugh O'Brien, Shannon O'Brien, Devin Gates, Justin Bardwell, Andrew Davis, Individually and as Next Friend of J.D., a minor, Jill Russell, James Cano, Noe Abad, Individually and as Next Friend of, R.A. a minor, Janina G Abad, Lucius Sykes, Tonesha Sykes, Edmund Lucas, Raymond Dorminey, Carrie Dorminey, Donald Farris, Paula Farris, Jodi Farris, Phillip Farris, Maximillian Miller, Individually and as Next Friend of, K.M. a minor, Caitlin Miller, Paul Murphy, Jessica Murphy, Preston Granillo, Justin Bernatz, Erwin Cano, Aide Cano, George Morelli, Stefanie Morelli, Frank Sullivan, Dale Scott, Individually and as Next Friend of A.S., a minor, Tanya James-Scott, Dorothy Scott, Alexander Scott, Bobby Kling, Andrea Kling, Robin Coby-Ranzy, Jason Ranzy, Chance Coby, Carl Coby, Michael Burten, Meghan Justice, Jermaine Norman, Jennifer Miller, Simon Strating, Eve Strating, Laveto Davidson, Arthur Connor, Kelly Connor, Arthur W Connor, Joseph Connor, Samuel Connor, Elizabeth C Connor, Lajawn Gladney, Raymond Rodriguez, Don Gates, Rola Bazzi-Gates, Jacob Rodgers, John Gamble, Ivy Gamble, Ronaldo Jumbo, Benjamin Little, Frank Wayne Fuller, Manuel Roman, Pedro Viorato, Jerry S. Thomas, Chad Thomson, Joseph Asbery, Michael Smith, Jose Baggett, Leif Meisinger, Divita Meisinger, Seth Meisinger, Asbjorg Meisinger, Terry Meisinger, George Hanhauser IV, Clayton Ferguson, Lindsey Rowland, Jorge Fernandez-Davila, Cheryl Eberg, Leo Richardson, Creed McCaslin, Frank Guzman, Rashon Hill, Timothy Boyd, Individually and as Next Friend of, E.B., T.B., and K.L., minors, Hattie Boyd, Carl Vickers, Sheridan Puckett, Archie Bates III, Guy Lohr, Diane Lohr, Seira Lohr, and Cheyenne Lohr,**

| | |
|---|---|
| *Plaintiffs*, | § |
| | § |
| | § |
| **v.** | § |
| | § |
| **THE ISLAMIC REPUBLIC OF IRAN,** | § |
| | § |
| *Defendant*. | § |

## <u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

TO THE HONORABLE JUDGE TREVOR N. MCFADDEN:

    Plaintiffs, by and through their undersigned counsel, hereby file this First Amended

Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1) and the Court's January 13, 2021

Minute Order. Plaintiffs also request that the Clerk of Court restyle this action as **Mary HEATON, et al. v. THE ISLAMIC REPUBLIC OF IRAN**.[1]

For cause of action, Plaintiffs show the Court as follows:

## I.
## PARTIES & NATURE OF THE ACTION

**1.1**    Plaintiffs are United States nationals who seek judgment against Defendant, the Islamic Republic of Iran ("Iran"), pursuant to the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1605A. At issue in this case are approximately <u>four hundred nineteen</u> (419) separate acts of extrajudicial killing or attempted acts of extrajudicial killing supported by Iran that occurred in Iraq from approximately 2003 to 2011 (collectively the "**Terrorist Attacks**"). The Terrorist Attacks were committed by enemy forces who intended to kill U.S. Armed Forces members and U.S. Government contractors stationed in Iraq during Operation Iraqi Freedom.

**1.2**    As detailed in Section III below, upon information and belief, Iran provided material support and resources to the enemy forces who planned and/or orchestrated the Terrorist Attacks. Accordingly, Plaintiffs file suit against Defendant Iran as a state sponsor of terrorism under 28 U.S.C. § 1605A(c).

**1.3**    One hundred twenty-two (122) of the named Plaintiffs (hereinafter the "**KIA Family-Plaintiffs**") are immediate family members of United States Armed Forces members and U.S. Government Contractors who were tragically killed in action (KIA) during Operation Iraqi Freedom. Specifically, these fallen service members and contractors experienced numerous acts

---

[1]As first addressed in the January 13, 2021 Status Report, since filing the Original Complaint, a substantial number of subsequently-added Plaintiffs provided documentation of their IED attack exposure in Iraq and resulting injuries. However, some former Plaintiffs, including the former lead Plaintiff, Calvin E. Johnson, Sr., are unable to locate and/or provide such evidence. Thus, they will not be included in this action moving forward.

of extrajudicial killing supported by Iran involving Improvised Explosive Devices (hereinafter "**IEDs**"). Further, some of these terrorist attacks involved Explosively Formed Penetrators (hereinafter "**EFPs**"), the more technologically advanced and deadly version of an IED. *See Karcher v. Islamic Republic of Iran*, 396 F. Supp. 3d 12, 26-27 (D.D.C. 2019).

1.4    The remaining seven hundred fifty (750) Plaintiffs (hereinafter the "**Surviving-Plaintiffs**") are former U.S. Armed Forces members, former U.S. Government contractors, and certain members of their immediate family. The former Armed Forces members and contractors were also stationed in Iraq from approximately 2003 to 2011 and suffered various personal injuries following numerous attempted acts of extrajudicial killing supported by Iran. Most of these terrorist attacks involved IEDs, including the more deadly EFP, while still others involved additional methods such as mortars, rockets, grenades, Rocket Propelled Grenades, and other weaponry and tactics, including of the type provided by Iran.

1.5    Defendant Iran is a foreign state under 28 U.S.C. §§ 1603(a) and 1605A.

## II.
## STANDING, JURISDICTION, AND VENUE

2.1    Plaintiffs seek money damages for death and personal injuries caused by Iran's provision of significant material support and resources to enemy forces operating in Iraq. More specifically, plaintiffs seek money damages for death and personal injuries caused by enemy forces who, with Iran's support, planned and/or orchestrated terrorist attacks aimed against active U.S. service members and U.S. Government Contractors stationed in Iraq from approximately 2003 to 2011 during Operation Iraqi Freedom.

**2.2**    Iran's material support allowed such enemy forces to successfully execute acts of extrajudicial killing and also attempt acts of extrajudicial killing. The terrorism exception to the FSIA states that:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605A(a)(1). Thus, pursuant to the FSIA, 28 U.S.C. § 1605A, and related statutes, including the Torture Victims Protection Act of 1991, Pub. L. No. 102–256, §3(a), 106 Stat. 73,73 (1992), 28 U.S.C. § 1605A(h)(7), and 28 U.S.C. § 1605A(h)(3) (citing 18 U.S.C. § 2339A(b)(1)), Defendant Iran is subject to suit in the courts of the United States and this Court may assert jurisdiction over the subject matter of this Complaint. *See Flanagan v. Islamic Republic of Iran,* 87 F. Supp. 3d 93, 113 (D.D.C. 2015).

**2.3**    The terrorism exception to the FSIA generally applies only when (1) "the defendant was a designated state sponsor of terrorism when the act happened *and* at the time the claim was filed or in the preceding six months, [] § 1605A(a)(2)(A)(i)"; (2) "the 'claimant or the victim' in the case was 'a national of the United States,' 'a member of the armed forces,' or 'otherwise an employee of the government of the United States' when the act happened, *id.* § 1605A(a)(2)(A)(ii)"; and (3) "'in a case in which the act occurred in the foreign state against which the claim has been brought, the claimant has afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with the accepted international rules of arbitration', *id.* § 1605A(a)(2)(A)(iii)." *Karcher,* 396 F. Supp. 3d at 53.

2.4    Since January 19, 1984, the United States has designated Defendant Iran as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j)), Section 40 of the Arms Export Control Act (22 U.S.C. § 2870), and Section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371). *See State Sponsors of Terrorism*, U.S. DEPT. OF STATE, *available at* https://www.state.gov/state-sponsors-of-terrorism/.  Iran was designated a state sponsor of terrorism at the time of the Terrorist Attacks that form the basis of this lawsuit and at the time this FSIA Amended Complaint was filed.

2.5    Plaintiffs at the time of the above-described acts were United States citizens, U.S. Armed Forces members, or contractors of the U.S. Government and have standing to bring this FSIA action under 28 U.S.C. § 1605A(a)(2)(A)(ii)(I-III).

2.6    And because the attacks occurred in Iraq, and not Iran, there is no requirement to afford Iran a reasonable opportunity to pursue arbitration pursuant to 28 U.S.C. §1605A(a)(2)(A)(iii).

2.7    The Court must exercise its subject matter jurisdiction and hear this claim under 28 U.S.C. § 1605A(a)(2)(A)(i)(I). *See Doe v. Democratic People's Republic of Korea Ministry of Foreign Affairs Jungsong-Dong*, 414 F. Supp. 3d 109, 123 (D.D.C. 2019) (concluding that when an FSIA Plaintiff satisfies Section 1605A(a)(2), "[n]ot only does the Court have subject matter jurisdiction, it must exercise that jurisdiction").

2.8    Further, "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title." 28 U.S.C. § 1330(b). The Court may therefore exercise personal jurisdiction over Iran upon the completion of service via:

sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned.

28 U.S.C. § 1608(a)(3); *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1054 (2019).  Defendant

Iran may therefore be properly served under the FSIA at the offices of their respective head of

the ministry of foreign affairs:

**The Islamic Republic of Iran**
The Ministry of Foreign Affairs
Attn: Mohammad Javad Zarif
Khomeini Avenue
United Nations Street
Tehran, Iran

**2.9**    In the alternative, if service cannot be made within 30 days under 28 U.S.C.

§ 1608(a)(3), service may be perfected under 28 U.S.C. § 1608(a)(4). *Estate of Hirshfeld v.

Islamic Republic of Iran*, No. CV 15-1082 (CKK), 2017 WL 361062, at *2 (D.D.C. Jan. 25,

2017) (Kollar-Kotelly, J.); *see also Flanagan,* 87 F. Supp. 3d at 114 (noting that service via

§ 1608(a)(4) was necessary because the U.S. does not maintain diplomatic relations with Iran).

**2.10**    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4).

**III.**
**FACTUAL ALLEGATIONS**

**3.1**    Upon information and belief, the Islamic Republic of Iran has strategically

ignored all FSIA lawsuits filed and served against Defendant since the enactment of 28 U.S.C.

§ 1605A. *See Flanagan*, 87 F. Supp. 3d at 120 (noting that Ali Akbar Hashemi Rafsanjani, the

former Iranian President, "complained at length about the [FSIA] suits" and was especially

concerned about punitive damage awards). Because of Iran's choice to disregard United States

law and civil procedure, Plaintiffs are practically unable to seek responsive discovery from

Defendant. Therefore, like other FSIA litigants, Plaintiffs must rely on expert testimony to demonstrate Iran's provision of material support or resources to enemy forces in Iraq who planned and executed the Terrorist Attacks.[2]

**3.2**    The majority of facts plead in Section III.A through Section III.G below were previously published in an Expert Report written by Dr. Matthew Levitt and tendered to the Court in *Karcher, et al. v. Islamic Republic of Iran*, Case No. 1:17-cv-00114-TJK, Dkt. 94 (D.D.C. 2020) (Kollar-Kotelly, J.). Plaintiffs have retained Dr. Levitt, a former U.S. Counter-Terrorism analyst and noted expert in Middle Eastern terrorism, as an expert. He will provide similar evidence and testimony in this action.

## A.    Iran's Interest in Iraq

**3.3**    "In the wake of the Iran-Iraq War (1980-1988), Tehran remained concerned about threats closest to home. The first four regional commands of the Islamic Republic Revolutionary Guard Corps, ("**IRGC**")[3] – Iran's chief terrorist apparatus – were therefore dedicated to Iraq (First Corps), Pakistan and Iran's border provinces (Second Corps), Turkey and Kurdish groups (Third Corps), and Afghanistan and Central Asia (Fourth Corps). According to seized Iraqi intelligence, by the early 1990s Iran had built the Badr Corps, discussed further below, into a fully functional militia backed by the Islamic Revolutionary

---

[2]*See, e.g.*, *Karcher*, 396 F. Supp. 3d at 25 (citing expert testimony that "the identification of the weapon as an EFP *all but* necessitates the inference that Iran was responsible.").

[3]The U.S. Government designated the IRGC as a Global Terrorist Organization in October 2017. *See* Press Release, U.S. Dept. of the Treasury (Oct. 13, 2017), Treasury Designates the IRGC under Terrorism Authority and Targets IRGC and Military Supporters under Counter-Proliferation            Authority,            https://www.treasury.gov/press-center/press-releases/Pages/sm0177.aspx

Guard Corps-Qods Force ("**IRGC-QF**")[4] – the IRGC's external wing – regional command in Iraq, better known as Ramazan Corps (Headquarters)." *Karcher,* Case No. 1:17-cv-00114-TJK, Dkt. 94 (Expert Report of Dr. Matthew Levitt).

    **3.4**    "By forcing the collapse of Saddam Hussein's regime, Operation Iraqi Freedom removed Iran's greatest enemy and longtime nemesis. **The 2003 invasion therefore provided Iran with a historic opportunity to reshape its relationship with Iraq and, in the process, increase its influence in the region**. To that end Iran employed an 'all elements of national power' approach in exploiting the outcome of this seminal event. This included both soft and hard power, from the use of political, economic, religious, and cultural leverage to the support of militant proxies." *Id.* (emphasis added).

    **3.5**    "In pursuing its goals in Iraq, Iran backed multiple, often opposing parties and movements in an effort to secure its interests no matter the outcome of the country's political developments. By hedging its bets, Iran was able to rely on different groups for different types of activities. For example, SCIRI and the Badr Organization quickly entered the political fray in Iraq, while other hard-line groups played a more strictly militant function." *Id.*

    **3.6**    "Understanding Iran's layered relationships with its Iraqi proxies is critical to understanding the role Hezbollah[5] came to play in Iraq. Working through its longtime proxies, Iran set out to achieve several goals in Iraq, the most important and overarching of which was

---

[4]The U.S. Government designated the IRGC-QF as a Terrorist Financier in October 2007. *See* Press Release, U.S. Dept. of State (Oct. 25, 2007), Designation of Iranian Entities and Individuals for Proliferation Activities and Support for Terrorism, https://2001-2009.state.gov/r/pa/prs/ps/2007/oct/94193.htm

[5]Hezbollah is also spelled "Hizballah." Both names refer to the same terrorist organization.

the creation, in the words of then-Defense Intelligence Agency director Lowell Jacoby, of a '**weakened, decentralized and Shi'a-dominated Iraq that is incapable of posing a threat to Iran**.'[6] In addition, the long-held Iranian desire to push the United States out of the Gulf region now extended to the large U.S. and international military presence in Afghanistan to Iran's east and Iraq to its west. Iran sought to foster unity among Iraq's various Shia parties and movements so that they could consolidate Shia political control (Shia constitute about 60 percent of the country's population) over the new Iraqi government." *Id.*

    **3.7**    "Even as it pursued its political goal of seeking a weak federal state, dominated by Shia allies and vulnerable to Iranian influence, Tehran also sought to bloody coalition forces in Iraq. Careful not to provoke a direct confrontation with U.S. and coalition forces, Iran armed, trained, and funded a variety of Shia militias and insurgent groups in an effort to bog down coalition forces in an asymmetric war of attrition. **If the United States were humiliated in Iraq and forced out of the region in disgrace, the thinking went, the Americans would be deterred from pursuing similar military interventions in the region in the future.**" *Id.* (emphasis added).

    **3.8**    "Iran's plans to influence political developments in Iraq, as it happened, long predated the U.S. invasion of 2003. This meant the Iranians were ready to fill the security vacuum immediately following the invasion, when, a U.S. embassy cable later noted, 'little attention was focused on Iran.'"[7]. *Id.*

---

[6]*Current and Projected National Security Threats to the United States: Hearing Before the Select Committee on Intelligence,* 109th Cong., 1st Sess., (Feb. 16, 2005) (statement of Vice Adm. Lowell E. Jacoby) (emphasis added).
[7]Sam Dagher, *In Iraq, a Very Busy Iran*, WALL ST. J. (Nov. 29 2010, 12:01am), https://www.wsj.com/articles/SB10001424052748703994904575646911886138950.

**3.9**     "In April 2008, General David Petraeus and Ambassador Ryan Crocker, the most senior U.S. military commander and diplomat in Iraq, respectively, testified before the Senate Armed Services Committee. In his testimony, **<u>General Petraeus highlighted the flow of sophisticated Iranian arms to Shia militants in Iraq</u>**. The military's understanding of Iran's support for such groups crystallized, Petraeus explained, with the capture of a number of prominent Shia militants and several members of the IRGC-QF operating in Iraq as well." *Id*.

**3.10**     "Ambassador Crocker, himself a former U.S. ambassador to Lebanon, was undiplomatically blunt in assessing the implications of Iran's arming and training of extremist militia groups: 'What this tells me is that Iran is pursuing, as it were, a Lebanonization strategy, using the same techniques they used in Lebanon, to co-opt elements of the local Shia community and use them as basically instruments of Iranian force.'"[8] *Id*. (emphasis added).

**B.     Hezbollah's Founding, Ideology, and Structure**

**3.11**     "Founded in the early 1980s by a group of young Shia militants, Lebanese Hezbollah (the 'Party of God') was the product of an Iranian effort to aggregate under one roof a variety of militant Shia groups in Lebanon, themselves the products of the domestic and regional instability of the time. Hezbollah was the outgrowth of the complex and bloody civil war. For the first time, Lebanon's historically marginalized Shia Muslims attempted to assert economic and political power. Until 1982, the Shia of Lebanon were considered backward

---

[8]*The Situation in Iraq and Progress by the Government of Iraq in Meeting Benchmarks and Achieving Reconciliation: Hearing before the Committee on Armed Services*, 110th Cong., 2d Sess., (Apr. 8–10, 2008) (Statements of Gen. David H. Petraeus and Ambassador Ryan Crocker).

and simple by their more cosmopolitan Christian and Sunni cousins." *Karcher,* Case No. 1:17-cv-00114-TJK, Dkt. 94 (Expert Report of Dr. Matthew Levitt).

    **3.12**    "Iran played a central role in Hezbollah's founding. In 1987, the CIA assessed that 'an Islamic fundamentalist movement probably would have developed in Lebanon without outside support, but Iranian aid has been a major stimulant.'[9] Shortly after the Israeli invasion, approximately 1,500 IRGC advisors set up a base in the Bekaa Valley with the goal of exporting the Islamic revolution to the Arab world.[10] Naim Qassem recalls how training camps supervised by the IRGC were set up in the Bekaa Valley as early as 1982 and how all members were required to attend these camps and learn how to confront the 'enemy.'"[11] *Id.*

    **3.13**    "In 1985, Hezbollah identified the organization's ideological platform: 'We view the Iranian regime as the vanguard and new nucleus of the leading Islamic State in the world. We abide by the orders of one single wise and just leadership, represented by 'Waliyat el Faqih' [rule of jurisprudent] and personified by [Iranian Supreme Leader Ayatollah Ruhollah Musawi] Khomeini.'[12] Hezbollah has been Iran's proxy ever since, and it is estimated that Iran provides Hezbollah with as much as $700 million—$l billion per year."[13] *Id.*

---

[9]Lebanon: The Prospects for Islamic Fundamentalism, Directorate of Intelligence, Central Intelligence Agency (May 6, 1987), https://www.cia.gov/readingroom/docs/DOC_0000138966.pdf/.

[10]DANIEL BYMAN, DEADLY CONNECTIONS: STATES THAT SPONSOR TERRORISM 82 (2005).

[11]Naim Qassem, HIZBULLAH: THE STORY FROM WITHIN 98 (2005).

[12] *Hezbollah's Global Reach: Joint Hearing Before the Subcomm. On Int'l. Terrorism and Nonproliferation and the Subcomm. on the Middle East and Central Asia,* 109th Cong., 2nd Sess. (Sep. 28, 2006) (statement of Ilan Berman, Vice President for Policy, Am. Foreign Policy Council).

[13]Dan Williams, *Top Israeli general sees increased Iran spending on foreign wars, Reuters* (Jan. 2, 2018. 5:01 AM), https://www.reuters.com/article/us-iran-rallies-israel/top-israeli-general-sees-increased-iran-spending-on-foreign-wars-idUSKBN1ER0Q9.

3.14    "According to the CIA, in the first few years following its founding, Hezbollah 'established what is virtually a radical Islamic canton in the Bekaa Valley, despite Syria's military presence there.'[14] In areas under its control, the CIA reported in 1987, strict Islamic rule was put in place. 'Sale or transport of liquor are prohibited, women are forbidden from interacting with men in public and must adhere to a strict dress code, civil crimes are punished according to the Koran, and Western education and influences are prohibited.'"[15] *Id.*

3.15    "It was also clear from the start that Hezbollah would be a force to be reckoned with. Over a nine-month period in 1985, the CIA calculated, Iran's Lebanese proxy groups, including Hezbollah, were responsible for at least 24 international terrorist incidents, eight of which targeted French and American targets.[16] As Iran sought to dissuade countries from arming and supporting Iraq in the ongoing and costly Iran-Iraq war (1980-1988), American and French targets were popular targets for Hezbollah and other Iranian surrogate groups. Heeding Iran's call to perpetrate attacks beyond Lebanon's borders, Hezbollah found itself involved in plots throughout the Middle East." *Id.*

3.16    For example, in Lebanon, "three spectacular attacks targeting U.S. interests executed over an 18-month period came to define the tenor of Hezbollah's relationship with the United States for years to come. On April 18, 1983, a suicide bombing at the U.S. Embassy in Beirut killed 63, including 17 Americans. Six months later, on October 23, two separate suicide attacks targeted the U.S. Marine and French army barracks, both compounds under the aegis of the Beirut-based Multinational Force sent to Lebanon as peace-keepers to oversee the

---

[14] Lebanon: The Prospects for Islamic Fundamentalism at 6.
[15] *Id.*
[16] Terrorism Review, Directorate of Intelligence, Central Intelligence Agency (Jan. 13, 1986), https://www.cia.gov/readingroom/search/site/January%2013%2C%201986.

evacuation of the Palestine Liberation Organization (PLO) from Beirut.[17] Those attacks, which left 241 Americans and 58 French dead, were followed less than a year later by the September 20, 1984, bombing of the U.S. embassy annex, killing 24." *Id.*

    **3.17**    "The U.S. government had little doubt about who was behind the attack, even before crime scene analysis and sensitive source reporting began to flow in. Writing just days after the second embassy bombing, the CIA noted that 'an overwhelming body of circumstantial evidence points to the Hizb Allah, operating with Iranian support under the cover name of Islamic Jihad.'[18] For instance, the CIA added that 'Shia fundamentalists are the only organized terrorists in Lebanon likely to willingly sacrifice their lives in such an attack.'"[19] *Id.*

    **3.18**    "Since its founding, Hezbollah has developed a sophisticated organizational and leadership structure which commands its civilian, political, social, military and terrorist functions. The overall governing authority, the Majlis al-Shura (Consultative Council), wields all decision-making power and directs several subordinate functional councils. Each functional council oversees the normal operations of key areas and reports directly to the Shura Council which, according to Hezbollah Deputy Secretary General Qassem, is 'in charge of drawing the overall vision and policies, overseeing the general strategies for the Party's function, and taking political decisions.'"[20] *Id.*

---

[17] HALA JABER, HEZBOLLAH: BORN WITH A VENGEANCE 77 (1997).
[18] Lebanon: The Hizb Allah, Directorate of Intelligence, Central Intelligence Agency (Sept. 27, 1984), https://www.cia.gov/readingroom/docs/CIA-RDP85T00287R001302140001-2.pdf.
[19] *Id.*
[20] Naim Qassem, HIZBULLAH: THE STORY FROM WITHIN 64 (2005).

3.19    "U.S. assessments echo Qassem's description: 'Hezbollah has a unified leadership structure that oversees the organization's complementary, partially compartmentalized elements.'"[21] For instance, in October 2020, the United States Treasury's Office of Foreign Assets Controls sanctioned two members of Hizballah's Central Council. According to Treasury Secretary Steven Mnuchin, 'Hizballah's senior leaders are responsible for creating and implementing the terrorist organization's destabilizing and violent agenda against U.S. interests and those of our partners around the world[.]'"[22] *Id.*

3.20    The U.S. intelligence community ultimately sees Hezbollah as "a multifaceted, disciplined organization that combines political, social, paramilitary, and terrorist elements" in which decisions "to resort to arms or terrorist tactics is carefully calibrated."[23] U.S. officials have also "long acknowledged the capabilities of Hezbollah's terrorist network, not only for the attacks it has carried out abroad targeting U.S. interests such as the bombings of the U.S. marine barracks and embassy in Lebanon in the 1980s and the bombing of the Khobar Towers in Saudi Arabia in 1996, but also because of Hezbollah's active presence in the United States."[24] *Id.*

---

[21]CASEY L. ADDIS AND CHRISTOPHER M. BLANCHARD, CONG. RESEARCH SERV., R41446, HEZBOLLAH: BACKGROUND AND ISSUES FOR CONGRESS (2011).

[22]Press Release, U.S. Dept. of the Treasury (Oct. 22, 2020), Treasury Targets Hank-Ranking Hizballah Officials, *available at* https://home.treasury.gov/news/press-releases/sm1161.

[23]*Annual Threat Assessment of the Intelligence Community: Testimony Before the Senate Select Comm. on Intelligence* 111th Cong., 1st Sess., (Feb. 12, 2009) (testimony of Dennis C. Blair, Director of National Intelligence), *available at* https://www.dni.gov/files/documents/Newsroom/Testimonies/20090212_testimony.pdf

[24]*See, e.g.*, Press Release, U.S. Dept. of the Treasury (Sept. 13, 2012) (noting that Hizballah was named a Specifically Designated Terrorist in January 1995).

**C.      Hezbollah's Role as an Iranian Proxy in Iraq**

**3.21**      "Hezbollah's activities in Iraq since the 2003 U.S. invasion are a function of the group's close alliance with Iran in general and the IRGC-QF in particular. Iran's strategy in Iraq— and Hezbollah's role in that strategy as Iran's primary militant proxy group—is a logical extension of Iran's covert activities in Iraq and the region throughout the 1980s and 1990s." *Karcher,* Case No. 1:17-cv-00114-TJK, Dkt. 94 (Expert Report of Dr. Matthew Levitt).

**3.22**      "Throughout the Iran-Iraq War (1980-1988), Iraq was a primary target of Iranian-sponsored terrorist groups. To this end, the CIA noted in 1986, 'Iran trains and finances several Iraqi dissident groups, such as the Dawa Party, that are dedicated to overthrowing President Saddam Husayn.'[25]  Iranian sponsorship of terrorism picked up pace as the Iran-Iraq War came to a close and U.S.-Iran tensions increased. 'No longer drained by fighting Iraq,' former White House counterterrorism director Richard Clarke wrote, '[Iranian] aid to Hezbollah increased.'[26] Iranian support to its proxies in the Gulf increased as well." *Id.*

**3.23**      "Iraqi Shia extremists feature prominently in Iran's arsenal of regional proxies. Some of the most proactive Iraqi Shia extremists to work with Iran in the post-2003 period began as Iranian proxies some twenty years earlier. Consider, for example, Jamal Jafar Muhammad Ali, better known as Abu Mahdi al-Muhandis, one of the Iraqi Dawa Party terrorists who partnered with Hezbollah to carry out the 1983 embassy bombings in Kuwait and the 1985 assassination attempt on the Kuwaiti emir." *Id.*

---

[25]State Support for International Terrorism, 1985, Directorate of Intelligence, Central Intelligence Agency (May 1986),  https://www.cia.gov/readingroom/docs/CIA-RDP97R00694R000600100001-3.pdf.

[26]RICHARD CLARKE, AGAINST ALL ENEMIES 103 (2004).

**19**

**3.24**    "Convicted in absentia for his role in those attacks, Muhandis went on to lead the Badr Corps, the militant wing of the Supreme Council for Islamic Revolution in Iraq (SCIRI). The Badr Corps not only fought alongside Iranian forces in the Iran-Iraq War, it also engaged in acts of sabotage and terrorism targeting the Hussein Regime. As head of the Badr Corps, Muhandis worked directly with the IRGC-QF and other militant Iraqi Shia targeting the Hussein Regime.'"[27] *Id.*

**3.25**    "Iraqi Shia militant groups like the Dawa Party and Badr Corps have long histories of cooperation, training, and cross-fertilization with Hezbollah. As noted before, Dawa operatives engaged in joint terrorist operations with Hezbollah. In fact links between Hezbollah and the Dawa Party run deep. The Dawa Party in Lebanon, one of the precursor elements to what became Hezbollah, was imported from Iraq in 1969 by followers of Iraqi cleric Mohammad Baqr al-Sadr." *Id.*

**D.    Hezbollah's Role as an Iranian Proxy in Iraq and Iran's Support of Hezbollah**

**3.26**    "Mirroring the creation of Unit 1800, a unit dedicated to supporting Palestinian terrorist groups and targeting Israel, Hezbollah created Unit 3800, a unit dedicated to supporting Iraqi Shia terrorist groups targeting multinational forces in Iraq." *Karcher,* Case No. 1:17-cv-00114-TJK, Dkt. 94 (Expert Report of Dr. Matthew Levitt). Unit 3800, "established by Hezbollah leader Hassan Nasrallah,[28] at Iran's request, trained and advised Iraqi militant groups. Almost immediately following the U.S. invasion of Iraq, reports emerged

---

[27]*International Crisis Group, Shiite Politics in Iraq: Role of the Supreme Council*, (November 15, 2007), https://www.crisisgroup.org/middle-east-north-africa/gulf-and-arabian-peninsula/iraq/215-iraq-fixing-security-kirkuk.

[28]The U.S. listed Nasrallah as a Specially Designated Terrorist in January 1995. *See* Dept. of the Treasury: List of Specially Designated Terrorists Who Threaten to Disrupt the Middle East Peace Process, Fed. Reg. 60, 5086 (Jan. 25, 1995).

indicating Hezbollah operatives were reaching out to re-establish ties to Iraqi Shia groups. A July 29, 2003 U.S. intelligence report citing Israeli military intelligence stated that Hezbollah 'military activists' were trying to make contact with Muqtada al-Sadr and his Mahdi Army."[29] *Id*.

 **3.27** "By late August they had succeeded, according to a report prepared by a U.S. military analyst.[30] Based on information from a source with 'direct access to the reported information,' the report claimed Hezbollah had assembled a team of thirty to forty operatives in Najaf 'in support of Moqtada Sadr's Shia paramilitary group.' Hezbollah was both recruiting and training new members of the Mahdi Army, the report added."[31] *Id*.

 **3.28** "More reports documenting Hezbollah's then-still-small presence followed, including one citing multiple sources that said Hezbollah was 'buying rocket-propelled grenades antitank missiles[,] and other weapons for the Mahdi Army.' Hezbollah's relationship with al-Sadr and his militia were not seen as ad hoc ties between individual Hezbollah and Mahdi Army members but as decisions made at the top of the respective organizations. A U.S. Army report noted that 'reporting also confirms the relationship between ... Sadr and Hassan Nasrallah.' According to unconfirmed information, the report added, a senior adviser to Nasrallah delivered funds to al-Sadr.[32] The connection rings true, given that

---

[29]Edward T. Pound and Jennifer Jack, *Special Report: The Iran Connection*, U.S. NEWS & WORLD REPORT, Nov. 22, 2004.
[30]*Id.*
[31]*Id.*
[32]*Id.*

'al-Sadr sought to model his organization on Lebanese Hezbollah, combining a political party with an armed militia and an organization providing social services.'"[33] *Id.*

3.29    "The American and Israeli intelligence services were not the only ones investigating Iran and Hezbollah's support to Shia militant groups at the time. In fact, one of the most prolific sources was also one of the most controversial: the Mujahedin-e Khalq (MEK), the Iranian exile group deeply and sometimes violently committed to the overthrow of the regime in Tehran. While the MEK has a track record of collecting critical intelligence later proven to be surprisingly accurate, it remained a US-designated terrorist group until September 2012 (it had already been removed from the European Union and British lists)."[34] *Id.*

3.30    "The gist of the MEK's reporting on Hezbollah in Iraq would be corroborated by other sources. According to the MEK, some 800 Hezbollah operatives were on the ground in Iraq by January 2004, including assassination teams.[35] According to other MEK reports, nearly 100 Hezbollah members—including both 'agents and clerics'—infiltrated postwar Iraq at Iran's behest. Following its established modus operandi in Lebanon, Hezbollah reportedly established charitable organizations in Iraq 'to create a favorable environment for recruiting.'[36] As early as October 2003, Israeli intelligence also warned their American counterparts that according to their information Hezbollah—at Iran's instruction—intended to help set up a

---

[33]Marisa Cochrane, *Iraq Report 12*: *The Fragmentation of the Sadrist Movement*, THE INSTITUTE FOR THE STUDY OF WAR, Jan. 2009.

[34]Jody Warrick, *U.S. Officials to Remove to Remove Iranian Group from Terror List, Officials Say*, WASHINGTON POST (Sept. 21, 2012).

[35]*Id.*

[36]Raymond Tanter, *Iran's Threat to Coalition Forces in Iraq* (Jan. 15, 2004), WASHINGTON INSTITUTE FOR NEAR EAST POLICY (Jan. 15, 2004) https://www.washingtoninstitute.org/policy-analysis/irans-threat-coalition-forces-iraq.

'resistance movement,' likely in the group's own image, that could conduct mass casualty attacks."[37] *Id.*

**3.31** "'Hezbollah has moved to establish a presence inside Iraq,' one administration official said, 'but it isn't clear from the intelligence reports what their intent is.'[38] It was clear, however, that they were traveling through Syria and crossing the long and porous Syrian-Iraqi border to gain entry to Iraq. In November 2003, Israel's defense minister, Shaul Mofaz, went public with information that a wide range of insurgents—from Sunnis affiliated with al-Qaeda to Shia tied to Hezbollah—were crossing Syria to fight coalition forces in Iraq.[39] A few months later, American officials came to the same conclusion, noting that the Syrian regime was believed to be knowingly allowing their passage through Syrian territory, supporting an Iranian initiative to inject battle-hardened foreign fighters into Iraq.[40]

**3.32** "By early 2005, the presence of Hezbollah operatives in Iraq became an open secret when Iraqi interior minister Falah al-Naquib announced the arrest of 18 Lebanese Hezbollah members on terrorism charges. That summer U.S. military officials noted that Abu Mustafa al-Sheibani, the former Badr Corps commander, headed a network of Iraqi Shia insurgents created by the IRGC-QF."[41] *Id.*

---

[37]Pound, *Special Report: The Iran Connection*.
[38]James Risen, *A Regional Inflamed: The Hand of Tehran; Hezbollah, in Iraq, Refrains from Attacks on Americans*, THE N.Y. TIMES (Nov. 24, 2003), https://www.nytimes.com/2003/11/24/world/region-inflamed-hand-tehran-hezbollah-iraq-refrains-attacks-americans.html
[39]*Israeli warns of terrorist training*, THE WASHINGTON TIMES, (Nov 14. 2003), https://www.washingtontimes.com/news/2003/nov/13/20031113-113910-5865r/.
[40]Nathan Guttman, *U.S. Sources Claim Hezbollah Sending Combatants to Iraq,* HARRETZ (Tel Aviv) (June 20, 2004) https://www.haaretz.com/1.4718584.
[41] *Lebanese Hezbollah Members Detained in Iraq: Minister,* AGENCE FRANCE PRESSE (Feb. 9, 2005).

3.33    "In August 2005, a *Time* magazine article reported that Sheibani had been smuggling in a 'new breed' of IEDs across the border into Iraq as early as January 2005.[42] However, based on an Iraqi intelligence report dated July 11, 2001, Sheibani and the Badr Corps may have been using **EFPs in Iraq as early as 2001**.[43] The report described a shipment of Iranian weapons that were delivered to Badr Corps members in Diyala, Salah al-Din, and Baghdad governorates." *Id*.

3.34    "The weapons included 107mm and 122mm rockets, as well as 'conically shaped bombs filled with TNT, weighing 5-6 kg and using a locally made metal base.'[44]The description of these bombs were notably similar to the description of the 'new breed' of IEDs that were imported from Iran into Iraq in early 2005."[45] *Id*.

3.35    "In London, British Prime Minister Tony Blair cited evidence linking Iran and Hezbollah to recent bombings in which British soldiers were killed in Iraq by a new type of explosive device. 'The particular nature of those devices lead us either to Iranian elements or to Hezbollah, because they are similar to the devices used by Hezbollah, that is funded and supported by Iran,' he noted."[46] *Id*.

3.36    "Suddenly, Iran and Hezbollah's training and weapons smuggling programs had become a priority issue for coalition forces. Still, two more years passed before coalition

---

[42]Michael Ware, *Inside Iran's Secret War for Iraq*, Time, Aug. 15, 2005, *available at* http://content.time.com/time/magazine/article/0,9171,1093747,00.html
[43]*See July 25, 2001 Memorandum from Major 'Ubadah Muhammad Rajab,* U.S. Military Academy (July 25, 2001) (English Translation), *available at* https://ctc.usma.edu/wp-content/uploads/2013/10/Iraqi-Intelligence-Documents-4-Translation.pdf. (emphasis added).
[44]*Id.*
[45]Michael Ware, *Inside Iran's Secret War for Iraq*.
[46]Joint News Conference on U.K-Iraq Relations, British Prime Minister Tony Blair and Iraqi President Jalai Talabni, (Oct. 6, 2005), *available at* https://www.c-span.org/video/?189235-1/uk-iraq-relations.

forces learned that sometime in 2005 'senior Lebanese Hezbollah leadership' directed an experienced Hezbollah commander 'to go to Iran and work with the Qods Force to train Iraqi extremists.'[47] Hezbollah was about to accelerate its Unit 3800 mission in Iraq, with deadly consequences." *Id*.

3.37    "Until this point Hezbollah's ties were primarily with Muqtada al-Sadr's Mahdi Army, for which Hezbollah provided expertise and training. But the formation of a new Iraqi government in April 2005 brought Iran's Shia allies, SCIRI and the Dawa Party, into key leadership positions. Already in 2004 splits had begun to develop within the Mahdi Army, providing Iran and Hezbollah with a variety of new splinter groups—at this point more akin to neighborhood gangs than full-fledged militias—with which they could partner." *Id*.

3.38    "Iran saw in the Mahdi Army splinter groups—later known as the Special Groups—an opportunity to reproduce the successful Hezbollah model from Lebanon, but with an eye toward the unique political and social realities in Iraq.[48] Beyond wanting to maintain plausible deniability for attacks in Iraq, Iranian leaders viewed Iraqi Shia groups as a mechanism through which they could influence Iraqi politics without arousing fears among Iraqi Shia and Sunnis alike that Iran, a longtime enemy of Iraq, still held animus and hostile intentions toward the new Iraqi government. Since direct Iranian support for Shia militants aroused concerns among Iraqis about Iran's long-term intentions, Lebanese (Arab) Hezbollah

---

[47]Press Conference on Multi-National Forces-Iraq, Maj. Gen. Kevin Bergner and Brig. Gen. Michael Walsh (Oct. 3, 2007); *see also* Press Briefing, Multi-National Force-Iraq (Oct. 3, 2007), *available at* https://www.globalsecurity.org/military/library/news/2007/10/mil-071003-mnfi-b01.htm.

[48]Michael Knights, *The Evolution of Iran's Special Groups in Iraq,* COMBATING TERRORISM CENTER AT WEST POINT, Nov 2010, *available at* https://ctc.usma.edu/the-evolution-of-irans-special-groups-in-iraq/.

made an attractive proxy for Iranian support to Shia Iraqi militants. Some 100 Shia militants traveled to Lebanon in December 2005 for military training. 'They didn't teach us anything about suicide bombings, they showed us real tactics and taught our snipers,' one trainee commented."' [49] *Id.*

**3.39**    "By 2006, American intelligence sources, as well as information gleaned from interviews with detainees in Iraq, revealed without a doubt that Hezbollah was training members of the Mahdi Army. A small number of Hezbollah trainers visited Iraq, according to a senior American intelligence official, but large-scale training for 1,000 to 2,000 Mahdi Army fighters took place in Lebanon. A midlevel Mahdi Army commander corroborated the U.S. intelligence in summer 2006, when he conceded that some 300 Mahdi Army fighters were sent to Lebanon, apparently to fight alongside Hezbollah during the July 2006 war. 'They are the best-trained fighters in the Mahdi Army,' he added."[50] *Id.*

**3.40**    "The fact that the Iraqi trainees traveled to Lebanon through Syria, U.S. officials added, suggested that at least some Syrian officials were complicit in the training program. Moreover, Syrian officials reportedly attended meetings together with IRGC-QF chief Qasem Soleimani and Hezbollah's Imad Mughniyeh to coordinate means of turning up the heat on U.S. forces in Iraq.[51] Several months after Mughniyeh's assassination, a senior Mahdi Army commander in Baghdad—speaking anonymously because of the sensitivity of

---

[49]Nizar Latif and Phil Sands, *Mehdi Fighters Trained by Hizbollah in Lebannon*, INDEPENDENT, Aug. 20, 2007 (London Newspaper).
[50]Michael R. Gordon and Dexter Filkins, *Hezbollah Said to Help Shiite Army in Iraq,* THE N.Y. TIMES (Nov. 8, 2006),
https://www.nytimes.com/2006/11/28/world/middleeast/28military.html.
[51]*Id.*

what he was about to reveal—said that Mughniyeh had, in fact, supervised Hezbollah operations in Iraq."[52] *Id.*

3.41    "In Washington, despite a consensus on the destructive role Iran was playing in Iraq in late 2006, debates still raged within the U.S. intelligence community over whether Hezbollah was really on the ground in Iraq and whether the group was training Iraqi militias in Iran, Lebanon or both. Testifying before Congress in November 2006, then-CIA director Gen. Michael Hayden stated, 'I'll admit personally that I have come late to this conclusion, but I have all the zeal of a convert as to the ill effect that the Iranians are having on the situation in Iraq.'"[53] *Id.*

3.42    "In early 2007, Iran's political allies in the Iraqi government actually issued a diplomatic demarche demanding Tehran scale back its support for the Iraqi Shia militias, which by then were posing a tremendous security risk in the country. Iraqi officials were being killed in internecine Shia violence, possibly the result of Iran's apparent decision to intensify Shia militia activity after Hezbollah's self-declared victory in its war against Israel." *Id.*

3.43    "Speaking in January 2007, Hezbollah chief Hassan Nasrallah told his group's satellite television station, al-Manar, that '**the American occupation poses a danger to the Iraqi people and to the region.**' He was crystal clear on his means of rectifying the situation: 'We support the option of a comprehensive Iraqi resistance, with all its aspects, especially the

---

[52] *Hezbollah said to have trained militants in Iraq,* THE ASSOCIATED PRESS (July 1, 2008), *available at* https://www.denverpost.com/2008/07/01/hezbollah-said-to-have-trained-militants-in-iraq/
[53]Michael R. Gordon and Dexter Filkins, *Hezbollah Said to Help Shiite Army in Iraq.*

military aspect. We believe that the solution in Iraq begins with adopting the option of armed resistance—jihad against the occupation forces.'"[54] *Id.* (emphasis added).

**3.44**    "In seeking to lead from behind and put an Arab face on its efforts, the Islamic Republic sent a Hezbollah master trainer—Ali Musa Daqduq—to Iran to coordinate the training program and make periodic visits to Iraq. This use of the Hezbollah leader Daqduq assuaged any Iraqi unease about working under seemingly aloof and disdainful Iranian operatives.[55] Whereas Daqduq had been informed back in 2005 that he would be traveling to Iran to work with the IRGC- QF to train Iraqi extremists, he only went to Tehran in May 2006, accompanied by the Hezbollah official in charge of Unit 3800 activities in Iraq, Yusef Hashim." *Id.*

**3.45**    In Tehran, Daqduq met with "the commander and deputy commander of IRGC-QF special external operations, who informed them of plans to monitor and report on progress in Iraq. In the year before British Special Forces captured Daqduq in Basra in late 2007, he made four trips to Iraq. He reported back to the IRGC-QF on the Special Groups' use of mortars and rockets, their manufacture and use of improvised explosive devices (IEDs), and kidnapping operations. His overall instructions were simple: 'He was tasked to organize the Special Groups in ways that mirrored how Hezbollah was organized in Lebanon.'"[56] *Id.*

---

[54]Niles Lathem, *House of Jihad*, THE N.Y. POST (FEB. 5, 2007), https://nypost.com/2007/02/05/house-of-jihad/.

[55]Although Iraqi Shi'a resented and distrusted their Iranian sponsor, Hezbollah Trainers showed the Shi's respect and compensated for Iran's shortcomings. *See* Felter and Fishman, *Iranian Strategy in Iraq*, at 69 (citing U.S. Intelligence Report IR 012).

[56]Jim Garamone, *Iran, Arming, Training, Directing Terror Groups in Iraq, U.S. Official Says* AMERICAN FORCES PRESS SERVICE (July 3, 2007), https://www.army.mil/article/3890/iran_arming_training_directing_terror_groups_in_iraq_u_s_official_says.

**3.46**    "The outsourcing of training to Hezbollah spoke volumes for Iran's regard for the group's professionalism as terrorist trainers. The use of Hezbollah also averted Iraqi militants' complaints about the religious indoctrination included in the Iranian training programs, which were generally uninspiring and taught by sheikhs who did not speak Arabic well.[57] Additionally, according to documents seized by coalition forces, 'a formal selection process for prospective trainees considered the needs identified by Special Groups leaders but also set minimal qualifications for admittance. Candidates had to be able to read and write, for example, but Special Groups leaders also sought open-minded, strong, mature, and responsible people who demonstrated acumen for organizational skills and were 'not a problem.'"[58] Id.

**3.47**    "The IRGC-QF and its Hezbollah instructors trained 20 to 60 Iraqis at a time, in sessions generally lasting 20 days.[59] Iraqi militants selected to train in Iran traveled to camps well inside the country through several well-organized ratlines, a mirror image of those moving weapons into Iraq. According to the statements of Iraqi detainees, Amara, a city in southeastern Iraq, served as a hub for the movement of militants into Iran. Iraqi militants flocked to Mahdi Army and Special Groups safe houses in Amara from the predominantly Shia areas where they were recruited." *Id.*

**3.48**    "Some trainees reported crossing the border legally, others illegally. Either way, once across they met Iranian guides who escorted them to safe houses and hotels in the nearby Iranian border towns of Ahvez and Kermanshah. From there, the IRGC-QF arranged for the trainees to catch flights to Tehran. Once in Iran's capital, Special Groups members

---

[57]*See* Felter and Fishman, *Iranian Strategy in Iraq*, at 66 (citing U.S. Intelligence Report IR 011).
[58]Felter and Fishman, *Iranian Strategy in Iraq*, at 57.
[59]Garamone, *Iran, Arming, Training, Directing Terror Groups in Iraq, U.S. Official Says.*

stayed in apartments on the city's outskirts, where preliminary training took place indoors. Trainees also described riding a bus two or three hours away from Tehran to 'military style training complexes manned by uniformed Iranian soldiers.'"[60] *Id.*

**3.49**    Despite the pledges of senior Iranian leaders to cease such support, Defense Intelligence Agency Director Ronald Burgess told Congress in 2010 that the "[Iranian] Revolutionary Guards continues to covertly provide money, weapons, safe haven and training to select Iraqi Shia militants and terrorists."[61] Burgess added that, in Iraq, the "Iranian Islamic Revolutionary Guard Corps (IRGC)…trains and provides weapons and logistics support to Lebanese Hizballah. In turn, Lebanese Hizballah is training Iraqi insurgents at Iran's behest, providing them with tactics and technology to attack U.S. interests."[62] The focus of this training was to provide "elite trainees" with the "training, tactics, and technology" to handle IEDs and EFP and execute other acts of terrorism like assassinations.[63] *See Karcher,* Case No. 1:17-cv-00114-TJK, Dkt. 94 (Expert Report of Dr. Matthew Levitt).

**3.50**    "Over the course of 2006-2007, several Special Groups members noted in their debriefings, 16 operatives made several trips to Iran to take the master trainer course. Four specialized in EFPs; four in mortars and rockets; four in conventional weapons; and four in tactical and guerrilla warfare…."[64] In April 2008, a U.S. senator asked General Petraeus if it would be fair to say that Iranian-backed Special Groups in Iraq were responsible for killing

---

[60]Felter and Fishman, *Iranian Strategy in Iraq*, at 59.
[61]*World Wide Threat Assessment: Statement before the Comm. on Armed Services Joint Hearing* 112th Cong., 1st Sess. (March 10, 2011) (statement of Lt. Gen. Ronald L. Burgess Jr., Dir., Defense Intelligence Agency).
[62]*Id.*
[63]Garamone, *Iran, Arming, Training, Directing Terror Groups in Iraq, U.S. Official Says.*
[64] *See* Felter and Fishman, *Iranian Strategy in Iraq* (discussing IR009, IR0013, IR0011, and IR0016).

hundreds of American soldiers and thousands of Iraqi soldiers and civilians. 'It certainly is,' Petraeus answered."[65] *Id.*

**3.51** "Wherever they trained, Iraqi militants could never have been as lethally effective as they were without the $**750,000 to $3 million a month** in funding and arms they received from Iran. 'Without this support,' U.S. military authorities concluded, 'these special groups would be hard pressed to conduct their operations in Iraq.'[66] Asked the source of the 107-millimeter rockets Shia insurgents were firing on the Green Zone in Baghdad, General Petraeus replied succinctly, 'They come from Iran.'[67] By early 2008, 107-millimeter rockets were turning up in seized weapons caches, with 45 found in one cache alone, which also included several thousand pounds of explosives, all from Iran. Included among detainees who explained the Special Groups' process to officials were IRGC-QF operatives and Special Groups leaders and financiers."[68] *Id.* (emphasis added).

**3.52** "As a result of Iran and Hezbollah's training program, the Special Groups quickly became one of the most pressing security challenges in Iraq. 'Unchecked,' General Petraeus told the Senate Armed Services Committee in April 2008, 'the special groups pose the greatest long- term threat to the viability of a democratic Iraq.'"[69] *Id.*

---

[65]*The Situation in Iraq and Progress by the Government of Iraq in Meeting Benchmarks and Achieving Reconciliation: Hearing before the Comm. on Armed Services*, 110th Cong., 2d sess., (April 8-10, 2008) (statements of Gen. David H. Petraeus and Ambassador Ryan Crocker), *available at* https://www.govinfo.gov/content/pkg/CHRG-110shrg45666/html/CHRG-110shrg45666.htm.
[66]Garamone, *Iran, Arming, Training, Directing Terror Groups in Iraq, U.S. Official Says.*
[67]*The Situation in Iraq and Progress by the Government of Iraq in Meeting Benchmarks and Achieving Reconciliation: Hearing before the Comm. on Armed Services,* 110th Cong., 2d Sess.
[68]*Id.*
[69]*The Situation in Iraq and Progress by the Government of Iraq in Meeting Benchmarks and Achieving Reconciliation: Hearing before the Comm. on Armed Services,* 110th Cong., 2d Sess.

3.53    "Over time Hezbollah provided the Iraqi insurgents 'with the training, tactics and technology to conduct kidnappings, small unit tactical operations, and employ sophisticated improvised explosive devices (IEDs), incorporating lessons learned from operations in Southern Lebanon,' according to an April 2010 Pentagon report."[70] *Id.*

3.54    Although the United States has recognized Hezbollah as a Terrorist Group since the 1980's,[71] in October 2007, the U.S. Government also designated the Qods Force, a branch of the Islamic Revolutionary Guard Corps (IRGC), as a Terrorist Group.[72] Specifically, the Department of State concluded that the Qods Force has a long history of providing Hezbollah with "funding, weapons, intelligence, and logistical support."[73] The Department of State also determined that the Qods Force provides "lethal support in the form of weapons, training, funding, and guidance to select groups of Iraqi Shi'a militants who target and kill Coalition and Iraqi forces and innocent Iraqi civilians."[74]

### E.    U.S. Military/Intelligence Efforts to Curb Iran's Deadly Influence in Iraq

3.55    "Sometime in 2006, at the height of sectarian violence then engulfing Iraq, IRGC-QF Gen. Soleimani traveled secretly to Baghdad. Only after he returned safely to Iran did U.S. intelligence and military forces discover he had been right in their backyard.[75]

---

[70] SECRETARY OF DEFENSE, *Unclassified Report on Military Power in Iran* (April 2010), at 3, *available at* https://fas.org/man/eprint/dod_iran_2010.pdf.

[71] *See supra* note 14.

[72] Press Release, U.S. Dept. of State (Oct. 25, 2017), Treasury Designates the IRGC under Terrorism Authority and Targets IRGC and Military Supporters under Counter-Proliferation Authority, https://2001-2009.state.gov/r/pa/prs/ps/2007/oct/94193.htm.

[73] *Id.*

[74] *Id.*

[75] Martin Chulov, *Qassem Suleimani: The Iranian General 'secretly 'running Iraq*, THE GUARDIAN (London) (July 28, 2011), https://www.theguardian.com/world/2011/jul/28/qassem-suleimani-iran-iraq-influence.

Washington was furious. Ever since the April 2005 [Iraqi] election, Iranian-sponsored Shia militants had intensified attacks targeting coalition forces in Iraq. Now, Soleimani's confidence in his political and military proxies in Iraq was apparently so great that he felt secure paying a house call to Baghdad. Correspondingly the IRGC-QF seemed to be riding high, deploying proxy groups in Iraq capable of striking at coalition forces with impunity and basking in Hezbollah's self-declared victory against the Israel Defense Forces in the July 2006 war." *Karcher,* Case No. 1:17-cv-00114-TJK, Dkt. 94 (Expert Report of Dr. Matthew Levitt).

3.56    "That same summer, the White House began a process of reviewing its policy toward Iranian meddling in Iraq. Over the course of 2006, coalition forces detained dozens of suspected Iranian operatives in a 'catch and release' program intended to signal to Iran the coalition's awareness of Tehran's aggressive activities in Iraq. DNA samples collected surreptitiously from the Iranian detainees were added to a database before they were released after three or four days in custody. According to U.S. intelligence, as many as 150 Iranian intelligence and IRGC operatives were deployed to Iraq at a time."[76] *Id.*

3.57    Explaining the reason for the policy review, a senior Bush Administration commented that there "were no costs for the Iranians."[77] "The resulting presidential directive, or 'finding,' was signed by President Bush in November 2006 and authorized U.S. forces to kill or capture Iranian operatives in Iraq. Coined Counter Iranian Influence, the initiative included measures to roll back Iranian successes in five different theaters from Lebanon to Afghanistan and isolate the regime in Tehran. In Lebanon, for example, the White House

---

[76]David Stout, *Bush authorizes U.S. Troops to kill Iranian agents in Iraq*, N.Y. TIMES (Jan. 26, 2007), https://www.nytimes.com/2007/01/26/world/americas/26iht-prexy.4361797.html.
[77]Sabrina Tavernise, *U.S. Says Captured Iranians Can be Linked to Attacks* N.Y. TIMES (Dec. 27, 2006), https://www.nytimes.com/2006/12/27/world/middleeast/27iranians.html.

authorized the intelligence community to engage in broadened operations targeting Hezbollah's engagement in a spectrum of activities called the Blue Game Matrix."[78] *Id.*

3.58    "In Iraq the program to counter Iranian influence quickly bore fruit. The evening of December 19, 2006, a U.S. military patrol stopped an official Iranian embassy vehicle in Baghdad and arrested three Iranians with diplomatic credentials and one Iraqi, presumably their driver."[79] *Id.*

3.59    "The more significant arrests, however, came just a few hours later in a predawn raid of the Baghdad compound of Abdul Aziz al-Hakim, head of the SCIRI. U.S. Special Forces detained ten men in this second raid, including two Iranians carrying diplomatic passports—passports later determined to have been issued under false identities. Neither of the Iranians, traveling in Iraq under aliases with false documents, was a diplomat in the traditional sense. In fact they were important IRGC officials on a covert mission to Iraq. One, Mohsen Chizari, was the IRGC-QF's third highest ranking officer. The Iranians quickly realized that U.S. forces were holding one of Gen. Soleimani's most senior deputies."[80] *Id.*

3.60    "The evidence amounted to a 'smoking gun,' in one American official's description. 'We found plans for attacks, phone numbers affiliated with Sunni bad guys, a lot of things that filled in the blanks on what these guys are up to.'[81] The evidence the military

---

[78]*Id.*

[79]*Id.*

[80]Sudarsan Raghavan and Robin Wright, *Iraq Expels 2 Iranians Detained by U.S. American Defense Official Calls Release 'Obviously Troubling'*, Washington Post (Dec. 30, 2006), https://www.washingtonpost.com/archive/politics/2006/12/30/iraq-expels-2-iranians-detained-by-us-span-classbankheadamerican-defense-official-calls-release-obviously-troublingspan/f9f56a51-bd96-418f-9267-e8d63d7d80b8/.

[81]Eli Lake, *Iran's Secret Plan for Mayhem* New York Sun (Jan. 3, 2007), https://www.nysun.com/foreign/irans-secret-plan-for-mayhem/46032/.

collected in the raid included maps, detailed weapons lists, reports of weapons shipped into Iraq, organization charts, telephone records, computers, and 'other sensitive intelligence information.'[82] According to U.S. officials, some of this intelligence 'dealt explicitly with force-protection issues, including attacks on MNF-I [Multi-National Force-Iraq] forces.'"[83] *Id.*

3.61    "Chizari's arrest clearly unnerved Iran. Over the next few days, an Iraqi official noted, the Iranian ambassador to Iraq desperately ran 'around from office to office,' in an effort to secure Chizari's release.[84] A few days later, on January 11, 2007, former CIA director R. James Woolsey Jr. and former undersecretary of state Thomas Pickering appeared before the U.S. House Foreign Affairs Committee to testify on 'The Next Steps in the Iran Crisis.' Just the day before, President Bush had given a national address, noting, "**Iran is providing material support for attacks on American troops.**"[85] *Id.* (emphasis added).

3.62    "Then, just a few hours before the hearing, U.S. troops arrested six more Iranians in an Iranian diplomatic office in Irbil in Kurdish-controlled northern Iraq. One individual was quickly released, but the other five were determined to be IRGC members, not diplomats. Publicly, the Iranian liaison office in Irbil processed papers for Iraqis attempting to travel to Iran. But intelligence indicated it doubled as a IRGC-QF base of operations. As U.S.

---

[82]Raghavan and Wright, *Iraq Expels 2 Iranians Detained by U.S. American Defense Official Calls Release 'Obviously Troubling.'*
[83]Tavernise, *U.S. Says Captured Iranians Can be Linked to Attacks.*
[84]James Glanz and Sabrina Tavernise, *U.S. is Holding Iranians Seized in Raids in Iraq*, THE N.Y. TIMES (Dec. 25, 2006), https://www.nytimes.com/2006/12/25/world/middleeast/25iraq.html
[85]President George W. Bush, Speech on the U.S. mission in Iraq (Jan. 10, 2007) (transcript available at https://www.npr.org/templates/story/story.php?storyId=6803354).

Special Forces entered, they found the Iranians frantically flushing documents down a toilet."[86] *Id.*

> **3.63**    "Mining data on seized cell phones indicated the officers were in direct contact with a wide array of insurgent groups. Analysts found in the seized materials and devices evidence tying the Iranian officers to military operations carried out not only by Shia cleric Muqtada al‑Sadr's Mahdi Army (Jaish al-Islam) in places like Kirkuk but also by the al-Qaeda-affiliated Ansar al-Sunna group targeting Iraqi Kurds."[87] *Id.*

## F.    Iran's Response to U.S. Military/Intelligence Efforts – The Explosively Formed Penetrator (EFP)

> **3.64**    "While Iran insisted the five detained men held diplomatic immunity and demanded their release, the military held onto the five IRGC-QF operatives until May 2009. The Baghdad and Irbil raids came like a one-two punch, forcing the Iranians to reconsider the wisdom of putting their own people on the line in Iraq. According to one American military commander, with the Baghdad and Irbil raids the Iranians 'realized we were coming after them. The Iranians didn't like doing much dirty work or getting their hands dirty. A lot of them would prefer the Arabs to do the dying.'"[88] *Karcher,* Case No. 1:17-cv-00114-TJK, Dkt. 94 (Expert Report of Dr. Matthew Levitt).

> **3.65**    "To that end Tehran prioritized sending sophisticated weapons often manufactured in Iran—especially explosively formed penetrators (EFPs)—to militants in

---

[86]*See* James Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* THE N.Y. TIMES (Feb. 12, 2007), https://www.nytimes.com/2007/02/12/world/middleeast/12weapons.html
[87]Eli Lake, *U.S. Deadlocked on Whether to Free Iranian Terror Suspects* NEW YORK SUN (Jan. 19, 2007), https://www.nysun.com/foreign/us-deadlocked-on-whether-to-free-iranian-terror/47015/.
[88]MARK URBAN, TASK FORCE BLACK: THE EXPLOSIVE TRUE STORY OF THE SECRET SPECIAL FORCES WAR IN IRAQ 209 (2012).

Iraq." *Id.* An EFP (pictured in Figure 1 and Figure 2)[89] is a technologically advanced Improvised Explosive Device (IED) designed to destroy even the strongest military-grade Humvees. *See Karcher,* 396 F. Supp. 3d 12, 26-27 (D.D.C. 2019). In *Karcher,* this Court held that Iran provided EFPs to enemy forces in Baghdad during Operation Iraqi Freedom. *Id.* at 15. In turn, the EFPs were involved in six (6) terrorist attacks that tragically killed members of the U.S. Armed Forces. *Id.* at 15–25.

    **3.66** "A press briefing was prepared for Sunday, February 11, 2007, in Baghdad's Green Zone. Laid out on the table were EFP launchers and their shaped metal charges, mortar shells, rocket-propelled grenades, and the false identification cards found on two of the IRGC-QF officials captured in the Irbil raid a month earlier. According to U.S. officials, serial numbers on some of the grenades indicated they were manufactured in Iran in 2006."[90] *Karcher,* Case No. 1:17-cv-00114-TJK, Dkt. 94 (Expert Report of Dr. Matthew Levitt).

    **3.67** "The centerpiece of the weapons spread was the EFP, a deceptively simple-looking cylinder with a copper liner, launched with such force that it could penetrate the armor of a tank or up-armored Humvee. The briefing was more than just a show-and-tell, however. Though unable to share the intelligence underpinning the charge, the military and intelligence briefers insisted the IRGC-QF was responsible for the flow of arms to Shia militia groups. 'We have been able to determine that this material, especially on the EFP level, is coming from the IRGC-Qods Force,' the intelligence analyst stated. In reality, they report directly to the 'supreme leader,' a reference to Ayatollah Ali Khamenei.'"[91] *Id.*

---

[89]*See infra* pp. 38–39.
[90]Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites.*
[91]*Id.*

**3.68**    "In September 2007, U.S. forces in Iraqi Kurdistan arrested Mahmoud Farhadi, a 'very senior member of the Qods Force.' Posing as an Iranian trade representative, Farhadi's actual mission involved facilitating the transport of weapons into Iraq, according to a U.S. military spokesman. In particular he oversaw the smuggling of 'weapons, people and money' across the border from Iran."[92] *Id.*

**3.69**    "The capture of senior IRGC-QF officials, and the public airing of evidence demonstrating Iranian agents were arming and training Iraqi Shia extremists, embarrassed Tehran and appears to have accelerated Iran's efforts to put an Arab face on this mission. Using Hezbollah offered multiple advantages, not least the shared language of Hezbollah operatives and Iraqi militants, Arabic. Farsi-speaking Iranian trainers could not communicate with their trainees as effectively, aside from the perception by some Iraqis that their Iranian trainers were aloof and patronizing." *Id.*

**3.70**    "Hezbollah's use of Iranian-manufactured EFPs in Lebanon, before and during the July 2006 war, positioned Hezbollah operatives with in-the-field experience as ideal candidates to train Iraqi Shia in deploying this particular weapon.[93] A number of Iraqi Shia militants reportedly observed and trained alongside Hezbollah militants in Lebanon during the 2006 war, according to U.S. intelligence.[94] Having seen Hezbollah in action, they were well situated to seek training from their Lebanese compatriots in the use of EFPs and other weapons and tactics." *Id.*

---

[92] Press Briefing, Multi-National Force-Iraq (Oct. 3, 2007), *available at* https://www.globalsecurity.org/military/library/news/2007/10/mil-071003-mnfi-b01.htm.
[93] Kimberly Kagan, *Iran's Proxy War against the United States and the Iraqi Government*, THE INSTITUTE FOR THE STUDY OF WAR (May 2006 – Aug. 20, 2007), *available at* http://www.understandingwar.org/sites/default/files/reports/IraqReport06.pdf.
[94] Gordon and Filkins, *Hezbollah Said to Help Shiite Army in Iraq.*

3.71    "In early 2008, IRGC-QF General Qasem Soleimani sent General Petraeus, the commander of coalition forces in Iraq, a message making it clear that he (Soleimani) was point-man for Iranian policy and activities in Iraq. Conveyed by a senior Iraqi leader, the message arrived just as Iraqi and coalition forces initiated Operation Charge of the Knights, an effort targeting Iraqi Shia militias in Baghdad and Basra. The message itself read: 'Dear General Petraeus, you should know that I, Qassem Suleimani, control the policy for Iran with respect to Iraq, Lebanon, Gaza, and Afghanistan. And indeed, the ambassador in Baghdad is a Quds Force member. The individual who's going to replace him is a Quds Force member.'[95] The message should have come as no great surprise, coming from a man aggressive in the belief that "offense is the best defense."'[96] *Id*.



**Figure 1**[97]

[95]Dexter Filkins, *The Shadow Commander*, THE NEW YORKER (Sep. 23, 2013), https://www.newyorker.com/magazine/2013/09/30/the-shadow-commander

[96]Ali Alfoneh, *Iran's Most Dangerous General*, THE AMERICAN ENTERPRISE INSTITUTE FOR PUBLIC POLICY RESEARCH, (July 2011) *available at* https://www.aei.org/wp-content/uploads/2011/10/MEO-2011-07-No-4-g.pdf?x88519.

[97]*Karcher,* Case No. 1:16-cv-00232-CKK, Dkt. 84-4 at p.8 (Expert Report of Cpt. Donald Barker).



**Figure 2**[98]

## G.    Iran's Responsibility for the Terrorist Attacks at Issue

**3.72**    In sum, Dr. Levitt's professional opinion is "that the Iraqi Shia militias, including JAM, and so called Special Groups like AAH, Kata'ib Hezbollah and Promised Day brigades, were provided active guidance, training, intelligence support, and financial and material support by Iran through its IRGC and its proxy Lebanese Hezbollah." Accordingly, Levitt concludes that **"thousands of attacks on U.S. and coalition forces were launched between 2004 and 2011 by Iraqi Shia militias with the IRGC's and Lebanese Hezbollah's**

---

[98] *Id.* at p. 7.

**active logistical support**." *Karcher,* Case No. 1:17-cv-00114-TJK, Dkt. 94 (Expert Report of Dr. Matthew Levitt) (emphasis added).

3.73    Iran still presents a grave danger to U.S. service members in Iraq. For instance, according to a 2020 U.S. Department of State Report, Iran has "maintained decades-long relationships with a variety of Shia militant groups (SMGs), many of whom have deployed Iranian weapons against U.S. military personnel." U.S. DEPT. OF STATE, OUTLAW REGIME: A CHRONICLE OF IRAN'S DESTRUCTIVE ACTIVITIES (Sep. 19, 2020) at 12, https://www.state.gov/outlaw-regime-a-chronicle-of-irans-destructive-activities-2020/ (last visited Jan. 26, 2021). Many of these militant groups have deployed Iranian weapons against U.S. military personnel operating in Iraq, including multiple rocket attacks since 2019. *See id.* Thus, the Department of State determined that "Iran's support for Shia militants in Iraq remains the primary threat to US personnel there." *Id.* at 13.

3.74    Additionally, in April 2019, Brian Hook, Senior Advisor to the Secretary of State, offered the following statement: "In Iraq, I can announce today, based on declassified U.S. military reports, that Iran is responsible for the deaths of at least 608 American service members." Press Briefing, U.S. Dept. of State (Apr. 2, 2019), *available at* https://www.state.gov/briefings/department-press-briefing-april-2-2019/. This figure does not include the thousands of Iraqis killed by the IRGC's proxies.

3.75    Therefore, as seen herein, since the early 2000's the Islamic Republic of Iran has continued its practice of "providing funding, training, weapons, and equipment" to numerous terrorist groups operating in Iraq. *See* U.S. DEPT. OF STATE, OUTLAW REGIME: A CHRONICLE OF IRAN'S DESTRUCTIVE ACTIVITIES, at 11-12, 24. The goal of Iran's longstanding

effort is to instigate conflict in the Middle East and ultimately "assert itself as the region's dominant power and export its authorization system of government." *Id*. at 11.

**3.76**    For these reasons, Plaintiffs contend that Defendant Iran, by and through the active support of the IRGC, IRGC-QF, and/or Hezbollah, provided material support and resources to the enemy forces who committed the four nineteen (419) Terrorist Attacks at issue in this action.[99] Thus, Iran is liable for monetary damages proximately caused by the deaths and other personal injuries suffered by Plaintiffs as a result of these attacks. 28 U.S.C. § 1605A(c); *Karcher,* 396 F. Supp. 3d at 54.

## IV.
## THE KIA FAMILY-PLAINTIFFS

**4.1**    The following one hundred and twenty-two (122) Plaintiffs are immediate family members of former U.S. Armed Forces members and U.S. Government contractors who were tragically killed in action (KIA) in Iraq during Operation Iraqi Freedom. Because of their tragic loss, these Plaintiffs suffered monetary damages as described herein.

### 1.  The May 14, 2006 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Robert West Family

a.  Robert West was a citizen of the United States and was domiciled in the State of Virginia.

b.  Plaintiff Mary B Heaton is a citizen of the United States and is domiciled in the State of Ohio. She is the mother of Robert West.

c.  Plaintiff Lisa R Brooks is a citizen of the United States and is domiciled in the State of Texas. They are the sibling of Robert West.

---

[99]*See, e.g.*, *Cohen v. Islamic Republic of Iran*, 238 F. Supp. 3d 71, 80–81 (D.D.C. 2017) (concluding that "it is well established by courts in this district" that the IRGC is the functional equivalent of Iran and qualifies as a foreign state under the FSIA); *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 74 (D.D.C. 2010) (holding that Hezbollah acts at Iran's behest and is therefore an agent of Iran).

d.  Robert West enlisted in the United States Army and served as a Sergeant First Class in the 1st Battalion, 312th Regiment out of Fort Bragg, North Carolina. He was deployed to Baghdad, Iraq. On May 14, 2006, Mr. West was conducting combat operations in Baghdad in an up-armored Humvee traveling in a convoy. Suddenly, an EFP was fired toward the convoy. The EFP hit West's Humvee and penetrated the vehicle. As a result of the Terrorist Attack, West was KIA at the age of 37. West was posthumously awarded a Bronze Star and promoted to Master Sergeant. At the time of the tragic death, Robert West was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

e.  The May 14, 2006 Terrorist Attack committed against Robert West constitutes an act of extrajudicial killing. In a January 14, 2021 Memorandum Opinion, this Court specifically concluded that it "finds satisfactory evidence in the record to demonstrate that the explosive responsible for the May 14, 2006 attack causing the deaths of…SFC [Robert] West was an EFP traceable to Iran and its proxies." *Karcher,* Case No. 1:16-cv-00232-CKK, Dkt. 124 at pp. 44–46 (Kollar-Kotelly, J.) (D.D.C. 2021). Thus, upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  Mary B Heaton and Lisa R Brooks bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Robert West.

## 2.  The August 1, 2003 Terrorist Attack - Kirkuk, Iraq
### Plaintiff: Justin Hebert Family

a.  Justin Hebert was a citizen of the United States and was domiciled in the State of Washington.

b.  Plaintiff Robin Hebert is a citizen of the United States and is domiciled in the State of Washington. She is the mother of Justin Hebert.

c.  Plaintiff William Hebert is a citizen of the United States and is domiciled in the State of Washington. He is the father of Justin Hebert.

d.  Justin Herbert enlisted in the United States Army and served in the 319th Field Artillery, 173rd Airborne Brigade. He was deployed to Kirkuk, Iraq. On August 1, 2003, Herbert was driving a vehicle on night patrol when enemy insurgents fired a Rocket Propelled Grenade (RPG) directly toward him. The RPG struck Herbert's vehicle and caused Herbert to sustain fatal injuries. As a result of this Terrorist Attack, Herbert was tragically KIA at the age of 20. At the time of the tragic death, Justin Hebert was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

e.  The August 1, 2003 Terrorist Attack committed against Justin Hebert constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[100]

f.  Robin Hebert and William Hebert bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Justin Hebert.

### 3.  The October 23, 2003 Terrorist Attack – Baqubah, Iraq
### Plaintiff: John Teal Family

a.  John Teal was a citizen of the United States and was domiciled in the State of Virginia.

b.  Plaintiff Elizabeth Kormanyos is a citizen of the United States and is domiciled in the State of Virginia. She is the sister of John Teal, deceased, and the Executor of the Estate of John Teal.

c.  Captain John Teal served in the Army in the 2nd Brigade, 4th Infantry Division, out of Fort Hood, Texas. He was deployed to Iraq. On October 23, 2003, Teal was tragically KIA when an IED exploded near his convoy in Baqubah. At the time of the tragic death, John Teal was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d.  The October 23, 2003 Terrorist Attack committed against John Teal constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  Elizabeth Kormanyos brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of John Teal.

f.  Elizabeth Kormayos also brings this action as the Executor of the Estate of John Teal. As such, Elizabeth Kormayos seeks survival damages for John Teal's pre-death pain & mental anguish

---

[100] *See* Edward T. Pound and Jennifer Jack, *Special Report: The Iran Connection*, U.S. NEWS & WORLD REPORT, Nov. 22, 2004 (2003 U.S. and Israeli intelligence reports concluded that Hezbollah was training the Mahdi Army, an Iraqi militant group, at Iran's request and providing them weapons like RPGs).

under Texas law.[101] *See* Tex. Civ. Prac. & Rem. Code Ann. § 71.021(b); Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: General Negligence and Intentional Personal Torts*: PJC 30.3 (2018). Furthermore, Elizabeth Kormayos seeks the following wrongful death economic damages under Texas law: pecuniary loss sustained in the past and future and loss of inheritance.[102] *Id.* § 71.004; PJC 29.3.

### 4.  The February 8, 2004 Terrorist Attack - Mahmudiyah, Iraq
### Plaintiff: Richard Ramey Family

a.  Richard Ramey was a citizen of the United States and was domiciled in the State of Ohio.

b.  Plaintiff Julia Ramey is a citizen of the United States and is domiciled in the State of Ohio. She is the mother of Richard Ramey.

c.  Plaintiff Jerry Ramey is a citizen of the United States and is domiciled in the State of Ohio. He is the father of Richard Ramey.

d.  Plaintiff Sarah Beverlin is a citizen of the United States and is domiciled in the State of Ohio. She is the sister of Richard Ramey.

e.  Richard Ramey enlisted in the United States Army and served as a Staff Sergeant in the 703rd Ordinance Company out of Fort Knox, Kentucky. Ramey was deployed to Mahmudiyah, Iraq. During his deployment, Ramey became an Explosive Ordinance Disposal (EOD) team leader. Accordingly, Ramey's duties include safely disarming IEDs. On February 8, 2004, Mr. Ramey attempted to disable such a device hidden in the roadside. However, the IED tragically exploded and instantly killed him. As a result of this Terrorist Attack, Ramey was killed in action (KIA) at the age of 27. At the time of the tragic death, Richard Ramey was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

f.  The February 8, 2004 Terrorist Attack committed against Richard Ramey constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

---

[101]In an FSIA action involving a deceased terrorist victim, the law of the state where the Estate is created governs the recovery of survival and wrongful death damages. *See Taylor v. Islamic Republic of Iran*, 811 F.Supp.2d 1, 12–13 (D.D.C. 2011).
[102]*Id.*

g.  Julia Ramey, Jerry Ramey, and Sarah Beverlin bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Richard Ramey.

h.  Jerry Ramey also brings this action as the Personal Representative of the Estate of Richard Ramey. As such, Jerry Ramey seeks survival damages for Richard Ramey's pre-death pain & suffering under Ohio law.[103] *See* Ohio Rev.Code Ann. § 2305.21; *Shinaver v. Szymanski*, 14 Ohio St.3d 51, 55, 471 N.E.2d 477 (1984). Furthermore, Jerry Ramey seeks the following wrongful death economic damages under Ohio law: past and future loss of support, past and future loss of services, and loss of prospective inheritance.[104] *See* §§ R.C. 2125.01; 2125.02.

### 5.  The March 31, 2004 Terrorist Attack - Habbaniyah, Iraq
### Plaintiff: Brandon Lee Davis Family

a.  Brandon Lee Davis was a citizen of the United States and was domiciled in the State of Maryland.

b.  Plaintiff Jackie Liller is a citizen of the United States and is domiciled in the State of Maryland. She is the mother of Brandon Lee Davis.

c.  Brandon L. Davis enlisted in the United States Army and served as a Private in the B Company, 1st Engineer Battalion out of Fort Riley, Kansas. Mr. Davis was deployed to Habbaniyah, Iraq. On March 31, 2004, Davis was traveling in an armored personnel carrier when an IED suddenly denoted. The ensuing explosion hit Davis' vehicle and caused him and five other soldiers to sustain fatal injuries. Davis was KIA at the age of 20. At the time of the tragic death, Brandon Lee Davis was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d.  The March 31, 2004 Terrorist Attack committed against Brandon Lee Davis constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  Jackie Liller brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Brandon Lee Davis.

---

[103]*See Taylor,* 811 F.Supp.2d at 12–13 (state law governs the recovery of wrongful death and survival damages).
[104]*Id.*

### 6.  The April 11, 2004 Terrorist Attack - Samarra, Iraq
### Plaintiff: Nathan Patrick Brown Family

a.  Nathan Patrick Brown was a citizen of the United States and was domiciled in the State of New York.

b.  Plaintiff Kathy Brown is a citizen of the United States and is domiciled in the State of New York. She is the mother of Nathan Patrick Brown.

c.  Plaintiff Ricky Brown is a citizen of the United States and is domiciled in the State of New York. He is the father of Nathan Patrick Brown.

d.  Plaintiff Megan Brown is a citizen of the United States and is domiciled in the State of New York. She is the sister of Nathan Patrick Brown.

e.  Plaintiff Victoria Brown is a citizen of the United States and is domiciled in the State of New York. She is the sister of Nathan Patrick Brown.

f.  Plaintiff Christopher Brown is a citizen of the United States and is domiciled in the State of North Carolina. He is the brother of Nathan Patrick Brown.

g.  Nathan P. Brown enlisted in the United States Army National Guard and served as a Private First Class in the 2nd Battalion, 108th Infantry out of New York. He was deployed to Samarra, Iraq. On Easter Sunday, April 11, 2004, Mr. Brown was traveling in an unarmored Humvee when an IED suddenly exploded near the vehicle. Immediately thereafter, enemy insurgents hiding in a building fired a RPG. The RPG hit Brown's Humvee. As a result of the terrorist attack, Brown sustained fatal injuries and was KIA. Following his tragic death, Nathan P. Brown posthumously received a Bronze Star, a Purple Heart, and the New York State Medal of Valor. According to Brown's mother, after returning from Iraq, he planned to get married and enroll in community college. At the time of his death, Brown was 21 years old. At the time of the tragic death, Nathan Patrick Brown was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

h.  The April 11, 2004 Terrorist Attack committed against Nathan Patrick Brown constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[105]

---

[105] *See* Pound and Jack, *Special Report: The Iran Connection* (2003 U.S. and Israeli intelligence reports concluded that Hezbollah was training the Mahdi Army, an Iraqi militant group, at Iran's request and providing them weapons like RPGs).

i.  Kathy Brown, Ricky Brown, Megan Brown, Victoria Brown, and Christopher Brown bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Nathan Patrick Brown.

## 7.  The May 21, 2004 Terrorist Attack – Baghdad, Iraq
### Plaintiff: Jeremy Horton Family

a.  Jeremy Horton was a citizen of the United States and was domiciled in the State of Pennsylvania.

b.  Plaintiff Gretchen Miller is a citizen of the United States and is domiciled in the State of Pennsylvania. She is the mother of Jeremy Horton.

c.  Jeremy R. Horton was in the United States Army as a Staff Sergeant, a part of the 2nd Battalion, 6th Infantry Regiment, 1st Armored Division. He deployed to Iskandariyah, Iraq. On May 21, 2004, Mr. Horton dismounted his vehicle in Baghdad when a roadside IED detonated. As a result, Mr. Horton was tragically KIA. At the time of the tragic death, Jeremy Horton was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d.  The May 21, 2004 Terrorist Attack committed against Jeremy Horton constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  Gretchen Miller brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Jeremy Horton.

## 8.  The August 30, 2004 Terrorist Attack - Khutayiah, Iraq
### Plaintiff: Aaron N. Holleyman Family

a.  Aaron N. Holleyman was a citizen of the United States and was domiciled in the State of North Carolina.

b.  Plaintiff Glenda Holleyman is a citizen of the United States and is domiciled in the State of North Carolina. She is the mother of Aaron N. Holleyman.

c.  Plaintiff Ross Holleyman is a citizen of the United States and is domiciled in the State of North Carolina. He is the father of Aaron N. Holleyman.

d.  Aaron Holleyman was a staff sergeant in the United States Army. He deployed to Khutayiah, Iraq. On August 30, 2004, Mr. Holleyman was traveling through Iraq, in the last vehicle of his convoy. His vehicle was hit with an IED killing him and injuing three other passengers. At the time of the tragic death, Aaron N. Holleyman was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

e.  The August 30, 2004 Terrorist Attack committed against Aaron N. Holleyman constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  Glenda Holleyman and Ross Holleyman bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Aaron N. Holleyman.

### 9.  The October 30, 2004 Terrorist Attack - Zaidan, Iraq
### Plaintiff: Christopher Lapka Family

a.  Christopher Lapka was a citizen of the United States and was domiciled in the State of Arizona.

b.  Plaintiff Christina Lapka is a citizen of the United States and is domiciled in the State of Arizona. She is the mother of Christopher Lapka.

c.  Plaintiff Kenneth Lapka is a citizen of the United States and is domiciled in the State of Arizona. He is the father of Christopher Lapka.

d.  Plaintiff Michelle Lapka is a citizen of the United States and is domiciled in the State of Arizona. She is the sister of Christopher Lapka.

e.  Christopher J. Lapka enlisted in the United States Marines and served as a Corporal in the 1st Battalion, 3rd Marine Regiment out of Hawaii. Lapka was deployed to Baghdad, Iraq. Just two weeks after being deployed, enemy insurgents launched an attack against an Arab television bureau on October 30, 2004. At this time, Lapka was defending the bureau. During the attack, the insurgents sent a Vehicle Borne Improvised Explosive Device (VBIED) toward Lapka. Tragically, the car bomb exploded killing Lapka and seven nearby American Marines. Lapka was KIA at the age of 22. The 1920 Brigades, a militant group, published a statement claiming responsibility for the attack. Prior to joining the Marines, Lapka was an honors student studying civil engineering at Arizona State University. However, the events of September 11, 2011 inspired Lapka to forgo his engineering aspirations and serve his country. At the time of

the tragic death, Christopher Lapka was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

f.  The October 30, 2004 Terrorist Attack committed against Christopher Lapka constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  Christina Lapka, Kenneth Lapka, and Michelle Lapka bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Christopher Lapka.

## 10. The November 11, 2004 Terrorist Attack - Fallujah, Iraq
### Plaintiff: William C. Lensing Family

a.  William C. Lensing was a citizen of the United States and was domiciled in the State of Louisiana.

b.  Plaintiff William S. Lensing is a citizen of the United States and is domiciled in the State of Louisiana. He is the father of William C. Lensing.

c.  William C. Lensing was a Corporal in the United States Marine Corps and was deployed to Fallujah Iraq. On November 11, 2004, while clearing the road in Fallujah, an IED suddenly exploded near Lensing. Lensing survived the attack and received a Purple Heart. However, as a result of this experience, Lensing developed severe Post-Traumatic Stress Disorder (PTSD). To cope with this condition, Lensing developed a drug addiction when he returned to civilian life back home in Louisiana. Tragically, because of this addiction, Lensing died on May 11, 2011 following a drug overdose. At the time of the tragic death, William C. Lensing was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d.  The November 11, 2004 Terrorist Attack committed against William C. Lensing constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  William S. Lensing brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of William C. Lensing.

## 11. <u>The April 3, 2005 Terrorist Attack – Bay Ji, Iraq</u>
### Plaintiff: James Sherrill Family

a.  James Sherrill was a citizen of the United States and was domiciled in the State of Kentucky.

b.  Plaintiff William Sherrill is a citizen of the United States and is domiciled in the State of Kentucky. They are the sibling of James Sherrill.

c.  Sergeant James Sherill served in the Kentucky National Guard and was deployed to Iraq. Sherill was assigned to the 2113th Transportation Company. On April 3, 2005, around 19:57, an IED detonated near Sherrill's military vehicle in Bay Ji, Iraq. As a result of the explosion, Sherill was tragically KIA at the age of 27. At the time of the tragic death, James Sherrill was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d.  The April 3, 2005 Terrorist Attack committed against James Sherrill constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  William Sherrill brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of James Sherrill.

## 12. <u>The April 21, 2005 Terrorist Attack - Ramadi, Iraq</u>
### Plaintiff: Curtis Lee Hundley Family

a.  Curtis Lee Hundley was a citizen of the United States and was domiciled in the State of North Carolina.

b.  Plaintiff Lisa Hundley is a citizen of the United States and is domiciled in the State of North Carolina. She is the wife of Curtis Lee Hundley, deceased, and the Personal Representative of the Estate of Curtis Lee Hundley.

c.  Curtis Lee Hundley, a former Army Veteran, became a Private Contractor for Blackwater Security and served during Operation Iraqi Freedom. He was deployed to Ramadi, Iraq. On April 21, 2005, Mr. Hundley's vehicle ran over an IED. The ensuing explosion sent shrapnel directly toward Hundley resulting in fatal wounds. Hundley was KIA at the age of 42 and is survived by his wife, son, brother, and uncle. At the time of the tragic death, Curtis Lee Hundley was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d. The April 21, 2005 Terrorist Attack committed against Curtis Lee Hundley constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. Lisa Hundley brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Curtis Lee Hundley.

f. Lisa Hundley also brings this action as Personal Representative of the Estate of Curtis Lee Hundley. As such, Lisa Hundley seeks survival damages for Curtis Hundley's pre-death emotional and mental anguish. *See Taylor*, 811 F.Supp. 2d at 12-13 (holding that such damages were recoverable under N.C. Gen.Stat. § 28A–18–1).[106] Furthermore, Lisa Hundley seeks the following wrongful death economic damages under North Carolina law: loss of net income in the past and future and loss of services rendered in the past and future.[107] *See* N.C. Gen.Stat. § 28A–18–2.

## 13. The July 16, 2005 Terrorist Attack - Kirkuk, Iraq
### Plaintiff: Ronald Wood Family

a. Ronald Wood was a citizen of the United States and was domiciled in the State of Utah.

b. Plaintiff Jo Ann Wood is a citizen of the United States and is domiciled in the State of Utah. She is the mother of Ronald Wood.

c. Plaintiff Allen Wood is a citizen of the United States and is domiciled in the State of Utah. He is the father of Ronald Wood.

d. Plaintiff Nathan Wood is a citizen of the United States and is domiciled in the State of Utah. He is the brother of Ronald Wood.

e. Plaintiff Julie Wood is a citizen of the United States and is domiciled in the State of Colorado. She is the sister of Ronald Wood.

f. Plaintiff John Wood is a citizen of the United States and is domiciled in the State of Colorado. He is the brother of Ronald Wood.

---

[106]"North Carolina law provides that '[u]pon the death of any person, all demands whatsoever, and rights to prosecute or defend any action ... existing in favor of or against such person ... shall survive to and against the personal representative ... of his Estate.'" *Taylor,* 811 F.Supp.2d at 13.
[107]*See id.* at 12–13 (state law governs the recovery of wrongful death and survival damages).

g.  Plaintiff Cody Wood is a citizen of the United States and is domiciled in the State of Georgia. He is the brother of Ronald Wood.

h.  Ronald Wood was in the United States Army as a sergeant first class, part of the 148th Field Artillery out of Utah. He deployed to Kirkuk, Iraq and served during Operation Iraqi Freedom. On July 1, 2005, Mr. Wood's Humvee was struck by an IED. This attack resulted in the death of Sergeant 1st Class Ronald Wood. At the time of the tragic death, Ronald Wood was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

i.  The July 16, 2005 Terrorist Attack committed against Ronald Wood constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

j.  Jo Ann Wood, Allen Wood, Nathan Wood, Julie Wood, John Wood, and Cody Wood bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Ronald Wood.

## 14. The October 1, 2005 Terrorist Attack - Bayji, Iraq
### Plaintiff: Joshua Kynoch Family

a.  Joshua Kynoch was a citizen of the United States and was domiciled in the State of Arizona.

b.  Plaintiff Sarah Kynoch, Individually and as Next Friend of S.K., a minor, is a citizen of the United States and is domiciled in the State of California. She is the wife of Joshua Kynoch.

c.  S.K. is a citizen of the United States and is domiciled in the State of California. She is the minor daughter of Joshua Kynoch.

d.  Plaintiff Linda Kynoch is a citizen of the United States and is domiciled in the State of Arizona. She is the mother of Joshua Kynoch.

e.  Plaintiff Michelle Sunke is a citizen of the United States and is domiciled in the State of California. She is the sister of Joshua Kynoch.

f.  Plaintiff Amy Kynoch is a citizen of the United States and is domiciled in the State of New York. She is the sister of Joshua Kynoch.

g. Joshua J. Kynoch was a specialist in the United States Army. He deployed to Bayji, Iraq. On October 1, 2005, Mr. Kynoch was traveling in Bayji in a M2A2 Bradley fighting vehicle when an IED detonated, impacting his vehicle. As a result, Joshua Kynoch was tragically KIA. At the time of the tragic death, Joshua Kynoch was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

h. The October 1, 2005 Terrorist Attack committed against Joshua Kynoch constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

i. Sarah Kynoch, Individually and as Next Friend of S.K., a minor, Linda Kynoch, Michelle Sunke, and Amy Kynoch bring this action and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Joshua Kynoch.

### 15. The February 9, 2006 Terrorist Attack - Fallujah, Iraq
### Plaintiff: Ross Andrew Smith Family

a. Ross Andrew Smith was a citizen of the United States and was domiciled in the State of Michigan.

b. Plaintiff Susan K. Smith is a citizen of the United States and is domiciled in the State of South Carolina. She is the mother of Ross Andrew Smith.

c. Plaintiff Mark A. Smith is a citizen of the United States and is domiciled in the State of South Carolina. He is the father of Ross Andrew Smith.

d. Plaintiff Lucas Smith is a citizen of the United States and is domiciled in the State of Michigan. He is the brother of Ross Andrew Smith.

e. Plaintiff Matthew Smith is a citizen of the United States and is domiciled in the State of Michigan. He is the brother of Ross Andrew Smith.

f. Ross Smith enlisted in the United States Marine Corps and served as a Corporal in the 3rd Battalion, 5th Marine Regiment out of Camp Pendleton, California. Smith was deployed to Fallujah, Iraq. On February 9, 2006, an IED detonated near Smith while he was conducting combat operations. As a result of this Terrorist Attack, Smith sustained fatal injuries and was tragically KIA at the age of 21. At the time of the tragic death, Ross Andrew Smith was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

g. The February 9, 2006 Terrorist Attack committed against Ross Andrew Smith constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

h. Susan K. Smith, Mark A. Smith, Lucas Smith, and Matthew Smith bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Ross Andrew Smith.

## 16. The February 22, 2006 Terrorist Attack - Al Hawija, Iraq
### Plaintiff: Allan Andrew Morr Family

a. Allan Andrew Morr was a citizen of the United States and was domiciled in the State of Michigan.

b. Plaintiff Mary Morr is a citizen of the United States and is domiciled in the State of Michigan. She is the mother of Allan Andrew Morr.

c. Plaintiff Timothy J. Morr is a citizen of the United States and is domiciled in the State of Michigan. He is the father of Allan Andrew Morr.

d. Plaintiff Heather Rinks is a citizen of the United States and is domiciled in the State of Michigan. She is the sister of Allan Andrew Morr.

e. Plaintiff Bryan Morr is a citizen of the United States and is domiciled in the State of Wyoming. He is the brother of Allan Andrew Morr.

f. Plaintiff Shane Morr is a citizen of the United States and is domiciled in the State of Indiana. He is the brother of Allan Andrew Morr.

g. Allan Andrew Morr enlisted in the Unites States Army and served as a Private First Class in the C Company, 1st Battalion out of Fort Campbell, Kentucky. He was deployed to Al Hawija, Iraq. On February 22, 2006 Moor was conducting patrol operations when an IED detonated near his Humvee. The ensuing explosion killed Morr in action at the age of 21. As a result of his heroic sacrifice, Moor posthumously received a Purple Heart and Bronze Star. At the time of the tragic death, Allan Andrew Morr was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

h. The February 22, 2006 Terrorist Attack committed against Allan Andrew Morr constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who

committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

i.  Mary Morr, Timothy J. Morr, Heather Rinks, Bryan Morr, and Shane Morr bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Allan Andrew Morr.

## 17. The April 8, 2006 Terrorist Attack - Rawah, Iraq
### Plaintiff: Shawn Creighton Family

a.  Shawn Creighton was a citizen of the United States and was domiciled in the State of North Carolina.

b.  Plaintiff Donna Ward is a citizen of the United States and is domiciled in the State of North Carolina. She is the mother of Shawn Creighton.

c.  Shawn Ross Creighton enlisted in the United States Army and served as a Specialist in the 4th Squadron, 14th Calvary Regiment out of Fort Wainwright, Alaska. Creighton was deployed to Rawah, Iraq. On April 8, 2006, Mr. Creighton was on patrol operations in Rawah when an IED suddenly detonated. The ensuing blast struck Creighton's Stryker vehicle and caused him to sustain fatal injuries. As a result of this Terrorist Attack, Mr. Creighton was KIA at the age of 21. At the time of the tragic death, Shawn Creighton was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d.  The April 8, 2006 Terrorist Attack committed against Shawn Creighton constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  Donna Ward brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Shawn Creighton.

## 18. The April 22, 2006 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Kyle Colnot Family

a.  Kyle Colnot was a citizen of the United States and was domiciled in the State of California.

b.  Plaintiff Jack Colnot is a citizen of the United States and is domiciled in the State of Texas. He is the father of Kyle Colnot.

c.  Plaintiff Kelly Luisi is a citizen of the United States and is domiciled in the State of California. She is the sister of Kyle Colnot.

d.  Kyle Colnot enlisted in the United States Army and served as a Sergeant in the 67th Armored Battalion, 2nd Brigade Combat Team out of Fort Hood, Texas. Colton was deployed to Baghdad, Iraq. On April 22, 2006, an IED detonated near Colnot's Humvee and caused the vehicle to catch fire. Tragically, Colnot sustained fatal injuries as a result of this Terrorist Attack. Colnot was KIA at the age of 23 and is survived by his wife and parents. Colnot was a natural military leader who served as both a squad leader and truck commander during his deployment. Furthermore, Colnot was a decorated soldier and received awards such as the Bronze Star, Purple Heart, and Good Conduct Medal. At the time of the tragic death, Kyle Colnot was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

e.  The April 22, 2006 Terrorist Attack committed against Kyle Colnot constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  Jack Colnot and Kelly Luisi bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Kyle Colnot.

### 19. The May 1, 2006 Terrorist Attack - Anbar Province, Iraq
### Plaintiff: Robert Louis Moscillo Family

a.  Robert Louis Moscillo was a citizen of the United States and was domiciled in the State of Massachusetts.

b.  Plaintiff Frank Moscillo is a citizen of the United States and is domiciled in the State of Massachusetts. He is the father of Robert Louis Moscillo.

c.  Plaintiff Jenny M Criscuolo is a citizen of the United States and is domiciled in the State of New Hampshire. They are the sibling of Robert Louis Moscillo.

d.  Mr. Robert Louis Moscillo enlisted in the United States Marine Corps and served as a Lance Corporal in the 1st Combat Engineer Battalion, 1st Marine Division out of Camp Pendleton, California. He was deployed to the Anbar Province in Iraq. On May 1, 2006, Mr. Moscillo was conducting combat operations against enemy forces when a roadside IED struck his Humvee. The ensuing blast caused Moscillo to sustain fatal injuries. As a result of his heroic sacrifice, Moscillo posthumously received presidential recognition from George W. Bush. Moscillo was

tragically KIA at the age of 21. At the time of the tragic death, Robert Louis Moscillo was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

e.  The May 1, 2006 Terrorist Attack committed against Robert Louis Moscillo constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  Frank Moscillo and Jenny M Criscuolo bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Robert Louis Moscillo.

### 20. The May 23, 2006 Terrorist Attack – Al Karmah, Iraq
### Plaintiff: Robert Posivio Family

a.  Robert Posivio was a citizen of the United States and was domiciled in the State of Minnesota.

b.  Plaintiff Robert M. Posivio is a citizen of the United States and is domiciled in the State of Minnesota. He is the father of Robert Posivio.

c.  Robert G. Posivio III enlisted in the United States Marine Corps and served as a Lance Corporal in the 1st Battalion, 1st Marine Regiment out of Camp Pendleton, California. He was deployed to Karmah, Iraq. On May 23, 2006, Mr. Posivio was the passenger in a high mobility multipurpose vehicle conducting operations against enemy forces in Al Karmah. Suddenly, Posivio's vehicle was struck by a roadside IED. As a result of this Terrorist Attack, Posivio sustained fatal injuries and was KIA at the age of 22. At the time of the tragic death, Robert Posivio was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d.  The May 23, 2006 Terrorist Attack committed against Robert Posivio constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  Robert M. Posivio brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Robert Posivio.

### 21. The June 17, 2006 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Reyes Ramirez Family

a.  Reyes Ramirez was a citizen of the United States and was domiciled in the State of Texas.

b.  Plaintiff Maria Ramirez is a citizen of the United States and is domiciled in the State of Texas. She is the mother of Reyes Ramirez.

c.  Plaintiff Julia Ramirez-Arreguin is a citizen of the United States and is domiciled in the State of Texas. She is the sister of Reyes Ramirez.

d.  Reyes Ramirez enlisted in the United States Army and served as Sergeant in the 40th Engineer Battalion out of Baumholder, Germany. Ramirez was deployed to Ramadi, Iraq. On June 17 2006, Mr. Ramirez was conducting combat operations in Al Ramadi when an IED suddenly detonated near his Humvee. As a result of this Terrorist Attack, Ramirez sustained fatal injuries and was KIA at the age of 23. At the time of the tragic death, Reyes Ramirez was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

e.  The June 17, 2006 Terrorist Attack committed against Reyes Ramirez constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  Maria Ramirez and Julia Ramirez-Arreguin bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Reyes Ramirez.

### 22. The July 8, 2006 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Troy Linden Family

a.  Troy Linden was a citizen of the United States and was domiciled in the State of North Dakota.

b.  Plaintiff Ryan Linden is a citizen of the United States and is domiciled in the State of North Dakota. He is the brother of Troy Linden.

c.  Troy Linden enlisted in the United States Army and served as a Corporal in the 54th Engineer Battalion, 130th Engineer Brigade out of Bamberg, Germany. He was deployed to Ramadi, Iraq. On July 8, 2006, an IED detonated near Linden's mine protected vehicle during combat operations in Al Ramadi. As a result of this Terrorist Attack, Mr. Linden and four other soldiers sustained fatal injuries. Linden was KIA at the age of 22. At the time of the tragic death, Troy

Linden was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d.  The July 8, 2006 Terrorist Attack committed against Troy Linden constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  Ryan Linden brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Troy Linden.

## 23. <u>The July 8, 2006 Terrorist Attack - Ramadi, Iraq</u>
### Plaintiff: Joseph Paul Micks Family

a.  Joseph Paul Micks was a citizen of the United States and was domiciled in the State of Michigan.

b.  Plaintiff Amy Micks is a citizen of the United States and is domiciled in the State of Michigan. She is the mother of Joseph Paul Micks.

c.  Plaintiff Ken Micks is a citizen of the United States and is domiciled in the State of Michigan. He is the father of Joseph Paul Micks.

d.  Joseph Paul Micks was in the United States Army, part of 54th Engineer Battalion, 130th Engineer Brigade out of Bamberg, Germany. He was deployed to Ramadi, Iraq. While serving during Operation Iraqi Freedom, an IED detonated near his vehicle. As a result, Mr. Micks was KIA. At the time of the tragic death, Joseph Paul Micks was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

e.  The July 8, 2006 Terrorist Attack committed against Joseph Paul Micks constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  Amy Micks and Ken Micks bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Joseph Paul Micks.

## 24. The August 27, 2006 Terrorist Attack - Taji, Iraq
### Plaintiff: Moises Jazmin Family

a.  Moises Jazmin was a citizen of the United States and was domiciled in the State of North Carolina.

b.  Plaintiff Rosa Jazmin is a citizen of the United States and is domiciled in the State of Rhode Island. She is the mother of Moises Jazmin.

c.  Plaintiff Basilio Eusebio is a citizen of the United States and is domiciled in the State of North Carolina. He is the brother of Moises Jazmin.

d.  Moies Jazmin was a sergeant in the United States Army. On August 27, 2006, an IED detonated near his M2A3 Bradley vehicle during combat operations in Taji, Iraq. As a result, Mosies was tragically KIA. At the time of the tragic death, Moises Jazmin was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

e.  The August 27, 2006 Terrorist Attack committed against Moises Jazmin constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  Rosa Jazmin and Basilio Eusebio bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Moises Jazmin.

## 25. The October 15, 2006 Terrorist Attack - Fallujah, Iraq
### Plaintiff: Brock A. Babb Family

a.  Brock A. Babb was a citizen of the United States and was domiciled in the State of Indiana.

b.  Plaintiff Barbara Babb is a citizen of the United States and is domiciled in the State of Indiana. She is the wife of Brock A. Babb.

c.  Plaintiff Levi Babb is a citizen of the United States and is domiciled in the State of Indiana. He is the son of Brock A. Babb.

d.  Plaintiff Tanner Babb is a citizen of the United States and is domiciled in the State of Indiana. He is the son of Brock A. Babb.

e.  Plaintiff Zoie Babb is a citizen of the United States and is domiciled in the State of Tennessee. She is the daughter of Brock A. Babb.

f.  Plaintiff Terry Babb is a citizen of the United States and is domiciled in the State of Indiana. He is the father of Brock A. Babb.

g.  Plaintiff Nicole Kessler is a citizen of the United States and is domiciled in the State of Ohio. She is the sister of Brock A. Babb.

h.  Brock Babb was a sergeant in the United States Marine Corps and served in the 3rd Battalion, 24th Marines out of Terre Haute, Indiana. He deployed to Fallujah, Iraq.  On October 15, 2006, Babb was conducting combat operations against enemy forces.  Specifically, Babb was acting as the A-drive of a M114 Humvee. Suddenly, an IED exploded and hit Babb's Humvee. As a result of this terrorist attack, Babb was tragically KIA. At the time of the tragic death, Brock A. Babb was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

i.  The October 15, 2006 Terrorist Attack committed against Brock A. Babb constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

j.  Barbara Babb, Levi Babb, Tanner Babb, Zoie Babb, Terry Babb, and Nicole Kessler bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Brock A. Babb.

## 26. The October 21, 2006 Terrorist Attack - Bayji, Iraq
### Plaintiff: Tony L. Knier Family

a.  Tony L. Knier was a citizen of the United States and was domiciled in the State of Tennessee.

b.  Plaintiff Betty J Knier-Tidwell is a citizen of the United States and is domiciled in the State of Tennessee. She is the mother of Tony L. Knier.

c.  Plaintiff Richard Knier is a citizen of the United States and is domiciled in the State of Tennessee. He is the brother of Tony L. Knier.

d.  Tony L. Knier enlisted in the United States Army and served as an Army Sergeant First Class in the 82nd Airborne Division. He was deployed to FOB Summerall in Bayji, Iraq. On October 21, 2006, Mr. Knier was acting as the head commanding officer during a mission in Bayji. Knier's vehicle turned off the road and suddenly struck a nearby IED. As a result of the ensuing

explosion, Knier tragically sustained fatal injuries and was KIA at the age of 31. During his decorated military career, Knier's held every position as an anti-tank crew member and received numerous awards including the Bronze Star Medal and Purple Heart. At the time of the tragic death, Tony L. Knier was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

e.  The October 21, 2006 Terrorist Attack committed against Tony L. Knier constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  Betty J Knier-Tidwell and Richard Knier bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Tony L. Knier.

## 27. The November 9, 2006 Terrorist Attack - Al Assad, Iraq
### Plaintiff: Kevin Daniel Ash Family

a.  Kevin Daniel Ash was a citizen of the United States and was domiciled in the State of Minnesota.

b.  Plaintiff Joy Kieffer is a citizen of the United States and is domiciled in the State of Minnesota. She is the mother of Kevin Daniel Ash.

c.  Plaintiff Erica Gibson is a citizen of the United States and is domiciled in the State of Kentucky. She is the sister of Kevin Daniel Ash.

d.  Plaintiff Connor Martin is a citizen of the United States and is domiciled in the State of Wisconsin. He is the brother of Kevin Daniel Ash.

e.  Kevin Daniel Ash was in the United States Army as a Sergeant apart of the First Combined Arms Battalion, 194th Armor Regiment, B Company out of St Paul, Minnesota. He was deployed to Iraq in October 2003, October 2005, and May 2011. During his deployments, Ash experienced multiple IED attacks. Specifically, Ash was exposed to approximately 12 IED blasts, all within 30 feet and often when he was in a military vehicle. For example, on November 9, 2006, Ash experienced a "blast wave" IED attack in Al Assad, Iraq. He survived the terrorist attack and received a Combat Infantry Badge.

Because of his substantial IED blast exposure, Ash sustained significant long-term brain injuries. On January 15, 2017, Ash ultimately passed away as a result of complications

associated with these injuries. At the time of his tragic death, Kevin Daniel Ash was a United States citizen under 28 U.S.C § 1605A(c).

f.   The November 9, 2006 Terrorist Attack committed against Kevin Daniel Ash constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed the November 9, 2006 attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack. Furthermore, approximately ten (10) years after the November 9, 2006 Terrorist Attack, the goal of killing a U.S. armed forces member was ultimately successful.

g.   Joy Kieffer, Erica Gibson, and Connor Martin bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Kevin Daniel Ash.

## 28. The December 11, 2006 Terrorist Attack - Al Khalidiyah, Iraq
### Plaintiff: Matthew Dillon Family

a.   Matthew Dillon was a citizen of the United States and was domiciled in the State of South Carolina.

b.   Plaintiff Lucy Dillon is a citizen of the United States and is domiciled in the State of South Carolina. She is the mother of Matthew Dillon.

c.   Plaintiff Berkley N Dillon is a citizen of the United States and is domiciled in the State of South Carolina. He is the father of Matthew Dillon.

d.   Plaintiff Robert N Dillon is a citizen of the United States and is domiciled in the State of South Carolina. He is the brother of Matthew Dillon.

e.   Plaintiff Michael D Dillon is a citizen of the United States and is domiciled in the State of South Carolina. He is the brother of Matthew Dillon.

f.   Matthew Dillon enlisted in the United States Marine Corps and served as a Corporal in the Marine Wing Support Group 37 out of San Diego, California. Before joining the Marines, Dillon previously served in Iraq as a combat engineer for the National Guard. In 2006, Dillon served in Iraq for the second time and was deployed to Al Khalidiyah in the Al Anbar Province. On December 11, 2006, Mr. Dillon was the turret gunner in an armored M1114 Humvee conducting combat operations in Al Khalidiyah. Suddenly, Dillon's Humvee was struck by an IED. The ensuing blast penetrated the Humvee's armor and caused Dillon to sustain fatal injuries. As a result of this Terrorist Attack, Dillon was KIA at the age of 25. Before his tragic death, Dillon was honored that his next assignment was to serve in President George W. Bush's

security team and was excited to return closer to home. At the time of the tragic death, Matthew Dillon was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

g.  The December 11, 2006 Terrorist Attack committed against Matthew Dillon constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

h.  Lucy Dillon, Berkley N Dillon, Robert N Dillon, and Michael D Dillon bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Matthew Dillon.

### 29. The December 24, 2006 Terrorist Attack – Albu Hayatt, Iraq
### Plaintiff: Stephen Morris Family

a.  Stephen Morris was a citizen of the United States and was domiciled in the State of Texas.

b.  Plaintiff Lloyd Morris is a citizen of the United States and is domiciled in the State of Texas. He is the father of Stephen Morris.

c.  Stephen Morris served as a Lieutenant Corporal in the United States Marines Corp and was assigned to the 3rd Marine Division out of MCBH Kaneohe Bay, Hawaii. Morris was deployed to Iraq. On December 24, 2006, Morris was conducting combat operations in Albu Hayatt, Iraq and was driving a M114 Humvee. During this operation, Morris ran over an IED and the ensuing penetrated the vehicle and struck him. As a result, Morris was tragically KIA. At the time of the tragic death, Stephen Morris was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d.  The December 24, 2006 Terrorist Attack committed against Stephen Morris constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  Lloyd Morris brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Stephen Morris.

65

### 30. The January 20, 2007 Terrorist Attack – Bayji, Iraq
### Plaintiff: Jonathan Kingman Family

a.  Jonathan Kingman was a citizen of the United States and was domiciled in the State of Ohio.

b.  Plaintiff Margaret Shepherd is a citizen of the United States and is domiciled in the State of Ohio. She is the mother of Jonathan Kingman.

c.  Plaintiff Elizabeth Hale is a citizen of the United States and is domiciled in the State of Ohio. She is the sister of Jonathan Kingman.

d.  Sgt. Jonathan PC Kingman served in the Army and was assigned to the 41st Engineer Company, 1st Engineer Battalion, out of Fort Riley Kansas. He was deployed to Iraq. On January 20, 2007, Kingman was tragically KIA when an IED exploded near his vehicle in Bayji. At the time of the tragic death, Jonathan Kingman was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

e.  The January 20, 2007 Terrorist Attack committed against Jonathan Kingman constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  Margaret Shepherd and Elizabeth Hale bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Jonathan Kingman.

### 31. The February 7, 2007 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Manuel Antonio Ruiz Family

a.  Manuel Antonio Ruiz was a citizen of the United States and was domiciled in the State of Maryland.

b.  Plaintiff Lisa Ruiz is a citizen of the United States and is domiciled in the State of Maryland. She is the mother of Manuel Ruiz, deceased, and Personal Representative of the Estate of Manuel Antonio Ruiz.

c.  Plaintiff Manuel Ruiz is a citizen of the United States and is domiciled in the State of Maryland. He is the father of Manuel Antonio Ruiz.

d.  Plaintiff Joshua Ruiz is a citizen of the United States and is domiciled in the State of Maryland. He is the brother of Manuel Antonio Ruiz.

e.  Plaintiff Jacobo Ruiz is a citizen of the United States and is domiciled in the State of Maryland. He is the brother of Manuel Antonio Ruiz.

f.  Manuel Antonio Ruiz enlisted in the United States Navy and served as a medical corpsman in the 2nd Medical Battalion, 2nd Marine Logistics Group out of Camp Lejeune, North Carolina. Ruiz was deployed to Karmah, Iraq, the second deployment in his military career. On February 7, 2007, Mr. Ruiz was tragically involved in a helicopter crash northwest of Baghdad. Specifically, an al-Qaeda-linked terrorist group successfully fired anti-aircraft munitions at Ruiz's helicopter and disabled the aircraft. Afterwards, the terrorist group aired a video claiming responsibility for the attack. All seven soldiers on board, including Ruiz, sustained fatal injuries as a result of this Terrorist Attack. Ruiz was KIA at the age of 21. As a result of his heroic sacrifice, Ruiz posthumously received the Navy Achievement Medal, the Humanitarian Service Medal, and a Purple Heart. At the time of the tragic death, Manuel Antonio Ruiz was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

g.  The February 7, 2007 Terrorist Attack committed against Manuel Antonio Ruiz constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[108]

h.  Lisa Ruiz, Manuel Ruiz, Joshua Ruiz, and Jacobo Ruiz bring this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Manuel Antonio Ruiz.

i.  Lisa Ruiz also brings this action as the Personal Representative of the Estate of Manuel Ruiz. As such, Lisa Ruiz seeks survival damages for Manuel Ruiz's pre-death pain & suffering under Maryland law.[109] *See* Md. Code (2006, 2013 Repl. Vol.), § 7-401; *Jones v. Flood,* 118 Md. App. 217, 223 (1997). Furthermore, Lisa Ruiz seeks the following wrongful death economic damages under Maryland law: past and future loss of earnings and support.[110] *See* Md. Code

---

[108] *See The Situation in Iraq and Progress by the Government of Iraq in Meeting Benchmarks and Achieving Reconciliation: Hearing before the Comm. on Armed Services*, 110th Cong., 2d sess., (April 8-10, 2008) (General Petraeus concluding that it is certainly fair to conclude that Iranian-backed Special Groups in Iraq were responsible for killing hundreds of American soldiers).

[109] *See Taylor,* 811 F.Supp.2d at 12–13 (state law governs the recovery of wrongful death and survival damages).

[110] *Id.*

(2006, 2013 Repl. Vol.), § 11-109, *Sprangler v. McQuitty*, 449 Md. 33, 53, 141 A.3d 156 (2016).

### 32. The February 8, 2007 Terrorist Attack - Karmah, Iraq
### Plaintiff: Ross Aaron Clevenger Family

a. Ross Aaron Clevenger was a citizen of the United States and was domiciled in the State of Washington.

b. Plaintiff Loren Clevenger is a citizen of the United States and is domiciled in the State of Washington. He is the father of Ross Aaron Clevenger.

c. Ross Clevenger was in the United States Army Reserves as a Sergeant; part of the 321st Engineer Battalion out of Boise, Idaho. He was deployed to Iraq. While on combat patrol in Karmah, an IED detonated near Mr. Clevenger's vehicle. As a result, Ross Clevenger was tragically KIA. At the time of the tragic death, Ross Aaron Clevenger was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d. The February 8, 2007 Terrorist Attack committed against Ross Aaron Clevenger constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. Loren Clevenger brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Ross Aaron Clevenger.

### 33. The March 17, 2007 Terrorist Attack - Baqubah, Iraq
### Plaintiff: Benjamin L. Sebban Family

a. Benjamin L. Sebban was a citizen of the United States and was domiciled in the State of Pennsylvania.

b. Plaintiff David Sebban is a citizen of the United States and is domiciled in the State of Pennsylvania. David Sebban is the brother of Benjamin L. Sebban.

c. Benjamin L. Sebban was a Sergeant First Class in the United States Army, part of the 82nd Airborne Division out of Fort Bragg, North Carolina. On March 17, 2007, Sebban was at his combat outpost in Baqubah, Iraq when a vehicle containing IEDs approached. He immediately warned other soldiers of the incoming threat. However, the VBIED detonated and the ensuing blast tragically killed Benjamin Sebban in action. Sebban's heroic warning saved at least 86

lives. At the time of the tragic death, Benjamin L. Sebban was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d.  The March 17, 2007 Terrorist Attack committed against Benjamin L. Sebban constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  David Sebban brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Benjamin L. Sebban.

### 34. The April 9, 2007 Terrorist Attack – Baghdad, Iraq
### Plaintiff: Ryan Dallam Family

a.  Ryan Dallam was a citizen of the United States and was domiciled in the State of Arizona.

b.  Plaintiff Laura Dallam is a citizen of the United States and is domiciled in the State of Arizona. She is the mother of Ryan Dallam.

c.  Spc. Ryan Dallas served in the HHC 1st Batallion, 18th Infantry Regiment,  2nd Brigade Combat Team, out of Schweinfurt, Germany. April 9, 2007, Dallas was conducting combat operations in Baghdad when an IED exploded near his vehicle. As a result of the blast, Dallas tragically was KIA. At the time of the tragic death, Ryan Dallam was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d.  The April 9, 2007 Terrorist Attack committed against Ryan Dallam constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  Laura Dallam brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Ryan Dallam.

### 35. The April 18, 2007 Terrorist Attack – Taji, Iraq
### Plaintiff: Wade Oglesby Family

a.  Wade Oglesby was a citizen of the United States and was domiciled in the State of Colorado.

b.  Plaintiff Samantha Rollins is a citizen of the United States and is domiciled in the State of Colorado. She is the sister of Wade Oglesby.

c.  Plaintiff Richard Oglesby is a citizen of the United States and is domiciled in the State of Colorado. He is the brother of Wade Oglesby.

d.  Wade Oglesby served in the United States Army in the 1st Battalion, 37th Field Artillery Regiment, 3d Brigade, 2nd Infantry Division, out of Fort Lewis, Washington. On April 18, 2007, Oglesby was performing combat operations in Taji when an IED exploded near his vehicle. As a result, Oglesby as tragically KIA. At the time of the tragic death, Wade Oglesby was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

e.  The April 18, 2007 Terrorist Attack committed against Wade Oglesby constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  Samantha Rollins and Richard Oglesby bring this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Wade Oglesby.

### 36. The May 3, 2007 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Jerome Potter Family

a.  Jerome Potter was a citizen of the United States and was domiciled in the State of Washington.

b.  Plaintiff Brad Lee Jones is a citizen of the United States and is domiciled in the State of Washington. He is the father of Jerome Potter.

c.  Jerome J. Potter enlisted in the United States Army and served as a Private First Class in the 1st Battalion, 8th Calvary Division Regiment out of Fort Hood, Texas. Potter was deployed to Baghdad, Iraq. On May 3, 2007, Mr. Potter was tragically KIA when a roadside IED denoted near his vehicle. Potter was 24 years old at the time of his death. At the time of the tragic death, Jerome Potter was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d.  The May 3, 2007 Terrorist Attack committed against Jerome Potter constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. Brad Lee Jones brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Jerome Potter.

### 37. <u>The June 19, 2007 Terrorist Attack - Bagubah, Iraq</u>
### Plaintiff: Darryl W. Linder Family

a. Darryl W. Linder was a citizen of the United States and was domiciled in the State of North Carolina.

b. Plaintiff Daryl L Linder is a citizen of the United States and is domiciled in the State of North Carolina. He is the father of Darryl W. Linder.

c. Darryl W. Linder served in the United States Army in the 1st Battalion, 12th Calvary Regiment, 3rd Brigade Combat Team, 1st Calvary Division out of Fort Hood, Texas. He was deployed to Iraq. On June 19, 2007, Linder was involved in a roadside IED attack in Baqubah, Iraq. As a result of this attack, Linder was tragically KIA. At the time of the tragic death, Darryl W. Linder was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d. The June 19, 2007 Terrorist Attack committed against Darryl W. Linder constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. Daryl L Linder brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Darryl W. Linder.

### 38. <u>The June 20, 2007 Terrorist Attack - Baghdad, Iraq</u>
### Plaintiff: Darren Hubbell Family

a. Darren Hubbell was a citizen of the United States and was domiciled in the State of Florida.

b. Plaintiff Gary Hubbell is a citizen of the United States and is domiciled in the State of Florida. He is the father of Darren Hubbell.

c. Army Staff Sgt. Darren P. Hubbell served in the U.S. Army and was assigned to the 1st Battalion, 64th Armor Regiment, 2nd Brigade Combat Team, 3rd Infantry Division out of Fort Stewart, GA. On June 20, 2007, Hubbell's vehicle was hit by an IED while traveling in

Baghdad. As a result of the attack, Hubbell was tragically KIA at the age of 38. Three (3) of Hubbell's fellow soldiers; Maj. Sid Brookshire, Pfc. David Bentz III, and Spc. Joe G. Charafaurous were also KIA. At the time of the tragic death, Darren Hubbell was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d.  The June 20, 2007 Terrorist Attack committed against Darren Hubbell constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  Gary Hubbell brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Darren Hubbell.

## 39. The June 23, 2007 Terrorist Attack – Hor al Bosh, Iraq
### Plaintiff: Joel House Family

a.  Joel House was a citizen of the United States and was domiciled in the State of Maine.

b.  Plaintiff Deanna House is a citizen of the United States and is domiciled in the State of Maine. She is the mother of Joel House.

c.  Joel A. House was a sergeant in the United States Army assigned to the 2nd Battalion, 8th Cavalry Regiment, 1st Brigade Combat Team, 1st Cavalry Division, out of Fort Hood, Texas. He deployed to Camp Taji, Iraq. On June 23, 2007, around 14:12 hours, Mr. House traveled in a mounted patrol convoy from OP DEMON in Hor al Bosh. House was traveling in the second vehicle in the convoy, a M1114 Humvee, to return barriers onto the road that were intended to serve as a blocking obstacle south of Hor al Bosh. Several soldiers in the convoy dismounted from their vehicles to begin clearing the barriers. At this point, an IED suddenly struck Sergeant House's vehicle. Thereafter, Sergeant House suffered severe head and lower body injuries and became trapped under the vehicle's turret. Tragically, after his fellow soldiers pulled him away from the turret, Sergeant House died as a result of these injuries. He was KIA at the age of 22. At the time of the tragic death, Joel House was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d.  The June 23, 2007 Terrorist Attack committed against Joel House constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  Deanna House brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Joel House.

### 40. The June 24, 2007 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Thomas Leemhuis Family

a.  Thomas Leemhuis was a citizen of the United States and was domiciled in the State of Oklahoma.

b.  Plaintiff Patricia Leemhuis is a citizen of the United States and is domiciled in the State of Oklahoma. She is the mother of Thomas Leemhuis.

c.  Thomas R. Leemhuis was a private first class in the United States Army as part of the 1st Battalion, 26th Infantry Regiment, 2nd Brigade Combat Team, 1st Infantry Division out of Schweinfurt, Germany. On June 21, 2007 Leemhuis was in a convoy travelling in Baghdad, Iraq when an IED detonated near his vehicle. Thomas R. Leemhuis was killed during the Terrorist Attack. Sgt. Alphonso J. Montenegro II, Sgt. Ryan M. Wood, Pfc. Daniel J. Agami and Pfc. Anthony D. Hebert were also tragically killed in this attack. At the time of the tragic death, Thomas Leemhuis was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d.  The June 24, 2007 Terrorist Attack committed against Thomas Leemhuis constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  Patricia Leemhuis brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Thomas Leemhuis.

### 41. The August 4, 2007 Terrorist Attack - Hawr Rajab, Iraq
### Plaintiff: Jaron Holliday Family

a.  Jaron Holliday was a citizen of the United States and was domiciled in the State of Oklahoma.

b.  Plaintiff Kelly Holliday, Individually and as Next Friend of JU.H. and JA.H., minors, is a citizen of the United States and is domiciled in the State of Oklahoma. She is the mother of Jaron Holliday.

c.  Plaintiff John Holliday Jr. is a citizen of the United States and is domiciled in the State of Oklahoma. He is the father of Jaron Holliday.

d.  Plaintiff Jeremiah Holliday is a citizen of the United States and is domiciled in the State of Oklahoma. He is the brother of Jaron Holliday.

e.  Plaintiff John Holliday III is a citizen of the United States and is domiciled in the State of Oklahoma. He is the brother of Jaron Holliday.

f.  Plaintiff Joshua Holliday is a citizen of the United States and is domiciled in the State of Oklahoma. He is the brother of Jaron Holliday.

g.  Plaintiff Jada Holliday is a citizen of the United States and is domiciled in the State of Oklahoma. She is the sister of Jaron Holliday.

h.  Plaintiff Josiah Holliday is a citizen of the United States and is domiciled in the State of Oklahoma. He is the brother of Jaron Holliday.

i.  JU.H. and JA.H., minors, are citizens of the United States and are domiciled in the State of Oklahoma. They are the brothers of Jaron Holliday and the sons of Plaintiff Kelly Holliday.

j.  Jaron Holliday was a corporal in the United States Army, part of the 4th Brigade Combat Team out of Fort Richardson, Alaska. He deployed to Iraq and served during Operation Iraqi Freedom. On August 4, 2007, Holliday was performing combat operations when the vehicle in which he was traveling struck an IED. Tragically, Jaron Holliday was KIA as a result of this attack. At the time of the tragic death, Jaron Holliday was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

k.  The August 4, 2007 Terrorist Attack committed against Jaron Holliday constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

l.  Kelly Holliday, Individually and as Next Friend of JU.H. and JA.H., minors, John Holliday Jr., Jeremiah Holliday, John Holliday III, Joshua Holliday, Jada Holliday, and Josiah Holliday bring this action and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Jaron Holliday.

### 42. <u>The September 19, 2007 Terrorist Attack - Baghdad, Iraq</u>
### Plaintiff: Christian M. Neff Family

a. Christian M. Neff was a citizen of the United States and was domiciled in the State of Ohio.

b. Plaintiff Nancy Neff is a citizen of the United States and is domiciled in the State of Ohio. She is the mother of Christian M. Neff.

c. Plaintiff William Neff is a citizen of the United States and is domiciled in the State of Ohio. He is the father of Christian M. Neff.

d. Plaintiff Shannon Neff is a citizen of the United States and is domiciled in the State of Ohio. She is the sister of Christian M. Neff.

e. Christian M. Neff, a specialist in the United States Army a part of the 1st Battalion, 64th Armor Regiment, 2nd Brigade Combat Team, out of Fort Stewart, Georgia. On September 19, 2007, around 6:10 AM, Neff was patrolling in the Muhallas of Khadra Baghdad. He was the driver of an M1A1 Tank when an IED made of approximately 20-30 pounds of MHE struck the front corner of the M1A1. As a result of the ensuing blast, Neff was tragically KIA and was awarded a posthumous Purple Heart. At the time of the tragic death, Christian M. Neff was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

f. The September 19, 2007 Terrorist Attack committed against Christian M. Neff constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g. Nancy Neff, William Neff, and Shannon Neff bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Christian M. Neff.

### 43. <u>The October 24, 2007 Terrorist Attack –Bayji, Iraq</u>
### Plaintiff: Robin Towns Family

a. Robin Towns was a citizen of the United States and was domiciled in the State of Maryland.

b. Plaintiff Shelia Towns is a citizen of the United States and is domiciled in the State of Maryland. She is the wife of Robin Towns, deceased, and is the Personal Representative of the Estate of Robin Towns.

c. Plaintiff Robin L Towns is a citizen of the United States and is domiciled in the State of Florida. He is the son of Robin Towns.

d. Plaintiff Leslie A Towns is a citizen of the United States and is domiciled in the State of Alabama. She is the daughter of Robin Towns.

e. Plaintiff Carita K Towns is a citizen of the United States and is domiciled in the State of Florida. She is the daughter of Robin Towns.

f. Plaintiff Rheavan N Towns is a citizen of the United States and is domiciled in the State of Texas. She is the daughter of Robin Towns.

g. Sergeant First Class Robin Towns served in the United States Army National Guard and was assigned to the 275th Military Police Company, 372nd Military Police Battalion, out of Washington, D.C. He was deployed to Bayji, Iraq. On October 24, 2007, Towns was involved in a combat operation in Bayji when an IED exploded near his Humvee. As a result of the ensuing explosion, Towns was tragically KIA. At the time of the tragic death, Robin Towns was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

h. The October 24, 2007 Terrorist Attack committed against Robin Towns constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

i. Shelia Towns, Robin L Towns, Leslie A Towns, Carita K Towns, and Rheavan N Towns bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Robin Towns.

j. Sheila Towns also brings this action as the Personal Representative of the Estate of Robin Towns. As such, Sheila Towns seeks survival damages for Robin Town's pre-death pain & suffering under Maryland law.[111] *See* Md. Code § 7-401; *Jones,* 118 Md. App. at 223. Furthermore, Sheila Towns seeks the following wrongful death economic damages under Maryland law: past and future loss of earnings and support.[112] *See* Md. Code § 11-109, *Sprangler.* 449 Md. at 53.

---

[111] *See Taylor,* 811 F.Supp.2d at 12–13 (state law governs the recovery of wrongful death and survival damages).
[112] *Id.*

## 44. <u>The March 11, 2008 Terrorist Attack - Kishkishkia, Iraq</u>
### Plaintiff: Laurent J. West Family

a. Laurent J. West was a citizen of the United States and was domiciled in the State of West Virginia.

b. Plaintiff Laurie West is a citizen of the United States and is domiciled in the State of West Virginia. She is the mother of Laurent J. West.

c. Laurent J. West was a staff sergeant in the United States Army, a part of the 1st Brigade Combat Team, 82nd Airborne Division out of Fort Bragg, North Carolina. West was deployed to Iraq. On March 11, 2008, the vehicle in which West was traveling hit an IED near Kishkishkia, Iraq. As a result, Laurent J. West was tragically KIA at the age of 32. At the time of the tragic death, Laurent J. West was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d. The March 11, 2008 Terrorist Attack committed against Laurent J. West constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. Laurie West brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Laurent J. West.

## 45. <u>The March 22, 2008 Terrorist Attack – Baghdad, Iraq</u>
### Plaintiff: David Stelmat Jr. Family

a. David Stelmat Jr. was a citizen of the United States and was domiciled in the State of Ohio.

b. Plaintiff Dave Stelmat is a citizen of the United States and is domiciled in the State of Ohio. He is the father of David Stelmat Jr.

c. Plaintiff Rebecca McCraw is a citizen of the United States and is domiciled in the State of California. She is the sister of David Stelmat Jr.

d. Plaintiff Carisa R Girdwood is a citizen of the United States and is domiciled in the State of Vermont. She is the sister of David Stelmat Jr.

e. Spc. David S. Stelmat served in the North Carolina Army National Guard in the 1132nd Military Police (MP) Company. He was deployed to Iraq. On March 22, 2008, Stelmat was

tragically KIA when his vehicle encountered an IED in Baghdad. Two of his fellow soldiers, Sgt. Thomas Ray II and Sgt David B Williams, were also KIA. At the time of the tragic death, David Stelmat Jr. was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

f.  The March 22, 2008 Terrorist Attack committed against David Stelmat Jr. constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  Dave Stelmat, Rebecca McCraw, and Carisa R Girdwood bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of David Stelmat Jr.

## 46. The April 7, 2008 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Timothy Michael Smith Family

a.  Timothy Michael Smith was a citizen of the United States and was domiciled in the State of California.

b.  Plaintiff Patricia Smith is a citizen of the United States and is domiciled in the State of California. She is the mother of Timothy Michael Smith.

c.  Plaintiff Thomas Smith is a citizen of the United States and is domiciled in the State of California. He is the brother of Timothy Michael Smith.

d.  Timothy M. Smith was a sergeant in the United States Army and was deployed to Baghdad, Iraq. On April 7, 2008, Smith was a part of a convoy that provided route clearance escorting the 2/30th DCLP to JSS Obeidy. Smith was traveling in Baghdad in a Husky vehicle mounted with a mine detection system. Suddenly, his vehicle was hit by an EFP strike from the right side of the road, followed by a RPG attack. As a result, Mr. Smith was stuck inside of the vehicle and was tragically KIA. At the time of the tragic death, Timothy Michael Smith was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

e.  The April 7, 2008 Terrorist Attack committed against Timothy Michael Smith constitutes an act of extrajudicial killing. In a January 14, 2021 Memorandum Opinion, this Court specifically concluded that it "finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 7, 2008 attack causing the deaths of Sgt. [Timothy] Smith was an EFP traceable to Iran and its proxies." *Karcher,* Case No. 1:16-cv-00232-CKK, Dkt. 124 at pp. 115–117 (Kollar-Kotelly, J.) (D.D.C. 2021). Thus, upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy

forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  Patricia Smith and Thomas Smith bring this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Timothy Michael Smith.

## 47. The June 24, 2008 Terrorist Attack - Mosul, Iraq
### Plaintiff: Joel Allen Taylor Family

a.  Joel Allen Taylor was a citizen of the United States and was domiciled in the State of North Carolina.

b.  Plaintiff Caren Newman is a citizen of the United States and is domiciled in the State of North Carolina. She is the mother of Joel Allen Taylor.

c.  Plaintiff Scottie Taylor is a citizen of the United States and is domiciled in the State of North Carolina. He is the father of Joel Allen Taylor.

d.  Joel Allen Taylor was a specialist in the United States Army. He deployed to Mosul, Iraq. On the night of June 24, 2008, while on a mission in Mosul, Taylor was traveling in a Humvee when an IED detonated. As a result of the ensuing explosion, Taylor was tragically KIA along with two other soldiers, Pfc. James Yohn and Sgt. Alejandro Dominguez. At the time of the tragic death, Joel Allen Taylor was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

e.  The June 24, 2008 Terrorist Attack committed against Joel Allen Taylor constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  Caren Newman and Scottie Taylor bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Joel Allen Taylor.

## 48. The July 15, 2008 Terrorist Attack - Kan'an, Iraq
### Plaintiff: Jeremy Vrooman Family

a.  Jeremy Vrooman was a citizen of the United States and was domiciled in the State of Wyoming.

b.  Plaintiff Lori Donahue is a citizen of the United States and is domiciled in the State of Wyoming. She is the mother of Jeremy Vrooman.

c.  Jeremy D. Vrooman was an Army Staff Sergeant in the United States Army as part of the 2nd Squadron, 2nd Stryker Cavalry Regiment, 2nd Stryker Brigade Combat Team, 1st Armored Division out of Vilseck, German. On July 15, 2008, his unit was conducting combat operations in Kn'an, Iraq when an IED detonated near his vehicle. As a result, Vrooman was medevacked to Baghdad to receive emergency medical attention but was unable to survive. Vrooman was tragically KIA and was awarded a posthumous Purple Heart. At the time of the tragic death, Jeremy Vrooman was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d.  The July 15, 2008 Terrorist Attack committed against Jeremy Vrooman constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  Lori Donahue brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Jeremy Vrooman.

## 49. The January 5, 2010 Terrorist Attack - Balad, Iraq
### Plaintiff: David Andrew Croft Jr. Family

a.  David Andrew Croft Jr. was a citizen of the United States and was domiciled in the State of Florida.

b.  Plaintiff Victoria Croft is a citizen of the United States and is domiciled in the State of Florida. She is the mother of David Andrew Croft Jr.

c.  Plaintiff Robin Messer is a citizen of the United States and is domiciled in the State of Florida. She is the sister of David Andrew Croft Jr.

d.  Plaintiff Tyler A Croft is a citizen of the United States and is domiciled in the State of Florida. He is the brother of David Andrew Croft Jr.

e.  Plaintiff Melodie Hanson is a citizen of the United States and is domiciled in the State of Florida. She is the sister of David Andrew Croft Jr.

f.  Plaintiff Andrea L Whatley is a citizen of the United States and is domiciled in the State of Florida. She is the sister of David Andrew Croft Jr.

g.  David Andrew Croft, Jr. enlisted in the United States Army and served in the 1st Squadron, 7th Calvary Regiment out of Fort Hood, Texas. He deployed to Balad, Iraq during Operation Iraqi Freedom. On January 5, 2010, Mr. Croft was supporting combat operations in Balad when a roadside IED suddenly exploded. Croft sustained fatal injuries as a result of the Terrorist Attack and was tragically KIA. Croft was posthumously promoted to Sergeant and was awarded a Purple Heart and Bronze Star. At the time of the tragic death, David Andrew Croft Jr. was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

h.  The January 5, 2010 Terrorist Attack committed against David Andrew Croft Jr. constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents,  provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

i.  Victoria Croft, Robin Messer, Tyler A Croft, Melodie Hanson, and Andrea L Whatley bring this action individually and seek solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of David Andrew Croft Jr.

## 50. The May 22, 2011 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Ramon Mora Jr. Family

a.  Ramon Mora, Jr. was a citizen of the United States and was domiciled in the State of California.

b.  Plaintiff Ramon Mora, Sr. is a citizen of the United States and is domiciled in the State of California. He is the father of Ramon Mora, Jr.

c.  Plaintiff Maria T. Mora is a citizen of the United States and is domiciled in the State of California. She is the grandmother and formal legal guardian of Ramon Mora, Jr.

d.  Plaintiff Baltazar Mora is a citizen of the United States and is domiciled in the State of California. He is the grandfather and formal legal guardian of Ramon Mora, Jr.

e.  Ramon Mora, Jr. was a private first class in the United States Army, part of the 2nd Brigade Combat Team. On May 22, 2011, Mora Jr's unit was attacked in Baghdad with an IED. As a result of this Terrorist Attack, Ramon Mora, Jr. was tragically KIA. At the time of the tragic death, Ramon Mora Jr. was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

f.  The May 22, 2011 Terrorist Attack committed against Ramon Mora Jr. constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees,

and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  Ramon Mora, Sr., Maria T. Mora, and Baltazar Mora bring this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Ramon Mora Jr.

### 51. The January 31, 2004 Terrorist Attack - Kirkuk, Iraq
### Plaintiff: Holly Jeanne McGeogh Family

a.  Holly Jeanne McGeogh was a citizen of the United States and was domiciled in the State of Michigan.

b.  Plaintiff Paula McGeogh is a citizen of the United States and is domiciled in the State of Michigan. She is the mother of Holly Jeanne McGeogh.

c.  Holly Jeanne McGeogh enlisted in the United States Army and served as a Private First Class in Company A, 4th Support Battalion out of Fort Hood, Texas. Ms. McGeogh was deployed to Kirkuk, Iraq. On January 31, 2004, McGeogh was 27 miles south of Kirkuk when her vehicle was suddenly struck by a roadside IED. The ensuing explosion caused McGeogh and two (2) other soldiers, Sgt. Eliu Miersandoval and Juan Banuelos, to sustain fatal injuries. McGeogh was KIA at the age of 19. At the time of the tragic death, Holly Jeanne Mcgeogh was a United States citizen and a member of the armed forces under 28 U.S.C § 1605A(c).

d.  The January 31, 2004 Terrorist Attack committed against Holly Jeanne Mcgeogh constitutes an act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  Paula McGeogh brings this action individually and seeks solatium damages for severe mental anguish, bereavement, grief, and loss of society and comfort suffered as a result of the untimely death of Holly Jeanne McGeogh.

## V.
## THE SURVIVING PLAINTIFFS

**5.1**    The following seven hundred fifty (750) Plaintiffs are former U.S. Armed Forces members, former U.S. Government contractors, and certain members of their immediate family.

As detailed below, the former Armed Forces members and former Government contractors were

82

involved in specific Terrorist Attacks in Iraq during Operation Iraqi Freedom. Because of personal injuries suffered in these attacks, the Surviving-Plaintiffs suffered monetary damages as described herein.

### 1.   The May 16, 2006 Terrorist Attack - Al Kifl, Iraq
#### Plaintiff: Joshua Mattson Family

a.   Plaintiff Joshua Mattson, Individually and as Next Friend of J.M., is a citizen of the United States and is domiciled in the State of Texas.

b.   J.G. is a United States citizen domiciled in the State of Texas. He is the minor son of Joshua Mattson.

c.   Joshua Mattson was a Sergeant in the United States Army. He deployed to Baghdad, Iraq. On May 16, 2006, Mr. Mattson was the driver of an up-armored Palletized Load System vehicle in a convoy of fourteen other vehicles travelling in Al Kifl. The convoy was traveling at 23:35 near ASR Latina when an EFP suddenly detonated near Mattson's vehicle. The EFP traveled at an angle and exploded beneath the passenger's seat. The ensuing shrapnel penetrated the vehicle and directly struck Mattson. Mattson survived the terrorist attack and received a Purple Heart.

d.   The May 16, 2006 Terrorist Attack against Joshua Mattson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[113]

e.   As a result of the May 16, 2006 Terrorist Attack, Joshua Mattson sustained significant injuries, including shrapnel wounds to his legs and eye, a fractured patella requiring surgery, a concussion, a TBI, PTSD, and post-traumatic arthritis in his left knee causing chronic pain.

f.   Because of these injuries, Joshua Mattson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, J.G. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Joshua Mattson on May 16, 2006.

---

[113] *See, e.g.*, *Karcher v. Islamic Republic of Iran*, 396 F. Supp. 3d 12, 15–25, 33 (D.D.C. 2019) (concluding that there is sufficient evidence that Iran, through the IRGC and IRGC-QF provided EFPs to enemy forces in Iraq who used these weapons against the U.S. Armed Forces members).

## 2. The June 6, 2004 Terrorist Attack - Taji, Iraq
### Plaintiff: Johnnie Shull Family

a. Plaintiff Johnnie Shull is a citizen of the United States and is domiciled in the State of Texas.

b. Plaintiff Rebecca Shull is a citizen of the United States and is domiciled in the State of Texas. She is the wife of Johnnie Shull.

c. Plaintiff Breeon A. Shull is a citizen of the United States and is domiciled in the State of Texas. He is the son of Johnnie Shull.

d. Plaintiff Brandon J. Shull is a citizen of the United States and is domiciled in the State of Texas. He is the son of Johnnie Shull.

e. Plaintiff Sheila Ann Shull is a citizen of the United States and is domiciled in the State of Illinois. She is the mother of Johnnie Shull.

f. Plaintiff Jason Bland is a citizen of the United States and is domiciled in the State of Texas. Jason Bland is the sibling of Johnnie Shull.

g. Johnnie Shull was a Sergeant First Class in the United States Army assigned to the 27th Military Support Battalion, 1st Cavalry out of Fort Hood, Texas. He deployed to Taji, Iraq. On June 6, 2004, while at Camp Cooke in Taji, Mr. Shull was approximately 30 feet from the Castle Gate when a suicide bomber detonated a VBIED. Shull survived the terrorist attack but received numerous injuries, including breaking both his legs.

h. The June 6, 2004 Terrorist Attack against Johnnie Shull constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

i. As a result of the June 6, 2004 Terrorist Attack, Johnnie Shull sustained significant injuries, including two broken legs resulting in several surgeries, shrapnel wounds to the face, arms, and skull, Post-Traumatic Stress Disorder, shrapnel wounds to the left elbow resulting in 7 surgeries, Tinnitus, and a TBI.

j. Because of these injuries, Johnnie Shull is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Rebecca Shull, Breeon A Shull, Brandon J Shull, Sheila Ann Shull, and Jason Bland incurred solatium

damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Johnnie Shull on June 6, 2004.

### 3.  The January 18, 2007 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Brad Salisbury Family

a.  Plaintiff Brad Salisbury, Individually and as Next Friend of M.S., a minor, is a citizen of the United States and is domiciled in the State of Texas.

b.  M.S. is a United States citizen domiciled in the State of Texas. She is the minor daughter of Brad Salisbury.

c.  Plaintiff Deidre Salisbury is a citizen of the United States and is domiciled in the State of Texas. She is the wife of Brad Salisbury.

d.  Plaintiff Robin Bogacz is a citizen of the United States and is domiciled in the State of Texas. She is the mother of Brad Salisbury.

e.  Plaintiff Amy Crandel is a citizen of the United States and is domiciled in the State of Texas. Amy Crandel is the sibling of Brad Salisbury.

f.  Salisbury enlisted in the United States Army and served as a Sergeant in the 25th Cavalry Division out of Fort Hood, Texas. Salisbury was deployed to Baghdad, Iraq. On January 18, 2007, Salisbury was on a mission in Baghdad to transport personnel and was traveling in the rear passenger seat of this vehicle. Suddenly, an EFP hit the right side of the vehicle and penetrated the armor. Salisbury survived the terrorist attack and was awarded a Combat Infantryman Badge. However, one of Salisbury's fellow soldiers, Spc. William J. Rechenmacher, was tragically KIA as a result of the EFP attack.

g.  The January 18, 2007 Terrorist Attack against Brad Salisbury constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[114]

h.  As a result of the January 18, 2007 Terrorist Attack, Brad Salisbury sustained significant injuries, including loss of consciousness, skin burns, shrapnel wounds to his leg, a burnt esophagus and lungs, PTSD, migraines, and a TBI.

---

[114] *See, e.g.*, *Karcher,* 396 F. Supp. 3d at 15–25, 33 (concluding that there is sufficient evidence that Iran, through the IRGC and IRGC-QF provided EFPs to enemy forces in Iraq who used these weapons against the U.S. Armed Forces members).

i.  Because of these injuries, Brad Salisbury is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Deidre Salisbury, M.S., Robin Bogacz and Amy Crandel incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Brad Salisbury on January 18, 2007.

## 4.  The June 28, 2007 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Arvin A. Reyes Family

a.  Plaintiff Arvin A. Reyes, Individually and as Next Friend of M.P., a minor, is a citizen of the United States and is domiciled in the State of Virginia.

b.  M.P. is a United States citizen domiciled in the State of Virginia. He is the minor son of Arvin A. Reyes.

c.  Plaintiff Marjorie Reyes is a citizen of the United States and is domiciled in the State of Virginia. She is the wife of Arvin A. Reyes.

d.  Plaintiff Priscila Reyes is a citizen of the United States and is domiciled in the State of Virginia. She is the mother of Arvin A. Reyes.

e.  Plaintiff Antonio Reyes Sr. is a citizen of the United States and is domiciled in the State of Virginia. He is the father of Arvin A. Reyes.

f.  Plaintiff Maria Reyes is a citizen of the United States and is domiciled in the State of Virginia. Maria Reyes is the sibling of Arvin A. Reyes.

g.  Plaintiff Antonio Reyes Jr. is a citizen of the United States and is domiciled in the State of Virginia. Antonio Reyes Jr. is the sibling of Arvin A. Reyes.

h.  Plaintiff Rosanna Gliz is a citizen of the United States and is domiciled in the State of Virginia. Rosanna Gliz is the sibling of Arvin A. Reyes.

i.  Plaintiff Marlon Reyes is a citizen of the United States and is domiciled in the State of Texas. Marlon Reyes is the sibling of Arvin A. Reyes.

j.  Plaintiff Jesusa Reyes-Guzman is a citizen of the United States and is domiciled in the State of California. Jesusa Reyes-Guzman is the sibling of Arvin A. Reyes.

k.  Arvin A. Reyes enlisted in the United States Army and became a Specialist in the 2nd Battalion 12th Infantry Regiment out of Fort Carson, Colorado. Reyes was deployed to Baghdad Iraq. On June 28, 2007 Reyes was traveling in a Humvee as part of a convoy. Suddenly, insurgents in Southern Baghdad ambushed the convoy. Specifically, a roadside IED hit the vehicle directly in front of Reyes' Humvee. The explosion sent this vehicle flying and instantly killed all four soldiers inside, including Spc. Dustin L Workman II. Immediately thereafter, a grenade exploded near Reyes' Humvee. The force of these explosions knocked Reyes unconsciousness and caused the Humvee to catch fire. Reyes survived the terrorist attack and was awarded a Purple Heart.

l.  The June 28, 2007 Terrorist Attack against Arvin A. Reyes constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

m.  As a result of the June 28, 2007 Terrorist Attack, Arvin A. Reyes sustained significant injuries, including a TBI, Tinnitus, lacerations, and PTSD. Additionally, Reyes suffers from overwhelming guilt because he survived the terrorist attack. In fact, this guilt is so severe that Reyes mistakenly believes he shot and killed one of his fellow soldiers during the attack. However, the soldier's autopsy report showed that he had no bullet wounds.

n.  Because of these injuries, Arvin A. Reyes is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Marjorie Reyes, Priscila Reyes, Antonio Reyes Sr., Maria Reyes, Antonio Reyes Jr., Rosanna Gliz, Marlon Reyes, Jesusa Reyes-Guzman, and M.P. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Arvin A. Reyes on June 28, 2007.

### 5.  The December 3, 2006 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Nathaniel Wayne Gay Family

a.  Plaintiff Nathaniel Wayne Gay is a citizen of the United States and is domiciled in the State of Alabama.

b.  Plaintiff Amanda Wayne is a citizen of the United States and is domiciled in the State of Alabama. She is the wife of Nathaniel Wayne Gay.

c.  Nathaniel Wayne Gay enlisted in the United States Army and became a Specialist in the 5th Battalion, 20th Infantry Regiment out of Fort Lewis, Washington. He was deployed to Baghdad, Iraq. On or around December 3, 2006, Mr. Gay was conducting escort operations in

Taji. Gay was acting as the gunner in an Army "Stryker" vehicle when suddenly a nearby IED detonated. The IED explosion struck Gay's vehicle and tragically killed a passenger inside, Pfc. Billy Farris. Thereafter, Gay was medevacked to Landstuhl, Germany for emergency lifesaving surgery. Nathaniel Wayne Gay ultimately survived the Terrorist Attack.

d.  The December 3, 2006 Terrorist Attack against Nathaniel Wayne Gay constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the December 3, 2006 Terrorist Attack, Nathaniel Wayne Gay sustained significant injuries, including a severe TBI requiring life saving surgery, multiple skull fractures, two broken ribs, a broken wrist, a broken foot, severe burns, PTSD, and Tinnitus.

f.  Because of these injuries, Nathaniel Wayne Gay is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Amanda Wayne incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Nathaniel Wayne Gay on December 3, 2006.

### 6.  The November 15, 2004 Terrorist Attack - Scania, Iraq
### Plaintiff: Peter Kudarauskas Family

a.  Plaintiff Peter Kudarauskas is a citizen of the United States and is domiciled in the State of Massachusetts.

b.  Plaintiff Elizabeth Kudarauskas is a citizen of the United States and is domiciled in the State of Massachusetts. She is the wife of Peter Kudarauskas.

c.  Peter Kudarauskas enlisted in the United States Army National Guard and served as a 2nd Lieutenant in the C Company, 3-172nd Mountain Infantry division. He was deployed to Bagdad, Iraq. On November 15, 2004 Kudarauskas was on a routine overnight mission in Scania, Iraq and was traveling in an up-armored Humvee. The Humvee was the second vehicle in a three vehicle convoy. Suddenly, Kudarauskas' Humvee was hit by an IED buried in the road. The force from the explosion caused significant damage to the Humvee. Kudarauskas survived the Terrorist Attack and was awarded a Purple Heart.

d.  The November 15, 2004 Terrorist Attack against Peter Kudarauskas constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who

committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.   As a result of the November 15, 2004 Terrorist Attack, Peter Kudarauskas sustained significant injuries, including the loss of his right testicle, hiatal hernias, a TBI, shrapnel embedded in his right leg and face, lower lumbar pain, and PTSD.

f.   Because of these injuries, Peter Kudarauskas is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Elizabeth Kudarauskas incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Peter Kudarauskas on November 15, 2004.

## 7.   The June 29, 2004 Terrorist Attack - Fallujah, Iraq
### Plaintiff: Hardy P Mills IV Family

a.   Plaintiff Hardy P Mills IV is a citizen of the United States and is domiciled in the State of Texas.

b.   Plaintiff Danielle Mills is a citizen of the United States and is domiciled in the State of Texas. She is the wife of Hardy P Mills IV.

c.   Plaintiff Cathy Mills is a citizen of the United States and is domiciled in the State of Texas. She is the mother of Hardy P Mills IV.

d.   Hardy P Mills IV enlisted in the United States Marine Corps and served as a Lance Corporal in the 4th Marine Division out of Fort Worth, Texas. Mills was deployed to Fallujah, Iraq. On June 29, 2004, after returning to Camp Fallujah from a convoy, Mills was in a Motor Pool standing on top of a 7-ton gun truck. Suddenly, the Motor Pool was hit with mortar fire. As a result, Mills was struck by shrapnel and sustained severe physical injuries, including a severed spleen, collapsed lung, and damage to his legs. Mills received surgery in Germany, survived the terrorist attack, and was awarded a Purple Heart.

e.   The June 29, 2004 Terrorist Attack against Hardy P Mills IV constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[115]

---

[115] *See* Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (U.S. officials found mortar shells following the capture of IRGC-QF leaders in Iraq).

f.  As a result of the June 29, 2004 Terrorist Attack, Hardy P Mills IV sustained significant injuries, including a hole in his back, a severed artery in both legs, a severed spleen, a TBI, PTSD, and shrapnel wounds. As a result of these injuries, Hardy Mills can no longer use one hand and foot.

g.  Because of these injuries, Hardy P Mills IV is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Danielle Mills and Cathy Mills incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Hardy P Mills IV on June 29, 2004.

## 8.  The February 23, 2007 Terrorist Attack - Saqlawiyah, Iraq
### Plaintiff: Juan Montoya

a.  Plaintiff Juan Montoya is a citizen of the United States and is domiciled in the State of California.

b.  Juan Montoya enlisted in the United States Marine Corps and served as a Lance Corporal in the 2nd Battalion, 7th Marines Fox Company out of California. Montoya was deployed to Saqlawiyah, Iraq. On February 23, 2007, Montoya was driving a rear up-armored Humvee among a convoy of three other vehicles in Saqlawiyah. Suddenly, an IED struck the left side of Montoya's Humvee. The ensuing explosion punctured a hole in the driver's side window and turret. Montoya survived this terrorist attack and was awarded a Purple Heart.

c.  The February 23, 2007 Terrorist Attack against Juan Montoya constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the February 23, 2007 Terrorist Attack, Juan Montoya sustained significant injuries, including Shrapnel wounds on the left side of his face and left arm requiring surgery, a TBI causing headaches, and PTSD.

e.  Because of these injuries, Juan Montoya is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 9. The July 4, 2007 Terrorist Attack – Abu Hayat, Iraq
#### Plaintiff: Fernando Tejada Family

a.  Plaintiff Fernando Tejada is a citizen of the United States and is domiciled in the State of North Carolina.

b.  Plaintiff Laniqua Tejada is a citizen of the United States and is domiciled in the State of North Carolina. She is the wife of Fernando Tejada.

c.  Plaintiff Maria Tejada is a citizen of the United States and is domiciled in the State of New York. She is the mother of Fernando Tejada.

d.  Fernando Tejada was a lance corporal in the United States Marines deployed to Al-Anbar, Iraq. In the early morning of July 4, 2007, while traveling across a bridge in Abu Hayat, an IED detonated from underneath Tejada's vehicle. Tejada was the gunner of a seven-ton vehicle in a convoy of four vehicles. As a result of this attack, he was treated at the nearest Forward Operating Base (FOB) for severe headaches.

e.  The July 4, 2007 Terrorist Attack against Fernando Tejada constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the July 4, 2007 Terrorist Attack, Fernando Tejada sustained significant injuries, including a TBI, and PTSD.

g.  Because of these injuries, Fernando Tejada is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Laniqua Tejada and Maria Tejada incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Fernando Tejada on July 4, 2007.

### 10. The July 28, 2007 Terrorist Attack – Baghdad, Iraq (COP Ford)
#### Plaintiff: Michael R Didonato Family

a.  Plaintiff Michael R Didonato, Individually and as Next Friend of S.R., a minor, is a citizen of the United States and is domiciled in the State of North Carolina.

b.  S.R. is a United States citizen domiciled in the State of North Carolina. She is the minor daughter of Michael R Didonato.

c. Plaintiff Donna Didonato is a citizen of the United States and is domiciled in the State of North Carolina. She is the wife of Michael R Didonato.

d. Plaintiff Kathryn Barnes is a citizen of the United States and is domiciled in the State of Virginia. She is the daughter of Michael R Didonato.

e. Michael Didonato was in the United States Army as a Sergeant; part of the 325 Airborne Infantry Regiment out of Fort Bragg, North Carolina. He was deployed to Sadr City, Iraq. On July 28, 2007, Didonato was on the grounds of Combat Outpost (COP) Ford in the Al Beida neighborhood of Baghdad when a mortar attack occurred. One of the mortar rounds landed and detonated approximately 10-15 feet away from Didonato. As a result, Didonato sustained serious injuries and was medically evacuated to Landstuhl, Germany. Didonato survived the Terrorist Attack and was awarded a Purple Heart.

f. The July 28, 2007 Terrorist Attack against Michael R Didonato constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical traning and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[116]

g. As a result of the July 28, 2007 Terrorist Attack, Michael R Didonato sustained significant injuries, including shrapnel wounds to left forearm, a TBI, severe PTSD, and Tinnitus.

h. Because of these injuries, Michael R Didonato is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Donna Didonato, Kathryn Barnes, and S.R. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Michael R Didonato on July 28, 2007.

### 11. The November 1, 2007 Terrorist Attack - Wasit, Iraq
### Plaintiff: James M. Slayton Family

a. Plaintiff James M. Slayton, Individually and as Next Friend of S.S. and A.S., minors, is a citizen of the United States and is domiciled in the State of Florida.

b. A.S. is a United States citizen domiciled in the State of Florida. He is the minor son of James M. Slayton.

---

[116] *See* Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (U.S. officials found mortar shells following the capture of IRGC-QF leaders in Iraq).

c.  S.S. is a United States citizen domiciled in the State of Florida. She is the minor daughter of James M. Slayton.

d.  Plaintiff Megan Slayton is a citizen of the United States and is domiciled in the State of Florida. She is the wife of James M. Slayton.

e.  Plaintiff Gage Slayton is a citizen of the United States and is domiciled in the State of Florida. He is the son of James M. Slayton.

f.  James M. Slayton was a Staff Sergeant in the United States Army a part of the A Company 164th Armor Regiment out of Fort Lewis, Georgia. He deployed to Baghdad, Iraq. On November 1 2007, he was the truck commander in the lead up-armored Humvee convoy traveling near Wasit. An EFP struck the right side of the Humvee, penetrating through the vehicle. As a result of his ensuing injuries, Mr. Slayton received a Purple Heart.

g.  The November 1, 2007 Terrorist Attack against James M. Slayton constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[117]

h.  As a result of the November 1, 2007 Terrorist Attack, James M. Slayton sustained significant injuries, including shrapnel wounds in his left leg, a TBI, and PTSD.

i.  Because of these injuries, James M. Slayton is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Megan Slayton, Gage Slayton, S.S., and A.S. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by James M. Slayton on November 1, 2007.

## 12. <u>The April 16, 2005 Terrorist Attack - Yusufiyah, Iraq</u>
### Plaintiff: Calvin J. McCloy

a.  Plaintiff Calvin J. McCloy is a citizen of the United States and is domiciled in the State of Kansas.

---

[117]*See, e.g.*, *Karcher,* 396 F. Supp. 3d at 15–25, 33 (concluding that there is sufficient evidence that Iran, through the IRGC and IRGC-QF provided EFPs to enemy forces in Iraq who used these weapons against the U.S. Armed Forces members).

b. Calvin J. McCloy was a Master Sergeant in the United States Army a part of the 141 Infantry. He deployed to Yusufiyah, Iraq. On April 16, 2005, Mr. McCloy was the truck commander of his vehicle in a convoy that was moving east of the Euphrates River in Yusufiyah. While on patrol, Mr. McCloy's vehicle was hit with an IED, causing the vehicle and Mr. McCloy to catch fire. As a result, Mr. McCloy suffered serious burn injuries and received a Bronze Star and Purple Heart.

c. The April 16, 2005 Terrorist Attack against Calvin J. McCloy constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the April 16, 2005 Terrorist Attack, Calvin J. McCloy sustained significant injuries, including Traumatic Brain Injury, Post-Traumatic Stress Disorder, 3rd degree burns to his body, compressed joints, Tinnitus.

e. Because of these injuries, Calvin J. McCloy is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 13. The May 29, 2011 Terrorist Attack - Tallil, Iraq
### Plaintiff: Brandan J. Bradley Family

a. Plaintiff Brandan J. Bradley, Individually and as Next Friend of M.B., a minor, is a citizen of the United States and is domiciled in the State of North Carolina.

b. M.B. is a United States citizen domiciled in the State of North Carolina. He is the minor son of Brandan J. Bradley.

c. Plaintiff Jeroline Bradley is a citizen of the United States and is domiciled in the State of North Carolina. She is the mother of Brandan J. Bradley.

d. Brandon J. Bradley was in the United States Army as a Private First Class, a part of the 215th First Calvary. He was deployed to Tallil, Iraq. On May 29, 2011, Mr. Bradley was the Scout Truck Gunner in the lead vehicle of a 40-45 vehicle convoy. They were on route from Contingency Operating Site (COS) Garry Owens to COS Addler. Along the route, Mr. Bradley's vehicle was hit by an IED in Tallil. The IED caused the vehicle to go upwards onto two wheels and then slam back down. Bradley survived the attack and received a Combat Action Badge.

94

e.  The May 29, 2011 Terrorist Attack against Brandan J. Bradley constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the May 29, 2011 Terrorist Attack, Brandan J. Bradley sustained significant injuries, including PTSD and migraines.

g.  Because of these injuries, Brandan J. Bradley is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, M.B. and Jeroline Bradley incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Brandan J. Bradley on May 29, 2011.

### 14. The September 11, 2007 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Jody Stedman Family

a.  Plaintiff Jody Stedman is a citizen of the United States and is domiciled in the State of South Carolina.

b.  Plaintiff Nicholas Stedman is a citizen of the United States and is domiciled in the State of South Carolina. He is the son of Jody Stedman.

c.  Plaintiff Russell S Stedman is a citizen of the United States and is domiciled in the State of South Carolina. He is the son of Jody Stedman.

d.  Jody Stedman was a Lieutenant Colonel in the United States Army and was deployed to Camp Victory in Baghdad, Iraq. On September 11 2007, Stedman was walking on a sidewalk when a rocket that was launched from downtown Baghdad barely missed his headquarters. The United States Military later determined the rocket came was provided to Shiite extremists by Iran. Stedman survived the attack.

e.  The September 11, 2007 Terrorist Attack against Jody Stedman constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[118]

---

[118] *See* Ware, *Inside Iran's Secret War for Iraq*, TIME, Aug. 15, 2005 (reporting that Iran shipped weapons like 107mm and 122mm rockets across the border to Iraq).

f.  As a result of the September 11, 2007 Terrorist Attack, Jody Stedman sustained significant injuries, including PTSD.

g.  Because of these injuries, Jody Stedman is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Nicholas Stedman, Russell S Stedman incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Jody Stedman on September 11, 2007.

## 15. The August 24, 2007 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Robert Crossno Family

a.  Plaintiff Robert Crossno is a citizen of the United States and is domiciled in the State of South Carolina.

b.  Plaintiff Angie Crossno is a citizen of the United States and is domiciled in the State of South Carolina. She is the mother of Robert Crossno.

c.  Robert Crossno was a Sergeant in the United States Army, a part of the 1-18 First Infantry Division, Head Quarters Company out of Garrison Schweinfurt, Germany. On August 24 2007, he was deployed to FOB Falcon in Baghdad, Iraq. Mr. Crossno had just passed an Iraqi Checkpoint on Route Jackson while returning to FOB Falcon from the Green Zone. He was driving the rear up-armored Humvee in a convoy of three other vehicles. Suddenly, an EFP struck the front of Crossno's vehicle penetrating the armor and engine block. As a result of the severe injuries he sustained, Mr. Crossno was awarded a Purple Heart.

d.  The August 24, 2007 Terrorist Attack against Robert Crossno constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[119]

e.  As a result of the August 24, 2007 Terrorist Attack, Robert Crossno sustained significant injuries, including shrapnel wounds to the face, mouth, and right eye resulting in reconstructive facial & dental surgery, loss of vision in his right eye, a TBI, hearing loss, and PTSD.

---

[119]*See, e.g.*, *Karcher,* 396 F. Supp. 3d at 15–25, 33 (concluding that there is sufficient evidence that Iran, through the IRGC and IRGC-QF provided EFPs to enemy forces in Iraq who used these weapons against the U.S. Armed Forces members).

f.  Because of these injuries, Robert Crossno is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Angie Crossno incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Robert Crossno on August 24, 2007.

## 16. The May 3, 2007 Terrorist Attack - Mosul, Iraq
### Plaintiff: Virgil Thomas

a.  Plaintiff Virgil Thomas is a citizen of the United States and is domiciled in the State of South Carolina.

b.  Virgil Thomas was a Sergeant First Class in the United States Army, a part of Echo Company 2-7 Calvary. He deployed to Mosul, Iraq. On May 3, 2007, he was on a mission to clear Route Infinity of IEDs. Thomas was traveling in a convoy of seven up-armored Buffalos vehicle equipped with safety devices. Mr. Thomas was the rear passenger in the third vehicle of the convoy. Suddenly, an IED that was buried in the ground was remoted detonated. As a result, the device impacted the right side of Thomas' vehicle. Thereafter, Virgil was medevacked to the 28th CSH facility in Mosul and ultimately survived the Terrorist Attack.

c.  The May 3, 2007 Terrorist Attack against Virgil Thomas constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the May 3, 2007 Terrorist Attack, Virgil Thomas sustained significant injuries, including a spinal injury, Tinnitus, a TBI, and PTSD.

e.  Because of these injuries, Virgil Thomas is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 17. The January 3, 2011 Terrorist Attack - Karbala, Iraq
### Plaintiff: Michael Cramer Family

a.  Plaintiff Michael Cramer is a citizen of the United States and is domiciled in the State of Texas.

b.  Plaintiff Nahir Cramer is a citizen of the United States and is domiciled in the State of Texas. She is the wife of Michael Cramer.

c.  Plaintiff Pamela Cramer is a citizen of the United States and is domiciled in the State of Illinois. She is the mother of Michael Cramer.

d.  Plaintiff Michael Cramer is a citizen of the United States and is domiciled in the State of Illinois. He is the father of Michael Cramer.

e.  Plaintiff Megan Cramer is a citizen of the United States and is domiciled in the State of Illinois. Megan Cramer is the sibling of Michael Cramer.

f.  Michael Cramer was a Captain in the United States Army a part of the 1st Squadron, 3rd Armored Cavalry Regiment out of Fort Hood, Texas. He deployed to Karbala, Iraq. On January 3, 2011, Mr. Cramer was returning to his post from a meeting in Karbala City. He was a passenger in an up-armored Mine-Resistant Ambush Protected (MRAP) vehicle that was the second vehicle amongst a three vehicle convoy. An EFP struck his vehicle from the right side of the road. As a result, there were copper pieces around them from EFP. Cramer survived the terrorist attack.

g.  The January 3, 2011 Terrorist Attack against Michael Cramer constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[120]

h.  As a result of the January 3, 2011 Terrorist Attack, Michael Cramer sustained significant injuries, including a concussion, a TBI, Tinnitus, and PTSD.

i.  Because of these injuries, Michael Cramer is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Nahir Cramer, Pamela Cramer, Michael Cramer, and Megan Cramer incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Michael Cramer on January 3, 2011.

## 18. The August 8, 2008 Terrorist Attack - Tikrit, Iraq
### Plaintiff: Vincent Reynolds

a.  Plaintiff Vincent Reynolds is a citizen of the United States and is domiciled in the State of Tennessee.

b.  Vincent Reynolds was a Sergeant First Class in the United States Army a part of the 2nd Battalion, 327 Infantry Division. He deployed to Tikrit, Iraq. On August 8, 2008, Mr. Reynolds was the driver of the tenth vehicle in a thirty-vehicle convoy. They were on patrol near Forward

---

[120]*See, e.g.*, *id.* at 15–25, 33.

Operating Base Speicher in Tikrit traveling down the road when an IED detonated from the right side of the vehicle. As a result, Reynolds received treatment for head, back, and neck injuries.

c.   The August 8, 2008 Terrorist Attack against Vincent Reynolds constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.   As a result of the August 8, 2008 Terrorist Attack, Vincent Reynolds sustained significant injuries, including PTSD, a TBI, a spinal injury, and Tinnitus.

e.   Because of these injuries, Vincent Reynolds is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 19. The April 6, 2008 Terrorist Attack – Baghdad, Iraq
### Plaintiff: Dale D. Fair Family

a.   Plaintiff Dale D. Fair is a citizen of the United States and is domiciled in the State of Florida.

b.   Plaintiff Dana Fair is a citizen of the United States and is domiciled in the State of Virginia. She is the daughter of Dale D. Fair.

c.   Dale D. Fair was Lieutenant Colonel in the United States Army, a part of the Coalition Army Advising Training Team. He was deployed to the Phoenix Base in Baghdad, Iraq. On April 6, 2008, Fair returned to the Base after a patrol mission. He was walking across the compound to the Headquarters in Baghdad when an incoming mortar hit a building near him. As a result, Maj. Stuart Wolfer and Col. Stephen Scott were tragically (KIA. However, Fair survived the attack and received a Purple Heart.

d.   The April 6, 2008 Terrorist Attack against Dale D. Fair constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[121]

---

[121] *See The Situation in Iraq and Progress by the Government of Iraq in Meeting Benchmarks and Achieving Reconciliation: Hearing before the Comm. on Armed Services*, 110th Cong., 2d Sess., (April 8-10, 2008) (General Petraeus concluding that it is certainly fair to conclude that Iranian-backed Special Groups in Iraq were responsible for killing hundreds of American soldiers).

e.  As a result of the April 6, 2008 Terrorist Attack, Dale D. Fair sustained significant injuries, including a concussion, a TBI, PTSD, sleep apnea, bilateral hearing loss, and Tinnitus.

f.  Because of these injuries, Dale D. Fair is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Dana Fair incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Dale D. Fair on April 6, 2008.

### 20. The May 7, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Nicholas A. Mancino

a.  Plaintiff Nicholas A Mancino is a citizen of the United States and is domiciled in the State of New Jersey.

b.  Nicholas Mancino was a government contractor for MVM Inc., out of Ashburn, Virginia. He deployed to Baghdad, Iraq. On May 7, 2005, Mr. Mancino was in an up-armored Suburban truck, the rear of a three-vehicle convoy. They were traveling in Baghdad when a VBIED detonated approximately 10 feet from Mancino. As a result, Mr. Mancino's vehicle ignited and two of Mancino's co-workers were killed. However, Mancino survived the Terrorist Attack.

c.  The May 7, 2005 Terrorist Attack against Nicholas A Mancino constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the May 7, 2005 Terrorist Attack, Nicholas A Mancino sustained significant injuries, including shrapnel wounds, inner-ear bleeding, a TBI, a back injury, a knee injury, and a left shoulder injury.

e.  Because of these injuries, Nicholas A Mancino is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 21. The November 4, 2004 Terrorist Attack - Al Anbar, Iraq
### Plaintiff: Ian McHugh Family

a.  Plaintiff Ian McHugh is a citizen of the United States and is domiciled in the State of California.

b.  Plaintiff Betsy Lenahan is a citizen of the United States and is domiciled in the State of California. She is the wife of Ian McHugh.

**100**

c. Ian McHugh was in the United States Marine Corps as a Corporal, a part of the 1st Light Armor Battalion. He deployed to the Al Anbar Province in Iraq. On November 4, 2004, Mr. McHugh was a passenger in an up-armored LAV25; the second vehicle in a six-vehicle convoy. The convoy was traveling down a dirt road in Al Anbar when Mr. McHugh's vehicle struck a pressure plated IED, causing it to detonate. As a result, the vehicle sustained damage and McHugh ultimately received a Purple Heart.

d. The November 4, 2004 Terrorist Attack against Ian McHugh constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. As a result of the November 4, 2004 Terrorist Attack, Ian McHugh sustained significant injuries, including shrapnel wounds on both arms, a TBI, PTSD, a left elbow injury, and Tinnitus.

f. Because of these injuries, Ian McHugh is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Betsy Lenahan incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Ian McHugh on November 4, 2004.

## 22. <u>The November 18, 2006 Terrorist Attack – Haqlaniyah, Iraq</u>
### Plaintiff: Ji Hun Kim Family

a. Plaintiff Ji Hun Kim is a citizen of the United States and is domiciled in the State of Pennsylvania.

b. Plaintiff Grace Ji is a citizen of the United States and is domiciled in the State of Pennsylvania. She is the mother of Ji Hun Kim.

c. Plaintiff Dana Kim is a citizen of the United States and is domiciled in the State of Pennsylvania. Dana Kim is the sibling of Ji Hun Kim.

d. Ji Hun Kim was in the United States Marine Corps as a Lance Corporal, a part of the 2/3 Unit. He deployed to Haqlaniyah, Iraq. On November 18, 2006, Kim was with a team on foot patrol when one of the soldiers, Spc. Bradley Shilling, stepped on a pressure plated IED, causing it to detonate. As a result, Shilling was KIA and others nearby soldiers, including Kim, sustained serious injuries. Kim survived the attack and received a Purple Heart.

e. The November 18, 2006 Terrorist Attack against Ji Hun Kim constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f. As a result of the November 18, 2006 Terrorist Attack, Ji Hun Kim sustained significant injuries, including a TBI, lumbosacral strain, Tinnitus, PTSD.

g. Because of these injuries, Ji Hun Kim is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Grace Ji and Dana Kim incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Ji Hun Kim on November 18, 2006.

### 23. <u>The January 4, 2004 Terrorist Attack - Baghdad, Iraq</u>
### Plaintiff: Fredolando Johnson Family

a. Plaintiff Fredolando Johnson is a citizen of the United States and is domiciled in the State of Alabama.

b. Plaintiff Jeremy Moore is a citizen of the United States and is domiciled in the State of Alabama. He is the son of Fredolando Johnson.

c. Plaintiff Khandi Crawford is a citizen of the United States and is domiciled in the State of Florida. She is the daughter of Fredolando Johnson.

d. Plaintiff Kiambri Mason is a citizen of the United States and is domiciled in the State of Alabama. She is the daughter of Fredolando Johnson.

e. Plaintiff Amber Mason is a citizen of the United States and is domiciled in the State of Alabama. She is the daughter of Fredolando Johnson.

f. Plaintiff Addea Glover is a citizen of the United States and is domiciled in the State of Texas. Addea Glover is the sibling of Fredolando Johnson.

g. Plaintiff Audrey Tarver is a citizen of the United States and is domiciled in the State of Alabama. Audrey Tarver is the sibling of Fredolando Johnson.

h. Fredolando Johnson was in the United States Army as a Sergeant, a part of the 214 MP Company. He deployed to Baghdad, Iraq. On January 4, 2004, Mr. Johnson was the truck commander in a Humvee, the rear vehicle of a three-vehicle convoy, in route to an airport mission in Baghdad. When they exited off the ramp, an IED detonated. As a result, the vehicle

in front of Mr. Johnson's was destroyed. Johnson survived the terrorist attack and received a Purple Heart.

i.  The January 4, 2004 Terrorist Attack against Fredolando Johnson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

j.  As a result of the January 4, 2004 Terrorist Attack, Fredolando Johnson sustained significant injuries, including a neck fracture and right eye injury requiring hospitalization, a TBI, PTSD, Tinnitus, and migraines.

k.  Because of these injuries, Fredolando Johnson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Jeremy Moore, Khandi Crawford, Kiambri Mason, Amber Mason, Addea Glover, and Audrey Tarver incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Fredolando Johnson on January 4, 2004.

## 24. The July 31, 2003 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Willie Rogers Family

a.  Plaintiff Willie Rogers is a citizen of the United States and is domiciled in the State of Alabama.

b.  Plaintiff Bo Rogers is a citizen of the United States and is domiciled in the State of Georgia. He is the son of Willie Rogers.

c.  Plaintiff Bionca Rogers is a citizen of the United States and is domiciled in the State of Alabama. She is the daughter of Willie Rogers.

d.  Plaintiff Cinnamon Rogers is a citizen of the United States and is domiciled in the State of Texas. She is the daughter of Willie Rogers.

e.  Plaintiff Luedella Rogers is a citizen of the United States and is domiciled in the State of Alabama. She is the mother of Willie Rogers.

f.  Plaintiff Edd Rogers is a citizen of the United States and is domiciled in the State of Alabama. He is the father of Willie Rogers.

g.  Willie Rogers was in the United States Army as a Staff Sergeant, part of 214th MP Company. He deployed to Baghdad, Iraq. On July 31, 2003, Mr. Rogers was in an unarmored Humvee,

the second vehicle in a three-vehicle convoy that was headed to the Iraqi Police Station in Baghdad. Along the route, they hit a turnaround point and his vehicle was struck by a RPG. As a result, the vehicle sustained damage and Rogers was later awarded a Combat Action Badge.

h.  The July 31, 2003 Terrorist Attack against Willie Rogers constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[122]

i.  As a result of the July 31, 2003 Terrorist Attack, Willie Rogers sustained significant injuries, including PTSD, TBI, knee injury, back injury, and Tinnitus.

j.  Because of these injuries, Willie Rogers is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Bo Rogers, Bionca Rogers, Cinnamon Rogers, Luedella Rogers, and Edd Rogers incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Willie Rogers on July 31, 2003.

## 25. <u>The June 4, 2006 Terrorist Attack - Karbala, Iraq</u>
### Plaintiff: Kenneth Earl Rich Family

a.  Plaintiff Kenneth Earl Rich, Individually and as Next Friend of K.R., a minor, is a citizen of the United States and is domiciled in the State of Indiana.

b.  K.R. is a United States citizen domiciled in the State of Indiana. He is the minor son of Kenneth Earl Rich.

c.  Plaintiff Katherine Rich is a citizen of the United States and is domiciled in the State of Indiana. She is the wife of Kenneth Earl Rich.

d.  Plaintiff Lisa Linton is a citizen of the United States and is domiciled in the State of Indiana. She is the mother of Kenneth Earl Rich.

e.  Kenneth Earl Rich was in the United States Army as a Specialist, a part of the 163rd Field Artillery Regiment. He deployed to Karbala, Iraq. On June 4, 2006, Mr. Rich was in route from the Iraqi Police Station to Forward Operating Base Duke. He was the gunner in the lead up-

---

[122] *See* Pound and Jack, *Special Report: The Iran Connection* (2003 U.S. and Israeli intelligence reports concluded that Hezbollah was training the Mahdi Army, an Iraqi militant group, at Iran's request and providing them weapons like RPGs).

armored Humvee in a convoy of three other vehicles. An EFP suddenly struck the vehicle, blowing the driver's door and front end of the vehicle off. As a result, the vehicle burned to the ground.

f.  The June 4, 2006 Terrorist Attack against Kenneth Earl Rich constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[123]

g.  As a result of the June 4, 2006 Terrorist Attack, Kenneth Earl Rich sustained significant injuries, including shrapnel wounds, an ankle injury requiring surgery, a nose injury requiring surgery, Tinnitus, a TBI, and PTSD.

h.  Because of these injuries, Kenneth Earl Rich is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Katherine Rich, Lisa Linton, and K.R. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Kenneth Earl Rich on June 4, 2006.

## 26. <u>The April 28, 2008 Terrorist Attack – Baghdad, Iraq (FOB Loyalty)</u>
### Plaintiff: Antonio Boies Family

a.  Plaintiff Antonio Boies is a citizen of the United States and is domiciled in the State of Louisiana.

b.  Plaintiff Ora Boies is a citizen of the United States and is domiciled in the State of Louisiana. She is the wife of Antonio Boies.

c.  Antonio Boies was in the United States Army as a Sergeant First Class, a part of 302 Military Intelligence Company. He deployed to Sadr City, Iraq. On April 28, 2008, Mr. Boies was involved in an VBIED attack outside of Forward Operating Base (FOB) Loyalty. Specifically, a truck containing six (6) different tubes exploded near FOB Loyalty. As a result, Boies was awarded a Combat Action Badge.

d.  The April 28, 2008 Terrorist Attack against Antonio Boies constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

---

[123]*See, e.g.*, *Karcher,* 396 F. Supp. 3d at 15–25, 33 (concluding that there is sufficient evidence that Iran, through the IRGC and IRGC-QF provided EFPs to enemy forces in Iraq who used these weapons against the U.S. Armed Forces members).

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the April 28, 2008 Terrorist Attack, Antonio Boies sustained significant injuries, including PTSD.

f.  Because of these injuries, Antonio Boies is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Ora Boies incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Antonio Boies on April 28, 2008.

## 27. The May 8, 2008 Terrorist Attack - Baqubah, Iraq
### Plaintiff: Andrea Johnson

a.  Plaintiff Andrea Johnson is a citizen of the United States and is domiciled in the State of Texas.

b.  Andrea Johnson worked as a KBR employee. KBR provides logistics and base operations support to the United States military. At KBR, Johnson was deployed to Forward Operating Base Warhorse in Baqubah, Iraq as a Morale Welfare Recreation supervisor. On May 8, 2008, FOB Warhorse was attacked by numerous RPGs. At this time, Johnson was hiding in an old airplane hangar. The RPGs severely damaged this structure and the force of the blast severely injured Johnson. As a result, Johnson was medevacked to Balad.

c.  The May 8, 2008 Terrorist Attack against Andrea Johnson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[124]

d.  As a result of the May 8, 2008 Terrorist Attack, Andrea Johnson sustained significant injuries, including a TBI, lung damage, impaired endocrine/pituitary functions, seizure disorder, hearing loss, cervical dystonia with migraine, cognitive deficits, Lymphedema, bilateral shoulder injuries, facial nerve disfigurement requiring surgery, back and spinal injuries, a broken pelvis, broken femur, contusions, and burn damage.

e.  Because of these injuries, Andrea Johnson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

---

[124] See James Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (Feb. 12, 2007), THE N.Y. TIMES, https://www.nytimes.com/2007/02/12/world/middleeast/12weapons.html (U.S. officials found RPGs and mortar shells following the capture of IRGC-QF leaders in Iraq).

## 28. The May 6, 2007 Terrorist Attack - Baqubah, Iraq
### Plaintiff: Larry Clark Family

a.  Plaintiff Larry Clark is a citizen of the United States and is domiciled in the State of Virginia.

b.  Plaintiff Andrea Clark is a citizen of the United States and is domiciled in the State of Virginia. She is the wife of Larry Clark.

c.  Larry Clark was in the United States Army as a specialist, a part of the 5th Battalion 20th Infantryman Regiment. He was deployed to Mosul, Iraq. On the afternoon of May 06, 2007, Clark was the driver of an up-armored Stryker, part of a two-vehicle convoy. They were returning from an Iraqi police station near Baqubah when Clark's vehicle ran over a buried IED, which detonated. As a result, the Stryker was ripped in half and disabled. This explosion caused seven (7) fatalities total, including 6 soldiers and a photographer. One of the soldiers KIA was Army Staff Sgt. Vincenzo Romeo. However, Clark survived the Terrorist Attack after being medevacked to Balad. As a result, Larry Clark received a Purple Heart.

d.  The May 6, 2007 Terrorist Attack against Larry Clark constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the May 6, 2007 Terrorist Attack, Larry Clark sustained significant injuries, including shrapnel wounds resulting in a fractured right middle finger and thumb, shrapnel wounds to the face, loss of consciousness for 3 hours, PTSD, and Tinnitus.

f.  Because of these injuries, Larry Clark is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Andrea Clark incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Larry Clark on May 6, 2007.

## 29. The October 27, 2003 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Joseph Darden Family

a.  Plaintiff Joseph Darden is a citizen of the United States and is domiciled in the State of Alabama.

b.  Plaintiff Anita Nunn is a citizen of the United States and is domiciled in the State of Alabama. She is the mother of Joseph Darden.

c. Joseph Darden was in the United States Army as a Specialist, a part of the 214th Military Police Unit. He was deployed to Baghdad, Iraq. On the morning of October 27, 2003, Mr. Darden was at an Iraqi Police Station in Baghdad conducting police training. Suddenly, a VBIED was backed up into the station. Explosives at the back of the truck were detonated, blowing up the VBIED. The ensuing blast caused one fatality and numerous serious injuries. Accordingly, Darden was medevacked to Balad and then to Landstuhl, Germany for emergency medical treatment. Darden survived the Terrorist Attack and received a Purple Heart.

d. The October 27, 2003 Terrorist Attack against Joseph Darden constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. As a result of the October 27, 2003 Terrorist Attack, Joseph Darden sustained significant injuries, including shrapnel and glass wounds on his neck, head, and arm requiring surgery, a TBI, and PTSD.

f. Because of these injuries, Joseph Darden is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Anita Nunn incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Joseph Darden on October 27, 2003.

### 30. The June 27, 2004 Terrorist Attack -Baghdad, Iraq (Camp Cuervo)
### Plaintiff: Robert Spinks Family

a. Plaintiff Robert Spinks, Individually and as Next Friend of J.S., a minor, is a citizen of the United States and is domiciled in the State of Texas.

b. J.S. is a United States citizen domiciled in the State of Texas. She is the minor daughter of Robert Spinks.

c. Plaintiff Karen Spinks is a citizen of the United States and is domiciled in the State of Texas. She is the wife of Robert Spinks.

d. Plaintiff Sevonne Spinks is a citizen of the United States and is domiciled in the State of Texas. She is the daughter of Robert Spinks.

e. Robert Spinks was in the United States Army as a sergeant first class. He deployed to Baghdad, Iraq. On June 27, 2004, Mr. Spinks was at Forward Operating Base Camp Cuervo, preparing for a mission with his first sergeant. As they were walking around a building, a RPG attack

occurred. As a result, First Sergeant Ernest Utt was tragically KIA. Spinks survived the terrorist attack but sustained permanent brain and neurological damage.

f.  The June 27, 2004 Terrorist Attack against Robert Spinks constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[125]

g.  As a result of the June 27, 2004 Terrorist Attack, Robert Spinks sustained significant injuries, including Parkinson's disease associated with a TBI and PTSD.

h.  Because of these injuries, Robert Spinks is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Karen Spinks, Sevonne Spinks, and J.S. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Robert Spinks on June 27, 2004.

## 31. The October 12, 2005 Terrorist Attack - Fallujah, Iraq
### Plaintiff: Martin Jones

a.  Plaintiff Martin Jones is a citizen of the United States and is domiciled in the State of Maryland.

b.  Martin Jones was in the United States Army as a staff sergeant. He deployed to Fallujah, Iraq. On the afternoon of October 12, 2005, Mr. Jones was the gunner of an up-armored Humvee. They were in route to a mission in Baghdad when his vehicle ran over a pressure plate IED on Route Michigan. As a result, the vehicle sustained damage. Jones survived the terrorist attack and received a Purple Heart.

c.  The October 12, 2005 Terrorist Attack against Martin Jones constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the October 12, 2005 Terrorist Attack, Martin Jones sustained significant injuries, including shrapnel wounds to the face and torso, abdominal muscle damage, facial burns, a

---

[125] *See* Pound and Jack, *Special Report: The Iran Connection* (2003 U.S. and Israeli intelligence reports concluded that Hezbollah was training the Mahdi Army, an Iraqi militant group, at Iran's request and providing them weapons like RPGs).

spinal injury, a knee injury, a TBI, migraines, a colon injury from swallowed shrapnel, Tinnitus, and PTSD.

e. Because of these injuries, Martin Jones is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 32. The March 2, 2005 Terrorist Attack - Al-Iskandariyah, Iraq
### Plaintiff: Ellis Martin Family

a. Plaintiff Ellis Martin is a citizen of the United States and is domiciled in the State of Mississippi.

b. Plaintiff Stephanie Martin is a citizen of the United States and is domiciled in the State of Mississippi. She is the wife of Ellis Martin.

c. Plaintiff Melissa Martin is a citizen of the United States and is domiciled in the State of Mississippi. She is the daughter of Ellis Martin.

d. Plaintiff Tabitha Martin is a citizen of the United States and is domiciled in the State of Mississippi. She is the daughter of Ellis Martin.

e. Ellis Martin was in the United States Army as a sergeant first class, a part of the 115th Infantry Unit. He deployed to Al Iskandariyah, Iraq. On the morning of March 2, 2005, Mr. Martin was a passenger in an up-armored Humvee. Mr. Martin was on a security mission in Al-Iskandariyah and exited his vehicle when an IED detonated. As a result of the ensuing blast, Martin sustained severe shrapnel wounds causing permanent disabilities and received a Purple Heart.

f. The March 2, 2005 Terrorist Attack against Ellis Martin constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g. As a result of the March 2, 2005 Terrorist Attack, Ellis Martin sustained significant injuries, including a right hip and pelvis fracture, severe shrapnel wounds to the left upper arm and right buttocks causing permanent nerve damage, a concussion, and adjustment disorder with associated cognitive disorder.

h. Because of these injuries, Ellis Martin is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Stephanie Martin, Melissa

Martin, and Tabitha Martin incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Ellis Martin on March 2, 2005.

### 33. The July 14, 2004 Terrorist Attack - Mosul, Iraq
### Plaintiff: Shervayne Diaz Family

a.  Plaintiff Shervayne Diaz is a citizen of the United States and is domiciled in the State of Washington.

b.  Plaintiff Joey Ragas is a citizen of the United States and is domiciled in the State of Washington. He is the husband of Shervayne Diaz.

c.  Plaintiff Danielle Diaz is a citizen of the United States and is domiciled in the State of Washington. Danielle Diaz is the sibling of Shervayne Diaz.

d.  Shervayne Diaz enlisted in the United States Army and became a Specialist in the 77 Foxtrot, 25th Quartermaster unit. Diaz was deployed to Mosul, Iraq. On the morning of July 14, 2004, terrorists fired mortar rounds toward Diaz and her Unit at the start of Diaz's gate guard shift. At this time, Diaz was at her base, Camp Diamondback, in Mosul. The ensuing mortar shells struck Diaz. As a result, Diaz was medevacked to Landstuhl, Germany for emergency treatment. Diaz survived the Terrorist Attack and received a Purple Heart.

e.  The July 14, 2004 Terrorist Attack against Shervayne Diaz constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[126]

f.  As a result of the July 14, 2004 Terrorist Attack, Shervayne Diaz sustained significant injuries, including the loss of her left knee cap, a TBI, a broken left ankle, nerve damage to both her wrists and fingers, and PTSD.

g.  Because of these injuries, Shervayne Diaz is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Joey Ragas and Danielle Diaz incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Shervayne Diaz on July 14, 2004.

---

[126] *See* Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (U.S. officials found mortar shells following the capture of IRGC-QF leaders in Iraq).

### 34. The July 7, 2005 Terrorist Attack - Kirkuk, Iraq
### Plaintiff: Henry J. Young Family

a.  Plaintiff Henry J. Young is a citizen of the United States and is domiciled in the State of Pennsylvania.

b.  Plaintiff Cornelia Thrower is a citizen of the United States and is domiciled in the State of Pennsylvania. She is the mother of Henry J. Young.

c.  Henry Young served as a Specialist in the Army and was deployed to Kirkuk, Iraq in 2004. On July 7, 2005, Young was the gunner in a Humvee traveling in Kirkuk. Suddenly, an IED detonated near the vehicle. Young felt the heat from the blast and was thrown into the back of the vehicle. Young survived the Terrorist Attack.

d.  The July 7, 2005 Terrorist Attack against Henry J. Young constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the July 7, 2005 Terrorist Attack, Henry J. Young sustained significant injuries, including a TBI, PTSD, and large disk herniation's at the C4-C5 level causing cord compression.

f.  Because of these injuries, Henry J. Young is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Cornelia Thrower incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Henry J. Young on July 7, 2005.

### 35. The September 1, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Scott Fink Family

a.  Scott Fink, Individually and as Next Friend of G.B., a minor, is a citizen of the United States and is domiciled in the State of Maryland.

b.  G.B. is a United States citizen domiciled in the State of Maryland. She is the minor daughter of Scott Fink.

c.  Plaintiff Monica Bond-Fink is a citizen of the United States and is domiciled in the State of Maryland. She is the wife of Scott Fink.

d.  Plaintiff Daniel Bond-Fink is a citizen of the United States and is domiciled in the State of Maryland. He is the son of Scott Fink.

e.  Plaintiff Thomas Fink is a citizen of the United States and is domiciled in the State of Maryland. He is the son of Scott Fink.

f.  Scott Fink enlisted in the United States Army National Guard and became a member of Bravo Company, 115th Infantry Unit. Fink was deployed to Sadr City, Iraq. On September 1, 2005, Fink was part of a convoy of four (4) up-armored M1114s traveling to a combat post outside of Sadr City. Fink sat in the front passenger seat. Suddenly, a remote detonated IED penetrated the right front end of Fink's M114. The ensuing explosion and shrapnel completely disabled the M114. At the explosion scene, a failed EFP made of copper lining was also found. The attack occurred in the "MND-Baghdad" Region at the following location: Latitude 33.45965958, Longitude 44.16178894.

g.  The September 1, 2005 Terrorist Attack against Scott Fink constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[127]

h.  As a result of the September 1, 2005 Terrorist Attack, Scott Fink sustained significant injuries, including a TBI and PTSD. As a result of these injuries, Fink developed an alcohol addiction.

i.  Because of these injuries, Scott Fink is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Monica Bond-Fink, Daniel Bond-Fink, Thomas Fink, and G.B. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Scott Fink on September 1, 2005.

### 36. The November 2, 2003 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Felipe Castaneda Jr.

a.  Plaintiff Felipe Castaneda Jr. is a citizen of the United States and is domiciled in the State of California.

---

[127]*See, e.g.*, *Karcher*, 396 F. Supp. at 15-25, 33; *See* Lathem, *House of Jihad* (Hezbollah chief Hassan Nasrallah announcing that they support the adoption of an armed "jihad" resistance against American occupation forces in Iraq)..

b.  Felipe Castaneda Jr. enlisted in the United States Army National Guard and served in the 1498th Transportation Company. On November 2, 2003, Castaneda was traveling in a 5 ton truck, part of a 60 vehicle convoy. About a block away from the Baghdad International Airport (then called Saddam Hussein International Airport) an IED detonated under the vehicle driving directly in front of Castaneda. This attack was followed by small arms fire and Rocket Propelled Grenades. Castaneda fell out of the truck following the IED explosion, hit the ground violently but ultimately survived the terrorist attack.

c.  The November 2, 2003 Terrorist Attack against Felipe Castaneda Jr. constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[128]

d.  As a result of the November 2, 2003 Terrorist Attack, Felipe Castaneda Jr. sustained significant injuries, including a TBI, PTSD, Vertigo, a spinal injury causing neck pain, and Tinnitus.

e.  Because of these injuries, Felipe Castaneda Jr. is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 37. The September 4, 2004 Terrorist Attack - Latifiyah, Iraq
### Plaintiff: Jonathan Green Family

a.  Plaintiff Jonathan Green is a citizen of the United States and is domiciled in the State of Arkansas.

b.  Plaintiff Trista Green is a citizen of the United States and is domiciled in the State of Arkansas. She is the wife of Jonathan Green.

c.  Jonathan Green served as a Corporal in the United States Marines and was deployed in Iraq. On September 4, 2004, Green was traveling in a four vehicle convoy heading from Yusafiyah to Latifiyah for a mission. At this time, Green was a rear passenger in an up-armored truck. Suddenly, a remote detonated daisy chain IED exploded near the left rear of Green's vehicle. The IED was hidden on the side of the road in an ice chest disguised as trash. Green survived the attack and received a Purple Heart.

d.  The September 4, 2004 Terrorist Attack against Jonathan Green constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees,

---

[128] See THE WASHINGTON TIMES, *Israeli warns of terrorist training* (Nov 14. 2003) ("Israeli Defense Minister Shaul Mofaz said yesterday terrorist bases in Lebanon are training some of the foreign fighters who are moving into Iraq to kill American troops").

and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the September 4, 2004 Terrorist Attack, Jonathan Green sustained significant injuries, including shrapnel wounds on his face, a perforated ear drum, Chronic PTSD, a TBI, hearing loss, migraine headaches, depression, and anxiety.

f.  Because of these injuries, Jonathan Green is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Trista Green incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Jonathan Green on September 4, 2004.

### 38. The March 11, 2008 Terrorist Attack – Kishkishkia, Iraq
### Plaintiff: Albert Dyk

a.  Plaintiff Albert Dyk is a citizen of the United States and is domiciled in the State of Nevada.

b.  Albert Dyk was in the United States Army as a specialist, a part of the 373 1st brigade 82nd Airborne Division. He deployed to Babel Province, Iraq. On March 11, 2008, Mr. Dyk was the rear passenger in an up-armored Humvee, part of a four-vehicle convoy, driving near Kishkishkia, Iraq. They were on a joint mission when the vehicle in front of Mr. Dyk's was struck by an EFP, which penetrated through the armor. As a result, the vehicle was disabled and SSG Laurent West was tragically KIA. However, Dyk survived the attack.

c.  The March 11, 2008 Terrorist Attack against Albert Dyk constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[129]

d.  As a result of the March 11, 2008 Terrorist Attack, Albert Dyk sustained significant injuries, including PTSD and sleep apnea.

e.  Because of these injuries, Albert Dyk is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

---

[129] *See, e.g., Karcher,* 396 F. Supp. 3d at 15-25, 33.

### 39. The June 4, 2007 Terrorist Attack - Balad, Iraq
### Plaintiff: Jeremy Bernheisel Family

a.  Plaintiff Jeremy Bernheisel, Individually and as Next Friend of J.B., a minor, is a citizen of the United States and is domiciled in the State of Georgia.

b.  J.B. is a United States citizen domiciled in the State of Georgia. He is the minor son of Jeremy Bernheisel.

c.  Plaintiff Melva Pikes is a citizen of the United States and is domiciled in the State of Texas. She is the wife of Jeremy Bernheisel.

d.  Jeremy Bernheisel was in the United States Army as a staff sergeant, a part of the Alpha Company 3-8 Cavalry. He deployed to Balad, Iraq. On June 4, 2007, Mr. Bernheisel was a passenger in an up armored Bradley, part of a convoy. They were on a five day mission in Balad when a RPG struck his vehicle. As a result, Mr. Bernheisel was medevacked to Landstuhl, Germany. He ultimately survived the attack and received a Purple Heart.

e.  The June 4, 2007 Terrorist Attack against Jeremy Bernheisel constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[130]

f.  As a result of the June 4, 2007 Terrorist Attack, Jeremy Bernheisel sustained significant injuries, including a fractured left fibula requiring surgery, left leg shrapnel wounds requiring multiple surgeries, a TBI, and PTSD.

g.  Because of these injuries, Jeremy Bernheisel is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Melva Pikes and J.B. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Jeremy Bernheisel on June 4, 2007.

### 40. The April 2, 2005 Terrorist Attack - Abu Ghraib, Iraq
### Plaintiff: Shakina Ellis

a.  Plaintiff Shakina Ellis is a citizen of the United States and is domiciled in the State of Florida.

---

[130] See Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (Feb. 12, 2007) (U.S. officials found RPGs and mortar shells following the capture of IRGC-QF leaders in Iraq).

b.  Shakina Ellis enlisted in the United States Marines and was deployed to Abu Gharib, Iraq. On April 2, 2005, around 19:00 hours, Ellis was guarding a prison in Abu Ghraib and was positioned as the rear mount gunner on a Humvee. Specifically, Ellis' Humvee was securing the front part of a prison area and defending it from a siege. At this time, a grenade was thrown at Ellis' Humvee. The grenade detonated, sending shrapnel toward Ellis' right eye, eyebrow, and the right side of his face and nose. Ellis received immediate medical attention and was transported from Baghdad to Germany. Ellis received a Purple Heart and ultimately returned to the United States as a result of his injuries.

c.  The April 2, 2005 Terrorist Attack against Shakina Ellis constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the April 2, 2005 Terrorist Attack, Shakina Ellis sustained significant injuries, including significant facial injuries requiring five surgeries, partial blindness in the right eye, a deformed nose, a TBI and PTSD.

e.  Because of these injuries, Shakina Ellis is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 41. <u>The December 31, 2007 Terrorist Attack - Nasiriyah, Iraq</u>
### Plaintiff: John G Garza Family

a.  Plaintiff John G Garza is a citizen of the United States and is domiciled in the State of Texas.

b.  Plaintiff Claudia Marcela Mora Pineda is a citizen of the United States and is domiciled in the State of Texas. She is the wife of John G Garza.

c.  John Gilbert Garza was a Sergeant in the United States Army, a part of the First Brigade Combat Team. He deployed to Nasiriyah, Iraq. On December 31st, 2008, Mr. Garza was the truck commander in the rear up-armored Humvee in a six-vehicle convoy. They were south-bound on Route Tampa returning to Camp Adder when a four-array EFP detonated near Nasiriyah. The ensuing explosion struck the front right side of Garza's vehicle. As a result, the vehicle was disabled. Mr. Garza survived the Terrorist Attack and received a Combat Action Badge (CAB) and Driver's Badge.

d.  The December 31, 2007 Terrorist Attack against John G Garza constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[131]

e.  As a result of the December 31, 2007 Terrorist Attack, John G Garza sustained significant injuries, including a hairline fracture, severe brain swelling, a concussion, PTSD, headaches, bilateral hearing loss, and bilateral Tinnitus.

f.  Because of these injuries, John G Garza is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Claudia Marcela Mora Pineda incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by John G Garza on December 31, 2007.

## 42. The September 7, 2004 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Eric Laninga Family

a.  Plaintiff Eric Laninga is a citizen of the United States and is domiciled in the State of Michigan.

b.  Plaintiff Elizabeth Laninga is a citizen of the United States and is domiciled in the State of Michigan. She is the wife of Eric Laninga.

c.  Eric Laninga was in the United States Army as a Private First Class, a part of the 506 Infantry. He deployed to Ramadi, Iraq. On September 7, 2004, Mr. Laninga was the gunner in an up-armored Humvee, part of a four to five- vehicle convoy. They were on a patrol outside Ramadi when Mr. Laninga's vehicle ran over a buried IED, which detonated. As a result, the vehicle was destroyed but Laninga survived the attack.

d.  The September 7, 2004 Terrorist Attack against Eric Laninga constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the September 7, 2004 Terrorist Attack, Eric Laninga sustained significant injuries, including a back injury, a head injury, a neck injury, a TBI, headaches, and Tinnitus.

f.  Because of these injuries, Eric Laninga is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Elizabeth Laninga incurred solatium damages as a result of mental anguish, bereavement, grief, and loss

---

[131]*See, e.g.*, *Karcher*, 396 F. Supp. 3d at 15–25, 33.

of society and comfort suffered following the injuries sustained by Eric Laninga on September 7, 2004.

### 43. The March 24, 2006 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Lucas Thuemmel

a.  Plaintiff Lucas Thuemmel is a citizen of the United States and is domiciled in the State of Texas.

b.  Lucas Thuemmel was in the United States Army as a Specialist, a part of HHC 1st STB. He deployed to Baghdad, Iraq. On the afternoon of March 24, 2006, Mr. Thuemmel was the gunner in an up-armored Humvee, the rear vehicle of a ten to fifteen vehicle convoy. They were in route to a call when their vehicle was struck by an IED in Baghdad. As a result, the vehicle sustained damage but Thuemmel survived the attack.

c.  The March 24, 2006 Terrorist Attack against Lucas Thuemmel constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the March 24, 2006 Terrorist Attack, Lucas Thuemmel sustained significant injuries, including a back injury requiring surgery, Tinnitus, a TBI, PTSD.

e.  Because of these injuries, Lucas Thuemmel is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 44. The October 13, 2005 Terrorist Attack – Tuz Khurmatu, Iraq
### Plaintiff: Clayton T. Crowell

a.  Plaintiff Clayton T. Crowell is a citizen of the United States and is domiciled in the State of Tennessee.

b.  Clayton T. Crowell was in the United States Army apart of the 2-278 unit. Mr. Crowell deployed to Iraq. On October 13, 2005 Mr. Crowell was traveling in Tuz Khurmatu and drove over a pressure switch setting off 155mm round IED under the driver's door. Crowell then faced small arms fire from enemy insurgents. He was shaken up, but returned fire and successfully led his team out of the dangerous situation.

c.  The October 13, 2005 Terrorist Attack against Clayton T. Crowell constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the October 13, 2005 Terrorist Attack, Clayton T. Crowell sustained significant injuries, including shrapnel wounds to his arms and elbow, bilateral hearing loss, memory loss, a back injury, a concussion, a TBI, migraines, and PTSD.

e.  Because of these injuries, Clayton T. Crowell is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 45. The July 31, 2003 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Helen N. Smoaks Family

a.  Plaintiff Helen N. Smoaks is a citizen of the United States and is domiciled in the State of Georgia.

b.  Plaintiff Shakala Smoaks is a citizen of the United States and is domiciled in the State of Georgia. She is the daughter of Helen N. Smoaks.

c.  Helen N. Smoaks was in the United States Army as a staff sergeant, a part of the 214th Military Police Company. She deployed to Baghdad, Iraq. On July 31, 2003, Ms. Smoaks was the truck commander in an unarmored Humvee, the lead of a six-vehicle convoy. They were in route to the Al Bayaa Police Station in Baghdad when the vehicle was struck by an IED. As a result, the vehicle was penetrated and disabled. Smoaks survived the Terrorist Attack.

d.  The July 31, 2003 Terrorist Attack against Helen N. Smoaks constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the July 31, 2003 Terrorist Attack, Helen N. Smoaks sustained significant injuries, including Tinnitus, a TBI, and PTSD.

f.  Because of these injuries, Helen N. Smoaks is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Shakala Smoaks incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Helen N. Smoaks on July 31, 2003.

### 46. <u>The August 30, 2007 Terrorist Attack – Tarmiyah, Iraq</u>
### Plaintiff: Christopher Sparks Family

a.  Plaintiff Christopher Sparks is a citizen of the United States and is domiciled in the State of Texas.

b.  Plaintiff Monica Rios is a citizen of the United States and is domiciled in the State of Texas. She is the wife of Christopher Sparks.

c.  Christopher Sparks was in the United States Army as a specialist, a part of 18th Cavalry Regiment Echo Company. He deployed to Baghdad, Iraq. On August 30, 2007 Mr. Sparks was the driver of an up-armored Bradley, part of a convoy. They were in route to Forward Operating Base (FOB) Tarmiyah, when an EFP detonated, penetrating the armor. As a result, the Bradley was disabled. Sparks survived the Terrorist Attack.

d.  The August 30, 2007 Terrorist Attack against Christopher Sparks constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[132]

e.  As a result of the August 30, 2007 Terrorist Attack, Christopher Sparks sustained significant injuries, including loss of consciousness followed by a concussion, shrapnel wounds to his right leg, a right eye injury, a TBI, and PTSD.

f.  Because of these injuries, Christopher Sparks is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Monica Rios incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Christopher Sparks on August 30, 2007.

### 47. <u>The February 28, 2006 Terrorist Attack - Baghdad, Iraq</u>
### Plaintiff: Ronnie L. Underwood Family

a.  Plaintiff Ronnie L. Underwood is a citizen of the United States and is domiciled in the State of Virginia.

b.  Plaintiff Betty Underwood is a citizen of the United States and is domiciled in the State of Virginia. She is the wife of Ronnie L. Underwood.

---

[132] *See, e.g.*, *id.* at 15–25, 33.

**121**

c.  Ronnie L. Underwood was in the United States Army as a master sergeant, a part of the 2nd of 338 Unit. He deployed to Baghdad, Iraq. On February 28, 2006, Mr. Underwood was the gunner of an up-armored Humvee, part of a five-vehicle convoy. They were traveling in Baghdad when the entire convoy come under attack from a RPG and small arms fire. Despite fracturing his sternum during the attack, Underwood heroically neutralized the insurgents allowing the convoy to exit the area.

d.  The February 28, 2006 Terrorist Attack against Ronnie L. Underwood constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the February 28, 2006 Terrorist Attack, Ronnie L. Underwood sustained significant injuries, including a fractured sternum, a TBI, and PTSD.

f.  Because of these injuries, Ronnie L. Underwood is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Betty Underwood incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Ronnie L. Underwood on February 28, 2006.

### 48. <u>The May 17, 2011 Terrorist Attack – Al Diwaniyah, Iraq</u>
#### Plaintiff: James W. Hull Family

a.  Plaintiff James W. Hull is a citizen of the United States and is domiciled in the State of Montana.

b.  Plaintiff Christina Hull is a citizen of the United States and is domiciled in the State of Montana. She is the wife of James W. Hull.

c.  Plaintiff Teresa Hull is a citizen of the United States and is domiciled in the State of Montana. She is the mother of James W. Hull.

d.  Plaintiff James Hull is a citizen of the United States and is domiciled in the State of Montana. He is the father of James W. Hull.

e.  James W. Hull was in the United States Army National Guard as a Sergeant, a part of 163rd Infantry Unit. He deployed to Al Diwaniyah, Iraq. On the afternoon of May 17, 2011, Mr. Hull was the passenger in a Mine Resistant Ambush Protected (MRAP) vehicle, part of a six-vehicle convoy. They were on a routine mission from Forward Operating Base (FOB) Al Diwaniyah

to COB Adder in Nasiriyah. Suddenly, an EFP from close proximity was fired at Hull's vehicle, penetrating through the armor. The explosion occurred very close to CP 7B on ASR Orlando in Al Diwaniyah. As a result, the MRAP was disabled and Hull received a Purple Heart.

f.  The May 17, 2011 Terrorist Attack against James W. Hull constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[133]

g.  As a result of the May 17, 2011 Terrorist Attack, James W. Hull sustained significant injuries, including shrapnel wounds to his left forearm, a TBI, PTSD, and Tinnitus.

h.  Because of these injuries, James W. Hull is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Christina Hull, Teresa Hull, and James Hull incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by James W. Hull on May 17, 2011.

### 49. The October 12, 2005 Terrorist Attack - Latifiya, Iraq
### Plaintiff: Cory Donovan Martin Family

a.  Plaintiff Cory Donovan Martin is a citizen of the United States and is domiciled in the State of Alabama.

b.  Plaintiff Hazen Martin is a citizen of the United States and is domiciled in the State of Alabama. He is the son of Cory Donovan Martin.

c.  Plaintiff Hailey Martin is a citizen of the United States and is domiciled in the State of Alabama. She is the daughter of Cory Donovan Martin.

d.  Cory Donovan Martin was in the United States Army. He deployed to Latifiya, Iraq. On October 12, 2005, at approximately 0200 hours, Mr. Martin was in route to pick up solders that were ambushed on a mission. Martin was in the lead vehicle, an up-armored Humvee a part of a convoy of four other vehicles. The convoy was traveling in Latifiya, Iraq. The driver of his Humvee ran over a drain culvert that had several daisy chain IEDs at Grid Point MB 41004149 that exploded underground. As a result, the explosion picked the vehicle up off the ground, blew the antenna off, and it blew off the machine gun upon the mount. Martin survived the Terrorist Attack and received a Purple Heart.

---

[133]*See, e.g.*, *id.* at 15–25, 33.

e. The October 12, 2005 Terrorist Attack against Cory Donovan Martin constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f. As a result of the October 12, 2005 Terrorist Attack, Cory Donovan Martin sustained significant injuries, including a concussion, Tinnitus, PTSD, and a TBI.

g. Because of these injuries, Cory Donovan Martin is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Hazen Martin and Hailey Martin incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Cory Donovan Martin on October 12, 2005.

### 50. The June 18, 2007 Terrorist Attack – Mosul, Iraq
### Plaintiff: Keith Austin Family

a. Plaintiff Keith Austin is a citizen of the United States and is domiciled in the State of Texas.

b. Plaintiff Amber Austin is a citizen of the United States and is domiciled in the State of Texas. She is the daughter of Keith Austin.

c. Keith Austin was a staff sergeant in the United States Army. He deployed to Mosul, Iraq. On June 18 2007, Mr. Austin was headed to Forward Operating Base (FOB) Syke-Rattan Barracuda on a routine mission. Specifically, he was a passenger in a palletized load system Transportation Truck traveling to Nineveh, Iraq. Suddenly, an IED detonated on the side of the road near Mosul and hit the vehicle. As a result, Austin hit his head against the roof of the vehicle with significant force. Austin survived the attack and received a Combat Action Badge.

d. The June 18, 2007 Terrorist Attack against Keith Austin constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. As a result of the June 18, 2007 Terrorist Attack, Keith Austin sustained significant injuries, including a lumbar spinal injury requiring surgery, a TBI, a nose fracture, Tinnitus, and major depressive disorder.

f.  Because of these injuries, Keith Austin is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Amber Austin incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Keith Austin on June 18, 2007.

### 51. <u>The March 23, 2003 Terrorist Attack - Nasiriyah, Iraq</u>
### Plaintiff: Roberto C. Cazares Family

a.  Plaintiff Roberto C. Cazares is a citizen of the United States and is domiciled in the State of South Carolina.

b.  Plaintiff Diego Cazares is a citizen of the United States and is domiciled in the State of New York. He is the son of Roberto C. Cazares.

c.  Roberto C. Cazares was a Corporal in the United States Marines, a part of the Fox Company 2nd Battalion 8 Maines unit. He deployed to Nasiriyah, Iraq. On March 23, 2003, he was involved in combat operations protecting the bridge in Al Nasiriyah against insurgent fighters. On this date, Cazares was struck by the back blast of a M136 AT-4 Light Anti-Armor weapon fired at the enemy and was incapacitated. Cazares survived the attack.

d.  The March 23, 2003 Terrorist Attack against Roberto C. Cazares constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who were responsible for this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[134]

e.  As a proximate result of the March 23, 2003 Terrorist Attack, Roberto C. Cazares sustained significant injuries, including a TBI, PTSD, loss of vision in his right eye, severe depression, severe migraines, and memory loss.[135] More specifically, these injuries are reasonably connected to the March 23, 2003 combat operation against enemy forces who were trained and/or supplied with weapons by Iran.[136]

---

[134] *See* THE WASHINGTON TIMES, *Israeli warns of terrorist training* (Nov 14. 2003), https://www.washingtontimes.com/news/2003/nov/13/20031113-113910-5865r/ ("Israeli Defense Minister Shaul Mofaz said yesterday terrorist bases in Lebanon are training some of the foreign fighters who are moving into Iraq to kill American troops").

[135] *See Karcher*, 396 F. Supp. 3d at 32 (under the FSIA, "Plaintiffs' must establish that Iran's material support or resources were the 'proximate cause' of Plaintiffs' personal injuries….).

[136] *See id.* (quoting *Prosser & Keeton on the Law of Torts*, 263 (5th ed. 1984) ("Proximate cause requires 'some reasonable connection between the act omission of the defendant and the damage which the plaintiff has suffered.'").

f.  Because of these injuries, Roberto C. Cazares is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Diego Cazares incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Roberto C. Cazares on March 23, 2003.

### 52. The August 27, 2007 Terrorist Attack - Basra, Iraq
### Plaintiff: Billy Setliff Family

a.  Plaintiff Billy Setliff is a citizen of the United States and is domiciled in the State of North Carolina.

b.  Plaintiff Lisa Ayn Setliff is a citizen of the United States and is domiciled in the State of North Carolina. She is the wife of Billy Setliff.

c.  Billy Setliff was a master sergeant in the United States Air Force. He deployed to Iraq. On August 27, 2007, Setliff and his patrol were directed to conduct a route clearance of ASR Sioux Falls near Basra for IEDs. During the search, Setliff found an infrared detector designed to trigger a nearby EFP. At this point, the driver of Setliff's vehicle swerved off the road in panic and ran into a ditch. Miraculously, the device did not detonate and Setliff called the Explosively Ordinance Disposal (EOD) team. EOD discovered a five-array EFP, one of the largest EOD had seen in the area, which was ultimately disabled. Because of his heroic actions during the attempted Terrorist Attack, Setliff received the Army Achievement Medal for saving the lives of his team. Nevertheless, the memory of Setliff's near-death experience still haunts him to this day.

d.  The August 27, 2007 Terrorist Attack against Billy Setliff constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[137]

e.  As a result of the August 27, 2007 Terrorist Attack, Billy Setliff sustained significant injuries, including PTSD.

f.  Because of these injuries, Billy Setliff is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Lisa Ayn Setliff incurred

---

[137]*See, e.g.*, *id.* at 15–25, 33.

solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Billy Setliff on August 27, 2007.

### 53. The June 7, 2005 Terrorist Attack – Migdadiyah, Iraq
### Plaintiff: Donnie C. Hendricks Family

a.  Plaintiff Donnie C. Hendricks, Individually and as Next Friend of L.H., a minor, is a citizen of the United States and is domiciled in the State of Georgia.

b.  L.H. is a United States citizen domiciled in the State of Georgia. She is the minor daughter of Donnie C. Hendricks.

c.  Plaintiff Diana Hendricks is a citizen of the United States and is domiciled in the State of Georgia. She is the wife of Donnie C. Hendricks.

d.  Donnie Hendricks was a sergeant in the United States Army a part of the HHC Company, 1st Battalion 30th Infantry Regiment out of Fort Benning, Georgia. He deployed to Migdadiyah, Iraq. On June 7, 2005, Mr. Hendricks was the gunner in an armored Bradley and was going out for a night mission. While on Route Vanessa near Migdadiyah, an IED detonated beside his vehicle and Hendricks was thrown out of the turret. As a result, he was medically evacuated to Balad. Hendricks survived the attack and received a Purple Heart.

e.  The June 7, 2005 Terrorist Attack against Donnie C. Hendricks constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the June 7, 2005 Terrorist Attack, Donnie C. Hendricks sustained significant injuries, including shrapnel wounds to the face, shoulder and arm, chronic shoulder pain, a TBI, bilateral hearing loss, Tinnitus, and PTSD.

g.  Because of these injuries, Donnie C. Hendricks is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Diana Hendricks and L.H. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Donnie C. Hendricks on June 7, 2005.

### 54. <u>The April 12, 2007 Terrorist Attack - Samarra, Iraq</u>
**Plaintiff: Brandon M. White**

a. Plaintiff Brandon M. White is a citizen of the United States and is domiciled in the State of Virginia.

b. Brandon M. White was a specialist in the United States Army assigned to the 82nd Airborne Division out of Fort Bragg, North Carolina. He deployed to Samarra, Iraq. On April 12, 2007, White was the driver of an up-armored Humvee, a part of a four-vehicle convoy, traveling in Samarra. His vehicle was hit with a command detonated IED, causing a hole to be punctured in the armor and everything from the front of the cab forward to be torn off the Humvee. White survived the terrorist attack and received a Purple Heart.

c. The April 12, 2007 Terrorist Attack against Brandon M. White constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the April 12, 2007 Terrorist Attack, Brandon M. White sustained significant injuries, including shrapnel injuries resulting in a fractured right knee, a TBI, PTSD, and Tinnitus.

e. Because of these injuries, Brandon M. White is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 55. <u>The August 12, 2006 Terrorist Attack - Habbaniyah, Iraq</u>
**Plaintiff: Joshua L. Wilding Family**

a. Plaintiff Joshua L. Wilding is a citizen of the United States and is domiciled in the State of Florida.

b. Plaintiff Jessica Wilding is a citizen of the United States and is domiciled in the State of Florida. She is the wife of Joshua L. Wilding.

c. Plaintiff Pamela Lynn Wright is a citizen of the United States and is domiciled in the State of Florida. She is the mother of Joshua L. Wilding.

d. Plaintiff Makala Marie Gandy is a citizen of the United States and is domiciled in the State of Florida. Makala Marie Gandy is the sibling of Joshua L. Wilding.

e. Joshua Wilding was a corporal in the United States Marine Corps a part of the 9th Engineer Support Battalion 3rd FSSG. He deployed to Al Taqqadum, Iraq. On August 12, 2006, Mr. Wilding was travelling through Habbaniyah as a gunner in an up-armored Humvee. He was in the rear vehicle of a fourteen-vehicle convoy. They stopped for a security halt when Mr. Wilding exited the vehicle. The translator in his vehicle attempted to move a trashcan that was placed in their path. The trashcan turned out to be a pressure plated IED, which detonated after the trashcan was moved. As a result, Wilding had to be medically evacuated to the nearest Forward Operating Base to be treated for his injuries. Wilding ultimately survived the Terrorist Attack.

f. The August 12, 2006 Terrorist Attack against Joshua L. Wilding constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g. As a result of the August 12, 2006 Terrorist Attack, Joshua L. Wilding sustained significant injuries, including shrapnel wounds to his left hand resulting in the loss of his middle finger and numerous surgeries, shrapnel wounds in his left leg, a TBI, lower lumbar damage, PTSD, and hearing loss.

h. Because of these injuries, Joshua L. Wilding is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Jessica Wilding, Pamela Lynn Wright, and Makala Marie Gandy incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Joshua L. Wilding on August 12, 2006.

## 56. The June 24, 2005 Terrorist Attack - Baquba, Iraq
### Plaintiff: Frederick J. Silvio

a. Plaintiff Frederick J. Silvio is a citizen of the United States and is domiciled in the State of Massachusetts.

b. Frederick J. Silvio was a sergeant in the United States Army a part 42 Artillery Division. He deployed to Iraq. On June 24 2005, Mr. Silvio was traveling south towards Baquba in an up-armored MM 114 Humvee, a part of a four-vehicle combat patrol. During this mission, Silvio's vehicle took a direct hit from an IED. As a result, the vehicle sustained severe damage and had to be towed back to base. Silvio survived the Terrorist Attack.

c. The June 24, 2005 Terrorist Attack against Frederick J. Silvio constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees,

and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the June 24, 2005 Terrorist Attack, Frederick J. Silvio sustained significant injuries, including mitral valve replacement, spinal injuries, a bilateral leg injury, a TBI, and PTSD.

e.  Because of these injuries, Frederick J. Silvio is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 57. <u>The September 20, 2004 Terrorist Attack - Sadr City, Iraq</u><br>Plaintiff: Shon R. Moore Family

a.  Plaintiff Shon R. Moore, Individually and as Next Friend of A.M., a minor, is a citizen of the United States and is domiciled in the State of Virginia.

b.  A.M. is a United States citizen domiciled in the State of Virginia. She is the minor daughter of Shon R. Moore.

c.  Plaintiff Renee Moore is a citizen of the United States and is domiciled in the State of Virginia. She is the wife of Shon R. Moore.

d.  Shon Moore was a Captain in the United States Army, a part of the 303rd Military Intelligence Battalion, 4th Military Intelligence Brigade out of Fort Hood, Texas. He deployed to Baghdad, Iraq. On September 20, 2004, Mr. Moore was in Sadr City, headed to a live-fire training range. He was in an unarmored Humvee, the third vehicle of a ten-vehicle convoy. Mr. Moore's vehicle ran over a buried IED, which caused shrapnel damage underneath, to the window, and front grill. As a result, the vehicle was disabled and had to be towed back to base. Moore survived the attack and received a Purple Heart.

e.  The September 20, 2004 Terrorist Attack against Shon R. Moore constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the September 20, 2004 Terrorist Attack, Shon R. Moore sustained significant injuries, including shrapnel wounds to his face, chronic migraines, a concussion, a TBI, Tinnitus, chronic low back pain, and PTSD.

g.  Because of these injuries, Shon R. Moore is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Renee Moore and A.M. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Shon R. Moore on September 20, 2004.

### 58. The September 9, 2004 Terrorist Attack – Diyala, Iraq (ASR Dover)
### Plaintiff: John B. Odom Family

a.  Plaintiff John B. Odom is a citizen of the United States and is domiciled in the State of Alabama.

b.  Plaintiff Sandra Dee Odom is a citizen of the United States and is domiciled in the State of Alabama. She is the wife of John B. Odom.

c.  Plaintiff Christopher Odom is a citizen of the United States and is domiciled in the State of Alabama. He is the son of John B. Odom.

d.  John Odom was a sergeant in the Army National Guard a part of the 711th Signal Battalion out of Foley, Illinois. He deployed to Northern Iraq. On September 9, 2004, Odom was headed back to Forward Operating Base McKenzie in Samarra driving an up-armored Humvee, the second vehicle of a three-vehicle convoy. Mr. Odom's vehicle suddenly ran over an IED, which exploded in the right rear. The attack occurred very close to ASR Dover in the Diyala Province. Odom survived the Terrorist Attack.

e.  The September 9, 2004 Terrorist Attack against John B. Odom constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the September 9, 2004 Terrorist Attack, John B. Odom sustained significant injuries, including PTSD and Tinnitus.

g.  Because of these injuries, John B. Odom is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Sandra Dee Odom and Christopher Odom incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by John B. Odom on September 9, 2004.

### 59. The June 25, 2008 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Clayton Lewis Littleton

a. Plaintiff Clayton Lewis Littleton is a citizen of the United States and is domiciled in the State of Oklahoma.

b. Clayton Lewis Littleton was a sergeant in the United States Army a part of the 179th Infantry Regiment out of Oklahoma. He deployed to Baghdad, Iraq. On June 25, 2008, Mr. Littleton was the gunner in an up-armored Suburban that was the third vehicle of a four-vehicle convoy headed to Mosul on a mission. The convoy was in the Rusafa District of Baghdad when a VBIED detonated as Littleton's vehicle entered a turnabout. The shockwave of the nearby blast violently shook Littleton's vehicle. Clayton Littleton survived the attack and received a Combat Action Badge.

c. The June 25, 2008 Terrorist Attack against Clayton Lewis Littleton constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the June 25, 2008 Terrorist Attack, Clayton Lewis Littleton sustained significant injuries, including a TBI, a neck injury requiring two surgeries, nerve damage to both hands, and PTSD.

e. Because of these injuries, Clayton Lewis Littleton is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 60. The April 20, 2008 Terrorist Attack – Sadr City, Iraq
### Plaintiff: Michael Sandeep Wells Family

a. Plaintiff Michael Sandeep Wells is a citizen of the United States and is domiciled in the State of Idaho.

b. Plaintiff Allie Wells is a citizen of the United States and is domiciled in the State of Idaho. She is the wife of Michael Sandeep Wells.

c. Michael Sandeep Wells was a specialist in the United States Army, a part of the 4th Infantry Division, 3rd Brigade Team out of Fort Carson, Colorado. He deployed to FOB Normandy near Baquba, Iraq. On April 20, 2008, Wells was involved in a terrorist attack in Sadr City, Iraq. He was the gunner of a Bradley vehicle that got hit by two RPG(s). Thereafter, an EFP detonated, slicing through the Bradley and causing it to be thrown two feet in the air. Wells was knocked unconscious. After regaining consciousness, Wells identified and neutralized an

EFP triggermen, enabling his platoon to continue the mission. Because of his heroic actions, he received a Bronze Star.

d.  The April 20, 2008 Terrorist Attack against Michael Sandeep Wells constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[138]

e.  As a result of the April 20, 2008 Terrorist Attack, Michael Sandeep Wells sustained significant injuries, including a TBI, migraines, a spinal injury causing back pain, Tinnitus, and PTSD.

f.  Because of these injuries, Michael Sandeep Wells is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Allie Wells incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Michael Sandeep Wells on April 20, 2008.

## 61. <u>The September 8, 2009 Terrorist Attack - Baiji, Iraq</u><br>Plaintiff: Zachary Christopher Martinez Family

a.  Plaintiff Zachary Christopher Martinez is a citizen of the United States and is domiciled in the State of Tennessee.

b.  Plaintiff Jessica Martinez is a citizen of the United States and is domiciled in the State of Oregon. She is the wife of Zachary Christopher Martinez.

c.  Zachary C. Martinez was in the United States Army as a Specialist; a part of the 545th Military Police Company. He was deployed to Baiji, Iraq. On September 8, 2009, Martinez was the driver of the third vehicle, an up-armored Cayman Plus Mine-Resistant Ambush Protected (MRAP) vehicle that was a part of a four-vehicle convoy. The convoy was travelling east on Salah Ad Din Street heading towards Bayji JCC. Suddenly, the rear vehicle was struck from the driver's side by an EFP. The EFP blew the rear doors off the rear vehicle and the blast force blew the turret off also. As a result, every soldier in the fourth vehicle tragically were KIA, including SSG Shannon M. Smith and SPC Zachary T. Myers. However, Zachary Martinez survived the Terrorist Attack and received a Combat Action Badge.

d.  The September 8, 2009 Terrorist Attack against Zachary Christopher Martinez constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials,

---

[138]*See, e.g.*, *id.* at 15–25, 33.

employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[139]

e.  As a result of the September 8, 2009 Terrorist Attack, Zachary Christopher Martinez sustained significant injuries, including PTSD, Tinnitus, and a lower back injury.

f.  Because of these injuries, Zachary Christopher Martinez is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Jessica Martinez incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Zachary Christopher Martinez on September 8, 2009.

### 62. The February 13, 2006 Terrorist Attack - Fallujah, Iraq (Tariq Camp)
### Plaintiff: Leslie Byrd Lowe Family

a.  Plaintiff Leslie Byrd Lowe, Individually and as Next Friend of T.L., a minor, is a citizen of the United States and is domiciled in the State of Georgia.

b.  T.L. is a United States citizen domiciled in the State of Georgia. He is the minor son of Leslie Byrd Lowe.

c.  Plaintiff Jane R. Lowe is a citizen of the United States and is domiciled in the State of Georgia. She is the wife of Leslie Byrd Lowe.

d.  Plaintiff Deontae Gaskins is a citizen of the United States and is domiciled in the State of Virginia. He is the son of Leslie Byrd Lowe.

e.  Plaintiff Joshua Lowe is a citizen of the United States and is domiciled in the State of Georgia. He is the son of Leslie Byrd Lowe.

f.  Leslie Byrd Lowe was a specialist in the Georgia State National Guard a part of the 48th Brigade out of Fort Stewart, Georgia. He deployed to Mahmudiya, Iraq. On February 13, 2006, Mr. Lowe was on Route 54 escorting a supply convoy of 18-wheelers to Nasiriyah. He was the gunner in the third up-armored Humvee of nine other vehicles. Two IEDs suddenly struck the right side of the Humvee in Fallujah (near Tariq Camp) penetrating through the armor. As a result, Lowe received a Combat Infantryman Badge.

g.  The February 13, 2006 Terrorist Attack against Leslie Byrd Lowe constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees,

---

[139]*See, e.g.*, *id.* at 15–25, 33.

and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

h.  As a result of the February 13, 2006 Terrorist Attack, Leslie Byrd Lowe sustained significant injuries, including TBI, PTSD, right ear hearing loss, bilateral Tinnitus.

i.  Because of these injuries, Leslie Byrd Lowe is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Jane R. Lowe, Deontae Gaskins, Joshua Lowe, and T.L. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Leslie Byrd Lowe on February 13, 2006.

### 63. The June 6, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Dustin Hershel Brown Family

a.  Plaintiff Dustin Hershel Brown, Individually and as Next Friend of L.B., a minor, is a citizen of the United States and is domiciled in the State of Oklahoma.

b.  L.B. is a United States citizen domiciled in the State of Oklahoma. He is the minor son of Dustin Hershel Brown.

c.  Plaintiff Alexander Brown is a citizen of the United States and is domiciled in the State of Oklahoma. He is the son of Dustin Hershel Brown.

d.  Plaintiff Terri Guthrie is a citizen of the United States and is domiciled in the State of Oklahoma. She is the mother of Dustin Hershel Brown.

e.  Plaintiff Hershel Brown is a citizen of the United States and is domiciled in the State of Oklahoma. He is the father of Dustin Hershel Brown.

f.  Dustin Hershel Brown was a staff sergeant in the United States Army a part of the C Company of the First Battalion out of Fort Riley, Kansas. He deployed to Baghdad, Iraq. On June 6, 2005, Mr. Brown was providing route security in Baghdad along with his entire platoon that was tasked with a clearance of their area of operations. He was in the back of the fifth Bradley Fighting Vehicle in a convoy of six other vehicles. Two IEDs were triggered by the convoy, the first one hit the left rear of his Bradley exploding on contact. Brown survived the terrorist attack.

g.  The June 6, 2005 Terrorist Attack against Dustin Hershel Brown constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

h. As a result of the June 6, 2005 Terrorist Attack, Dustin Hershel Brown sustained significant injuries, including a TBI, PTSD, migraines, Tinnitus, vertigo, and hearing loss.

i. Because of these injuries, Dustin Hershel Brown is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Alexander Brown, Terri Guthrie, Hershel Brown, and L.B. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Dustin Hershel Brown on June 6, 2005.

### 64. <u>The December 10, 2003 Terrorist Attack - Fallujah, Iraq</u>
### <u>Plaintiff: Robert Conley Fleming Family</u>

a. Plaintiff Robert Conley Fleming is a citizen of the United States and is domiciled in the State of New York.

b. Plaintiff April M Fleming is a citizen of the United States and is domiciled in the State of New York. She is the wife of Robert Conley Fleming.

c. Robert Fleming served in the United States Army as a Private First Class in the Alpha Company, 32nd Infantry Regiment, out of Fort Drum, New York. He was deployed to Fallujah, Iraq. On December 10, 2003, Fleming was on a mission escorting 18-wheeler trucks to the Mayor's Office in Al Fallujah. Fleming was located in the turret of an unarmored Humvee, part of an 8 vehicle convoy. At this time, Fleming was traveling in the Clover Leaf area known for terrorist activity. Suddenly, Fleming's Humvee was struck by an IED on the passenger's side. The ensuing explosion threw Fleming against the turret with significant force. Fleming was medically evacuated to Baghdad then to Landstuhl, Germany as a result of this Terrorist Attack. Fleming survived and was awarded a Purple Heart.

d. The December 10, 2003 Terrorist Attack against Robert Conley Fleming constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. As a result of the December 10, 2003 Terrorist Attack, Robert Conley Fleming sustained significant injuries, including a complete amputation of his nose, facial scarring, shrapnel wounds in his face, arms, and back, a TBI and PTSD.

f. Because of these injuries, Robert Conley Fleming is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, April M Fleming incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Robert Conley Fleming on December 10, 2003.

## 65. The April 20, 2008 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Nathan E Green

a. Plaintiff Nathan E Green is a citizen of the United States and is domiciled in the State of New York.

b. Nathan E. Green was a Captain in the United States Air Force a part of the Air Force Military Liaison out of Maryland. He deployed to Baghdad, Iraq. On April 20, 2008, Mr. Green was at the United States Embassy in Baghdad when he a rocket attack occurred. While running towards a bunker for cover, a 122mm rocket landed and exploded about 30 feet away from Green. As a result, he was knocked unconscious. Green survived the terrorist attack and received a Purple Heart.

c. The April 20, 2008 Terrorist Attack against Nathan E Green constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[140]

d. As a result of the April 20, 2008 Terrorist Attack, Nathan E Green sustained significant injuries, including loss of consciousness, a TBI, obstructive sleep apnea, vertigo, temporomandibular joint disorder, PTSD, migraine headaches, and bilateral Tinnitus.

e. Because of these injuries, Nathan E Green is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 66. The September 8, 2004 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Brian William Howard Family

a. Plaintiff Brian William Howard is a citizen of the United States and is domiciled in the State of Illinois.

---

[140] *See* Ware, *Inside Iran's Secret War for Iraq*, TIME, Aug. 15, 2005 (reporting that Iran shipped weapons like 107mm and 122mm rockets across the border to Iraq).

b. Plaintiff Sandra M. Howard is a citizen of the United States and is domiciled in the State of Illinois. She is the wife of Brian William Howard.

c. Brian Howard was a Private First Class in the United States Army a part of the 20th Engineer Battalion out of Fort Hood, Texas. He deployed to Baghdad, Texas. On September 8, 2004, Howard was conducting a counter-IED sweep in Baghdad. He was the driver of an up-armored Humvee, a part of a two-vehicle convoy. An IED suddenly detonated at the back right side of the vehicle causing shrapnel to go through gunner's hatch. Howard sustained a severe head injury requiring surgery but survived the Terrorist Attack.

d. The September 8, 2004 Terrorist Attack against Brian William Howard constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. As a result of the September 8, 2004 Terrorist Attack, Brian William Howard sustained significant injuries, including shrapnel in his head requiring surgery, a severe TBI, and PTSD.

f. Because of these injuries, Brian William Howard is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Sandra M. Howard incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Brian William Howard on September 8, 2004.

### 67. <u>The May 2, 2004 Terrorist Attack - Iskandariyah, Iraq</u>
### Plaintiff: Adam Thomas Ritterbeck

a. Plaintiff Adam Thomas Ritterbeck is a citizen of the United States and is domiciled in the State of Ohio.

b. Adam T. Ritterbeck was a specialist in the United States Army a part of the 501st Military Battalion 1st Armored Division out of Germany. He deployed to Iskandariyah, Iraq. On May 2, 2004, Mr. Ritterbeck was the gunner in an unarmored Humvee, the second vehicle of a six-vehicle convoy. While traveling near Iskandariyah, a daisy chain IED detonated on the left side of vehicle. Ritterbeck's vehicle sustained shrapnel damage to the left side that also went through the windows. As a result of this attack, the driver of Ritterbeck's vehicle crashed into the Bradley Fighting Vehicle directly ahead. Ritterbeck survived the terrorist attack and received a Purple Heart.

c.  The May 2, 2004 Terrorist Attack against Adam Thomas Ritterbeck constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the May 2, 2004 Terrorist Attack, Adam Thomas Ritterbeck sustained significant injuries, including a left ankle fracture requiring surgery, a TBI, PTSD, and Tinnitus.

e.  Because of these injuries, Adam Thomas Ritterbeck is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 68. <u>The June 16, 2007 Terrorist Attack – Baghdad, Iraq</u>
### Plaintiff: Omar Rivera-Lugo Family

a.  Plaintiff Omar Rivera-Lugo is a citizen of the United States and is domiciled in the State of Florida.

b.  Plaintiff Mariuxi Rivera is a citizen of the United States and is domiciled in the State of Florida. She is the wife of Omar Rivera-Lugo.

c.  Omar Riveralugo was a sergeant in the United States Army. He deployed to Ramadi, Iraq. On June 16, 2007, Omar Rivera-Lugo was in Baghdad on the way back from a mission. Riveralugo was driving the lead vehicle in a four Humvee convoy. Around 3:00am, as Rivera turned left on Furniture Road, a RPG was fired toward Riveralugo's vehicle followed by small arms fire. Riveralugo was then engaged in fire-fight for about thirty (30) minutes. The insurgents were trying to push Rivera and his unit into an IED ahead. However, during the chaos, Rivera fired hundreds of rounds from his M4 at the insurgents and successfully fought off the enemy. As a result of his heroic actions, Rivera received an Army Commendation Medal and a Purple Heart.

d.  The June 16, 2007 Terrorist Attack against Omar Rivera-Lugo constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[141]

---

[141] Lathem, *House of Jihad* (Feb. 5, 2007), THE N.Y. POST, https://nypost.com/2007/02/05/house-of-jihad/ (Hezbollah chief Hassan Nasrallah announcing that they support the adoption of an armed "jihad" resistance against American occupation forces in Iraq).

e. As a result of the June 16, 2007 Terrorist Attack, Omar Rivera-Lugo sustained significant injuries, including a TBI, PTSD, migraines, and Tinnitus.

f. Because of these injuries, Omar Rivera-Lugo is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Mariuxi Rivera incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Rivera-Lugo on June 16, 2007.

## 69. The November 13, 2003 Terrorist Attack - Fallujah, Iraq
### Plaintiff: Christopher R. Toey

a. Plaintiff Christopher R. Toey is a citizen of the United States and is domiciled in the State of Maryland.

b. Christopher R. Toey was a Specialist in The United States Army, assigned to the 504th Parachute Infantry Regiment. He deployed to Fallujah, Iraq. On the night of November 13, 2003, Toey was involved in a rocket attack while on foot patrol in Fallujah where a rocket exploded ten meters away from him. As a result, Toey was treated for his injuries in Baghdad, Iraq then flown to Landstuhl, Germany for a week. Furthermore, Toey was then transported to Fort Bragg, North Carolina for surgical treatment on his right arm. Christopher Toey survived the Terrorist Attack and received a Purple Heart.

c. The November 13, 2003 Terrorist Attack against Christopher R. Toey constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited tactical training and to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[142]

d. As a result of the November 13, 2003 Terrorist Attack, Christopher R. Toey sustained significant injuries, including shrapnel wounds, and PTSD.

e. Because of these injuries, Christopher R. Toey is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

---

[142] *See* Ware, *Inside Iran's Secret War for Iraq*, TIME, Aug. 15, 2005 (reporting that Iran shipped weapons like 107mm and 122mm rockets across the border to Iraq).

## 70. <u>The March 7, 2007 Terrorist Attack - Baghdad, Iraq</u>
### Plaintiff: Jordan Reese

a.  Plaintiff Jordan Reese is a citizen of the United States and is domiciled in the State of Minnesota.

b.  Jordan J. Reese enlisted in the United States Army and served in the 1st Infantry Division. Reese was deployed from Germany to Baghdad, Iraq. On March 7, 2007 Reese was traveling in Northern Baghdad in a 4 vehicle convoy to grab concrete barriers from a site. Suddenly, Mr. Reese's unarmored Humvee hit an IED buried in the ground. The ensuing shrapnel explosion penetrated through Reese's Humvee. As a result of injuries sustained in this Terrorist Attack, Reese was medevacked to Germany and later transported to Walter Reed Military Center in Maryland. Reese survived and was awarded a Purple Heart.

c.  The March 7, 2007 Terrorist Attack against Jordan Reese constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the March 7, 2007 Terrorist Attack, Jordan Reese sustained significant injuries, including a partial amputation of his left foot, a TBI, and PTSD.

e.  Because of these injuries, Jordan Reese is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 71. <u>The May 12, 2004 Terrorist Attack - Ramadi, Iraq</u>
### Plaintiff: Rudy Contreras

a.  Plaintiff Rudy Contreras is a citizen of the United States and is domiciled in the State of California.

b.  Rudy Contreras was a Seaman in the United States Navy. On May 12, 2004, Mr. Contreras was the rear passenger in the third vehicle of a six-vehicle convoy. The convoy was en route to their Forward Operating Base in Ramadi, FOB Hurricane, when an IED detonated about 2-3 meters away from Contreras. Contreras survived the Terrorist Attack and was awarded a Purple Heart, a Navy Accommodation Medal with Valor, and a Combat Action Badge.

c.  The May 12, 2004 Terrorist Attack against Rudy Contreras constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the May 12, 2004 Terrorist Attack, Rudy Contreras sustained significant injuries, including a TBI, PTSD, and shrapnel wounds.

e.  Because of these injuries, Rudy Contreras is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 72. The September 8, 2009 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Jon Kone Family

a.  Plaintiff Jon Kone is a citizen of the United States and is domiciled in the State of California.

b.  Plaintiff Sarah Jesse-Kone is a citizen of the United States and is domiciled in the State of California. She is the wife of Jon Kone.

c.  Jon Kone was in the United States Air Force as a Sergeant in the 832nd EFSS. He was deployed to Baghdad, Iraq. On September 8, 2009, Mr. Kone was undergoing a mission to see the Iraqi Police. He was driving a Humvee in a convoy of three other vehicles. Suddenly, an EFP struck the right side of Kone's Humvee in Baghdad, penetrating through the passenger door. As a result, the vehicle was disabled but Kone survived the attack.

d.  The September 8, 2009 Terrorist Attack against Jon Kone constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[143]

e.  As a result of the September 8, 2009 Terrorist Attack, Jon Kone sustained significant injuries, including a spinal cord cyst, a back injury, and PTSD.

f.  Because of these injuries, Jon Kone is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Sarah Jesse-Kone incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Jon Kone on September 8, 2009.

---

[143]*See, e.g.*, *Karcher,* 396 F. Supp. 3d at 15-25, 33.

### 73. The April 28, 2008 Terrorist Attack - Sadr City, Iraq
### Plaintiff: Alfred Pardo Family

a.  Plaintiff Alfred Pardo is a citizen of the United States and is domiciled in the State of Texas.

b.  Plaintiff Mary Figueroa is a citizen of the United States and is domiciled in the State of Texas. She is the mother of Alfred Pardo.

c.  Alfred Pardo was in the United States Army as Specialist in the 25th Battalion, 114th Division. He was deployed to Sadr City, Iraq. On April 28, 2008, Mr. Pardo was the passenger in the lead vehicle of a four-vehicle convoy. He was on a patrol in Sadr City when his vehicle ran over an IED that penetrated the engine block and disabled the vehicle. As a result, Mr. Pardo was awarded a Purple Heart and a Combat Action Badge.

d.  The April 28, 2008 Terrorist Attack against Alfred Pardo constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the April 28, 2008 Terrorist Attack, Alfred Pardo sustained significant injuries, including a TBI, PTSD, and Tinnitus.

f.  Because of these injuries, Alfred Pardo is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Mary Figueroa incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Alfred Pardo on April 28, 2008.

### 74. The June 16, 2004 Terrorist Attack - Baqubah, Iraq
### Plaintiff: Yvon D. Singh Family

a.  Plaintiff Yvon D. Singh is a citizen of the United States and is domiciled in the State of Texas.

b.  Plaintiff Ulrike Singh is a citizen of the United States and is domiciled in the State of Texas. She is the wife of Yvon D. Singh.

c.  Yvon D. Singh was in the United States Army as a Command Sergeant Major in the 16th Artillery Battalion, 1st Infantry Division. He was deployed to the Baqubah, Iraq in the Diyala Province. On June 16, 2004, Mr. Singh was the passenger of the lead vehicle in a 7-8 vehicle convoy traveling in Baqubah. Suddenly, Mr. Singh's vehicle ran over an IED. The ensuing blast caused Singh's vehicle to flip on the driver's side. As a result, Mr. Singh was awarded a Combat Action Badge.

d. The June 16, 2004 Terrorist Attack against Yvon D. Singh constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. As a result of the June 16, 2004 Terrorist Attack, Yvon D. Singh sustained significant injuries, including a TBI, PTSD, and a spinal injury requiring use of a cane.

f. Because of these injuries, Yvon D. Singh is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Ulrike Singh incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Yvon D. Singh on June 16, 2004.

### 75. <u>The March 19, 2005 Terrorist Attack - Kirkuk, Iraq</u><br>Plaintiff: Justin Adam Shephard Family

a. Plaintiff Justin Adam Shephard is a citizen of the United States and is domiciled in the State of Alabama.

b. Plaintiff Edie M. Shephard is a citizen of the United States and is domiciled in the State of Alabama. She is the wife of Justin Adam Shephard.

c. Justin Shephard was an Airman First Class in the United States Air Force. He was deployed to Kirkuk, Iraq. On March 19, 2005, Mr. Shephard was on a mission near a small mountain outside of Kirkuk. He was the gunner of an unarmored Humvee that was the lead vehicle of a three-vehicle convoy. As they approached the top of the mountain, Mr. Shephard heard a loud explosion. The second vehicle in the convoy then ran over a pressure-plated IED and sustained significant damage. Shephard was knocked unconscious but the convoy was able to capture the enemy insurgents responsible for the attack.

d. The March 19, 2005 Terrorist Attack against Justin Adam Shephard constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. As a result of the March 19, 2005 Terrorist Attack, Justin Adam Shephard sustained significant injuries, including loss of consciousness, a TBI, PTSD, headaches, and hearing loss.

f.  Because of these injuries, Justin Adam Shephard is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Edie M. Shephard incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Justin Adam Shephard on March 19, 2005.

### 76. The October 11, 2006 Terrorist Attack – Baghdad, Iraq
### Plaintiff: Kyle Rasche Family

a.  Plaintiff Kyle Rasche is a citizen of the United States and is domiciled in the State of Missouri.

b.  Plaintiff Andrea Rasche is a citizen of the United States and is domiciled in the State of Missouri. She is the wife of Kyle Rasche.

c.  Kyle Rasche was a Sergeant in the United States Army in the Trolley Crew, 414th Calvary Unit. He was deployed to Rawa, Iraq. On October 11, 2006, Rasche was in a convoy of 3 Stryker vehicles in Baghdad on Route Budweiser. About halfway down the roadway, the convoy drove up to a mosque. At this point, an EFP detonated between the 2nd and 3rd wheel. As a result of the explosion, Army Sgt. Nicholas R. Sowinski was tragically KIA. Rasche survived the attack and received a Purple Heart.

d.  The October 11, 2006 Terrorist Attack against Kyle Rasche constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[144]

e.  As a result of the October 11, 2006 Terrorist Attack, Kyle Rasche sustained significant injuries, including a TBI, PTSD, a concussion, Tinnitus, and migraines.

f.  Because of these injuries, Kyle Rasche is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Andrea Rasche incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Kyle Rasche on October 11, 2006.

### 77. The June 9, 2006 Terrorist Attack - Hit, Iraq
### Plaintiff: Bela F. Ponyi Family

a.  Plaintiff Bela F. Ponyi is a citizen of the United States and is domiciled in the State of Illinois.

---

[144]*See, e.g.*, *id.* at 15–25, 33.

**145**

b. Plaintiff Posie Williams is a citizen of the United States and is domiciled in the State of Alabama. She is the mother of Bela F. Ponyi.

c. Plaintiff Bill Ponyi is a citizen of the United States and is domiciled in the State of Michigan. He is the father of Bela F. Ponyi.

d. Plaintiff Deandre Rush is a citizen of the United States and is domiciled in the State of Alabama. Deandre Rush is the sibling of Bela F. Ponyi.

e. Bela E. Ponyi was a Sergeant in the United States Army in the 1-37 Brigade, 1st Armor Division. He was deployed to Hit, Iraq. On June 9, 2006, Mr. Ponyi was the gunner in an unarmored Humvee that was the second vehicle in a four-vehicle convoy. They were on a patrol crossing an intersection in Hit when an IED detonated and struck Mr. Ponyi's vehicle. As a result, the Explosive Ordnance Disposal team came to investigate the blast further. Ponyi survived the attack.

f. The June 9, 2006 Terrorist Attack against Bela F. Ponyi constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g. As a result of the June 9, 2006 Terrorist Attack, Bela F. Ponyi sustained significant injuries, including PTSD and Tinnitus.

h. Because of these injuries, Bela F. Ponyi is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Posie Williams, Bill Ponyi, and Deandre Rush incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Bela F. Ponyi on June 9, 2006.

## 78. The January 25, 2010 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Christopher Eggleston

a. Plaintiff Christopher Eggleston is a citizen of the United States and is domiciled in the State of California.

b. Christopher Eggleston was a specialist in the United States Army in the Bravo Company, 369 Armoured Reconnaissance Battalion out of Fort Stewart, Georgia. He was deployed to Baghdad, Iraq. On January 25, 2010, Mr. Eggleston was the rear passenger in an Mine-Resistant Ambush Protected (MRAP) vehicle that was the second vehicle of a four-vehicle

convoy. They were on a mission in Baghdad when an EFP struck approximately ten feet away from the MRAP at an angle. As a result, the MRAP was completely disabled and Eggleston received a Combat Action Badge.

c.  The January 25, 2010 Terrorist Attack against Christopher Eggleston constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[145]

d.  As a result of the January 25, 2010 Terrorist Attack, Christopher Eggleston sustained significant injuries, including PTSD, a TBI, and Tinnitus.

e.  Because of these injuries, Christopher Eggleston is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 79. The January 16, 2008 Terrorist Attack - Nasiriyah, Iraq
### Plaintiff: David C. Underwood Family

a.  Plaintiff David C. Underwood, Individually and as Next Friend of A.U. and T.U., minors, is a citizen of the United States and is domiciled in the State of Virginia.

b.  A.U. is a United States citizen domiciled in the State of Texas. She is the minor daughter of David C. Underwood.

c.  T.U. is a United States citizen domiciled in the State of Texas. He is the minor son of David C. Underwood.

d.  David C. Underwood was a Major in the United States Army and was deployed to Nasiriyah, Iraq On January 16, 2008, Mr. Underwood was leading a six man dismount patrol on foot in Nasiriyah. Suddenly, an IED was detonated by a pressure strip known as a "blasting liquid cap charge." This technology is tied to Iran. As a result of the ensuing shrapnel, Underwood had emergency surgery in the Baghdad Green Zone Hospital. Underwood was later transported to Landsthul, Germany and to Walter Reed Medical Center in Maryland for treatment. Underwood survived the Terrorist Attack.

e.  The January 16, 2008 Terrorist Attack against David C. Underwood constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who

---

[145]*See, e.g.*, *id.* at 15–25, 33.

committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the January 16, 2008 Terrorist Attack, David C. Underwood sustained significant injuries, including a left arm amputation below the elbow, a TBI, and hypertension.

g.  Because of these injuries, David C. Underwood is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, A.U. and T.U. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by David C. Underwood on January 16, 2008.

### 80. The September 14, 2006 Terrorist Attack - Baghdad (Camp Liberty), Iraq
### Plaintiff: Walter Kroptavich

a.  Plaintiff Walter Kroptavich is a citizen of the United States and is domiciled in the State of Virginia.

b.  Walter Kroptavich was a Specialist in The United States Army and was deployed to Camp Liberty in Baghdad, Iraq. On September 14, 2006, while conducting security operations, a VBIED filled with approximately 1000 pounds of explosives detonated near Kroptavich. Specifically, the VBIED exploded at 14:35 next to Kropativh's command and control center near his living quarters at Camp Liberty. The force of the VBIED explosion threw concrete against his back. As a result of his ensuing injuries, Kroptavich received a Purple Heart.

c.  The September 14, 2006 Terrorist Attack against Walter Kroptavich constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the September 14, 2006 Terrorist Attack, Walter Kroptavich sustained significant injuries, including a nerve injury in his back causing chronic back pain, post-traumatic headaches, and PTSD.

e.  Because of these injuries, Walter Kroptavich is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

**81. The December 25, 2006 Terrorist Attack – Baqubah, Iraq**
**Plaintiff: Matthew Johnson Family**

a. Plaintiff Matthew Johnson, Individually and as Next Friend of M.J., a minor, is a citizen of the United States and is domiciled in the State of North Carolina.

b. M.J. is a United States citizen domiciled in the State of North Carolina. She is the minor daughter of Matthew Johnson.

c. Plaintiff Heather Johnson is a citizen of the United States and is domiciled in the State of North Carolina. She is the wife of Matthew Johnson.

d. Mr. Matthew Johnson was in the United States Army as a Private First Class apart of 1-23 Bravo Company out of Fort Lewis, Washington. He was deployed to Camp Liberty in Baghdad, Iraq. On December 25, 2006, Mr. Johnson was leaving a military facility in Baqubah after getting supplies. He was the driver in the third Stryker vehicle of four others. An EFP suddenly struck the front of the vehicle penetrating the engine block and the steering column. Johnson survived the terrorist attack.

e. The December 25, 2006 Terrorist Attack against Matthew Johnson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[146]

f. As a result of the December 25, 2006 Terrorist Attack, Matthew Johnson sustained significant injuries, including a lumbar injury, a TBI resulting in a neurocognitive disorder, and bilateral Tinnitus.

g. Because of these injuries, Matthew Johnson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Heather Johnson and M.J. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Matthew Johnson on December 25, 2006.

**82. The September 6, 2006 Terrorist Attack - Ramadi, Iraq**
**Plaintiff: Brian Helm**

a. Plaintiff Brian Helm is a citizen of the United States and is domiciled in the State of Kentucky.

---

[146]*See, e.g.*, *id.* at 15–25, 33.

b.  Brian Helm was a Specialist in the United States Army and deployed to Iraq. On September 6, 2006, Helms was in Ramadi on foot patrol when an IED with copper lining containing mortar and artillery shells detonated. The explosion occurred approximately ten feet in front of Helm. As a result, Sgt. John Carroll was tragically killed in action. Furthermore, other soldiers, including Brian Helm, sustained serious injuries.

c.  The September 6, 2006 Terrorist Attack against Brian Helm constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the September 6, 2006 Terrorist Attack, Brian Helm sustained significant injuries, including a TBI, PTSD, a lower back injury requiring surgery, Tinnitus, and hearing loss.

e.  Because of these injuries, Brian Helm is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 83. The February 16, 2005 Terrorist Attack – Ramadi, Iraq
### Plaintiff: Corey D. Irey

a.  Plaintiff Corey D. Irey is a citizen of the United States and is domiciled in the State of Texas.

b.  Corey D. Irey was a Specialist in the United States Army. He deployed to Ramadi, Iraq. On February 16, 2005, Irey was driving a Bradley vehicle during a combat operation in Ramadi. The vehicle ran over an IED and the ensuing explosion caused severe damage. As a result, Army Staff Sergeant Jason R. Hendrix was killed in action. However, Irey survived the Terrorist Attack.

c.  The February 16, 2005 Terrorist Attack against Corey D. Irey constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the February 16, 2005 Terrorist Attack, Corey D. Irey sustained significant injuries, including a TBI and PTSD, and a herniated disc ultimately requiring surgery.

e. Because of these injuries, Corey D. Irey is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 84. <u>The October 17, 2003 Terrorist Attack - Tikrit, Iraq</u>
### Plaintiff: Willie L. Turner Family

a. Plaintiff Willie L. Turner is a citizen of the United States and is domiciled in the State of Florida.

b. Plaintiff Cassandra Snipes is a citizen of the United States and is domiciled in the State of Florida. She is the mother of Willie L. Turner.

c. Mr. Willie Turner was in the United States Army as a Specialist apart of the 501st Forward Support Company out of Vicenza, Italy. He was deployed to Kirkuk, Iraq. On October 17, 2003, Mr. Turner was between Tikrit and Kirkuk, on the main road that lead to Saddam Hussein's palace, headed back to the military base after completing a mission. He was the communications person in the passenger's seat of a M923 five-ton truck of eight other vehicles in the convoy. An IED suddenly struck beneath the right side of the vehicle exploding on contact. As a result, Mr. Turner was awarded a Purple Heart.

d. The October 17, 2003 Terrorist Attack against Willie L. Turner constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. As a result of the October 17, 2003 Terrorist Attack, Willie L. Turner sustained significant injuries, including loss of consciousness, a spinal injury resulting in chronic back pain, headaches, and PTSD.

f. Because of these injuries, Willie L. Turner is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Cassandra Snipes incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Willie L. Turner on October 17, 2003.

## 85. <u>The November 20, 2004 Terrorist Attack - Baghdad, Iraq</u>
### Plaintiff: Joseph Downing Sr. Family

a. Plaintiff Joseph Downing Sr. is a citizen of the United States and is domiciled in the State of New Hampshire.

**151**

b.  Plaintiff Sarah Downing is a citizen of the United States and is domiciled in the State of New Hampshire. She is the wife of Joseph Downing Sr.

c.  Plaintiff Joseph Downing Jr. is a citizen of the United States and is domiciled in the State of New Hampshire. He is the son of Joseph Downing Sr.

d.  Joseph Downing Sr. was a first lieutenant in the United States Army, part of the 95 MP Company. On November 20, 2004, in the afternoon, Downing Sr. was in a convoy of about 75 vehicles. He was the truck commander of an up-armored Humvee. The convoy was passing through a checkpoint in Baghdad and came into contact with some small arms fire. After clearing the kill zone, the vehicle driving directly behind Mr. Downing Sr.'s was hit by an IED. The ensuing explosion damaged this vehicle and Downing's vehicle. Downing survived the attack.

e.  The November 20, 2004 Terrorist Attack against Joseph Downing Sr. constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the November 20, 2004 Terrorist Attack, Joseph Downing Sr. sustained significant injuries, including a TBI, PTSD, a neck injury, a spinal injury in his C5-C6 vertebrae, muscular damage in his right arm, a left shoulder injury, and a knee injury ultimately requiring a knee replacement.

g.  Because of these injuries, Joseph Downing Sr. is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Sarah Downing and Joseph Downing Jr. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Joseph Downing Sr. on November 20, 2004.

## 86. The May 10, 2004 Terrorist Attack - Hit, Iraq
### Plaintiff: John D. Shahin Family

a.  Plaintiff John D. Shahin is a citizen of the United States and is domiciled in the State of Florida.

b.  Plaintiff Barbara Shahin is a citizen of the United States and is domiciled in the State of Florida. She is the mother of John D. Shahin.

c.  Plaintiff David Shahin is a citizen of the United States and is domiciled in the State of Florida. He is the father of John D. Shahin.

d.   Plaintiff Amy Shahin is a citizen of the United States and is domiciled in the State of Minnesota. Amy Shahin is the sibling of John D. Shahin.

e.   Plaintiff Mark Shahin is a citizen of the United States and is domiciled in the State of Florida. Mark Shahin is the sibling of John D. Shahin.

f.   John D. Shahin served in the United States Marine Corps as a Corporal. Shahin was deployed to Hit, Iraq. On May 10, 2004 Shahin was traveling in an up-armored Humvee as the second vehicle in a four vehicle convoy. Earlier that day, Shahin and his fellow soldiers had arrested around 20 insurgents from a terrorist-occupied house in Hit, Iraq. The convoy had to return to the house to retrieve additional ammunition. When the soldiers reached the house, an IED left by one of the insurgents was detonated. The ensuing shrapnel explosion struck Shahin's vehicle penetrating it from the right side.

g.   The May 10, 2004 Terrorist Attack against John D. Shahin constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

h.   As a result of the May 10, 2004 Terrorist Attack, John D. Shahin sustained significant injuries, including long thoracic nerve damage, a TBI, PTSD, Tinnitus, hearing loss, a back injury, a hip injury, a knee injury, vertigo, and eye sight issues.

i.   Because of these injuries, John D. Shahin is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Barbara Shahin, David Shahin, Amy Shahin, and Mark Shahin incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by John D. Shahin on May 10, 2004.

### 87. The October 29, 2008 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Christopher G. Gomes

a.   Plaintiff Christopher G. Gomes is a citizen of the United States and is domiciled in the State of Massachusetts.

b.   Christopher G. Gomes was a sergeant in the United States Army, part of the 535th Engineer Company out of Germany. He deployed to Iraq. On October 29, 2008, Mr. Gomes was the truck commander of an up-armored Mine Resistant Ambush Protected (MRAP) vehicle, the lead of a fifteen-vehicle convoy. While returning to Camp Victory from a mission, Mr. Gomes'

vehicle was struck by an EFP in Baghdad. The EFP penetrated through the vehicle from the right side. As a result, the vehicle was disabled and Christopher G. Gomes was medically evacuated. Gomes' leg was amputated as a result of the attack but he survived. Accordingly, Gomes received a Purple Heart.

c.  The October 29, 2008 Terrorist Attack against Christopher G. Gomes constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[147]

d.  As a result of the October 29, 2008 Terrorist Attack, Christopher G. Gomes sustained significant injuries, including a right leg amputation, a left leg injury, a TBI, and PTSD.

e.  Because of these injuries, Christopher G. Gomes is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 88. The March 30, 2007 Terrorist Attack - Balad, Iraq
### Plaintiff: Anthony W. McCann Jr.

a.  Plaintiff Anthony W. McCann Jr. is a citizen of the United States and is domiciled in the State of Arkansas.

b.  Anthony W. McCann Jr. was in the Army National Guard and served in the 875th Engineer Battalion. McCann Jr. was deployed to Balad, Iraq. On March 30, 2007, he was performing an IED clearance inspection near train tracks in Balad. He got out of his Humvee and approached an IED. At this moment, the IED was remote detonated and the ensuing shrapnel explosion struck McCann. As a result, McCann was medevacked from his base camp to Landstuhl, Germany and received additional medical treatment in Kentucky. McCann survived the Terrorist Attack and received a Purple Heart.

c.  The March 30, 2007 Terrorist Attack against Anthony W. McCann Jr. constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

---

[147]*See, e.g.*, *id.* at 15–25, 33.

d.  As a result of the March 30, 2007 Terrorist Attack, Anthony W. McCann Jr. sustained significant injuries, including an elbow fracture requiring the surgical insertion of titanium screws, shrapnel wounds in his knee and elbows, and PTSD.

e.  Because of these injuries, Anthony W. McCann Jr. is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 89. The April 22, 2007 Terrorist Attack - Haditha, Iraq
### Plaintiff: Nikolaus D. Oekerman Family

a.  Plaintiff Nikolaus D. Oekerman is a citizen of the United States and is domiciled in the State of California.

b.  Plaintiff Sarah Oekerman is a citizen of the United States and is domiciled in the State of Kansas. She is the mother of Nikolaus D. Oekerman.

c.  Plaintiff Keith Oekerman is a citizen of the United States and is domiciled in the State of Kansas. He is the father of Nikolaus D. Oekerman.

d.  Nikolaus Oekerman was in the United States Navy as a Petty Officer Third Class, part of the 1st Battalion 3rd Marines Regiment. He was deployed to Haditha, Iraq. On April 22, 2007, Mr. Oekerman was the rear passenger of an up-armored 7-ton; the lead vehicle in a three-vehicle convoy. They were headed to the Haditha Dam and along the route the rollers on the vehicle tripped a daisy chain IED. The IED detonated and the force of the explosion threw Oekerman against the back wall of his vehicle with significant force. Oekerman survived the terrorist attack and was awarded a Combat Action Badge.

e.  The April 22, 2007 Terrorist Attack against Nikolaus D. Oekerman constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the April 22, 2007 Terrorist Attack, Nikolaus D. Oekerman sustained significant injuries, including loss of consciousness, a spinal injury causing chronic back pain, a TBI, bilateral hearing loss, Tinnitus, PTSD, migraines, and vertigo.

g.  Because of these injuries, Nikolaus D. Oekerman is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Sarah Oekerman and Keith Oekerman incurred solatium damages as a result of mental anguish, bereavement,

grief, and loss of society and comfort suffered following the injuries sustained by Nikolaus D. Oekerman on April 22, 2007.

### 90. <u>The April 25, 2007 Terrorist Attack - Fallujah, Iraq</u><br>Plaintiff: Jeffrey Louis Kadis Family

a.   Plaintiff Jeffrey Louis Kadis is a citizen of the United States and is domiciled in the State of California.

b.   Plaintiff Theresa Kadis is a citizen of the United States and is domiciled in the State of California. She is the wife of Jeffrey Louis Kadis.

c.   Jeffrey Louis Kadis was in the United States Marine Corps as a Staff Sergeant, part of the Explosive Ordnance Disposal (EOD) Company out of Camp Lejeune, North Carolina. He was deployed to Fallujah, Iraq. On April 20, 2007, Mr. Kadis was returning from safely disposing of explosives in the outskirts of Fallujah. He was the driver of an MRAP vehicle in a convoy. An EFP suddenly struck the front left side of his MRAP, penetrating the door and engine block at an angle. As a result, Mr. Kadis sustained serious head trauma, shrapnel wounds, and was awarded a Purple Heart and Navy & Marine Corps Commendation with valor.

d.   The April 25, 2007 Terrorist Attack against Jeffrey Louis Kadis constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[148]

e.   As a result of the April 25, 2007 Terrorist Attack, Jeffrey Louis Kadis sustained significant injuries, including a TBI, Post-Traumatic Vestibular System Dysfunction, PTSD, Tinnitus, Lumbar Strain, and Bilateral Lower Extremity Peripheral Neuropathy.

f.   Because of these injuries, Jeffrey Louis Kadis is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Theresa Kadis incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Jeffrey Louis Kadis on April 25, 2007.

### 91. <u>The May 25, 2004 Terrorist Attack - Baghdad, Iraq</u><br>Plaintiff: Shane B. Farlin, Sr.

a.   Plaintiff Shane B. Farlin, Sr. is a citizen of the United States and is domiciled in the State of Michigan.

---

[148]*See, e.g.*, *id.* at 15–25, 33.

b.  Shane B. Farlin was in the United States Army National Guard apart of the 14th 62nd Transportation Company. Mr. Farlin deployed to Baghdad, Iraq. On May 25, 2004 Farlin was in a convoy driving through downtown Baghdad returning from a support mission in Fallujah. He was a passenger in a M915 Tractor-Trailer and saw a dip in the road from the window. As they approached the dip, an IED suddenly exploded and hit Farlin's M915. The ensuing shrapnel penetrated the vehicle and hit Farlin directly in the face. Farlin survived the Terrorist Attack and received a Purple Heart.

c.  The May 25, 2004 Terrorist Attack against Shane B. Farlin, Sr. constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the May 25, 2004 Terrorist Attack, Shane B. Farlin, Sr. sustained significant injuries, including shrapnel wounds requiring the removal of his right eye (Enucleation), PTSD, a TBI, and nerve damage.

e.  Because of these injuries, Shane B. Farlin Sr. is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 92. The December 1, 2004 Terrorist Attack - Haditha, Iraq
### Plaintiff: Luke Connally Family

a.  Plaintiff Luke Connally is a citizen of the United States and is domiciled in the State of Alaska.

b.  Plaintiff Mary Connally is a citizen of the United States and is domiciled in the State of Alaska. She is the wife of Luke Connally.

c.  Luke Connally was in the United States Marine Corps as a Lance Corporal in the 1st Battalion, 23rd Marines out of 29th Palms, California. He was deployed to Haditha, Iraq, located in the Al Anbar Province. On December 1, 2004, Mr. Connally, was on a patrol traveling in a Humvee when he spotted a suspicious vehicle riding up and down the road. The patrol team pulled the driver over and Mr. Connally and his close friend Zach Kolda went to inspect the vehicle. Connally approached from the driver's side of the vehicle; however, when he and Zach were about 30 feet away the driver detonated a bomb. The ensuing shrapnel from the VBIED killed Cpl. Kolda and severely injured Mr. Connally. Connally survived the Terrorist Attack and was awarded a Purple Heart.

d.  The December 1, 2004 Terrorist Attack against Luke Connally constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the December 1, 2004 Terrorist Attack, Luke Connally sustained significant injuries, including a TBI, PTSD, shrapnel wounds in his right quad, a fractured femur, a right buttock injury, a fractured left knee, a fractured right shoulder, a right thumb injury requiring removal of his tendon. Because of these injuries, Connally has undergone approximately 10 to 15 surgeries.

f.  Because of these injuries, Luke Connally is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Mary Connally incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Luke Connally on December 1, 2004.

### 93. The May 17, 2004 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Chris Boyajian

a.  Plaintiff Chris Boyajian is a citizen of the United States and is domiciled in the State of Washington.

b.  Chris Boyajian was in the United States Army, a part of the 2-162nd Oregon First Calvary Division. He was deployed to Baghdad, Iraq. On May 17, 2004, Boyajian was leaving Camp Trojan in downtown Baghdad traveling in a convoy. Suddenly, a nearby remote denoted underground IED exploded. The resulting explosion caused the driver of the Humvee driving behind Boyajian to rear-end Boyajian's Humvee. As a result, Boyajian was ejected from his vehicle, broke his neck, and required surgery in Germany.  Boyajian survived the Terrorist Attack.

c.  The May 17, 2004 Terrorist Attack against Chris Boyajian constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the May 17, 2004 Terrorist Attack, Chris Boyajian sustained significant injuries, including a broken neck, a spinal injury requiring C-3 to C-6 spinal fusion surgery, a TBI, and PTSD.

e.  Because of these injuries, Chris Boyajian is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 94. <u>The March 11, 2007 Terrorist Attack – Baghdad, Iraq (ASR Lincoln)</u>
### Plaintiff: Kendall E. Goerdt Family

a.  Plaintiff Kendall E. Goerdt is a citizen of the United States and is domiciled in the State of Minnesota.

b.  Plaintiff Linda Goerdt is a citizen of the United States and is domiciled in the State of Minnesota. She is the wife of Kendall E. Goerdt.

c.  Plaintiff Patrick Goerdt is a citizen of the United States and is domiciled in the State of Minnesota. He is the son of Kendall E. Goerdt.

d.  Mr. Kendall Goerdt was in the United States Army Minnesota National Guard as a Sergeant in the Troop 94th Cavalry Regiment out of Duluth, Minnesota. He was deployed to Ramadi, Iraq. On March 11, 2007, Goerdt departed Forward Operating Base Anaconda and was heading to Ramadi to setup a relaying station. Goerdt was traveling on ASR Lincoln, near Baghdad, in the lead vehicle of a convoy of six to eight Humvees. Suddenly, an IED hidden in a culvert detonated, striking the front right side of Goerdt's Humvee. The ensuing shrapnel rounds penetrated the vehicle, destroying part of the engine and the passenger side wheel. Goerdt survived the Terrorist Attack and received a Purple Heart.

e.  The March 11, 2007 Terrorist Attack against Kendall E. Goerdt constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the March 11, 2007 Terrorist Attack, Kendall E. Goerdt sustained significant injuries, including a TBI, a concussion, Tinnitus, PTSD, Tinnitus, and neck pain.

g.  Because of these injuries, Kendall E. Goerdt is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Linda Goerdt and Patrick Goerdt incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Kendall E. Goerdt on March 11, 2007.

### 95. The October 27, 2005 Terrorist Attack - Kakadiya, Iraq
### Plaintiff: Michael W. O'Neal Family

a. Plaintiff Michael W. O'Neal is a citizen of the United States and is domiciled in the State of Kentucky.

b. Plaintiff Joseph O'Neal is a citizen of the United States and is domiciled in the State of Michigan. He is the son of Michael W. O'Neal.

c. Plaintiff Jillian Q. O'Neal is a citizen of the United States and is domiciled in the State of Michigan. She is the daughter of Michael W. O'Neal.

d. Plaintiff Cheyanne O'Neal is a citizen of the United States and is domiciled in the State of Michigan. She is the daughter of Michael W. O'Neal.

e. Michael W. O'Neal was an infantryman in the United States Army and was deployed to Kakadiya, Iraq. On the morning of October 27 2005, Mr. O'Neal's was traveling in a convoy during a battalion raid mission in Kakadiya, There were five unarmored Humvees in the convoy and Mr. O'Neal was the gunner in vehicle number two. Suddenly, a daisy chain IED on the side of the road detonated impacting the first vehicle. The explosion destroyed this vehicle and ripped O'Neal's Humvee in half. Following the explosion, the convoy was ambushed by enemy insurgents and a fire fight occurred. Multiple soldiers died during the Attack and O'Neal sustained life-threatening injuries. As a result, O'Neal was medevacked to Fort Anaconda and then transported to Landstuhl, Germany for emergency medical treatment. O'Neal received additional treatment in Augusta, Georgia. O'Neal survived the Terrorist Attack and received a Purple Heart.

f. The October 27, 2005 Terrorist Attack against Michael W. O'Neal constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g. As a result of the October 27, 2005 Terrorist Attack, Michael W. O'Neal sustained significant injuries, including shrapnel wounds in his legs, knees and arms requiring surgery; removal of his molar tooth; a finger wound requiring surgery; burns on his head, ears, hands, and arms; loss of function in his arms and legs causing a permanent limp; severe PTSD, a TBI, hearing loss, and Tinnitus.

h. Because of these injuries, Michael W. O'Neal is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Joseph O'Neal,

**160**

Jillian Q. O'Neal, and Cheyanne O'Neal incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Michael W. O'Neal on October 27, 2005.

## 96. The May 27, 2005 Terrorist Attack - Baqubah, Iraq
### Plaintiff: John Charles Brewer Family

a. Plaintiff John Charles Brewer is a citizen of the United States and is domiciled in the State of Oregon.

b. Plaintiff John Christopher Brewer is a citizen of the United States and is domiciled in the State of Oregon. He is the son of John Charles Brewer.

c. Plaintiff Courtney Jill Brewer is a citizen of the United States and is domiciled in the State of Oregon. She is the daughter of John Charles Brewer.

d. Plaintiff Jordan Christine Brewer is a citizen of the United States and is domiciled in the State of Oregon. She is the daughter of John Charles Brewer.

e. Plaintiff John Curtis Brewer is a citizen of the United States and is domiciled in the State of Oregon. He is the father of John Charles Brewer.

f. John Charles Brewer was in the Kentucky State National Guard as a Sergeant in the Five Hundredth Second Engineer Company out of Fort Knox, Kentucky. He was deployed to LSA Anaconda in Iraq. On May 27, 2005, Mr. Brewer was in Baqubah as the medic in a unit that was working on the construction of the Baqubah Bridge. He was sitting in his vehicle resting when an IED exploded about six feet in front of him. The ensuing shrapnel struck Mr. Brewer but he survived the Terrorist Attack. As a result, Mr. Brewer was awarded a Purple Heart.

g. The May 27, 2005 Terrorist Attack against John Charles Brewer constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

h. As a result of the May 27, 2005 Terrorist Attack, John Charles Brewer sustained significant injuries, including a TBI, PTSD, hearing loss, permanent shrapnel wounds in his face and left knee, and memory issues.

i. Because of these injuries, John Charles Brewer is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, John Christopher

**161**

Brewer, Courtney Jill Brewer, Jordan Christine Brewer, and John Curtis Brewer incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by John Charles Brewer on May 27, 2005.

### 97. The February 25, 2004 Terrorist Attack - Baqubah, Iraq
### Plaintiff: William J. McBain

a.  Plaintiff William J. McBain is a citizen of the United States and is domiciled in the State of Wisconsin.

b.  William J. McBain was a Sergeant in the United States Army and was deployed to Baqubah, Iraq. On February 25, 2004, McBain was traveling in a convoy in an unarmored Humvee. McBain's vehicle was driving north toward Baqubah to transport a Major to a meeting. Suddenly, a remote detonated IED exploded between Camp Boom and Camp Warhorse in downtown Baqubah. The IED was hidden on the side of the road in a hole from a previous blast. The ensuing shrapnel penetrated McBain's vehicle. Thereafter, McBain was medevacked to Camp Warhorse and later transported Landsthul, Germany and Fort McCoy, Wisconsin for additional medical treatment. McBain survived the Terrorist Attack and received a Purple Heart.

c.  The February 25, 2004 Terrorist Attack against William J. McBain constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the February 25, 2004 Terrorist Attack, William J. McBain sustained significant injuries, including a concussion, shrapnel wounds in his right shoulder, right knee, left foot, ear, and left eye requiring numerous surgeries, chronic pain in his right shoulder, permanent hearing loss, a permanent left eye injury, a TBI, and PTSD.

e.  Because of these injuries, William J. McBain is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 98. The November 18, 2007 Terrorist Attack – FOB Callahan; Baghdad, Iraq
### Plaintiff: Tyson Hiner Family

a.  Plaintiff Tyson Hiner, Individually and as Next Friend of A.H., a minor, is a citizen of the United States and is domiciled in the State of North Carolina.

b.  A.H. is a United States citizen domiciled in the State of North Carolina She is the minor daughter of Tyson Hiner.

c.  Tyson Hiner was in the United States Army as a Sergeant, a part of the 108 MP Company Airborne out of Fort Bragg, North Carolina. He was deployed to Sadr City, Iraq. On November 18, 2007, Combat Outpost (COP) Callahan was hit by twelve (12) large IRAMs (Improvised Rocket Assisted Munition) designed to destroy the four story concrete structure. Hiner and his squad were out in the open in the Base when the attack began, as the first salvo of six (6) improvised rockets hit directly in the middle of the squads' vehicles. Hiner remained calm during this attack and helped his squad maneuver inside. Hiner also ran back out into the open to look for additional team members. Hiner received a Bronze Star for his heroic efforts.

d.  The November 18, 2007 Terrorist Attack against Tyson Hiner constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical support and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[149]

e.  As a result of the November 18, 2007 Terrorist Attack, Tyson Hiner sustained significant injuries, including PTSD, a TBI, Migraines, Tinnitus, shrapnel in his right elbow, and depression.

f.  Because of these injuries, Tyson Hiner is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, A.H. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Tyson Hiner on November 18, 2007.

## 99. The October 10, 2004 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Joshua T. Santoro Family

a.  Plaintiff Joshua T. Santoro is a citizen of the United States and is domiciled in the State of California.

b.  Plaintiff Malisa Santoro is a citizen of the United States and is domiciled in the State of California. She is the wife of Joshua T. Santoro.

c.  Joshua T. Santoro enlisted in the United States Marine Corps and served as a Corporal in the Echo Company, 2nd Battalion, 5th Marines, 1st Marine Division. He was deployed Ramadi, Iraq. On October 10, 2004, Santoro was standing on the side of a Humvee in Ramadi when a mortar shell exploded about 10 feet away from him. As a result, shrapnel was sent flying into his right scalp, right arm, right thigh, and right calf. Because of these injuries, Santoro was sent

---

[149] *See* Ware, *Inside Iran's Secret War for Iraq*, TIME, Aug. 15, 2005 (reporting that Iran shipped weapons like 107mm and 122mm rockets across the border to Iraq).

to a hospital in Baghdad and his right leg was nearly amputated due to extreme swelling. Santoro survived the attack and received a Purple Heart.

d.  The October 10, 2004 Terrorist Attack against Joshua T. Santoro constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[150]

e.  As a result of the October 10, 2004 Terrorist Attack, Joshua T. Santoro sustained significant injuries, including shrapnel wounds to his face, right arm, right thigh, and right calf requiring surgery, a TBI, PTSD, migraines, and Tinnitus.

f.  Because of these injuries, Joshua T. Santoro is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Malisa Santoro incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Joshua T. Santoro on October 10, 2004.

### 100.    The February 18, 2005 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Christopher J. Camune Family

a.  Plaintiff Christopher J. Camune is a citizen of the United States and is domiciled in the State of Texas.

b.  Plaintiff Priscila Camune is a citizen of the United States and is domiciled in the State of Texas. She is the wife of Christopher J. Camune.

c.  Christopher J. Camune was in the United States Marine Corps as a Sergeant in the Fox Company, Second Battalion, Fifth Marines out of Camp Pendleton, California. He was deployed to Ramadi, Iraq. On February 18, 2005, Camune was conducting foot patrol on Route Michigan in downtown Ramadi. An Army tank passed beside Camune on the road he was patrolling, triggering an IED hidden nearby. The IED then detonated about fifteen feet (15) away from Camune. As a result, Camune was medevacked to Landstuhl, Germany. Camune survived the Terrorist Attack and was awarded a Purple Heart.

d.  The February 18, 2005 Terrorist Attack against Christopher J. Camune constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who

---

[150] *See* Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (U.S. officials found mortar shells following the capture of IRGC-QF leaders in Iraq).

committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the February 18, 2005 Terrorist Attack, Christopher J. Camune sustained significant injuries, including soft tissue damage to his left ankle, shrapnel wounds to his left thigh, PTSD, bilateral Tinnitus, and right ear hearing loss.

f.  Because of these injuries, Christopher J. Camune is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Priscila Camune incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Christopher J. Camune on February 18, 2005.

### 101.    The August 18, 2007 Terrorist Attack - Mahmudiyah, Iraq
### Plaintiff: Patrick Alan Danks Family

a.  Plaintiff Patrick Alan Danks, Individually and as Next Friend of A.D., a minor, is a citizen of the United States and is domiciled in the State of South Dakota.

b.  A.D. is a United States citizen domiciled in the State of South Dakota. He is the minor son of Patrick Alan Danks.

c.  Plaintiff Carol Danks is a citizen of the United States and is domiciled in the State of South Dakota. She is the wife of Patrick Alan Danks.

d.  Patrick A. Danks was in the United States Army as Private First Class, a part of the 2nd Brigade, 10th Mountain Division. He was deployed to Mahmudiyah, Iraq. On August 18, 2007, Danks was the driver of the rear vehicle in a six-vehicle convoy. He was driving down a side road in Mahmudiyah (near his FOB south of Baghdad) when an enemy insurgent suddenly stepped out of an alleyway. The insurgent then fired a RPG at the passenger side of Danks' Humvee, hitting the vehicle. Danks survived the Terrorist Attack and received a Purple Heart.

e.  The August 18, 2007 Terrorist Attack against Patrick Alan Danks constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[151]

---

[151] *See* Lathem, *House of Jihad* (Hezbollah chief Hassan Nasrallah announcing that they support the adoption of an armed "jihad" resistance against American occupation forces in Iraq).

f.   As a result of the August 18, 2007 Terrorist Attack, Patrick Alan Danks sustained significant injuries, including a TBI, PTSD, shrapnel wounds to his right hand, blurred vision to his right eye, and a left thumb injury that required surgery.

g.   Because of these injuries, Patrick Alan Danks is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Carol Danks and A.D. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Patrick Alan Danks on August 18, 2007.

## 102.    The July 24, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Marco A. Morales

a.   Plaintiff Marco A. Morales is a citizen of the United States and is domiciled in the State of California.

b.   Marco Morales was in the United States Army as a Specialist in the Kilo Troop, 3rd Armored Calvary Regiment. He was deployed to Camp Falcon in Baghdad, Iraq. On July 24, 2005, Mr. Morales was the driver of an up-armored Bradley; the lead vehicle in a four-vehicle convoy. They were driving down a road outside of their Forward Operating Base in Baghdad conducting a security mission when Morales ran over an IED. The ensuing IED explosion struck Morales' vehicle. Morales survived this attack. However, four of Morales' fellow soldiers and close friends were tragically KIA - including Army Spc. Ernest W. Dallas.

c.   The July 24, 2005 Terrorist Attack against Marco A. Morales constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.   As a result of the July 24, 2005 Terrorist Attack, Marco A. Morales sustained significant injuries, including a TBI, PTSD, Tourette's syndrome, and memory loss.

e.   Because of these injuries, Marco A. Morales is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 103.    The April 15, 2004 Terrorist Attack - Taji, Iraq
### Plaintiff: Brian K. Dean

a.   Plaintiff Brian K. Dean is a citizen of the United States and is domiciled in the State of New York.

b. Brian K. Dean was in the United States Army, a part of the 89th Military Police unit. He was deployed in Taji, Iraq. In the early afternoon of April 15, 2004, Dean was in a convoy traveling in an unarmored Humvee heading towards Ramadi. Suddenly, a daisy chain IED detonated on the side of the road in Taji. As a result, several nearby IEDs detonated shortly after causing a multi-vehicle collision. The collision knocked Dean unconscious and killed several of his fellow soldiers. When Dean woke up, he was in a helicopter being medevacked to the 31st Combat Support Hospital. Dean was later transported to Landstuhl, Germany and to Walter Reed in Maryland for additional medical treatment. Specifically, Dean underwent two years of surgeries and post-surgical recovery.

c. The April 15, 2004 Terrorist Attack against Brian K. Dean constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the April 15, 2004 Terrorist Attack, Brian K. Dean sustained significant injuries, including paralysis, broken bones in his neck, a fractured skull, a spinal cord injury, loss of vision, shrapnel wounds causing the loss of all his teeth, seizures, and a TBI.

e. Because of these injuries, Brian K. Dean is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 104.    The December 2, 2006 Terrorist Attack - Taji, Iraq
### Plaintiff: Matthew B. Murray

a. Plaintiff Matthew B. Murray is a citizen of the United States and is domiciled in the State of Texas.

b. Matthew B. Murray was in the United States Army as a Specialist. He served in the 501st Infantry Division out of Ft Richardson, Alaska and was deployed to Iraq. On December 2, 2006, Murray was traveling near Baghdad, about 2-3 miles outside of the Camp Taji West gate on Route Red Legs. Murray was headed to investigate an IED incident on the other side of the fork of the road. He was the driver in the third up-armored Humvee in a convoy of 3 others. Suddenly, an IED hit under the engine compartment on the driver's side of Murray's vehicle and exploded on contact. The explosion occurred at 38S MC26590815. As a result, the passenger in Murray's vehicle, Army Sgt. Keith Fiscus, died in Murray's arms. Murray was medevacked to Ballad Airbase and received additional medical treatment in Landstuhl, Germany and at Walter Reed in Maryland. Murray survived this Terrorist Attack and received an Army Commendation Medal and a Purple Heart.

c.  The December 2, 2006 Terrorist Attack against Matthew B. Murray constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the December 2, 2006 Terrorist Attack, Matthew B. Murray sustained significant injuries, including a fractured C-3 vertebrae, muscle tension headaches, and radiculopathy in his upper right extremity.

e.  Because of these injuries, Matthew B. Murray is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 105.  The December 26, 2007 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Joseph F. Morcerf Family

a.  Plaintiff Joseph F. Morcerf is a citizen of the United States and is domiciled in the State of New York.

b.  Plaintiff Chandra Morcerf is a citizen of the United States and is domiciled in the State of New York. She is the wife of Joseph F. Morcerf.

c.  Joseph F. Morcerf was a sergeant in the United States Army, a part of the Joseph F. Morcerf was a sergeant in the United States Army, a part of the 108 Military Police Company out of Fort Bragg, North Carolina. He was deployed to Baghdad, Iraq. On December 26, 2007, Morcerf was returning to COP Callahan in Baghdad after a mission at the Iraqi Police Station. He was the driver in the lead up-armored Humvee in a convoy of four other vehicles. Suddenly, an EFP struck the left side of the Humvee door penetrating through the armor. As a result, Morcerf was dragged away from the kill zone by his interpreter. The interpreter provided emergency first aid until Morcerf could be medevacked to nearby field hospitals. Morcerf was then transported to Landstuhl, Germany and to the Womack Army Medical Center in North Carolina for multiple surgeries. Morcerf survived the Terrorist Attack and was awarded a Purple Heart and a Combat Action Badge.

d.  The December 26, 2007 Terrorist Attack against Joseph F. Morcerf constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who

**168**

committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[152]

e. As a result of the December 26, 2007 Terrorist Attack, Joseph F. Morcerf sustained significant injuries, including approximately 9 surgeries related to shrapnel wounds in his right leg, a severe right femur injury requiring surgical removal and a titanium rod replacement, injuries to his tendons and ligaments, shrapnel wounds to his neck and left knee, a TBI, PTSD, bilateral Tinnitus, and Gastroesophageal Reflux Disease.

f. Because of these injuries, Joseph F. Morcerf is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Chandra Morcerf incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Joseph F. Morcerf on December 26, 2007.

### 106.    The May 1, 2007 Terrorist Attack - Mosul, Iraq
### Plaintiff: Nelson Garcia Family

a. Plaintiff Nelson Garcia is a citizen of the United States and is domiciled in the State of Florida.

b. Plaintiff Matthew Garcia is a citizen of the United States and is domiciled in the State of New York. He is the son of Nelson Garcia.

c. Plaintiff Lydia Garcia is a citizen of the United States and is domiciled in the State of New York. She is the mother of Nelson Garcia.

d. Nelson Garcia was a Sergeant in the United States Army and was deployed to Mosul, Iraq. On May 1, 2007, while walking back to his Forward Operating Base in Mosul, a rocket landed twenty meters from Garcia and exploded. As a result, Garcia was thrown to the ground with significant force. Garcia survived the terrorist attack.

e. The May 1, 2007 Terrorist Attack against Nelson Garcia constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[153]

f. As a result of the May 1, 2007 Terrorist Attack, Nelson Garcia sustained significant injuries, including a right side clavicle injury, a TBI, PTSD, and Tinnitus.

---

[152]*See, e.g.*, *Karcher*, 396 F. Supp. 3d. at 15–25, 33.

[153] *See* Ware, *Inside Iran's Secret War for Iraq*, TIME, Aug. 15, 2005 (reporting that Iran shipped weapons like 107mm and 122mm rockets across the border to Iraq).

g.  Because of these injuries, Nelson Garcia is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Matthew Garcia and Lydia Garcia incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Nelson Garcia on May 1, 2007.

### 107.    The July 11, 2005 Terrorist Attack - Ferris, Iraq
### Plaintiff: Jean-Louis Blackburn

a.  Plaintiff Jean-Louis Blackburn is a citizen of the United States and is domiciled in the State of Texas.

b.  Jean-Louis Blackburn enlisted in the United States Army and served as a sergeant, part of the 250th Military Intelligence Battalion out of Fort Lewis, WA. He deployed to Fallujah, Iraq. On July 10, 2005, Blackburn was conducting combat operations south of Fallujah in Ferris. At this time, Blackburn was riding on the back of an Amphibious Assault Vehicle (AAV), the rear vehicle of a three-vehicle convoy. Suddenly, Blackburn's AAV was struck by an IED on the left side. As a result, Mr. Blackburn sustained a shredded left forearm. Blackburn was then medevacked to Baghdad and then to Landstuhl, Germany for surgical treatment. Blackburn survived the attack and received a Purple Heart.

c.  The July 11, 2005 Terrorist Attack against Jean-Louis Blackburn constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the July 11, 2005 Terrorist Attack, Jean-Louis Blackburn sustained significant injuries, including a shredded left forearm requiring surgery, permeant radius and ulna impairment, Tinnitus, a TBI, and PTSD.

e.  Because of these injuries, Jean-Louis Blackburn is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 108.    The December 1, 2005 Terrorist Attack - Najaf, Iraq
### Plaintiff: John E. Watts

a.  Plaintiff John E. Watts is a citizen of the United States and is domiciled in the State of Mississippi.

**170**

b.  John E. Watts was a Specialist in the United States Army and was deployed to Tikrit, Iraq. On December 1, 2005, at 8:30am, Mr. Watts was in a convoy traveling toward Forward Operating Base (FOB) Duke from FOB Kalsu. Mr. Watts was a dismounted scout in the second vehicle of six in his convoy. While traveling Route Mockingbird, an IED detonated impacting Watts' vehicle near Najaf. As a result, Watts was fairly shaken up but he and the convoy were able to continue to FOB Duke. Watts survived the terrorist attack and received a Combat Action Badge.

c.  The December 1, 2005 Terrorist Attack against John E. Watts constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the December 1, 2005 Terrorist Attack, John E. Watts sustained significant injuries, including a TBI, migraine headaches, PTSD, and Tinnitus.

e.  Because of these injuries, John E. Watts is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 109.  The June 3, 2007 Terrorist Attack – Baghdad, Iraq
### Plaintiff: Angel D. Mateo Family

a.  Plaintiff Angel D. Mateo is a citizen of the United States and is domiciled in the State of Florida.

b.  Plaintiff Anna Kuleshova is a citizen of the United States and is domiciled in the State of Florida. She is the wife of Angel D. Mateo.

c.  Angel D. Mateo was a Sergeant First Class in the United States Army, a part of the 25th Field Artillery Unit. He deployed to Abu Ghraib, Iraq. On June 3, 2007, Mateo was a passenger in the lead vehicle of a four-vehicle convoy. They were coming back from a mission in Abu Ghraib when an IED detonated and destroyed the front end of his vehicle. The explosion occurred in Baghdad and tragically took the life of one of Mateo's fellow soldiers, Army Sgt. Kimel Watt. Mr. Mateo survived the attack.

d.  The June 3, 2007 Terrorist Attack against Angel D. Mateo constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

171

e.  As a result of the June 3, 2007 Terrorist Attack, Angel D. Mateo sustained significant injuries, including a back injury ultimately requiring surgery, a TBI, and PTSD.

f.  Because of these injuries, Angel D. Mateo is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Anna Kuleshova incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Angel D. Mateo on June 3, 2007.

### 110.    The May 28, 2009 Terrorist Attack - Taji, Iraq
### Plaintiff: Elbros Samkough Family

a.  Plaintiff Elbros Samkough, Individually and as Next Friend of A.S., a minor, is a citizen of the United States and is domiciled in the State of Pennsylvania.

b.  A.S. is a United States citizen domiciled in the State of Pennsylvania. She is the minor daughter of Elbros Samkough.

c.  Plaintiff Meriem Samkough is a citizen of the United States and is domiciled in the State of Pennsylvania. She is the mother of Elbros Samkough.

d.  Elbros Samkough was a Specialist in the United States Army, a part of the 1-109th Field Artillery Unit. He was deployed to Forward Operating Base (FOB) Liberty in Baghdad, Iraq. On May 28, 2009, Mr. Samkough was in route to Camp Taji for a mission. Samkough was the gunner of an up-armored Mine-Resistant Ambush Protected (MRAP) vehicle, the rear vehicle of a three-vehicle convoy. Enemy insurgents suddenly fired an RKG (anti-tank grenade) at Samkough's vehicle but it narrowly missed its target. Samkough completed then mission and received a Combat Action Badge.

e.  The May 28, 2009 Terrorist Attack against Elbros Samkough constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the May 28, 2009 Terrorist Attack, Elbros Samkough sustained significant injuries, including PTSD.

g.  Because of these injuries, Elbros Samkough is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Meriem Samkough and A.S. incurred solatium damages as a result of mental anguish, bereavement,

grief, and loss of society and comfort suffered following the injuries sustained by Elbros Samkough on May 28, 2009.

### 111.    The April 21, 2005 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Robert Scott Sabado Family

a.  Plaintiff Robert Scott Sabado is a citizen of the United States and is domiciled in the State of California.

b.  Plaintiff Michelle Sabado is a citizen of the United States and is domiciled in the State of California. She is the wife of Robert Scott Sabado.

c.  Plaintiff Skyler Sabado is a citizen of the United States and is domiciled in the State of California. He is the son of Robert Scott Sabado.

d.  Plaintiff Crystal Sabado is a citizen of the United States and is domiciled in the State of California. She is the daughter of Robert Scott Sabado.

e.  Plaintiff Tiffany Sabado is a citizen of the United States and is domiciled in the State of California. She is the daughter of Robert Scott Sabado.

f.  Robert Scott Sabado was a security contractor for Blackwater USA on the Mamba Team. He was deployed to Baghdad, Iraq. On April 21, 2005, Sabado was the gunner in the lead up-armored Mamba convoy of three other vehicles. When the convoy was near Ramadi, two unknown vehicles approached Sabado's Mamba and passed him on the right side. The lead unknown vehicle slowed down significantly and cut off the second unknown vehicle. In turn, Sabado's convoy slowed to a complete stop. Sabado then fired 3 warning shots at the unknown vehicles to alert them to move and stop blocking the convoy. Suddenly, the hood of Sabado's vehicle popped up and Sabado noticed blood on his right arm. During the altercation with the unknown vehicle, a roadside IED had detonated from the right side of the road. The ensuing shrapnel hit Sabado and killed eight (8) Blackwater soldiers, including Curtis Hundley.

g.  Thereafter, Sabado was airlifted to the Balad Army Trauma Center and then flown to Landstuhl, Germany for emergency treatment. During this time, Sabado underwent five surgeries in six days. Sabado was later transported to Cottage Hospital in Santa Barbara for at least two (2) additional surgical procedures. Sabado survived the Terrorist Attack but sustained permanent personal injuries.

h.  The April 21, 2005 Terrorist Attack against Robert Scott Sabado constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

i.  As a result of the April 21, 2005 Terrorist Attack, Robert Scott Sabado sustained significant injuries, including a severed right artery in his right arm; a hole in his upper right thigh resulting in permanent shrapnel wounds; shrapnel wounds on both sides of his genitals and scrotum; a deep permanent laceration in his left thigh; permanent shooting pain in both legs; right hand numbness; loss of hearing; a TBI causing significant injury to his central nervous system. and PTSD.

j.  Because of these injuries, Robert Scott Sabado is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Michelle Sabado, Skyler Sabado, Crystal Sabado, and Tiffany Sabado incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Robert Scott Sabado on April 21, 2005.

## 112.    The September 14, 2005 Terrorist Attack – Rustamiyah, Iraq
### Plaintiff: David Cary Cook Family

a.  Plaintiff David Cary Cook is a citizen of the United States and is domiciled in the State of Michigan.

b.  Plaintiff Stephanie Denise Cook is a citizen of the United States and is domiciled in the State of Michigan. She is the wife of David Cary Cook.

c.  Plaintiff David Carlos Cook is a citizen of the United States and is domiciled in the State of Michigan. He is the son of David Cary Cook.

d.  Plaintiff Dana Cook is a citizen of the United States and is domiciled in the State of Michigan. She is the daughter of David Cary Cook.

e.  Plaintiff Joanne Cook is a citizen of the United States and is domiciled in the State of Michigan. She is the mother of David Cary Cook.

f.  Plaintiff Dan Cook is a citizen of the United States and is domiciled in the State of Michigan. He is the father of David Cary Cook.

g.  Plaintiff Donald Cook is a citizen of the United States and is domiciled in the State of Florida. Donald Cook is the sibling of David Cary Cook.

h.  Plaintiff Dan C. Cook is a citizen of the United States and is domiciled in the State of Florida. Dan C Cook is the sibling of David Cary Cook.

i.   David Cary Cook was in the United States Army,  Michigan State National Guard, as a Sergeant in the 1-182 Field Artillery under 720th MP Division. He was deployed to Iraq. On September 14, 2005, Cook was northbound on Main Route Pluto after departing Camp Rustamiyah for a patrol mission. He was the truck commander in the third Humvee in a convoy of two other vehicles. A VBIED drove down to Route Pluto through the on-ramp and headed for the first vehicle in the convoy. The gunner in the first vehicle tried to engage with the VBIED, but the VBIED swerved into the other lane beside Mr. Cook's vehicle and detonated about five feet away. As a result of injuries sustained, David Cook was awarded a Purple Heart.

j.   The September 14, 2005 Terrorist Attack against David Cary Cook constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

k.   As a result of the September 14, 2005 Terrorist Attack, David Cary Cook sustained significant injuries, including a pelvis fracture, 2nd and 3rd degree burns, chipped teeth, and an elbow fracture.

l.   Because of these injuries, David Cary Cook is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Stephanie Denise Cook, David Carlos Cook, Dana Cook, Joanne Cook, Dan Cook, Donald Cook, and Dan C. Cook incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by David Cary Cook on September 14, 2005.

### 113.    The January 2, 2006 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Gregory R. James

a.   Plaintiff Gregory R. James is a citizen of the United States and is domiciled in the State of Florida.

b.   Gregory R. James was a Sergeant First Class in the United States Army and served in the 101st Airborne Assault Division. Mr. James was deployed to Baghdad, Iraq. On January 2, 2006, Mr. James was leading a six-vehicle convoy in an up-armored Humvee that was a part of an Explosive Ordinance Disposal (EOD) Ordinance Escort Team. James just finished a mission and was heading back to Forward Operating Base Camp Stryker when a buried IED was remote detonated in Baghdad. The IED then exploded directly under James' vehicle. Immediately thereafter, James was blown out of the vehicle and was unconscious. As a result, he was medevacked from the scene to the Green Zone then to Landsthul, Germany for emergency

medical treatment. James survived the Terrorist Attack and received a Purple Heart, Combat Action Badge, and a Bronze Star.

c.  The January 2, 2006 Terrorist Attack against Gregory R. James constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the January 2, 2006 Terrorist Attack, Gregory R. James sustained significant injuries, including two broken mandibles in his jaw, partial loss of his tongue, a torn rotator cuff and labrum in both shoulders, chronic back and neck injuries, a TBI, and PTSD. Furthermore, as a result of his injuries, James' jaw was wired shut for about a year.

e.  Because of these injuries, Gregory R. James is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 114.  The November 2, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Cory Collins Family

a.  Plaintiff Cory Collins is a citizen of the United States and is domiciled in the State of North Carolina.

b.  Plaintiff Paula M Collins is a citizen of the United States and is domiciled in the State of North Carolina. She is the wife of Cory Collins.

c.  Cory Collins was a Sergeant in the United States Army, a part of the 1-502 Bravo Company 101 Airborne Division. He was deployed to Baghdad, Iraq. On the morning of November 2, 2005 Mr. Collins was a part of a security patrol mission convoy traveling in an up-armored Humvee. Suddenly, a buried IED was remotely detonated in Baghdad and the blast penetrated through the Humvee. As a result, the IED tragically, killed three of Collins' fellow soldiers – Spc. Benjamin A. Smith, Spc. Joshua J. Munger, and PFC Tyler R Makenzie. Additionally, Collins was medevacked to Landstuhl, Germany for emergency medical treatment. Collins received further treatment at the Andrews Air Force Base, Maryland; Fort Campbell, Kentucky; and the Brooke Army Medical Center in San Antonio. Collins survived the Terrorist Attack and received a Purple Heart and Combat Infantry Badge. However, Collins sustained permanent personal injuries and endured a substantial number of surgical procedures.

d.  The November 2, 2005 Terrorist Attack against Cory Collins constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the November 2, 2005 Terrorist Attack, Cory Collins sustained significant injuries, including a left leg amputation; thirty (30) broken bones including his back, pelvis, tailbone, left arm, and section of his left leg; a hip replacement, a TBI, and PTSD. Furthermore, as a result of these injuries, Collins has underwent approximately thirty-nine (39) surgical procedures since the Terrorist Attack.

f.  Because of these injuries, Cory Collins is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Paula M Collins incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Cory Collins on November 2, 2005.

## 115.  <u>The March 24, 2005 Terrorist Attack - Baqubah, Iraq</u>
### Plaintiff: Corey Q. Cornett

a.  Plaintiff Corey Q. Cornett is a citizen of the United States and is domiciled in the State of Missouri.

b.  Corey Q. Cornett was a specialist in the United States Army a part of the 2-34th Armor Bravo Company. He deployed to Baqubah, Iraq. On March 24, 2005, Mr. Cornett was a part of a patrol mission in a four-vehicle convoy near Forward Operating Base Gabe in Baqubah. He was the driver in the second vehicle, an up-armored Humvee. While heading east, the convoy hit an IED. Shortly thereafter, the convoy was attacked by RPGs that came from an alleyway. The attack occurred at Grid MC 6813 3314. As a result, a firefight took place causing many enemy (Anti Iraqi Forces) fatalities. Cornett survived the Terrorist Attack.

c.  The March 24, 2005 Terrorist Attack against Corey Q. Cornett constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[154]

d.  As a result of the March 24, 2005 Terrorist Attack, Corey Q. Cornett sustained significant injuries, including a TBI, PTSD, a lower back injury, and Tinnitus.

---

[154] *See* Press Conference on Multi-National Forces-Iraq, Maj. Gen. Kevin Bergner and Brig. Gen. Michael Walsh (Oct. 3, 2007) (concluding in 2005 senior Hezbollah leadership directed a commander to work with the IRGC-QF in Iran to train Iraqi extremists).

e.   Because of these injuries, Corey Q. Cornett is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 116.   The October 23, 2004 Terrorist Attack - Fallujah, Iraq
### Plaintiff: Justin Killingsworth Family

a.   Plaintiff Justin Killingsworth is a citizen of the United States and is domiciled in the State of Texas.

b.   Plaintiff Kaci Killingsworth is a citizen of the United States and is domiciled in the State of Texas. She is the wife of Justin Killingsworth.

c.   Plaintiff Gina Hailey is a citizen of the United States and is domiciled in the State of Texas. She is the mother of Justin Killingsworth.

d.   Plaintiff Miranda Berckenhoff is a citizen of the United States and is domiciled in the State of Texas. Miranda Berckenhoff is the sibling of Justin Killingsworth.

e.   Justin Killingsworth was a corporal in the United States Marine Corps a part of 2nd Assault Amphibious Battalion, 2nd Marine Division. He deployed to Fallujah, Iraq. On October 23 2004, Mr. Killingsworth was the Patrol Leader of the lead vehicle in a six-vehicle convoy. They were on route in Fallujah and the driver made a U-turn, going across a concrete median. At this point, there was a buried IED hiding under rubble. The IED hit Mr. Killingsworth's vehicle on the driver's side, blowing off the extra armor. As a result, Mr. Killingsworth was awarded a Purple Heart.

f.   The October 23, 2004 Terrorist Attack against Justin Killingsworth constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.   As a result of the October 23, 2004 Terrorist Attack, Justin Killingsworth sustained significant injuries, including multiple left arm fractures requiring surgery, shrapnel wounds, and PTSD.

h.   Because of these injuries, Justin Killingsworth is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Kaci Killingsworth, Gina Hailey, and Miranda Berckenhoff incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Justin Killingsworth on October 23, 2004.

117. **The August 25, 2004 Terrorist Attack - Fallujah, Iraq (Camp Fallujah)**
**Plaintiff: Rodney Ohara Family**

a.  Plaintiff Rodney Ohara is a citizen of the United States and is domiciled in the State of California.

b.  Plaintiff Mandy Ohara is a citizen of the United States and is domiciled in the State of California. She is the wife of Rodney Ohara.

c.  Plaintiff Hailey Ohara is a citizen of the United States and is domiciled in the State of California. She is the daughter of Rodney Ohara.

d.  Plaintiff Cindy Wieberdink is a citizen of the United States and is domiciled in the State of Idaho. She is the mother of Rodney Ohara.

e.  Plaintiff Misty Ohara is a citizen of the United States and is domiciled in the State of Idaho. Misty Ohara is the sibling of Rodney Ohara.

f.  Plaintiff Jason Ohara is a citizen of the United States and is domiciled in the State of California. Jason Ohara is the sibling of Rodney Ohara.

g.  Rodney O'Hara was in the United States Marine Corps as a Sergeant, a part of the 9th Communication Battalion. He deployed to Forward Operating Base (FOB) Camp Fullujah in Fullujah, Iraq. On August 25, 2004, Mr. O'Hara was on FOB Camp Fallujah, when the FOB started receiving mortar round attacks from enemy insurgents. O'Hara took cover between two bunkers but still received shrapnel injuries from the mortar fire. As a result, Rodney O'Hara required surgery at the Bravo Surgical Camp and received a Purple Heart.

h.  The August 25, 2004 Terrorist Attack against Rodney Ohara constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[155]

---

[155] *See* Lathem, *House of Jihad* (Hezbollah chief Hassan Nasrallah announcing that they support the adoption of an armed "jihad" resistance against American occupation forces in Iraq).

i.  As a result of the August 25, 2004 Terrorist Attack, Rodney Ohara sustained significant injuries, including shrapnel wounds in his left hand requiring surgery, permanent nerve damage in his left hand, PTSD, and Tinnitus.

j.  Because of these injuries, Rodney Ohara is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Mandy Ohara, Hailey Ohara, Cindy Wieberdink, Misty Ohara, and Jason Ohara incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Rodney Ohara on August 25, 2004.

## 118.  The April 6, 2004 Terrorist Attack - Bayji, Iraq
### Plaintiff: Markeise Davis Family

a.  Plaintiff Markeise Davis is a citizen of the United States and is domiciled in the State of Georgia.

b.  Plaintiff Darrell Davis is a citizen of the United States and is domiciled in the State of Georgia. Darrell Davis is the sibling of Markeise Davis.

c.  Plaintiff Kadijah Davis is a citizen of the United States and is domiciled in the State of Georgia. Kadijah Davis is the sibling of Markeise Davis.

d.  Plaintiff Brenda Davis is a citizen of the United States and is domiciled in the State of Georgia. Brenda Davis is the mother of Markeise Davis.

e.  Markeise Davis was a specialist in the United States Army a part of the 1st Infantry Company. He deployed to Baiji, Iraq. On April 6, 2004 Mr. Davis was a gunner a part of a three-vehicle convoy, en route to a 12 hour Tactical Cryptologic Program in Bayji. A remote detonated IED exploded during this mission and hit Davis' vehicle. Davis sustained injuries but managed to render life saving care to a fellow soldier. As a result of the explosion, Davis received shrapnel injuries in his neck and was awarded a Purple Heart.

f.  The April 6, 2004 Terrorist Attack against Markeise Davis constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  As a result of the April 6, 2004 Terrorist Attack, Markeise Davis sustained significant injuries, including shrapnel wounds, PTSD, memory loss.

**180**

h. Because of these injuries, Markeise Davis is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Brenda Davis, Kadijah Davis, and Darrell Davis incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Markeise Davis on April 6, 2004.

## 119.    The November 3, 2005 Terrorist Attack - Tikrit, Iraq
### Plaintiff: Louis Joseph Jr. Family

a. Plaintiff Louis Joseph Jr. is a citizen of the United States and is domiciled in the State of Arizona.

b. Plaintiff Joseph Louis III is a citizen of the United States and is domiciled in the State of Arizona. He is the son of Louis Joseph Jr.

c. Plaintiff Jasmine Joseph is a citizen of the United States and is domiciled in the State of Arizona. She is the daughter of Louis Joseph Jr.

d. Louis Joseph, Jr. was in the United States Army as a Sergeant in the 627 Field Artillery Unit out of Fort Sill, Oklahoma. He was deployed to Tikrit, Iraq. On November 3, 2005, Mr. Joseph was driving an up-armored Heavy Equipment Transportation vehicle (HET), the second vehicle in a twenty-vehicle convoy, to Fort Summerall in Bayji. While traveling on MSR Tampa, Joseph's vehicle was struck by an IED that detonated on the right side of the vehicle. The explosion occurred near Tikrit. The ensuing shrapnel hit the fuel tank and the vehicle's brakes and accelerator malfunctioned. The vehicle then caught fire and became disabled. The flames engulfed Joseph, causing him to sustain severe burns. Joseph also suffered injuries requiring numerous surgeries as a result of the IED blast. Joseph survived the Terrorist Attack and received a Purple Heart.

e. The November 3, 2005 Terrorist Attack against Louis Joseph Jr. constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f. As a result of the November 3, 2005 Terrorist Attack, Louis Joseph Jr. sustained significant injuries, including 2nd and 3rd degree burns to the face; burn wounds on his hands ears, and neck; a torn bicep in his left arm, left shoulder injuries (two tears in his rotor cuff and a torn labrum) requiring surgery; left knee injures (a torn ACL and MCL) requiring surgery; multiple injuries to his left fingers requiring surgery; a neck injury requiring surgery; a torn left hamstring, PTSD, a TBI, migraines, insomnia, and hypertension.

g.  Because of these injuries, Louis Joseph Jr. is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Joseph Louis III and Jasmine Joseph incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Louis Joseph Jr. on November 3, 2005.

### 120.  The December 2, 2005 Terrorist Attack - Hawija, Iraq
### Plaintiff: Alan Ray Family

a.  Plaintiff Alan Ray is a citizen of the United States and is domiciled in the State of Florida.

b.  Plaintiff Marjorie Ray is a citizen of the United States and is domiciled in the State of Florida. She is the wife of Alan Ray.

c.  Plaintiff Alan J. Ray is a citizen of the United States and is domiciled in the State of Florida. He is the son of Alan Ray.

d.  Plaintiff Noelle Ray is a citizen of the United States and is domiciled in the State of Nevada. She is the daughter of Alan Ray.

e.  Plaintiff Nedra Ray is a citizen of the United States and is domiciled in the State of Florida. She is the mother of Alan Ray.

f.  Plaintiff Alan R. Ray is a citizen of the United States and is domiciled in the State of Florida. He is the father of Alan Ray.

g.  Alan Ray was a sergeant in the United States Army a part of the 205th Military Intelligence Battalion out of Hawaii. He deployed to Hawija, Iraq. On December 2 2005, Ray was en route from Camp Warrior to Camp Henry. He was the rear passenger of an up-armored Humvee; the second vehicle of a three-vehicle convoy. The vehicle ran over a pressure-plated IED in Hawija, which exploded and created a hole in the rear of the vehicle. Ray survived the attack.

h.  The December 2, 2005 Terrorist Attack against Alan Ray constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

i.  As a result of the December 2, 2005 Terrorist Attack, Alan Ray sustained significant injuries, including a TBI, PTSD, and a concussion.

182

j.   Because of these injuries, Alan Ray is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Marjorie Ray, Alan J. Ray, Noelle Ray, Nedra Ray, and Alan R. Ray incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Alan Ray on December 2, 2005.

### 121.   The May 4, 2004 Terrorist Attack - Baqubah, Iraq
### Plaintiff: Gregory Beddingfield Family

a.   Plaintiff Gregory Beddingfield is a citizen of the United States and is domiciled in the State of Georgia.

b.   Plaintiff Gregory Beddingfield is a citizen of the United States and is domiciled in the State of Georgia. He is the son of Gregory Beddingfield.

c.   Plaintiff Adrian Beddingfield is a citizen of the United States and is domiciled in the State of Georgia. He is the son of Gregory Beddingfield.

d.   Plaintiff Viola Beddingfield is a citizen of the United States and is domiciled in the State of Georgia. She is the daughter of Gregory Beddingfield.

e.   Plaintiff Victoria Beddingfield is a citizen of the United States and is domiciled in the State of Georgia. She is the daughter of Gregory Beddingfield.

f.   Gregory Beddingfield was in the Army as a Sergeant a part of the 2-63 Armor, Headquarters Company, out of Fort Riley, Kansas. He was deployed to Baqubah, Iraq. On May 4, 2004, Mr. Beddingfield was headed to engage the enemy in Baqubah who were shooting mortar rounds into the nearby camp. He was the truck commander in the first Humvee of three other vehicles. An IED suddenly struck the left side of the Humvee, penetrating the side. Beddingfield survived the attack and was awarded a Purple Heart.

g.   The May 4, 2004 Terrorist Attack against Gregory Beddingfield constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[156]

h.   As a result of the May 4, 2004 Terrorist Attack, Gregory Beddingfield sustained significant injuries, including shrapnel wounds to chest and abdomen, broken hip, a TBI, and PTSD.

---

[156] *See* THE WASHINGTON TIMES, *Israeli warns of terrorist training* (Nov 14. 2003).

i. Because of these injuries, Gregory Beddingfield is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Gregory Beddingfield, Adrian Beddingfield, Viola Beddingfield, and Victoria Beddingfield incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Gregory Beddingfield on May 4, 2004.

### 122. The December 11, 2006 Terrorist Attack – Anbar Province, Iraq
#### Plaintiff: Brian O'Toole

a. Plaintiff Brian O'Toole is a citizen of the United States and is domiciled in the State of California.

b. Brian O'Toole was in the United States Marines as a Sergeant in Khalidiya, Iraq. On December 11, 2006, O'Toole was in the second vehicle in a convoy of six traveling in the Al Anbar Province. Suddenly, an IED detonated beneath his vehicle, on the passenger side where he was seated. O'Toole sustained burns but survived the terrorist attack and received a Purple Heart. However, three of O'Toole's fellow soldiers in the vehicle were tragically KIA - including Marine Cpl. Matthew Dillon.

c. The December 11, 2006 Terrorist Attack against Brian O'Toole constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the December 11, 2006 Terrorist Attack, Brian O'Toole sustained significant injuries, including second degree burn wounds requiring surgery, hearing loss, and loss of multiple teeth from shrapnel.

e. Because of these injuries, Brian O'Toole is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 123. The December 26, 2003 Terrorist Attack – Hawija, Iraq
#### Plaintiff: Ronald Barela Family

a. Plaintiff Ronald Barela is a citizen of the United States and is domiciled in the State of New Mexico.

b. Plaintiff Lisa Gonzales is a citizen of the United States and is domiciled in the State of New Mexico. She is the wife of Ronald Barela.

c.  Plaintiff Gabriel Barela is a citizen of the United States and is domiciled in the State of New Mexico. He is the son of Ronald Barela.

d.  Plaintiff Jeremy Barela is a citizen of the United States and is domiciled in the State of New Mexico. He is the son of Ronald Barela.

e.  Ronald Barela was in the United States Army, a part of the 244th Engineer Battalion out of Colorado. He was deployed to Hawija, Iraq. On December 26, 2003, Barela was traveling from Kirkuk to Hawija. He was the rear passenger in an unarmored Humvee, the rear vehicle of a seven-vehicle convoy. They were in Hawija, about half a mile from Forward Operating Base (FOB) McHenry, when an IED struck the vehicle traveling directly ahead of Barela's vehicle. The force of the explosion caused a crater in the road and Barela's vehicle hit the crater with significant force. Barela survived the attack.

f.  The December 26, 2003 Terrorist Attack against Ronald Barela constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  As a result of the December 26, 2003 Terrorist Attack, Ronald Barela sustained significant injuries, including Tinnitus, a left ankle fracture, and PTSD.

h.  Because of these injuries, Ronald Barela is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Lisa Gonzales Gabriel Barela, and Jeremy Barela incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Ronald Barela on December 26, 2003.

## 124.  The June 2, 2004 Terrorist Attack - Kirkuk, Iraq
### Plaintiff: Jonathon Etterbeek Family

a.  Plaintiff Jonathon Etterbeek is a citizen of the United States and is domiciled in the State of Michigan.

b.  Plaintiff Laurilee Etterbeek is a citizen of the United States and is domiciled in the State of Michigan. She is the wife of Jonathon Etterbeek.

c.  Plaintiff Alexei Etterbeek is a citizen of the United States and is domiciled in the State of Michigan. He is the son of Jonathon Etterbeek.

185

d.  Plaintiff Anastasia Etterbeek is a citizen of the United States and is domiciled in the State of Michigan. She is the daughter of Jonathon Etterbeek.

e.  Plaintiff Tatiana Etterbeek is a citizen of the United States and is domiciled in the State of Michigan. She is the daughter of Jonathon Etterbeek.

f.  Jonathan Etterbeek was in the United States Army as a Chaplain, part of the 2nd Brigade 25th Infantry Division. He was deployed to Kirkuk, Iraq. On June 2, 2004, Etterbeek was in the chapel at Forward Operating Base Warrior, when the munitions he was collecting were bombed by rockets. This led to consistent explosions at FOB Warrior, lasting more than three hours. Etterbeek survived the attack and was awarded a Purple Heart.

g.  The June 2, 2004 Terrorist Attack against Jonathon Etterbeek constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[157]

h.  As a result of the June 2, 2004 Terrorist Attack, Jonathon Etterbeek sustained significant injuries, including left arm nerve damage and muscle loss, lacerations from shrapnel, migraines, PTSD, and a TBI.

i.  Because of these injuries, Jonathon Etterbeek is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Laurilee Etterbeek, Alexei Etterbeek, Anastasia Etterbeek, and Tatiana Etterbeek incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Jonathon Etterbeek on June 2, 2004.

### 125.    The October 2, 2006 Terrorist Attack - Tikrit, Iraq
### Plaintiff: Anthony C. Wisyanski

a.  Plaintiff Anthony C. Wisyanski is a citizen of the United States and is domiciled in the State of North Carolina.

b.  Anthony Wisyanski was in the United States Army as a Sergeant, part of 2-505 Infantry Regiment, 82nd Airborne Division out of Fort Bragg, North Carolina. He was deployed to Tikrit, Iraq. Mr. Wisyanski was the truck commander in an up-armored Humvee, the rear vehicle of a five-vehicle convoy. While on Market Street in Tikrit, there was significant vehicular traffic and two insurgents stepped in between cars. One of the insurgents was seen

---

[157] *See* Ware, *Inside Iran's Secret War for Iraq*, TIME, Aug. 15, 2005 (reporting that Iran shipped weapons like 107mm and 122mm rockets across the border to Iraq).

"winding up", and threw an RKG-3 (anti-tank grenade) through the passenger door of the Humvee. The vehicle sustained a hole in the front passenger door seam and the roof of the vehicle was peeled. As a result of ensuing shrapnel, Wisyanski sustained severe injuries and later received a Purple Heart.

c.   The October 2, 2006 Terrorist Attack against Anthony C. Wisyanski constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.   As a result of the October 2, 2006 Terrorist Attack, Anthony C. Wisyanski sustained significant injuries, including skull fracture, brain hemorrhage, right side chest wounds, right lung collapse, right arm shrapnel, right shoulder blade shrapnel, right ear hearing loss, and right ear Tinnitus.

e.   Because of these injuries, Anthony C. Wisyanski is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 126.   The November 16, 2006 Terrorist Attack - Baghdad, Iraq
### Plaintiff: David Cantu Family

a.   Plaintiff David Cantu is a citizen of the United States and is domiciled in the State of Texas.

b.   Plaintiff Rose V. Cantu is a citizen of the United States and is domiciled in the State of Texas. She is the mother of David Cantu.

c.   Plaintiff Anselmo Cantu is a citizen of the United States and is domiciled in the State of Texas. He is the father of David Cantu.

d.   Plaintiff Mario Cantu is a citizen of the United States and is domiciled in the State of Texas. Mario Cantu is the sibling of David Cantu.

e.   David Cantu was in the United States Army as a Sergeant, part of the Foxtrot Company out of Fort Hood, Texas. He was deployed to Baghdad, Iraq. On November 16, 2006, Cantu was on Route North Predators in Baghdad returning from a logistics mission at FOB Hope in Sadr City. He was the driver in the third LHS - HEMTT of five other vehicles. An EFP suddenly struck the mid-right side of Cantu's vehicle penetrating the armor. Cantu survived the attack and was awarded a Purple Heart.

f.   The November 16, 2006 Terrorist Attack against David Cantu constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees,

and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[158]

g.  As a result of the November 16, 2006 Terrorist Attack, David Cantu sustained significant injuries, including a severe hip injury requiring surgery, a TBI, PTSD, cognitive issues, Meniere's Disease, and Tinnitus.

h.  Because of these injuries, David Cantu is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Rose V Cantu, Anselmo Cantu, and Mario Cantu incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by David Cantu on November 16, 2006.

### 127.    The April 2, 2006 Terrorist Attack - Muqdadiyah, Iraq
### Plaintiff: Benjamin Rosario-Villegas

a.  Plaintiff Benjamin Rosario-Villegas is a citizen of the United States and is domiciled in the Territory of Puerto Rico.

b.  Benjamin Rosario-Villegas was a staff sergeant in the United States Army as part of the 978 Military Police Company out of Fort Riley, Kansas. On April 2, 2006, during his morning patrol as squad leader, Rosario-Villegas was riding on the passenger side in a Humvee equipped with a warlock detection system. The vehicle was traveling west on Route Purple in Muqdadiyah when an IED detonated on the side of the road. Shrapnel penetrated the vehicle and debris destroyed the left side causing major damage to the tires, windows, and other components of the vehicle. Rosario-Villegas was immediately medically evacuated to Camp Anaconda to be treated for his injuries. Benjamin Rosario-Villegas survived the Terrorist Attack and was awarded a Combat Action Badge.

c.  The April 2, 2006 Terrorist Attack against Benjamin Rosario-Villegas constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the April 2, 2006 Terrorist Attack, Benjamin Rosario-Villegas sustained significant injuries, including loss of consciousness, a concussion, cervical spondylosis

---

[158]*See, e.g., Karcher,* 396 F. Supp. 3d at 15-25, 33.

resulting in chronic neck pain, left wrist pain, leg and bilateral knee pain, a TBI, chronic headaches, and PTSD.

e. Because of these injuries, Benjamin Rosario-Villegas is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 128. The April 28, 2008 Terrorist Attack - Sadr City, Iraq
### Plaintiff: Kevin Keefe

a. Plaintiff Kevin Keefe is a citizen of the United States and is domiciled in the State of Minnesota.

b. Kevin Keefe was a part of the United States Army with the 191 MP Company with his MOS as 311 Bravo. Keefe was stationed at Forward Operating Base (FOB) Shield in Sadr City, Iraq. On April 28, 2008, Mr. Keefe was inside of the JS Station-70 building on Base when an Improvised Rocket Assisted Munition (IRAM) exploded from the north side of the building. Keefe survived the terrorist attack.

c. The April 28, 2008 Terrorist Attack against Kevin Keefe constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[159]

d. As a result of the April 28, 2008 Terrorist Attack, Kevin Keefe sustained significant injuries, including a back injury and TBI.

e. Because of these injuries, Kevin Keefe is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 129. The January 19, 2006 Terrorist Attack – Haditha, Iraq
### Plaintiff: Micah Wright

a. Plaintiff Micah Wright is a citizen of the United States and is domiciled in the State of Texas.

b. Micah Wright was in the United States Marine Corp, part of 3rd Battalion 1st Marine unit. He deployed to Barwanah, Iraq, from Camp Pendleton, California. In the late morning of January 19, 2006, Mr. Wright was on a mounted patrol task in the Al Anbar Province to set-up an over

---

[159] *See* Ware, *Inside Iran's Secret War for Iraq*, TIME, Aug. 15, 2005 (reporting that Iran shipped weapons like 107mm and 122mm rockets across the border to Iraq).

watch because their base was the Forward Operating Base for supplies. While making a right off of the main supply route, a daisy chain IED detonated in Haditha underneath the right tire (passenger side), disabling the entire vehicle. As a result, Wright suffered numerous injuries and received a Purple Heart.

c.  The January 19, 2006 Terrorist Attack against Micah Wright constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the January 19, 2006 Terrorist Attack, Micah Wright sustained significant injuries, including a fractured femur, a fractured patella, a fractured tibia, bilateral Tinnitus, PTSD, shrapnel wounds, and degenerative disc disease of the lumbar spine.

e.  Because of these injuries, Micah Wright is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 130.    The June 24, 2004 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Trent Artis Family

a.  Plaintiff Trent Artis is a citizen of the United States and is domiciled in the State of Texas.

b.  Plaintiff Sheraon Artis is a citizen of the United States and is domiciled in the State of Texas. She is the wife of Trent Artis.

c.  Plaintiff Shaun Artis is a citizen of the United States and is domiciled in the State of Texas. He is the son of Trent Artis.

d.  Plaintiff Derek Taylor is a citizen of the United States and is domiciled in the State of Texas. He is the son of Trent Artis.

e.  Plaintiff Ashley Artis is a citizen of the United States and is domiciled in the State of Virginia. She is the daughter of Trent Artis.

f.  Plaintiff Paige Artis is a citizen of the United States and is domiciled in the State of Texas. She is the daughter of Trent Artis.

g.  Trent Artis was in the United States Army, part of CB 2nd 82nd Artillery unit. He deployed to Camp Falcon outside Baghdad, Iraq. During the afternoon of June 24, 2004, Artis went to setup a traffic control point because they got word of a possible VBIED coming towards the Green Zone. They approached the VBIED, which exploded to the rear of Artis. The detonation

knocked Artos and another soldier forward, resulting in Artis being medically evacuated from the scene. Artis survived the attack.

h.  The June 24, 2004 Terrorist Attack against Trent Artis constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

i.  As a result of the June 24, 2004 Terrorist Attack, Trent Artis sustained significant injuries, including Post-Traumatic Stress Disorder, left and right knee injury, a left hand burn, and right shoulder injury.

j.  Because of these injuries, Trent Artis is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Sheraon Artis, Shaun Artis, Derek Taylor, Ashley Artis, and Paige Artis incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Trent Artis on June 24, 2004.

### 131.  The February 9, 2005 Terrorist Attack - Hit, Iraq
### Plaintiff: Jared Luce

a.  Plaintiff Jared Luce is a citizen of the United States and is domiciled in the State of Connecticut.

b.  Jared Luce was in the United States Marine Corps as a Sergeant, part of the Combat Logistics Battalion 2, out of Camp Lejeune, North Carolina. He was deployed to Al Asad, Iraq. On February 9, 2005, Luce was in route to provide assistance to a broken down vehicle near Hit, Iraq. He was the driver of an unarmored Humvee, the fifteenth vehicle of a sixteen-vehicle convoy. The road was muddy and another vehicle was instructed to move over. He proceeded to go around the vehicle, drove into a rut, and hit a double-stacked landmine. The blast blew the front of the vehicle off and ejected Luce from the vehicle. Luce sustained numerous severe shrapnel wounds as a result that required surgical amputation of his lower limbs. However, he ultimately survived the Terrorist Attack.

c.  The February 9, 2005 Terrorist Attack against Jared Luce constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the February 9, 2005 Terrorist Attack, Jared Luce sustained significant injuries, including left leg amputation below the knee, right leg amputation below the knee, detachment of a portion of his left hand, bilateral eye shrapnel wounds, a detached retina in his left eye, and reduced vision.

e.  Because of these injuries, Jared Luce is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 132.    The November 22, 2007 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Johari Ginocchio Family

a.  Plaintiff Johari Ginocchio is a citizen of the United States and is domiciled in the State of New Mexico.

b.  Plaintiff Elijah Ginocchio is a citizen of the United States and is domiciled in the State of New Mexico. He is the son of Johari Ginocchio.

c.  Plaintiff Angelina Ginocchio is a citizen of the United States and is domiciled in the State of New Mexico. She is the wife of Johari Ginocchio.

d.  Johari Ginocchio was in the United States Air Force as a Senior Airman, part of the 305th LRS out of New Jersey. He was deployed to Kuwait. On November 22, 2007; at around 21:00 hours, Mr. Ginocchio was the passenger in an up-armored 915 tractor trailer, the lead vehicle of a 25-vehicle convoy. While traveling north on MSR Tampa, the driver switched from the middle to left lane of traffic, to avoid a pile of dirt. A remote detonated IED exploded on the right side of vehicle between CP21A and 22A, causing damage to the vehicle. The explosion occurred south of Baghdad. As a result of the explosion, Ginocchio received medical treatment. Ginocchio survived the attack.

e.  The November 22, 2007 Terrorist Attack against Johari Ginocchio constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the November 22, 2007 Terrorist Attack, Johari Ginocchio sustained significant injuries, including a concussion, a severe TBI, and PTSD.

g.  Because of these injuries, Johari Ginocchio is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Angelina

192

Ginocchio and Elijah Ginocchio incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Johari Ginocchio on November 22, 2007.

### 133. <u>The May 17, 2008 Terrorist Attack - Sadr City, Iraq</u>
### Plaintiff: Joseph Mobbley

a. Plaintiff Joseph Mobbley is a citizen of the United States and is domiciled in the State of Hawaii.

b. Joseph Mobbley was enlisted in the United States Army as an 11 Alpha Infantry Officer with the 3rd Squadron 89th Cavalry Regiment deployed to Baghdad, Iraq in 2008. On May 17, 2008, while on foot patrol in Sadr City, Mobbley endured an Explosively Formed Penetrator (EFP) attack. Specifically, a dual array EFP exploded on the side of the road, which was buried inside a pile of rubble. Mobbley suffered severe injuries and received a Purple Heart.

c. The May 17, 2008 Terrorist Attack against Joseph Mobbley constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[160]

d. As a result of the May 17, 2008 Terrorist Attack, Joseph Mobbley sustained significant injuries, including two skull fractures, head contusion, shrapnel wounds throughout his body - including his shoulder and face, facial nerve damage, migraines, a TBI, Tinnitus, and PTSD.

e. Because of these injuries, Joseph Mobbley is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 134. <u>The September 16, 2006 Terrorist Attack - Mosul, Iraq</u>
### Plaintiff: Charles Quigley Family

a. Plaintiff Charles Quigley is a citizen of the United States and is domiciled in the State of Missouri.

b. Plaintiff Julie Quigley is a citizen of the United States and is domiciled in the State of Missouri. She is the wife of Charles Quigley.

c. Plaintiff Kathleen Quigley is a citizen of the United States and is domiciled in the State of Missouri. She is the mother of Charles Quigley.

---

[160] *See, e.g., Karcher,* 396 F. Supp. 3d at 15-25, 33.

d.  Plaintiff Allen Quigley is a citizen of the United States and is domiciled in the State of Missouri. He is the father of Charles Quigley.

e.  Charles Quigley was in the United States Army as a Specialist, part of the 2-137 Infantry. He was deployed to Mosul, Iraq. On September 16, 2006, Mr. Quigley was the rear gunner of the lead vehicle in a convoy of two up-armored SUVs. The convoy was heading back to Mosul when an IED detonated underneath Mr. Quigley's vehicle. The impact of the blast caused the SUV to tip over, almost flipping on its side, the driver was able to avoid it. Mr. Quigley along with others in the vehicle were injured.

f.  The September 16, 2006 Terrorist Attack against Charles Quigley constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  As a result of the September 16, 2006 Terrorist Attack, Charles Quigley sustained significant injuries, including a TBI, PTSD, a left shoulder injury requiring surgery, and a back injury requiring surgery.

h.  Because of these injuries, Charles Quigley is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Julie Quigley, Kathleen Quigley, and Allen Quigley incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Charles Quigley on September 16, 2006.

## 135.  The December 10, 2006 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Matthew Ashmead

a.  Plaintiff Matthew Ashmead is a citizen of the United States and is domiciled in the State of Texas.

b.  Matthew Ashmead was in the United States Army as a Sergeant out of Fort Richardson, Alaska. He was deployed to Baghdad, Iraq. On the night of December 10, 2006, Ashmead was a passenger in an up-armored Humvee, the fourth vehicle of a five-vehicle convoy. The convoy was on an operations mission near Forward Operating Base Loyalty in Baghdad. During the patrol, the lead vehicle of the convoy was suddenly hit by an EFP from the left side. Three soldiers, including Sgt. Brennan Gibson and Spc. Philip Ford, were killed instantly. However, Sgt. Ashmead survived the Terrorist Attack.

c.  The December 10, 2006 Terrorist Attack against Matthew Ashmead constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[161]

d.  As a result of the December 10, 2006 Terrorist Attack, Matthew Ashmead sustained significant injuries, including severe PTSD.

e.  Because of these injuries, Matthew Ashmead is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 136.    The January 27, 2007 Terrorist Attack - Taji, Iraq
### Plaintiff: Cedric Frasier Family

a.  Plaintiff Cedric Frasier is a citizen of the United States and is domiciled in the State of North Carolina.

b.  Plaintiff Rickita Frasier is a citizen of the United States and is domiciled in the State of North Carolina. She is the wife of Cedric Frasier.

c.  Plaintiff Shamia Frasier is a citizen of the United States and is domiciled in the State of Texas. She is the daughter of Cedric Frasier.

d.  Cedric Frasier was in the United States Army as a Sergeant, part of the HHC 2-8 Cavalry out of Fort Hood, Texas. He was deployed to Taji, Iraq. Mr. Frasier was the truck commander of an up-armored Humvee, the rear vehicle of a five-vehicle convoy. On January 27, 2007, while traveling through a small town near Taji, an insurgent walked in front of his vehicle and made a "blowing up" gesture. As Mr. Frasier grabbed the radio to alert others, his vehicle ran over a buried IED on Route Chargers. The vehicle was burned and disabled. Frasier survived the terrorist attack.

e.  The January 27, 2007 Terrorist Attack against Cedric Frasier constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the January 27, 2007 Terrorist Attack, Cedric Frasier sustained significant injuries, including a back injury, a left arm injury, and a concussion.

---

[161]*See, e.g.*, *id.* at 15–25, 33.

**195**

g.  Because of these injuries, Cedric Frasier is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Rickita Frasier and Shamia Frasier incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Cedric Frasier on January 27, 2007.

### 137.   The October 11, 2008 Terrorist Attack - Majar Al-Kabir, Iraq
### Plaintiff: Patrick Lesher

a.  Plaintiff Patrick Lesher is a citizen of the United States and is domiciled in the State of Nebraska.

b.  Patrick Lesher was in the United States Army as a First Lieutenant, part of the 2-7 CAV, 4th Brigade, and 1st CAV Division out of Fort Hood, Texas. He was deployed to Majar Al-Kabir, Iraq. On October 11, 2008, around 0947, Mr. Lesher was the driver-side rear passenger in the second vehicle of a four-vehicle convoy. The convoy was on a battlefield circulation mission to Majar Al Kabir when an EFP struck the driver's side of his vehicle. The explosion totally disabled the vehicle, resulting in a hole in the armor and engine block, blowing out the tires, and damaging the gunner's turret. The gunner, Sgt. Rueben M. Fernandez III, was tragically KIA as a result. Lesher survived the terrorist attack and received a Combat Infantry Badge.

c.  The October 11, 2008 Terrorist Attack against Patrick Lesher constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[162]

d.  As a result of the October 11, 2008 Terrorist Attack, Patrick Lesher sustained significant injuries, including hearing loss, PTSD, and a TBI.

e.  Because of these injuries, Patrick Lesher is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 138.   The August 31, 2006 Terrorist Attack – New Baghdad, Iraq
### Plaintiff: Migo Algailany

a.  Plaintiff Migo Algailany is a citizen of the United States and is domiciled in the State of Michigan.

---

[162]*See, e.g.*, *id.* at 15–25, 33.

b.  Migo Algailany was a consultant providing linguist services to L3 Communications Titan Linguist Operations and Technical Support through a Local National Consulting Agreement. Algailany was providing general linguistic support for military operations with the U.S. Armed Forces in the areas of Baghdad and Rustimiyah. On August 31, 2006, around 9:00 PM, Algailany was in the second Humvee in a convoy of two other vehicles. His convoy was performing daily patrol operations in New Baghdad when they were attacked with an IED. As a result, Algailany was immediately provided medical attention at Combat Support Hospital Ibn Sina. He was later medevacked for further treatment at Al Khalidi Hospital at Amman, Jordan. Algailany was at this hospital for about seven months, during which he underwent multiple surgeries. However, Migo Algailany ultimately survived the Terrorist Attack.

c.  The August 31, 2006 Terrorist Attack against Migo Algailany constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the August 31, 2006 Terrorist Attack, Migo Algailany sustained significant injuries, including several shrapnel injuries to his eye and a right arm fracture.

e.  Because of these injuries, Migo Algailany is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

**139.  The December 20, 2006 Terrorist Attack - Al Anbar Province, Iraq (COP Falcon) Plaintiff: Trent Schapker Family**

a.  Plaintiff Trent Schapker is a citizen of the United States and is domiciled in the State of Indiana.

b.  Plaintiff Shelby Schapker is a citizen of the United States and is domiciled in the State of Indiana. She is the wife of Trent Schapker.

c.  Plaintiff Thomas F Schapker is a citizen of the United States and is domiciled in the State of Indiana. He is the father of Trent Schapker.

d.  Plaintiff Dane Schapker is a citizen of the United States and is domiciled in the State of Indiana. Dane Schapker is the sibling of Trent Schapker.

e.  Trent Schapker was a Corporal in the United States Marines, a part of C Company, 2nd Tank Battalion. He deployed to the Al Anbar Province in Iraq. On the evening of December 20, 2006, Schapker was traveling past Combat Outpost Falcon on patrol in an up-armored Tank. An IED suddenly hit his tank and the blast was powerful enough to blow the track off of the

vehicle and damage the alloy wheels. The IED then penetrated through the layer of armor on the vehicle completely disabling the tank. As a result, Schapker was treated for his injuries back at the base. He survived the attack.

f.  The December 20, 2006 Terrorist Attack against Trent Schapker constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  As a result of the December 20, 2006 Terrorist Attack, Trent Schapker sustained significant injuries, including a concussion, numerous shrapnel wounds, severe PTSD, memory loss and Tinnitus.

h.  Because of these injuries, Trent Schapker is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Shelby Schapker, Thomas F Schapker, and Dane Schapker incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Trent Schapker on December 20, 2006.

### 140.    The May 3, 2006 Terrorist Attack – Ramadi, Iraq
### Plaintiff: Waylon White

a.  Plaintiff Waylon White is a citizen of the United States and is domiciled in the State of Idaho.

b.  Captain Waylon G. White served in the Marines as Military Tactical Advisor with the Multinational Forces West, I Marine Expeditionary Force (Forward) while attached to 1st Battalion, 1st Brigade, 7th Iraqi Army Division. He deployed to Ramadi, Iraq. On May 3, 2006, Captain White was on duty at OP 293 Command Operations Center (COC) in Ramadi when his unit came under a complex attack. As the unit began receiving accurate indirect fire, Captain White courageously exited the COC to aid the Iraqi unit. Waylon provided cover fire for Coalition Forces, who sustained small arms fire impacting the Observation Post (OP). Simultaneously, a large dump truck penetrated the West entrance of the OP.

Despite being under enemy fire, and with total disregard for his own safety, Captain White engaged the insurgent dump truck driver with his M4, killing the driver. The truck was stopped short of the intended target of the Suicide Vehicle Borne Improvised Explosive Device (SVBIED)– the Iraqi soldiers' barracks. Thus, White's heroic act saved the lives of over 40 Iraqi soldiers. The SVBIED then detonated and a massive explosion took place. At this time, Captain White again exposed himself to prepare for a possible ground assault when a mortar impacted in close proximity, badly wounding him. However, White survived this attack and

received both a Purple Heart and a Bronze Star. Tragically, one of White's fellow Marines, Capt. Brian S. Letendre, died as a result of the mortar explosion.

c.  The May 3, 2006 Terrorist Attack against Waylon White constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[163]

d.  As a result of the May 3, 2006 Terrorist Attack, Waylon White sustained significant injuries, including second degree burns on 10% of his body (including his face, torso and arms), a collapsed lung, a dislocated shoulder, bilateral Tinnitus, bilateral hearing loss and PTSD.

e.  Because of these injuries, Waylon White is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 141.  The December 27, 2003 Terrorist Attack – Karbala, Iraq
### Plaintiff: Bobbie Parks

a.  Plaintiff Bobbie Parks is a citizen of the United States and is domiciled in the State of Louisiana.

b.  Bobbie Parks served as an E9 in the United States Army and was deployed to Iraq. On December 27, 2003, at 1257 hours, a VBIED entered the parking lot of the Iraqi Police Station in Karbala, Iraq and detonated. Parks was at the Police Station at this time and received numerous shrapnel wounds. As a result, Parks was awarded a Purple Heart.

c.  The December 27, 2003 Terrorist Attack against Bobbie Parks constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

---

[163] *See The Situation in Iraq and Progress by the Government of Iraq in Meeting Benchmarks and Achieving Reconciliation: Hearing before the Comm. on Armed Services*, 110th Cong., 2d sess., (April 8-10, 2008) (General Petraeus concluding that it is certainly fair to conclude that Iranian-backed Special Groups in Iraq were responsible for killing hundreds of American soldiers); Lathem, House of Jihad (Hezbollah chief Hassan Nasrallah announcing that they support the adoption of an armed "jihad" resistance against American occupation forces in Iraq).

d. As a result of the December 27, 2003 Terrorist Attack, Bobbie Parks sustained significant injuries, including severe shrapnel wounds, severe burns, back injuries, PTSD, and severe neck and left leg injuries requiring multiple surgeries.

e. Because of these injuries, Bobbie Parks is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 142.    The February 5, 2007 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Thomas Vandeventer

a. Plaintiff Thomas Vandeventer is a citizen of the United States and is domiciled in the State of Texas.

b. Thomas Vandeventer was a E4 in the United States Army, a part of the Delta Company 1-5 Cav, 1st Cavalry Division. He was deployed to Baghdad, Iraq. On in February 2, 2007, around 11 am, Thomas was doing daily patrol with his convoy in Baghdad. Thomas was the driver of his vehicle. While they were on patrol, an IED detonated and the ensuing shrapnel penetrated Vandeventer's vehicle. As a result, Vandeventer sustained life-threatening injuries, including the loss of both legs, but ultimately survived the terrorist attack.

c. The February 5, 2007 Terrorist Attack against Thomas Vandeventer constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the February 5, 2007 Terrorist Attack, Thomas Vandeventer sustained significant injuries, including Amputation of both legs, removal of his left testicle, a TBI, and anxiety.

e. Because of these injuries, Thomas Vandeventer is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 143.    The May 9, 2005 Terrorist Attack - Fallujah, Iraq
### Plaintiff: Brian Dunn Family

a. Plaintiff Brian Dunn is a citizen of the United States and is domiciled in the State of South Carolina.

b. Plaintiff Katie Dunn is a citizen of the United States and is domiciled in the State of South Carolina. She is the wife of Brian Dunn.

200

c.  Brian Dunn was in the United States Marine Corps as a lance corporal, part of the 38 Weapons Company out of Camp Lejeune, North Carolina. On May 9, 2005, he was the gunner of an up-armored Humvee; the rear vehicle of a five-vehicle convoy. The convoy was traveling back to Fallujah from patrol when an IED detonated on the driver's side of the vehicle. As a result, the vehicle was flipped over, Dunn was pinned underneath and was medevacked for treatment. He survived the attack.

d.  The May 9, 2005 Terrorist Attack against Brian Dunn constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the May 9, 2005 Terrorist Attack, Brian Dunn sustained significant injuries, including perforated ear drums, broken jaw, torn rotator cuff, two compression fractures in upper back, three herniated discs, shrapnel to right side, Tinnitus, a TBI, and PTSD.

f.  Because of these injuries, Brian Dunn is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Katie Dunn incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Brian Dunn on May 9, 2005.

## 144.    The May 26, 2004 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Arthur Connor Family

a.  Plaintiff Arthur Connor is a citizen of the United States and is domiciled in the State of Georgia.

b.  Plaintiff Kelly Connor is a citizen of the United States and is domiciled in the State of Georgia. She is the wife of Arthur Connor.

c.  Plaintiff Joseph Connor is a citizen of the United States and is domiciled in the State of Ohio. He is the son of Arthur Connor.

d.  Plaintiff Arthur W Connor is a citizen of the United States and is domiciled in the State of Oklahoma. He is the son of Arthur Connor.

e.  Plaintiff Samuel Connor is a citizen of the United States and is domiciled in the State of Ohio. He is the son of Arthur Connor.

f.  Plaintiff Elizabeth C Connor is a citizen of the United States and is domiciled in the State of New York. She is the daughter of Arthur Connor.

g.  Arthur Connor was a Commander in the United States Army, a part of the First Brigade, First Infantry Division, attached to the First Marines Division. He deployed to Ramadi, Iraq. On May 26, 2004, Connor had departed the Junction City Military Facility in Ramadi and was about 10 minutes out on Hwy 10. Connor was eastbound driving toward a Forward Operating Base outside of Ramadi to visit one of the units under his command. Connor was in the front, passenger's seat in the fourth Humvee of a five-vehicle convoy. An IED suddenly hit the front right side of Connor's Humvee, and the ensuing shrapnel penetrated the vehicle. Connor survived the attack and was awarded a Purple Heart.

h.  The May 26, 2004 Terrorist Attack against Arthur Connor constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

i.  As a result of the May 26, 2004 Terrorist Attack, Arthur Connor sustained significant injuries, including a concussion, a TBI leading to Parkinson's disease, shrapnel wounds to his face, head, neck, and knees, and a shoulder injury.

j.  Because of these injuries, Arthur Connor is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Kelly Connor, Joseph Connor, Arthur W Connor, Samuel Connor, and Elizabeth C Connor incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Arthur Connor on May 26, 2004.

### 145.  The March 31, 2005 Terrorist Attack – Bayji, Iraq (FOB Summerall).
#### Plaintiff: Michael Williams

a.  Plaintiff Michael Williams is a citizen of the United States and is domiciled in the State of Texas.

b.  Michael Williams was a first sergeant in the United States Army, a part of the 578th Signals Company, 22nd Signal Brigade. On March 31, 2005, Williams was conducting security in a four-vehicle convoy around two in the afternoon. He was in the rear truck and positioned as the truck commander of a 99-8 Humvee that was unarmored and equipped with a Rhino. There were three soldiers in the vehicle and they were returning from Camp Speicher in Tikrit headed to Forward Operating Base (FOB) Summerall. Suddenly, an IED was remote detonated on MSR Tampa. The ensuing blast penetrated and dismantled Williams' vehicle. The terrorist attack caused several soldiers in the vehicle, including Williams, to sustain serious injuries. As a result, Williams received a Purple Heart.

c.  The March 31, 2005 Terrorist Attack against Michael Williams constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the March 31, 2005 Terrorist Attack, Michael Williams sustained significant injuries, including shrapnel wounds in the neck and legs, a TBI, Tinnitus, PTSD, and dizziness.

e.  Because of these injuries, Michael Williams is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 146.   The July 15, 2005 Terrorist Attack - Hit, Iraq
### Plaintiff: Dan Foot

a.  Plaintiff Dan Foot is a citizen of the United States and is domiciled in the State of Illinois.

b.  Dan Foot was a Corporal in the United States Marine Reserves a part of the Weapons Platoon, Lima Company, 3rd battalion, 25th Marines out of Columbus, Ohio. On July 15th, 2005, around 3:30 - 4:00 pm, Foot was on foot patrol outside of the Ibrahim al Khalil Mosque in Hit, Iraq when an IED detonated from the southeast corner, about 8 feet away from his location. Foot was medevacked to the Al-Asad Air Base. Dan Foot survived the Terrorist Attack after undergoing surgery. However, Travis Youngblood, a Navy Corpsman, was tragically KIA.

c.  The July 15, 2005, Terrorist Attack against Dan Foot constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the July 15, 2005 Terrorist Attack, Dan Foot sustained significant injuries, including a TBI, shrapnel wounds, and a hand wound.

e.  Because of these injuries, Dan Foot is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 147.   The July 22, 2003 Terrorist Attack – Ramadi, Iraq
### Plaintiff: Brandon Erickson Family

a.  Plaintiff Brandon Erickson is a citizen of the United States and is domiciled in the State of North Dakota.

b.  Plaintiff Dana Erickson is a citizen of the United States and is domiciled in the State of North Dakota. She is the wife of Brandon Erickson.

c.  Brandon Erickson was a specialist in the United States Army National Guard, part of the 957 Engineer Company out of North Dakota. He deployed to Fallujah, Iraq. On July 22, 2003, Mr. Erickson was the truck commander in an unarmored Heavy Expanded Mobility Tactical Truck (HEMTT), the middle vehicle of a six-vehicle convoy. While on a re-supply mission to Al-Ramadi, his vehicle ran over an IED which detonated. As a result, the vehicle was disabled and Erickson sustained injuries.

d.  The July 22, 2003 Terrorist Attack against Brandon Erickson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the July 22, 2003 Terrorist Attack, Brandon Erickson sustained significant injuries, including right arm amputation, right arm shrapnel, facial shrapnel, and PTSD.

f.  Because of these injuries, Brandon Erickson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Dana Erickson incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Brandon Erickson on July 22, 2003.

## 148. The April 6, 2006 Terrorist Attack - Abu Ghraib, Iraq
### Plaintiff: Jose Martinez Family

a.  Plaintiff Jose Martinez is a citizen of the United States and is domiciled in the State of Idaho.

b.  Plaintiff Lilia Martinez is a citizen of the United States and is domiciled in the State of Idaho. She is the wife of Jose Martinez.

c.  Jose Martinez was a sergeant in the United States Marine Corps as part of the C Company, 1st Marines Regiment, First Marines Division out of Camp Horno at Camp Pendleton, CA. On April 6, 2006, around 11:00 AM, Martinez was in a convoy of about three vehicles. He was the in the front right passenger's side of the second unarmored Humvee in his convoy. The Humvee was equipped with safeguarding devices. His convoy had departed Forward Operating Base (FOB) Abu Ghraib when they were attacked with an IED. The IED detonated from the right side of the road and penetrated the front passenger's side. Jose Martinez survived the Terrorist Attack and was awarded a Combat Action Ribbon.

d. The April 6, 2006 Terrorist Attack against Jose Martinez constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. As a result of the April 6, 2006 Terrorist Attack, Jose Martinez sustained significant injuries, including Migraines, PTSD, Tinnitus; TBI; patellofemoral syndrome; back injury, right leg injury, left leg injury.

f. Because of these injuries, Jose Martinez is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Lilia Martinez incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Jose Martinez on April 6, 2006.

### 149.    The June 6, 2011 Terrorist Attack - Baghdad, Iraq (Camp Loyalty)
### Plaintiff: Dave Rogers

a. Plaintiff Dave Rogers is a citizen of the United States and is domiciled in the State of New York.

b. Dave Rogers was a Master Sergeant in the United States Army, a part of the 1st Battalion, 7th Artillery out of Fort Riley, Kansas. Rogers was deployed to Baghdad, Iraq and was stationed at Camp Loyalty. On June 6, 2011, in the early morning, Rogers was asleep at Camp Loyalty. Suddenly, enemy insurgents associated with Katabib Hezbollah launched several improvised rockets over Camp Loyalty's walls in Baghdad. The rockets then struck the Camp's residential quarters. This Terrorist Attack, the deadliest attack on American troops in Iraq since 2009, caused the death of five soldiers – including Spc. Emilio Campo. Other soldiers like Rogers sustained serious injuries. As a result of this attack, Dave Rogers was awarded a Purple Heart.

c. The June 6, 2011 Terrorist Attack against Dave Rogers constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[164]

---

[164] *See The Situation in Iraq and Progress by the Government of Iraq in Meeting Benchmarks and Achieving Reconciliation: Hearing before the Comm. on Armed Services*, 110th Cong., 2d sess., (April 8-10, 2008) (General Petraeus concluding that it is certainly fair to conclude that Iranian-backed Special Groups in Iraq were responsible for killing hundreds of American soldiers).

d.  As a result of the June 6, 2011 Terrorist Attack, Dave Rogers sustained significant injuries, including shrapnel wounds and anxiety.

e.  Because of these injuries, Dave Rogers is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 150.    The October 23, 2006 Terrorist Attack – Baghdad, Iraq
### Plaintiff: Eric Johnson

a.  Plaintiff Eric Johnson is a citizen of the United States and is domiciled in the State of Kansas.

b.  Eric Johnson was in the United States Marines as a Lance Corporal, part of the 44 Lima Company. He deployed to Karbala, Iraq. On October 23, 2006, Johnson was the gunner in an up-armored Humvee; the rear vehicle of a four-vehicle convoy. While on a night patrol in Baghdad, in the Zafriniyah neighborhood, a vehicle in the convoy was hit by an EFP. As a result, the vehicle was destroyed and there was one fatality, 1st Lieutenant Amos Brock. Johnson survived the Terrorist Attack.

c.  The October 23, 2006 Terrorist Attack against Eric Johnson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[165]

d.  As a result of the October 23, 2006 Terrorist Attack, Eric Johnson sustained significant injuries, including Tinnitus and PTSD.

e.  Because of these injuries, Eric Johnson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 151.    The June 4, 2005 Terrorist Attack - Abu Gharib, Iraq
### Plaintiff: Robert Schoch Family

a.  Plaintiff Robert Schoch is a citizen of the United States and is domiciled in the State of Florida.

b.  Plaintiff Angela Schoch is a citizen of the United States and is domiciled in the State of Florida. She is the wife of Robert Schoch.

---

[165] *See, e.g.*, *Karcher*, 396 F. Supp. 3d at 15–25, 33.

c.  Plaintiff Robert P Schoch is a citizen of the United States and is domiciled in the State of Florida. He is the son of Robert Schoch.

d.  Plaintiff Alexander Schoch is a citizen of the United States and is domiciled in the State of Florida. He is the son of Robert Schoch.

e.  Plaintiff Angela A Schoch is a citizen of the United States and is domiciled in the State of Florida. She is the daughter of Robert Schoch.

f.  Robert Schoch was a Sergeant in the United States Air Force. He deployed to Fallujah, Iraq. On June 4, 2005, he was traveling in the last vehicle, an up-armored Humvee, as part of a twenty vehicle convoy. The convoy was passing the Abu Gharib prison heading towards to Fallujah and were instructed to stay to the right of the road. A white sedan suddenly started to drive erratically to the left of the convoy. Warning shots were fired to stop the vehicle but it ended up crashing into a tractor trailer, exploding the VBIED. Schoch survived the terrorist attack.

g.  The June 4, 2005 Terrorist Attack against Robert Schoch constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

h.  As a result of the June 4, 2005 Terrorist Attack, Robert Schoch sustained significant injuries, including a TBI, a spinal injury, and Tinnitus.

i.  Because of these injuries, Robert Schoch is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Angela Schoch, Robert P Schoch, Alexander Schoch, and Angela A Schoch incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Robert Schoch on June 4, 2005.

### 152.  The September 26, 2003 Terrorist Attack - Tikrit, Iraq
**Plaintiff: Gary Boggs Family**

a.  Plaintiff Gary Boggs is a citizen of the United States and is domiciled in the State of Florida.

b.  Plaintiff April Arguin is a citizen of the United States and is domiciled in the State of Florida. She is the wife of Gary Boggs.

c.  Gary Boggs was a Sergeant in United States Army, a part of the 11th Bravo, 14th Infantry Division out of Tikrit, Iraq. On September 26, 2003, during the morning, Boggs was in a

convoy on the way to Camp Doha for several days of rest and relaxation. He was in the trail Humvee of the convoy, seated behind the driver. The convoy was near the Brigade Support Area (BSA), about 2-3 miles south of Tikrit, when an IED suddenly exploded. The ensuing shrapnel struck Gary in the face and also hit his left leg and arm. Thereafter, Gary was medivacked to Baghdad Hospital and later flown to Landstuhl, Germany for emergency treatment. Tragically, doctors were unable to save his left eye. Gary ultimately survived the Terrorist Attack and received an Army Accommodation Medal, Purple Heart, and Combat Infantry Badge.

d.  The September 26, 2003 Terrorist Attack against Gary Boggs constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the September 26, 2003 Terrorist Attack, Gary Boggs sustained significant injuries, including loss of his left eye; a TBI; PTSD; Tinnitus; rupture of both ear drums requiring surgery; neuropathy of left arm; and shrapnel wounds to his face, left arm, and left leg.

f.  Because of these injuries, Gary Boggs is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, April Arguin incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Gary Boggs on September 26, 2003.

### 153.  The November 13, 2004 Terrorist Attack - Baghdad, Iraq
#### Plaintiff: Timothy Christopher Osborn Family

a.  Plaintiff Timothy Christopher Osborn is a citizen of the United States and is domiciled in the State of Washington.

b.  Plaintiff Jacob Osborn is a citizen of the United States and is domiciled in the State of Washington. He is the son of Timothy Christopher Osborn.

c.  Plaintiff Alexus Osborn is a citizen of the United States and is domiciled in the State of Washington. He is the son of Timothy Christopher Osborn.

d.  Timothy Obsorn was a sergeant in the United States Army as part of the 10 Mountain Division out of Fort Drum, New York. On November 13, 2004, Osborn was in a convoy of about six vehicles. He was the driver of a an up-armored Humvee. The Humvee was equipped with rhino and duke safeguarding devices. His convoy was travelling on Route Tampa while returning to

Camp Victory in Baghdad when they were attacked by an IED. The IED blew off the driver's door, exposing Osborn to the ensuing shrapnel. As a result, Osborn was immediately provided medical attention at the Combat Support Hospital at Camp Liberty. Timothy Osborn survived the Terrorist Attack and was awarded a Purple Heart.

e.  The November 13, 2004 Terrorist Attack against Timothy Christopher Osborn constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the November 13, 2004 Terrorist Attack, Timothy Christopher Osborn sustained significant injuries, including shrapnel wounds in his leg and lower back, a spinal injury resulting in chronic numbness and limited range of motion, left knee patellofemoral pain syndrome, and PTSD.

g.  Because of these injuries, Timothy Christopher Osborn is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Jacob Osborn and Alexus Osborn incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Timothy Christopher Osborn on November 13, 2004.

## 154.  The March 18, 2008 Terrorist Attack - Adamiyah, Iraq
### Plaintiff: Benjamin Stephens

a.  Plaintiff Benjamin Stephens is a citizen of the United States and is domiciled in the State of Washington.

b.  Benjamin Stephens was a specialist in the United States Army a part of the 108th Military Police Company; Airborne Air Assault, 16th Military Police Brigade, 503 Military Police Battalion out of Garrison: Ft. Bragg, North Carolina. On March 18, 2008, around 5:00 PM, Stephens was in a convoy of about four vehicles. He was the gunner of an up-armored Humvee. The Humvee was equipped with rhino or other safeguarding devices. His convoy had departed the Iraqi Police Station in Adamiyah and was heading towards the site of an IED attack to provide security until the EOD team arrived to perform a post-blast analysis report. While they were at a T-intersection, a RPG was launched at Stephens' vehicle. As a result, Stephens was immediately medevacked to the Casualty Aid Station at Combat Outpost (COP) Callahan. Then he was transported to CASH at the Green Zone in Baghdad. Stephens was soon treated at Landstuhl, Germany and received further treatment at Walter Reed Medical Center. Benjamin Stephens ultimately survived the Terrorist Attack and was awarded a Purple Heart.

c.  The March 18, 2008 Terrorist Attack against Benjamin Stephens constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[166]

d.  As a result of the March 18, 2008 Terrorist Attack, Benjamin Stephens sustained significant injuries, including an amputated right index finger, bilateral arm shrapnel injuries, bilateral leg shrapnel injuries, a shrapnel injury to his penis, right ear perforated ear drum, right ear hearing loss, a TBI, and PTSD.

e.  Because of these injuries, Benjamin Stephens is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 155.    The December 3, 2006 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Jason Blacken Family

a.  Plaintiff Jason Blacken is a citizen of the United States and is domiciled in the State of Wisconsin.

b.  Plaintiff Connie Blacken is a citizen of the United States and is domiciled in the State of Wisconsin. She is the mother of Jason Blacken.

c.  Plaintiff Bill Blacken is a citizen of the United States and is domiciled in the State of Wisconsin. He is the father of Jason Blacken.

d.  Jason Blacken was a sergeant in the United States Army, part of the 1-36 Infantry out of Germany. He deployed to Ramadi, Iraq. On December 3, 2006, Blacken was in the middle of a three-vehicle convoy. He was the truck commander of an up-armored Humvee. The Humvee was equipped with Rhino. Blacken's convoy was returning to Combat Outpost Falcon in Ramadi when the vehicle was struck by an IED. Blacken's vehicle sustained damage and burned. As a result, Mr. Blacken was medically evacuated to Camp Ramadi. Jason Blacken survived the Terrorist Attack and was awarded a Purple Heart and an Army Commendation Medal with Valor.

e.  The December 3, 2006 Terrorist Attack against Jason Blacken constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees,

---

[166] *See The Situation in Iraq and Progress by the Government of Iraq in Meeting Benchmarks and Achieving Reconciliation: Hearing before the Comm. on Armed Services,* 110th Cong., 2d sess., (April 8-10, 2008) (General Petraeus stating that it is certainly fair to conclude that Iranian-backed Special Groups in Iraq were responsible for killing hundreds of American soldiers).

and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.   As a result of the December 3, 2006 Terrorist Attack, Jason Blacken sustained significant injuries, including 2nd and 3rd degree facial and hand burns, deviated septum, shrapnel wounds to the face, a right arm injury, a left hip injury, a TBI, and PTSD.

g.   Because of these injuries, Jason Blacken is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Connie Blacken and Bill Blacken incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Jason Blacken on December 3, 2006.

### 156.   The April 26, 2008 Terrorist Attack – Sadr City, Iraq
### Plaintiff: James Zollman

a.   Plaintiff James Zollman is a citizen of the United States and is domiciled in the State of Arkansas.

b.   James Zollman was a specialist in the United States Army as part of the Fourth Infantry Division out of Fort Hood, Texas. On April 26, 2008, during the evening, Zollman was in the second to last Mine-Resistant Ambush Protected vehicle (MRAP) in a convoy of six vehicles. The MRAP was equipped with a Rhino safeguarding device. His convoy was headed towards Sadr City while transporting a helium tank and a blimp when an IED detonated. Following the incident, Specialist Zollman was taken to the combat medic to receive medical attention. James Zollman survived the Terrorist Attack and was awarded a Combat Action Badge.

c.   The April 26, 2008 Terrorist Attack against James Zollman constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.   As a result of the April 26, 2008 Terrorist Attack, James Zollman sustained significant injuries, including a concussion, bulging discs and sciatic impingement requiring surgery to fuse his L4 and L5 discs, a right knee injury, and PTSD.

e.   Because of these injuries, James Zollman is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 157.  The November 28, 2006 Terrorist Attack - Hit, Iraq
### Plaintiff: James Perry

a.  Plaintiff James Perry is a citizen of the United States and is domiciled in the State of Texas.

b.  James Perry was a Staff Sargent in the Unites States Army. On November 28, 2006, Perry was the diver of a M984 Himit Recovery Vehicle, traveling along the Military Supply Route road headed to Hit Iraq. While traveling down this road, an IED detonated in between Perry's vehicle and the armored vehicle in front of Perry. Perry survived the attack and received a Combat Action Badge.

c.  The November 28, 2006 Terrorist Attack against James Perry constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the November 28, 2006 Terrorist Attack, James Perry sustained significant injuries, including permanent hearing loss, a lumbar spine injury requiring surgery, a sciatic nerve injury, and PTSD.

e.  Because of these injuries, James Perry is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 158.  The April 7, 2004 Terrorist Attack - Balad, Iraq
### Plaintiff: Jerry Martin Family

a.  Plaintiff Jerry Martin is a citizen of the United States and is domiciled in the State of Arkansas.

b.  Plaintiff Kyon Young is a citizen of the United States and is domiciled in the State of Texas. He is the son of Jerry Martin.

c.  Plaintiff Serral Martin is a citizen of the United States and is domiciled in the State of Texas. He is the son of Jerry Martin.

d.  Plaintiff Sharronda Martin is a citizen of the United States and is domiciled in the State of Louisiana. She is the daughter of Jerry Martin.

e.  Plaintiff Bobbie Hollis is a citizen of the United States and is domiciled in the State of Louisiana. She is the mother of Jerry Martin.

f.  Jerry Martin was a sergeant in the United States Army; part of the 443 Transportation Company out of Kansas. On the morning of April 7, 2004, Martin was in the middle of a six-vehicle convoy. He was the rear passenger of an up-armored Humvee. Martin's convoy was headed towards Camp Anaconda in Balad to prepare for emergency leave to the United States when an IED detonated on the left side of the vehicle. The vehicle flipped on its side and was disabled. Martin survived the terrorist attack.

g.  The April 7, 2004 Terrorist Attack against Jerry Martin constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

h.  As a result of the April 7, 2004 Terrorist Attack, Jerry Martin sustained significant injuries, including broken ribs, a dislocated disc in his neck requiring surgery, chronic back pain requiring spinal fusion surgery, a knee injury, migraines and PTSD.

i.  Because of these injuries, Jerry Martin is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Kyon Young, Serral Martin, Sharronda Martin, and Bobbie Hollis incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Jerry Martin on April 7, 2004.

### 159.    The October 15, 2008 Terrorist Attack – Baghdad, Iraq (FOB Al Dora)
### Plaintiff: Rama Toulon

a.  Plaintiff Rama Toulon is a citizen of the United States and is domiciled in the State of Texas.

b.  Rama Toulon was a specialist in the United States Army; part of the 2nd Battalion 4th Infantry Regiment out of Fort Polk, Louisiana. On October 15, 2008, Mr. Toulon was on Forward Operating Base (FOB) Al Dora in Baghdad responding to an initial explosion. At this time, a suicide bomber entered FOB Dora and detonated his explosive near Toulon. As a result, Rama Toulon sustained injuries, some requiring surgery, but ultimately survived the attack.

c.  The October 15, 2008 Terrorist Attack against Rama Toulon constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[167]

d. As a result of the October 15, 2008 Terrorist Attack, Rama Toulon sustained significant injuries, including forearm shrapnel wounds and scalp shrapnel wounds requiring surgery, a TBI, and PTSD.

e. Because of these injuries, Rama Toulon is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 160.    The June 17, 2007 Terrorist Attack – Baghdad, Iraq (FOB Loyalty)
### Plaintiff: John Hudson

a. Plaintiff John Hudson is a citizen of the United States and is domiciled in the State of Colorado.

b. John Hudson was in the United States Army apart 4th Brigade, 2ID 4th Brigade SPC Troops. He was deployed to Iraq. On June 17, 2007, during the earlier part of the afternoon, he was at his base camp in Baghdad - Forward Operating Base (FOB) Loyalty. Suddenly, FOB Loyalty began to be hit by mortar rounds. Hudson was directly hit by two mortar rounds while on foot near the motor pool area. However, he survived the attack and received a Purple Heart.

c. The June 17, 2007 Terrorist Attack against John Hudson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[168]

d. As a result of the June 17, 2007 Terrorist Attack, John Hudson sustained significant injuries, including PTSD, a TBI, a broken eye-socket, Tinnitus, memory loss, and a blown left ear drum.

e. Because of these injuries, John Hudson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

---

[167] *See* Press Conference on Multi-National Forces-Iraq, Maj. Gen. Kevin Bergner and Brig. Gen. Michael Walsh (Oct. 3, 2007) (concluding that senior Hezbollah leadership directed a commander to work with the IRGC-QF in Iran to train Iraqi extremists).

[168] *See* Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (U.S. officials found mortar shells following the capture of IRGC-QF leaders in Iraq).

**161.**    **The April 16, 2005 Terrorist Attack - Hawija, Iraq**
**Plaintiff: Glenn Davis Family**

a.  Plaintiff Glenn Davis is a citizen of the United States and is domiciled in the State of Montana.

b.  Plaintiff Alice Davis is a citizen of the United States and is domiciled in the State of Montana. She is the wife of Glenn Davis.

c.  Glenn Davis was a sergeant in the United States Army, part of the 116th Brigade Combat Team out of Boise, Idaho. On April 16, 2005, Davis was in a convoy of about six vehicles. He was the rear passenger of an up-armored Humvee. Davis' convoy was showing a new platoon their area of operation in Hawija when the vehicle ran over a buried IED. As a result, the front end of the Humvee was blown off and it was disabled. Davis survived the attack and received a Purple Heart.

d.  The April 16, 2005 Terrorist Attack against Glenn Davis constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the April 16, 2005 Terrorist Attack, Glenn Davis sustained significant injuries, including a spinal injury ultimately requiring surgery, Tinnitus, a dropped right foot, a TBI, and PTSD.

f.  Because of these injuries, Glenn Davis is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Alice Davis incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Glenn Davis on April 16, 2005.

**162.**    **The August 10, 2005 Terrorist Attack - Hawija, Iraq**
**Plaintiff: Dennis Brophy Jr.**

a.  Plaintiff Dennis Brophy Jr. is a citizen of the United States and is domiciled in the State of Oregon.

b.  Dennis Brophy Jr. was a sergeant in the United States Army. On August 10, 2005 at approximately 1115 hours, Mr. Brophy was the gunner in the lead vehicle of a convoy. The convoy was traveling from Forward Operating Base (FOB) Warrior to FOB McHenrey in Hawija, Iraq. When the convoy was just a minutes away from FOB McHenry, an IED

detonated in very close proximity to Brophy's vehicle. Brophy experienced the entire force of the IED blast but survived the terrorist attack.

c.  The August 10, 2005 Terrorist Attack against Dennis Brophy Jr. constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the August 10, 2005 Terrorist Attack, Dennis Brophy Jr. sustained significant injuries, including a TBI, PTSD, a lower back injury, a left knee injury ultimately requiring surgery, Tinnitus, and memory loss.

e.  Because of these injuries, Dennis Brophy Jr. is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 163.  The February 26, 2007 Terrorist Attack - Iskandariya, Iraq
### Plaintiff: Brad Macy Family

a.  Plaintiff Brad Macy is a citizen of the United States and is domiciled in the State of North Carolina.

b.  Plaintiff Katrina Macy is a citizen of the United States and is domiciled in the State of North Carolina. She is the wife of Brad Macy.

c.  Brad Macy was a Private First Class in the United States Army, part of the 425 Airborne Division out of Anchorage, Alaska. On February 26, 2007, Macy was in a convoy of about four vehicles. He was the driver of an up-armored M-1151 Humvee, which was equipped with rhino. His convoy was on an escort mission to an Iraqi Police Station in Iskandariya when they were hit by an EFP. The weapon penetrated the vehicle from the left side, piercing the engine block under the driver's seat. As a result, the vehicle was completely destroyed. However, Brad Macy survived the Terrorist Attack and was awarded a Combat Infantry Badge.

d.  The February 26, 2007 Terrorist Attack against Brad Macy constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[169]

---

[169] *See, e.g., Karcher,* 396 F. Supp. 3d at 15-25, 33.

e. As a result of the February 26, 2007 Terrorist Attack, Brad Macy sustained significant injuries, including headaches, Tinnitus, a TBI, and PTSD.

f. Because of these injuries, Brad Macy is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Katrina Macy incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Brad Macy on February 26, 2007.

## 164. The July 6, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Douglas Hernandez

a. Plaintiff Douglas Hernandez is a citizen of the United States and is domiciled in the State of Texas.

b. Douglas Hernandez was a in the United States Army as a E5, part of the 11 Charlie, 101 CAV. He was deployed to Iraq. On July 6, 2005, while out on patrol near Camp Liberty in Baghdad, a remote detonated IED hidden underground exploded. The ensuing shrapnel penetrated Hernandez's vehicle. Hernandez survived the attack and received a Purple Heart.

c. The July 6, 2005 Terrorist Attack against Douglas Hernandez constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the July 6, 2005 Terrorist Attack, Douglas Hernandez sustained significant injuries, including loss of consciousness, a TBI, nerve damage causing chronic low back pain and neck pain, and PTSD.

e. Because of these injuries, Douglas Hernandez is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 165. The August 10, 2010 Terrorist Attack – Baghdad, Iraq
### Plaintiff: Eugene Schwoch

a. Plaintiff Eugene Schwoch is a citizen of the United States and is domiciled in the State of Washington.

b. Eugene Schwoch was a E5 in the United States Army, a part of the 2-73 Combat Engineers. On August 10, 2010, at 2100, Eugene was doing a route clearance mission in Baghdad traveling in a convoy. Schwoch was the gunner in an up-armored Mine Resistant Ambush Protected

(MRAP) panther vehicle. While doing route clearance an EFP detonated. Schwoch received medical treatment afterwards at Whitmer TMC in Baghdad. He survived the terrorist attack.

c. The August 10, 2010 Terrorist Attack against Eugene Schwoch constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[170]

d. As a result of the August 10, 2010 Terrorist Attack, Eugene Schwoch sustained significant injuries, including headache, earache, disorientation, PTSD, and degenerative disc disease causing lower back pain.

e. Because of these injuries, Eugene Schwoch is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 166.   The February 14, 2005 Terrorist Attack - Kirkuk, Iraq
### Plaintiff: Eric King Family

a. Plaintiff Eric King is a citizen of the United States and is domiciled in the State of Texas.

b. Plaintiff Jaidus N. King is a citizen of the United States and is domiciled in the State of Texas. She is the daughter of Eric King.

c. Plaintiff Eric K. King is a citizen of the United States and is domiciled in the State of Arkansas. He is the son of Eric King.

d. Eric King was a Lieutenant in the United States Army as part of the One Hundred Sixteenth Cavalry Brigade Combat Team out of Boise, Idaho. On February 14, 2005, during the night, King was in a convoy of about four vehicles. He was the truck commander of a Humvee equipped with makeshift armor which had been crafted from scrap metal. King's convoy had departed from their safe house in Kirkuk and was travelling on Route Valentine, on their way to perform a route recon mission. King's convoy was suddenly attacked by an IED. The IED hit King's vehicle on the front driver's side. The shrapnel penetrated the vehicle and the blast severely damaged the ballistic windshield. Eric King survived the Terrorist Attack and was awarded a Combat Infantryman Badge.

e. The February 14, 2005 Terrorist Attack against Eric King constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

---

[170]*See, e.g.*, *id.* at 15–25, 33.

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the February 14, 2005 Terrorist Attack, Eric King sustained significant injuries, including A Seizure Disorder, a TBI, PTSD, memory loss, migraines, and bilateral Tinnitus.

g.  Because of these injuries, Eric King is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Jaidus N. King and Eric K. King incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Eric King on February 14, 2005.

### 167.  The June 12, 2003 Terrorist Attack – Mosul (Q West), Iraq
### Plaintiff: Michael Williams

a.  Plaintiff Michael Williams is a citizen of the United States and is domiciled in the State of Alabama.

b.  Captain Michael R. Williams served in the Army and deployed to Iraq in 2003 as a company commander for A Co. 3rd Battalion 101st Airborne Division, an Apache Helicopter Company. On June 12th, 2003, around 10:24am, CPT Williams embarked on a mission with Rangers and Special Forces to a terrorist training camp outside of Q West in Mosul Iraq. The mission was close to the main road entering Syria. Upon nearing the camp, Williams' company of 4 Apache helicopters immediately began to take on RPG fire. Williams' helicopter was directly hit by an RPG, quickly caught fire, and was shot down.  Due to the crash impact, Williams was medevacked to a hospital in Al-Asad for his injuries. As a result of this attack, Michael Williams received a Purple Heart and a Combat Action Badge.

c.  The June 12, 2003 Terrorist Attack against Michael Williams constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[171]

d.  As a result of the June 12, 2003 Terrorist Attack, Michael Williams sustained significant injuries, including compression fractures to his T-11, T-12, L-5 to L-7 Vertebrae, lower back burns, chronic lower back pain, and PTSD.

---

[171] *See* Pound and Jack, *Special Report: The Iran Connection*, U.S. NEWS & WORLD REPORT (2003 U.S. and Israeli intelligence reports concluded that Hezbollah was training the Mahdi Army, an Iraqi militant group, at Iran's request and providing them weapons like RPGs).

e.   Because of these injuries, Michael Williams is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 168.   The January 4, 2007 Terrorist Attack - Balad, Iraq
### Plaintiff: Ernest Olidan

a.   Plaintiff Ernest Olidan is a citizen of the United States and is domiciled in the State of Kansas.

b.   Ernest Olidan was a chief warrant officer 2 in the United States Army, part of the HHC 97th Military Police Battalion out of Fort Riley, Kansas. On January 4, 2007, Olidan was a passenger in a Sherpa plane. His plane was heading towards Camp Speicher in Tikrit when it was attacked by anti-aircraft fire. As a result, Olidan's helmet was penetrated by two bullets, knocking him unconscious. Olidan was medically evacuated to Balad Hospital. Ernest Olidan survived the Terrorist Attack and was awarded a Purple Heart.

c.   The January 4, 2007 Terrorist Attack against Ernest Olidan constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[172]

d.   As a result of the January 4, 2007 Terrorist Attack, Ernest Olidan sustained significant injuries, including shrapnel wounds to the head requiring emergency treatment, PTSD, a TBI, Tinnitus, migraines, insomnia.

e.   Because of these injuries, Ernest Olidan is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 169.   The May 8, 2006 Terrorist Attack - Najaf, Iraq
### Plaintiff: Daniel Sorrell

a.   Plaintiff Daniel Sorrell is a citizen of the United States and is domiciled in the State of Indiana.

b.   Daniel Sorrell was a specialist in the United States Army, part of the 1-163 Field Artillery out of Indiana. Sorrell was deployed to Najaf, Iraq. On the morning of May 8, 2006, Sorrell was in a convoy of about five vehicles. He was the gunner of an up-armored Humvee. Sorrell's

---

[172] *See The Situation in Iraq and Progress by the Government of Iraq in Meeting Benchmarks and Achieving Reconciliation: Hearing before the Comm. on Armed Services*, 110th Cong., 2d sess., (April 8-10, 2008) (General Petraeus concluding that rockets and thousands of pounds of other explosives recovered in seized weapons caches came from Iran).

convoy was heading towards the police station in Najaf when a roadside IED detonated on the driver's side of the vehicle. The vehicle was damaged and disabled. Daniel Sorrell survived the Terrorist Attack and was awarded a Purple Heart.

c.  The May 8, 2006 Terrorist Attack against Daniel Sorrell constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the May 8, 2006 Terrorist Attack, Daniel Sorrell sustained significant injuries, including shrapnel in back of his head requiring surgery, a hole in his right ear, permanent shrapnel wounds in neck and ear, PTSD, Tinnitus, and a TBI causing  migraine headaches.

e.  Because of these injuries, Daniel Sorrell is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 170.    The November 5, 2005 Terrorist Attack - Balad, Iraq
### Plaintiff: Corbin Foster

a.  Plaintiff Corbin Foster is a citizen of the United States and is domiciled in the State of Tennessee.

b.  Corbin Foster was a specialist in the United States Army and was deployed to Kirkuk, Iraq. On November 5, 2005, Mr. Foster was in an up-armored Humvee, part of a five-vehicle convoy. They were preforming route clearance near Balad when a remote detonated daisy chain IED exploded right at the door where Mr. Foster was sitting. As a result of the explosion Mr. Foster sustained injuries and was taking to Balad for medical attention. Foster survived the attack and received a Purple Heart.

c.  The November 5, 2005 Terrorist Attack against Corbin Foster constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the November 5, 2005 Terrorist Attack, Corbin Foster sustained significant injuries, including shrapnel wounds to his neck requiring emergency surgery, a TBI, Tinnitus, migraines, and PTSD.

e. Because of these injuries, Corbin Foster is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 171.    The May 8, 2008 Terrorist Attack - Al-Asad, Iraq
### Plaintiff: Hussein Alhrshawi

a. Plaintiff Hussein Alhrshawi is a citizen of the United States and is domiciled in the State of Indiana.

b. Hussein Alhrshawi was a Contractor for the United States Army. On May 8, 2008, Neal was transporting a VIP person in a convoy in Al Assad, Iraq. Suddenly, Neal's vehicle ran over a buried IED. The ensuing shrapnel penetrated the vehicle and struck Neal. However, he ultimately survived the terrorist attack after being medevacked to a military hospital in Baghdad.

c. The May 8, 2008 Terrorist Attack against Hussein Alhrshawi constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the May 8, 2008 Terrorist Attack, Hussein Alhrshawi sustained significant injuries, including shrapnel wounds in the head and chest, fractured skull, a tibia and fibula fracture requiring surgery, and PTSD.

e. Because of these injuries, Hussein Alhrshawi is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 172.    The July 10, 2005 Terrorist Attack - Al Waleed, Iraq
### Plaintiff: Corey Alderman

a. Plaintiff Corey Alderman is a citizen of the United States and is domiciled in the State of Florida.

b. Corey Alderrman was an E3 in the United States Marines, a part of the 35-31st Transportation, Kilo Battery 3-10 out of the Camp Korean Village in Iraq. Corey was deployed to Al Waleed, a town near the border of Syria, Jordan, and Iraq. On July 10, 2005, two Suicide Vehicle Borne Improvised Explosive Devices (SVBIED) detonated inside the Al Waleed Port of Entry. The attack was a coordinated effort against Marines and Iraqi coalition forces in the area. Multiple

Iraqi nationals were killed in the attack and the force of the explosions knocked Alderman unconscious. Alderman survived the terrorist attack.

c.  The July 10, 2005 Terrorist Attack against Corey Alderman constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the July 10, 2005 Terrorist Attack, Corey Alderman sustained significant injuries, including a TBI, PTSD, Tinnitus, sleep apnea, a chronic Post Traumatic Headache, shrapnel wounds to his spine, and a spinal injury ultimately requiring two surgeries.

e.  Because of these injuries, Corey Alderman is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 173.  The November 3, 2005 Terrorist Attack – Baghdad, Iraq
### Plaintiff: William Allen

a.  Plaintiff William Allen is a citizen of the United States and is domiciled in the State of Michigan.

b.  William Allen was a civilian contractor for Halliburton and worked in Baghdad, Iraq during Operation Iraqi Freedom. Specifically, Allen worked at Camp Liberty. On November 3, 2005, Allen was traveling on the main supply route in Baghdad. Suddenly, an IED detonated on same side of the truck Allen was traveling in. Thereafter, the truck swerved to the left and crashed into another military vehicle. As a result of the IED attack and subsequent crash, William Allen suffered multiple fractures and required surgery in Landstuhl, Germany. Allen ultimately survived the terrorist attack.

c.  The November 3, 2005 Terrorist Attack against William Allen constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the November 3, 2005 Terrorist Attack, William Allen sustained significant injuries, including a right femoral shaft fracture and right ulna fracture requiring multiple surgeries, a rib contusion, a TBI, vertigo, and PTSD.

e.  Because of these injuries, William Allen is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 174.    The December 1, 2005 Terrorist Attack - Al Karmah, Iraq
### Plaintiff: Martin Roman

a.  Plaintiff Martin Roman is a citizen of the United States and is domiciled in the State of Florida.

b.  Martin Roman was a Lance Corporal in the United States Marines, a part of the Second Battalion Second Marines out of Karma, Iraq. On December 1, 2005, around noon, Roman was on foot patrol at a marketplace in Al Karmah, Iraq when one of his battle buddies stepped on a triggered IED. The IED then detonated near Roman and the resulting shrapnel wounds nearly killed him. However, Roman survived the terrorist attack after being medically evacuated to the Fallujah Surgical Hospital for emergency treatment.

c.  The December 1, 2005 Terrorist Attack against Martin Roman constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the December 1, 2005 Terrorist Attack, Martin Roman sustained significant injuries, including blindness in his right eye from shrapnel wounds, shrapnel wounds in his penis and testicles causing erectile dysfunction, an olecranon fracture requiring emergency surgery, a left femoral artery injury requiring emergency surgery, shrapnel wounds throughout his body; deaf in both ears; MCL and ACL tears in both legs; a lower leg burn requiring a skin graft; a shattered elbow in 3 places, a punctured right lung, PTSD, a TBI, insomnia, and Major Depression Disorder.

e.  Because of these injuries, Martin Roman is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 175.    The January 27, 2008 Terrorist Attack - Sadr City, Iraq
### Plaintiff: Robert Regis Weppelman

a.  Plaintiff Robert Regis Weppelman is a citizen of the United States and is domiciled in the State of Texas.

b.  Robert Weppelman served in the United States Army in the 1st Division, National Police Transition Team. Weppelman was deployed to Baghdad. On January 27, 2008, Weppelman was driving the lead vehicle in a ten-vehicle convoy. Weppelman exited off Route Brewers in

Sadr City and was heading towards Route Grizzly when his vehicle hit two EFPs. Weppelman was knocked unconscious and one of his fellow soldiers sitting in the passenger seat, Major Alan Rogers, was tragically KIA. Weppelman survived the Terrorist Attack and received a Purple Heart.

c.  The January 27, 2008 Terrorist Attack against Robert Regis Weppelman constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[173]

d.  As a result of the January 27, 2008 Terrorist Attack, Robert Regis Weppelman sustained significant injuries, including PTSD and a TBI.

e.  Because of these injuries, Robert Regis Weppelman is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 176.  The February 10, 2007 Terrorist Attack - Tal Afar, Iraq
### Plaintiff: Demetrio Zamarripa

a.  Plaintiff Demetrio Zamarripa is a citizen of the United States and is domiciled in the State of Texas.

b.  Demetrio Zamarripa was a staff sergeant in the United States Marines Corps as part of the 1st Battalion, 54th Transportation Brigade out of Camp Atterbury Army Base. On February 10, 2007, Zamarripa was in a convoy of about 25 vehicles. He was the truck commander in a Humvee that had makeshift armor with scrap metal. His convoy was heading towards Tal Afar from Mosul on a night mission when they were attacked with an IED that penetrated the vehicle. Several soldiers were medevacked during the incident and one soldier was killed. As a result, Zamarripa was immediately taken to Tal Afar to receive medical attention. Demetrio Zamarripa survived the Terrorist Attack.

c.  The February 10, 2007 Terrorist Attack against Demetrio Zamarripa constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

---

[173] *See, e.g., Karcher,* 396 F. Supp. 3d at 15-25, 33.

d.  As a result of the February 10, 2007 Terrorist Attack, Demetrio Zamarripa sustained significant injuries, including a TBI, Tinnitus, and PTSD.

e.  Because of these injuries, Demetrio Zamarripa is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 177.    The April 19, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: David C. Santos Family

a.  Plaintiff David C. Santos is a citizen of the United States and is domiciled in the State of Texas.

b.  Plaintiff Annie Santos is a citizen of the United States and is domiciled in the state of Texas. She is the wife of David C. Santos.

c.  David Santos was a specialist in the United States Army, part of 3-7 Charlie Company. On April 19, 2005, Mr. Santos was on a dismounted patrol in Baghdad when a VBIED detonated behind his vehicle. As a result, two of Santos' fellow soldiers, Kevin Wessel and Jacob Pfister, were tragically KIA. David C. Santos survived the Terrorist Attack and was awarded a Purple Heart.

d.  The April 19, 2005 Terrorist Attack against David C. Santos constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the April 19, 2005 Terrorist Attack, David C. Santos sustained significant injuries, including a concussion, a TBI, PTSD and a back injury.

f.  Because of these injuries, David C. Santos is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Annie Santos incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by David C. Santos on April 19, 2005.

### 178.    The March 12, 2008 Terrorist Attack - Nasiriyah, Iraq
### Plaintiff: Bobby Cost Family

a.  Plaintiff Bobby Cost is a citizen of the United States and is domiciled in the State of North Carolina.

b.  Plaintiff Concetta Cost is a citizen of the United States and is domiciled in the state of North Carolina. She is the wife of Bobby Cost.

c.  Bobby Cost was in the United States Army Reserves as a Staff Sergeant, a part of the 1015 Maintenance Company. He was deployed to Camp Adder in Nasiriyah, Iraq. On March 12, 2008, Cost was at Camp Adder coming from the gym when an RPG was fired toward the Camp. The RPG exploded less than 50 meters away from Cost. Cost survived the attack; however, three of his fellow soldiers closer to the RPG were tragically KIA - Spc. Tenzin Samten, Staff Sgt. Jauntrea Bradley, and Spc. Dustin Jackson.

d.  The March 12, 2008 Terrorist Attack against Bobby Cost constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[174]

e.  As a result of the March 12, 2008 Terrorist Attack, Bobby Cost sustained significant injuries, including PTSD and Tinnitus.

f.  Because of these injuries, Bobby Cost is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Concetta Cost incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Bobby Cost on March 12, 2008.

### 179.  The December 20, 2005 Terrorist Attack - Rawah, Iraq
### Plaintiff: Eric Sheehan

a.  Plaintiff Eric Sheehan is a citizen of the United States and is domiciled in the State of Pennsylvania.

b.  Eric Sheehan was in the United States Army apart of the 14th Calvary unit. He deployed to Rawah, Iraq. On December 20, 2005, Sheehan was traveling on foot on the way back to his Forward Operating Base in Rawah when an IED on the side of the road was remote detonated. The ensuing shrapnel struck Sheehan and he received medical attention in Balad. As a result, Eric Sheehan received a Purple Heart.

---

[174] *The Situation in Iraq and Progress by the Government of Iraq in Meeting Benchmarks and Achieving Reconciliation: Hearing before the Comm. on Armed Services*, 110th Cong., 2d sess., (April 8-10, 2008) (General Petraeus concluding that it is certainly fair to conclude that Iranian-backed Special Groups in Iraq were responsible for killing hundreds of American soldiers).

c.  The December 20, 2005 Terrorist Attack against Eric Sheehan constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the December 20, 2005 Terrorist Attack, Eric Sheehan sustained significant injuries, including shrapnel wounds to his legs, arms, face and back, 1st & 2nd degree facial burns, temporary paralysis in his right hand, PTSD, a TBI, migraines, and a back injury.

e.  Because of these injuries, Eric Sheehan is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 180.  The June 24, 2004 Terrorist Attack - Baqubah, Iraq
### Plaintiff: Russel Dickerson Family

a.  Plaintiff Russel Dickerson is a citizen of the United States and is domiciled in the State of Virginia.

b.  Plaintiff Amanda Dickerson is a citizen of the United States and is domiciled in the state of Virginia. She is the wife of Russel Dickerson.

c.  Russel Dickerson was a specialist in the United States Army as part of the 1st Battalion 120th Infantry Regiment out of North Carolina. He deployed to Jalula, Iraq. On June 24, 2004, Mr. Dickerson was the driver of an up-armoured Bradley vehicle that was the lead vehicle of a four-vehicle convoy. While traveling in Baqubah, an IED was detonated before the convoy crossed the bridge. Once the convoy got to the other side, the IED attack was followed by small-arms fire and RPGs. As a result, two of Dickerson's fellow soldiers, Army Capt. Christopher Cash and Army Spc. Daniel Desens were killed. Dickerson survived the terrorist attack.

d.  The June 24, 2004 Terrorist Attack against Russel Dickerson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[175]

---

[175] *See* Pound and Jack, *Special Report: The Iran Connection,* U.S. NEWS & WORLD REPORT (2003 U.S. and Israeli intelligence reports concluded that Hezbollah was training the Mahdi Army, an Iraqi militant group, at Iran's request and providing them weapons like RPGs).

e. As a result of the June 24, 2004 Terrorist Attack, Russel Dickerson sustained significant injuries, including PTSD and Tinnitus.

f. Because of these injuries, Russel Dickerson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Amanda Dickerson incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Russel Dickerson on June 24, 2004.

### 181.    The May 7, 2004 Terrorist Attack - Karbala, Iraq
### Plaintiff: Charles C. Hoffman

a. Plaintiff Charles C. Hoffman is a citizen of the United States and is domiciled in the State of Florida.

b. Charles C. Hoffman was a Specialist in the United States Army a part of the 16th Engineer Battalion, 1st Armor Division out of Giessen, Germany. He deployed to Karbala, Iraq. On May 7, 2004, Mr. Hoffman was the truck commander of the middle vehicle in a 15-vehicle convoy. They were out on a combat patrol mission in Karbala when an IED detonated about eight vehicles ahead of Hoffman. The convoy was able to push forward; however, at their next stop a 155 round IED was remote detonated. The IED was dropped from a tree and struck the passenger side of Mr. Hoffman's vehicle. As a result of injuries sustained and heroism displayed during the attack, Hoffman was awarded a Purple Heart and an Army Commendation Medal with Valor.

c. The May 7, 2004 Terrorist Attack against Charles C. Hoffman constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the May 7, 2004 Terrorist Attack, Charles C. Hoffman sustained significant injuries, including shrapnel wounds to his right arm and head, and PTSD.

e. Because of these injuries, Charles C. Hoffman is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 182.    The October 5, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: The Todd Olsen Family

a.  Plaintiff Todd Olsen, Individually and as Next Friend of A.O., a minor, is a citizen of the United States and is domiciled in the State of Georgia.

b.  A.O. is a United States citizen domiciled in the State of Georgia. She is the minor daughter of Todd Olsen.

c.  Todd Olsen was in the United States Army as a Staff Sergeant, a part of the Alpha Battery 648 Engineer Company. He was deployed to Yusufiyah, Iraq. On October 5, 2005, Mr. Olsen was the commander of the lead vehicle in a five-vehicle convoy traveling outside Baghdad. He was on a mission to locate IEDs that had been placed in the area. Once they came across one, they began protocol to disarm the device. However, the IED detonated on the driver's side door of Olsen's vehicle. Olsen survived the attack.

d.  The October 5, 2005 Terrorist Attack against Todd Olsen constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the October 5, 2005 Terrorist Attack, Todd Olsen sustained significant injuries, including a back injury, a neck injury, hearing loss, Tinnitus, a TBI, and PTSD.

f.  Because of these injuries, Todd Olsen is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, A.O. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Todd Olsen on October 5, 2005.

### 183.    The November 30, 2006 Terrorist Attack - Taji, Iraq
### Plaintiff: Christopher Lindgren Family

a.  Plaintiff Christopher Lindgren is a citizen of the United States and is domiciled in the State of Texas.

b.  Plaintiff Katelin Lindgren is a citizen of the United States and is domiciled in the state of Texas. She is the wife of Christopher Lindgren.

c.  Christopher Lindgren was s a Sergeant in the United States Army a part of the Alpha Troop 1-7 Calvary. He deployed to Taji, Iraq. On November 30, 2006, around 2300, Mr. Lindgren was the gunner in an unarmored Humvee that was the middle vehicle of a three-vehicle convoy.

They were on a recon mission in Taji, driving down a road, when an IED detonated on the right side of the vehicle, causing the front end of the vehicle to receive some damages as well. Mr. Lindgren's vehicle crashed into a building. As a result, he was knocked unconscious from the blast and was later awarded a Purple Heart.

d.   The November 30, 2006 Terrorist Attack against Christopher Lindgren constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.   As a result of the November 30, 2006 Terrorist Attack, Christopher Lindgren sustained significant injuries, including a spinal injury causing chronic lower back pain, a right scapula and pelvis injury, a TBI, PTSD, migraines, and hearing loss.

f.   Because of these injuries, Christopher Lindgren is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Katelin Lindgren incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Christopher Lindgren on November 30, 2006.

### 184.   The April 16, 2006 Terrorist Attack - Abu Ghraib, Iraq
### Plaintiff: Philip L. Orrico

a.   Plaintiff Philip L. Orrico is a citizen of the United States and is domiciled in the State of Florida.

b.   Phillip L. Orrico was a specialist in the United States Army National Guard as part of the 652 MP Company. He deployed to Abu Ghraib, Iraq. On April 16, 2006, Mr. Orrico was asleep in the barracks on his Forward Operating Base when he encountered a mortar attack. He was approximately 50 feet from where the rounds exploded. As a result, he felt the shock waves and experienced the deafening sound of the blasts.

c.   The April 16, 2006 Terrorist Attack against Philip L. Orrico constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[176]

---

[176] *See* Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (U.S. officials found mortar shells following the capture of IRGC-QF leaders in Iraq).

d. As a result of the April 16, 2006 Terrorist Attack, Philip L. Orrico sustained significant injuries, including Tinnitus and bilateral hearing loss.

e. Because of these injuries, Philip L. Orrico is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 185.  The April 23, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Derrick H. Smith

a. Plaintiff Derrick H. Smith is a citizen of the United States and is domiciled in the State of Louisiana.

b. Derrick H. Smith was in the United States Army apart of the Charlie Company 1st of the 69th Infantry 256th BCT unit. He deployed to Baghdad, Iraq. On April 23, 2005, Smith was driving an M1114 Humvee on Route Irish approximately 250 meters west of Check Point 540. He was traveling east when he passed a red BMW. The BMW turned out to be a VBIED that suddenly detonated near Smith's vehicle. Smith was injured as a result and received a Purple Heart.

c. The April 23, 2005 Terrorist Attack against Derrick H. Smith constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the April 23, 2005 Terrorist Attack, Derrick H. Smith sustained significant injuries, including a TBI, PTSD, shrapnel wounds, nerve damage, and 2nd and 3rd degree facial and hand burns.

e. Because of these injuries, Derrick H. Smith is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 186.  The December 6, 2003 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Mark A. Lanton

a. Plaintiff Mark A. Lanton is a citizen of the United States and is domiciled in the State of Florida.

b. Mark A. Lanton was in the United States Air Force as a Senior Airman, a part of the HHC 1-10 Aviation Regiment. He deployed to Baghdad, Iraq. On December 6, 2003, Lanton was on the flight line at the Baghdad International Airport assisting in the active offload of 13 patients from an aeromedical evaluation flight. At this time, the air base was attacked by 122 millimeter

enemy rockets. Lanton survived the Terrorist Attack and was awarded an Air Force Commendation Medal.

c. The December 6, 2003 Terrorist Attack against Mark A Lanton constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[177]

d. As a result of the December 6, 2003 Terrorist Attack, Mark A Lanton sustained significant injuries, including a TBI, PTSD, hearing loss, and headaches.

e. Because of these injuries, Mark A Lanton is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 187.     The May 3, 2007 Terrorist Attack – Abu Bali, Iraq
### Plaintiff: David Johnson Family

a. Plaintiff David Johnson is a citizen of the United States and is domiciled in the State of Washington.

b. Plaintiff Deanna Johnson is a citizen of the United States and is domiciled in the state of Washington. She is the wife of David Johnson.

c. David Johnson was in the United States Army as a Master Sergeant, a part of the 321st Engineer Battalion. He deployed to the Al Anbar Province in Iraq. While deployed, Johnson was involved in Operation Forsythe Park in support of TF 3-69 Armor. On May 3, 2007, Johnson was travelling in a 27-ton V-shaped Hulled Vehicle nicknamed a "Cougar" near the village of Abu Bali. Suddenly, a very powerful 200+ pound IED exploded and directly hit the "Cougar" vehicle. As a result, the vehicle flew approximately 15 feet in the air and was destroyed. David Johnson was then medevacked to Landstuhl, Germany for treatment. He survived the Terrorist Attack.

d. The May 3, 2007 Terrorist Attack against David Johnson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

---

[177] *See* Pound and Jack, *Special Report: The Iran Connection*, U.S. NEWS & WORLD REPORT (2003 U.S. and Israeli intelligence reports concluded that Hezbollah was training the Mahdi Army, an Iraqi militant group, at Iran's request and providing them with improvised RPGs).

e.  As a result of the May 3, 2007 Terrorist Attack, David Johnson sustained significant injuries, including PTSD, a neck injury, a spinal injury, a left eye injury, and headaches.

f.  Because of these injuries, David Johnson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Deanna Johnson incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by David Johnson on May 3, 2007.

### 188.   The May 11, 2005 Terrorist Attack – Asad, Iraq
### Plaintiff: Chad Michael Heath Family

a.  Plaintiff Chad Michael Heath, Individually and as Next Friend of L.H., a minor, is a citizen of the United States and is domiciled in the State of Texas.

b.  L.H. is a United States citizen domiciled in the State of Texas. He is the minor son of Chad Michael Heath.

c.  Plaintiff Cathy R Johnson-Heath is a citizen of the United States and is domiciled in the state of Texas. She is the wife of Chad Michael Heath.

d.  Plaintiff Martha Heath is a citizen of the United States and is domiciled in the state of Texas. She is the mother of Chad Michael Heath.

e.  Plaintiff Carl Heath III is a citizen of the United States and is domiciled in the state of Texas. He is the father of Chad Michael Heath.

f.  Plaintiff Carl Heath IV is a citizen of the United States and is domiciled in the state of Texas. Carl Heath IV is the sibling of Chad Michael Heath.

g.  Chad Michael Heath was in the United States Army as a Staff Sergeant, a part of the Alpha 327 out of Fort Bragg, North Carolina. He deployed to Baghdad, Iraq. On May 11, 2005, Mr. Heath was the driver of an unarmored Humvee, the fourth vehicle in a twelve-vehicle convoy. While on a route in Al Asad, the convoy went through a checkpoint. An EFP suddenly exploded in front of a vehicle driving ahead of Heath, creating a hole in the road. As a result of this explosion, Sgt. Samuel T Castle was tragically KIA. However, Heath survived the terrorist attack.

h.  The May 11, 2005 Terrorist Attack against Chad Michael Heath constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[178]

i.   As a result of the May 11, 2005 Terrorist Attack, Chad Michael Heath sustained significant injuries, including a TBI, PTSD, migraines, and a neck/lower back injury.

j.   Because of these injuries, Chad Michael Heath is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Cathy R Johnson-Heath, Martha Heath, Carl Heath III, Carl Heath IV, and L.H. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Chad Michael Heath on May 11, 2005.

### 189.   The April 14, 2004 Terrorist Attack – Al Diwaniyah, Iraq
### Plaintiff: Orin Jackson Family

a.   Plaintiff Orin Jackson is a citizen of the United States and is domiciled in the State of Georgia.

b.   Plaintiff Anisa Jackson is a citizen of the United States and is domiciled in the state of Georgia. She is the daughter of Orin Jackson.

c.   Orin Jackson was in the United States Army as a Sergeant, a part of Bravo Troop 1-4 Calvary. He deployed to Al Diwaniyah, Iraq. On April 14, 2004, Jackson was in an up-armored Humvee, the front of an eight-vehicle convoy. The convoy was on a supply mission in Al Diwaniyah when the lead vehicle was struck by an IED. As a result, Mr. Jackson's vehicle was impacted by the blast and he received a Combat Action Badge.

d.   The April 14, 2004 Terrorist Attack against Orin Jackson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.   As a result of the April 14, 2004 Terrorist Attack, Orin Jackson sustained significant injuries, including PTSD.

f.   Because of these injuries, Orin Jackson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Anisa Jackson incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Orin Jackson on April 14, 2004.

---

[178] *See, e.g., Karcher,* 396 F. Supp. 3d at 15-25, 33.

### 190.    The April 1, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: James McKenzie Family

a.  Plaintiff James McKenzie is a citizen of the United States and is domiciled in the State of South Carolina.

b.  Plaintiff Mary McKenzie is a citizen of the United States and is domiciled in the state of South Carolina. She is the wife of James McKenzie.

c.  Plaintiff Jashua McKenzie is a citizen of the United States and is domiciled in the state of South Carolina. He is the son of James McKenzie.

d.  Plaintiff Shemaiah McKenzie is a citizen of the United States and is domiciled in the state of South Carolina. She is the daughter of James McKenzie.

e.  James McKenzie was in the United States Army National Guard as a Specialist, a part of the 13th Battalion. He deployed to Baghdad, Iraq. On April 1, 2005, Mr. McKenzie was the gunner in an up-armored Humvee, the middle vehicle of a four-vehicle convoy. The vehicle in front of Mr. McKenzie's ran over an IED, which caused it to detonate. As a result, Mr. McKenzie's Humvee was disabled and he was ejected from the vehicle. Thereafter, McKenzie lost consciousness.

f.  The April 1, 2005 Terrorist Attack against James McKenzie constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  As a result of the April 1, 2005 Terrorist Attack, James McKenzie sustained significant injuries, including loss of consciousness, a TBI, migraines, Tinnitus, a low back injury, and PTSD.

h.  Because of these injuries, James McKenzie is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Mary McKenzie, Jashua McKenzie, and Shemaiah McKenzie incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by James McKenzie on April 1, 2005.

191.    **The February 14, 2004 Terrorist Attack – Al Fallujah, Iraq**
**Plaintiff: Sergio Herrera Family**

a.  Plaintiff Sergio Herrera is a citizen of the United States and is domiciled in the State of Washington.

b.  Plaintiff Maria Herrera is a citizen of the United States and is domiciled in the state of Washington. She is the mother of Sergio Herrera.

c.  Plaintiff David Herrera is a citizen of the United States and is domiciled in the state of Washington. He is the father of Sergio Herrera.

d.  Plaintiff David Herrera is a citizen of the United States and is domiciled in the state of Washington. David Herrera is the sibling of Sergio Herrera.

e.  Plaintiff Daniel Herrera is a citizen of the United States and is domiciled in the state of Idaho. Daniel Herrera is the sibling of Sergio Herrera.

f.  Plaintiff Fernando Herrera is a citizen of the United States and is domiciled in the state of Washington. Fernando Herrera is the sibling of Sergio Herrera.

g.  Plaintiff Luis Herrera is a citizen of the United States and is domiciled in the state of Washington. Luis Herrera is the sibling of Sergio Herrera.

h.  Plaintiff Ricardo Herrera is a citizen of the United States and is domiciled in the state of Washington. Ricardo Herrera is the sibling of Sergio Herrera.

i.  Sergio Herrera was in the United States Army as Specialist and served in the 10th Mountain Division. He was deployed to Iskandariyah, Iraq. On or near February 14, 2004, Herrera was the gunner in a softshell Humvee, the rear vehicle in a seven-vehicle convoy. The convoy was traveling near Al Fallujah on Route Monique. As they were traveling, an IED detonated on the passenger side of Herrera's Humvee. As a result, the Humvee sustained damage and Herrera was knocked unconscious. Herrera survived the Terrorist Attack.

j.  The February 14, 2004 Terrorist Attack against Sergio Herrera constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

k.  As a result of the February 14, 2004 Terrorist Attack, Sergio Herrera sustained significant injuries, including loss of consciousness, a TBI, PTSD, Tinnitus, and migraines.

237

l.  Because of these injuries, Sergio Herrera is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Maria Herrera, David Herrera, David Herrera, Daniel Herrera, Fernando Herrera, Luis Herrera, and Ricardo Herrera incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Sergio Herrera on February 14, 2004.

### 192.  The September 29, 2005 Terrorist Attack - Samarra, Iraq
### Plaintiff: Duenean Pressley

a.  Plaintiff Duenean Pressley is a citizen of the United States and is domiciled in the State of Pennsylvania.

b.  Duenean Pressley was in the United States Army as a Sergeant, a part of the 180th Transportation Company out of Wisconsin. She deployed to Balad, Iraq. On September 29, 2005, Ms. Pressley was the commander in an up-armoured Humvee, the second vehicle of a four-vehicle convoy. While traveling near the Samarra Bypass, Ms. Pressley's vehicle was struck on the passenger side by an IED. As a result, Pressley received a Purple Heart.

c.  The September 29, 2005 Terrorist Attack against Duenean Pressley constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the September 29, 2005 Terrorist Attack, Duenean Pressley sustained significant injuries, including a concussion, muscle pain, a back injury (radiculopathy) frequently causing lower back pain, migraines, and a TBI.

e.  Because of these injuries, Duenean Pressley is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 193.  The February 18, 2005 Terrorist Attack - Humaniyuh, Iraq
### Plaintiff: Edward N. Litwinkowich Family

a.  Plaintiff Edward N. Litwinkowich is a citizen of the United States and is domiciled in the State of Georgia.

b.  Plaintiff Denise Litwinkowich is a citizen of the United States and is domiciled in the state of Georgia. She is the wife of Edward N. Litwinkowich.

c.  Edward N. Litwinkowich was in the United States Army as a Sergeant, a part of 377 Transportation Company. He deployed to Iraq. On February 18, 2005, Mr. Litwinkowich was the driver of a HET, part of a fifteen-vehicle convoy. They were on a mission in Humaniyuh when an IED detonated underneath the vehicle. As a result, the trailer of Litwinkowich's vehicle was penetrated causing the vehicle to catch fire. Lutwinkowich survived the terrorist attack. However, as he was exiting the burning vehicle, Lutwinkowich removed the body of one of his fellow soldiers tragically KIA, Sgt. Carlos J. Gil, away from the fire. This memory still haunts Litwinkowich to this day.

d.  The February 18, 2005 Terrorist Attack against Edward N. Litwinkowich constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the February 18, 2005 Terrorist Attack, Edward N. Litwinkowich sustained significant injuries, including PTSD and Tinnitus.

f.  Because of these injuries, Edward N. Litwinkowich is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Denise Litwinkowich incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Edward N. Litwinkowich on February 18, 2005.

### 194.  The May 14, 2004 Terrorist Attack - Mahmudiyah, Iraq
### Plaintiff: Jimmy Alan James

a.  Plaintiff Jimmy Alan James is a citizen of the United States and is domiciled in the State of Colorado.

b.  Jimmy Alan James was in the United States Army as a Specialist, a part of 4 2/7 FA. He deployed to Baghdad, Iraq. On May 14, 2004, a RPG fired from an enemy insurgent exploded near James' vehicle, a "wrecker." The RPG attack occurred on Route Tampa near Mahmudiyah. Patrick Wickens, one of James' fellow soldiers, was hit by the RPG causing him to lose his leg. However, James survived the terrorist attack.

c.  The May 14, 2004 Terrorist Attack against Jimmy Alan James constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[179]

d. As a result of the May 14, 2004 Terrorist Attack, Jimmy Alan James sustained significant injuries, including memory loss, Tinnitus, a spinal injury, and PTSD.

e. Because of these injuries, Jimmy Alan James is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 195.    The August 15, 2005 Terrorist Attack - Mahmudiyah, Iraq
### Plaintiff: Juan M. Maisonet

a. Plaintiff Juan M. Maisonet is a citizen of the United States and is domiciled in the State of Georgia.

b. Juan M. Maisonet was in the United States Army National Guard as a Sergeant, a part of 108 Cavalry. He deployed to Baghdad, Iraq. On around August 15, 2005, Mr. Maisonet was the truck commander in an up-armored Humvee, part of a three-vehicle convoy. While performing a mission in Mahmudiyah, his vehicle ran over a buried IED that detonated, penetrating through the vehicle. The attack occurred at Grid Point MEB 280 580. Maisonet survived the terrorist attack and received a Combat Action Badge. However, one of the other vehicles in the convoy ran off the road and toppled into the canal as a result of the IED. Thereafter, multiple Army soldiers drowned, including Sgt. Paul Saylor.

c. The August 15, 2005 Terrorist Attack against Juan M. Maisonet constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the August 15, 2005 Terrorist Attack, Juan M. Maisonet sustained significant injuries, including shrapnel wounds in his right and left knee, Tinnitus, and PTSD.

e. Because of these injuries, Juan M. Maisonet is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

---

[179] *See* Pound and Jack, *Special Report: The Iran Connection*, U.S. NEWS & WORLD REPORT (2003 U.S. and Israeli intelligence reports concluded that Hezbollah was training the Mahdi Army, an Iraqi militant group, at Iran's request and providing them weapons like RPGs).

### 196.    The October 9, 2007 Terrorist Attack - Baqubah, Iraq
### Plaintiff: Jonathan Bailey

a.  Plaintiff Jonathan Bailey is a citizen of the United States and is domiciled in the State of Oregon.

b.  Jonathan Bailey was in the United States Army as a Specialist, part of the 2nd Cavalry Regiment. He deployed to Baqubah, Iraq. On October 9, 2007, Mr. Bailey was a passenger in a Stryker, the second vehicle in a four-vehicle convoy. They were on a routine mission in Baqubah and returning to the Base when an EFP detonated and penetrated through Bailey's vehicle. As a result, the vehicle ignited, and was disabled. Bailey survived the terrorist attack and received a Combat Infantryman Badge.

c.  The October 9, 2007 Terrorist Attack against Jonathan Bailey constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[180]

d.  As a result of the October 9, 2007 Terrorist Attack, Jonathan Bailey sustained significant injuries, including a TBI, PTSD, and Tinnitus.

e.  Because of these injuries, Jonathan Bailey is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 197.    The June 28, 2006 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Javier Diaz

a.  Plaintiff Javier Diaz is a citizen of the United States and is domiciled in the State of Illinois.

b.  Javier Diaz was in the United States Army as a Specialist, a part of the 1-17 SA Unit. He deployed to Baghdad, Iraq. On June 28, 2006, Mr. Diaz was the driver of an up-armored Humvee, part of a six-vehicle convoy. They were on a security convoy, in route from Baghdad to Balad, when an IED penetrated the vehicle. As a result, Diaz sustained multiple injuries.

c.  The June 28, 2006 Terrorist Attack against Javier Diaz constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

---

[180]*See, Karcher*, 396 F. Supp. 3d at 15–25, 33.

d. As a result of the June 28, 2006 Terrorist Attack, Javier Diaz sustained significant injuries, including a separated shoulder, a TBI, and PTSD.

e. Because of these injuries, Javier Diaz is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 198.    The June 28, 2005 Terrorist Attack - Tikrit, Iraq
### Plaintiff: Kenneth Mackeprang

a. Plaintiff Kenneth Mackeprang is a citizen of the United States and is domiciled in the State of North Carolina.

b. Kenneth Mackeprang was in the United States Army as a master sergeant, a part of the 42nd Infantry Unit. He deployed to Tikrit, Iraq. On June 28, 2005, Mr. Mackeprang was the rear passenger of an up-armored Humvee, part of a ten-vehicle convoy. They were performing a routine mission, traveling from Tikrit to Baghdad, when a VBIED detonated and struck a vehicle in the convoy. As a result, Army Sgt. Manny Horendo was tragically KIA. However, Mackeprang survived the terrorist attack.

c. The June 28, 2005 Terrorist Attack against Kenneth Mackeprang constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the June 28, 2005 Terrorist Attack, Kenneth Mackeprang sustained significant injuries, including Tinnitus and PTSD.

e. Because of these injuries, Kenneth Mackeprang is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 199.    The June 26, 2004 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Robert Fisher Family

a. Plaintiff Robert Fisher, Individually and as Next Friend of R.F., a minor, is a citizen of the United States and is domiciled in the State of Arkansas.

b. R.F. is a United States citizen domiciled in the State of Arkansas. He is the minor son of Robert Fisher.

c. Plaintiff Brett Fisher is a citizen of the United States and is domiciled in the state of Arkansas. She is the wife of Robert Fisher.

d. Plaintiff Brittni Fisher is a citizen of the United States and is domiciled in the state of Arkansas. She is the daughter of Robert Fisher.

e. Robert Fisher was in the United States Army National Guard as a sergeant first class, a part of the 1-153rd Infantry Unit. He deployed to Baghdad, Iraq. On June 26, 2004, Mr. Fisher was a passenger in an unarmored Humvee, the lead vehicle of a convoy. They were driving in the Al-Adhamiyah District in Baghdad when the convoy was suddenly ambushed by enemy insurgents. Specifically, Fisher's vehicle was hit by three (3) separate IEDs, a RPG, and small arms fire. Although noticeably dazed, Fisher was able to return to the scene and help retrieve several other soldiers from the "kill zone." Fisher survived the Terrorist Attack.

f. The June 26, 2004 Terrorist Attack against Robert Fisher constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[181]

g. As a result of the June 26, 2004 Terrorist Attack, Robert Fisher sustained significant injuries, including a knee injury resulting in chronic pain, PTSD, migraine headaches, and a TBI resulting in memory loss.

h. Because of these injuries, Robert Fisher is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Brett Fisher, Brittni Fisher, and R.F. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Robert Fisher on June 26, 2004.

### 200. The April 20, 2006 Terrorist Attack - Al Anbar, Iraq
### Plaintiff: Jeremy Holbrook

a. Plaintiff Jeremy Holbrook is a citizen of the United States and is domiciled in the State of Kentucky.

b. Jeremy Holbrook was in the United States Marine Corps as a lance corporal, a part of the 1st Tank Battalion. He deployed to Al Asad, Iraq. On April 20, 2006, at 1240 hours, Mr. Holbrook

---

[181] *See* Pound and Jack, *Special Report: The Iran Connection*, U.S. NEWS & WORLD REPORT (2003 U.S. and Israeli intelligence reports concluded that Hezbollah was training the Mahdi Army, an Iraqi militant group, at Iran's request and providing them weapons like RPGs).

was a passenger in an up-armored M1 Abrams, the lead vehicle of a ten-vehicle convoy. They were on a resupply mission in the Al Anbar Province when a roadside IED detonated nearby, As a result, shrapnel penetrated through Holbrook's vehicle and struck him. Holbrook survived the terrorist attack.

c. The April 20, 2006 Terrorist Attack against Jeremy Holbrook constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the April 20, 2006 Terrorist Attack, Jeremy Holbrook sustained significant injuries, including facial burns caused by shrapnel, PTSD, Tinnitus, and a TBI.

e. Because of these injuries, Jeremy Holbrook is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 201.  The September 22, 2005 Terrorist Attack – Tikrit, Iraq
#### Plaintiff: Henry J. Young Family

a. Plaintiff Henry J. Young is a citizen of the United States and is domiciled in the State of Pennsylvania.

b. Plaintiff Corneila Thrower is a citizen of the United States and is domiciled in the state of Pennsylvania. She is the mother of Henry J. Young.

c. Henry Young served as a Specialist in the Army and was deployed to Kirkuk, Iraq in 2004. On September 22, 2005, Young was traveling in a Humvee in Tikrit in the backseat when an IED exploded underneath the vehicle. Young survived the attack and received a Purple Heart.

d. The September 22, 2005 Terrorist Attack against Henry J. Young constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. As a result of the September 22, 2005 Terrorist Attack, Henry J. Young sustained significant injuries, including a TBI, PTSD, post-concussion disorder, and somatization disorder.

f. Because of these injuries, Henry J. Young is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Corneila

Thrower incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Henry J. Young on September 22, 2005.

### 202.    The October 13, 2005 Terrorist Attack - Tuz Khurmatu, Iraq
### Plaintiff: John McCormick

a.  Plaintiff John McCormick is a citizen of the United States and is domiciled in the State of Tennessee.

b.  McCormick enlisted in the United States Army and served as a specialist. McCormick was deployed to Tuz Khurmatu, Iraq. On the night of October 13, 2005, McCormick was acting as the gunner in an unarmored Humvee. Suddenly, McCormick's Humvee ran over a pressure plate IED in Tuz Khurmatu hidden on the side of the road. The force of the explosion flipped the Humvee on its side, disabled the vehicle, and ejected McCormick from his seat. McCormick survived the attack and received a Purple Heart.

c.  The October 13, 2005 Terrorist Attack against John McCormick constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the October 13, 2005 Terrorist Attack, John McCormick sustained significant injuries, including hearing loss, a TBI, PTSD, shrapnel wounds causing a left chest and shoulder injury, and back injuries.

e.  Because of these injuries, John McCormick is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 203.    The July 31, 2003 Terrorist Attack –Baghdad, Iraq
### Plaintiff: Samuel Sparks III

a.  Plaintiff Samuel Sparks III is a citizen of the United States and is domiciled in the State of Alabama.

b.  Sparks served in the Army National Guard and was deployed to Camp Victory in Baghdad, Iraq. On July 31, 2003, Sparks was traveling in an unarmored Humvee toward the Iraqi Police Precinct in Baghdad for training. Sparks was traveling in the second Humvee among a three vehicle convoy. Suddenly, an IED denoted between the first Humvee and Sparks' Humvee. Sparks survived the attack and received a Purple Heart.

c.  The July 31, 2003 Terrorist Attack against Samuel Sparks III constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the July 31, 2003 Terrorist Attack, Samuel Sparks III sustained significant injuries, including PTSD, shrapnel wounds to his neck, a spinal injury, a knee injury, a shoulder injury, migraines, Tinnitus, and sleep apnea.

e.  Because of these injuries, Samuel Sparks III is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 204.    The April 24, 2007 Terrorist Attack - Baghdad, Iraq
### Plaintiff: David Bennett Family

a.  Plaintiff David Bennett is a citizen of the United States and is domiciled in the State of Arkansas.

b.  Plaintiff Carla Remmer is a citizen of the United States and is domiciled in the state of Arkansas. She is the mother of David Bennett.

c.  Plaintiff David Bennett Sr. is a citizen of the United States and is domiciled in the state of Arkansas. He is the father of David Bennett.

d.  Plaintiff Brittany Sanders is a citizen of the United States and is domiciled in the state of Arkansas. Brittany Sanders is the sibling of David Bennett.

e.  David Bennett was in the United States Army as a specialist, a part of the 2/142 Field Artillery Unit. He was deployed to Baghdad, Iraq. On April 24, 2007, Mr. Bennett was the gunner of a Humvee, the third vehicle of a six-vehicle convoy, traveling in Baghdad. They were in a security convoy when an IED detonated on the passenger side of Mr. Bennett's Humvee. As a result, the vehicle sustained damage. Bennett survived the Terrorist Attack and received a Combat Action Badge.

f.  The April 24, 2007 Terrorist Attack against David Bennett constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  As a result of the April 24, 2007 Terrorist Attack, David Bennett sustained significant injuries, including shrapnel wounds, a TBI, Post-Traumatic Headaches, and PTSD.

h.  Because of these injuries, David Bennett is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Carla Remmer, David Bennett Sr., and Brittany Sanders incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by David Bennett on April 24, 2007.

### 205.   The November 2, 2003 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Andy Burdette Family

a.  Plaintiff Andy Burdette, Individually and as Next Friend of E.B., a minor, is a citizen of the United States and is domiciled in the State of Alabama.

b.  Plaintiff Tabitha Burdette is a citizen of the United States and is domiciled in the state of Alabama. She is the daughter of Andy Burdette.

c.  E.B. is a United States citizen domiciled in the State of Alabama. He is the minor son of Andy Burdette.

d.  Plaintiff Colby Burdette is a citizen of the United States and is domiciled in the state of Alabama. He is the son of Andy Burdette.

e.  Andy Burdette was in the United States Army National Guard as a specialist, a part of the 214th Military Police Company. Mr. Burdette deployed to Baghdad, Iraq. On November 2, 2003 Mr. Burdette was the gunner of an unarmored Humvee, part of a six-vehicle convoy. They were in route to Babylon for a chain of command ceremony when a roadside IED detonated in Baghdad. As a result, Burdette was ejected from the Humvee and received a Purple Heart.

f.  The November 2, 2003 Terrorist Attack against Andy Burdette constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  As a result of the November 2, 2003 Terrorist Attack, Andy Burdette sustained significant injuries, including shrapnel in his left leg, a concussion, and PTSD.

h.  Because of these injuries, Andy Burdette is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical

pain and suffering, and past and future loss of earning capacity. Additionally, Colby Burdette, Tabitha Burdette, and E.B. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Andy Burdette on November 2, 2003.

### 206. The October 3, 2006 Terrorist Attack - Hit, Iraq
### Plaintiff: William J. Smith

a.  Plaintiff William J. Smith is a citizen of the United States and is domiciled in the State of Florida.

b.  William J. Smith was in the United States Marine Corps as a Corporal, part of the 2nd Light Armored Reconnaissance. He deployed to Hit, Iraq. On October 3, 2006, Mr. Smith was the rear passenger in an up-armored Humvee, part of a four to six-vehicle convoy. They were returning from a transportation mission in Hit when his vehicle was struck by an IED. As a result, the vehicle sustained damage to the engine and was disabled. Smith survived the attack and received a Combat Action Ribbon.

c.  The October 3, 2006 Terrorist Attack against William J. Smith constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the October 3, 2006 Terrorist Attack, William J. Smith sustained significant injuries, including a concussion, a TBI, and PTSD.

e.  Because of these injuries, William J. Smith is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 207. The February 23, 2008 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Muriel Irwin Family

a.  Plaintiff Muriel Irwin is a citizen of the United States and is domiciled in the State of Oklahoma.

b.  Plaintiff Daniel Irwin is a citizen of the United States and is domiciled in the state of Oklahoma. He is the husband of Muriel Irwin.

c.  Plaintiff Daniel P. Irwin is a citizen of the United States and is domiciled in the state of Oklahoma. He is the son of Muriel Irwin.

d.  Plaintiff Bryan Irwin is a citizen of the United States and is domiciled in the state of Oklahoma. He is the son of Muriel Irwin.

e.  Muriel Irwin was in the United States Army National Guard as a sergeant, a part of the HHC 45th Brigade Combat Team. She deployed to Baghdad, Iraq and worked at the U.S. Embassy. On February 23, 2008, while at the Embassy in Baghdad, Irwin experienced a mortar attack. The resulting explosions caused Irwin to fall and hit the ground with significant force. Irwin survived the terrorist attack.

f.  The February 23, 2008 Terrorist Attack against Muriel Irwin constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[182]

g.  As a result of the February 23, 2008 Terrorist Attack, Muriel Irwin sustained significant injuries, including PTSD, a TBI, migraine headaches, a fractured pelvis, a right hip injury, and a groin injury.

h.  Because of these injuries, Muriel Irwin is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Daniel Irwin, Daniel P. Irwin, and Bryan Irwin incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Muriel Irwin on February 23, 2008.

### 208.  The April 4, 2003 Terrorist Attack – Baghdad, Iraq
### Plaintiff: Brent E. Jeffries

a.  Plaintiff Brent E. Jeffries is a citizen of the United States and is domiciled in the State of Indiana.

b.  Brent E. Jefferies was in the United States Marine Corps as a lance corporal, a part of the 1st Battalion 7th Marine Division. He deployed to Iraq. On April 4, 2003, he was the gunner of a lead vehicle, part of a thirteen-vehicle convoy. They were on a mission in the Baghdad Division (in Al Kut) when the second vehicle was struck by a RPG. As a result, the vehicle sustained damage. Thereafter, Jefferies and his team faced small arms fire. Jefferies killed several insurgents but severely injured his shoulder in battle. As a result, he received a Navy and Marine Corps Achievement Medal.

---

[182] *See* Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (U.S. officials found mortar shells following the capture of IRGC-QF leaders in Iraq).

c.  The April 4, 2003 Terrorist Attack against Brent E. Jeffries constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[183]

d.  As a result of the April 4, 2003 Terrorist Attack, Brent E. Jeffries sustained significant injuries, including Post-Traumatic Stress Disorder.

e.  Because of these injuries, Brent E. Jeffries is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 209.    The April 17, 2007 Terrorist Attack – Ashraf, Iraq
### Plaintiff: Andrew J. Stofleth

a.  Plaintiff Andrew J. Stofleth is a citizen of the United States and is domiciled in the State of Kentucky.

b.  Andrew Stofleth was in the United States Marine Corps as a corporal, part of the Anti-Terrorism Battalion, 2nd Marine Division. He deployed to Iraq. On April 17, 2007, Mr. Stofleth was a passenger in an up-armored Humvee, part of a four-vehicle convoy. They were transporting a detainee to Forward Operating Base (FOB) Warhorse when a roadside IED detonated in near Ashraf. As a result, the vehicle rolled over and Stofleth was knocked unconscious.

c.  The April 17, 2007 Terrorist Attack against Andrew J. Stofleth constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the April 17, 2007 Terrorist Attack, Andrew J. Stofleth sustained significant injuries, including migraines, short term memory loss, hearing loss, a TBI, and PTSD.

e.  Because of these injuries, Andrew J. Stofleth is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

---

[183] *See* Pound and Jack, *Special Report: The Iran Connection*, U.S. NEWS & WORLD REPORT (2003 U.S. and Israeli intelligence reports concluded that Hezbollah was training the Mahdi Army, an Iraqi militant group, at Iran's request and providing them weapons like RPGs).

### 210.    The August 11, 2011 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Alan Smith Family

a.  Plaintiff Alan Smith is a citizen of the United States and is domiciled in the State of Nevada.

b.  Plaintiff Kim Thelander is a citizen of the United States and is domiciled in the state of Nevada. She is the mother of Alan Smith.

c.  Alan Smith was in the United States Army as a Specialist. He was deployed to Baghdad, Iraq. On or around 11 August 2011, Mr. Smith was the vehicle commander of a Mine Resistant Ambush Protected (MRAP) vehicle, part of a convoy. They were traveling north on Route Thunder near Baghdad when the vehicle was struck by an IED on the passenger side, penetrating through the engine block. As a result, the vehicle crashed and was disabled. Smith survived the terrorist attack and received a Combat Action Badge.

d.  The August 11, 2011 Terrorist Attack against Alan Smith constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the August 11, 2011 Terrorist Attack, Alan Smith sustained significant injuries, including a TBI and PTSD.

f.  Because of these injuries, Alan Smith is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Kim Thelander incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Alan Smith on August 11, 2011.

### 211.    The December 28, 2005 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Ahmed Kouhail

a.  Plaintiff Ahmed Kouhail is a citizen of the United States and is domiciled in the State of Connecticut.

b.  Ahmed Kouhail was in United States Army as a specialist, a part of 1st 506th Alpha Company. He deployed to Ramadi, Iraq. On December 28, 2005, Mr. Kouhail was in a convoy of four or five vehicles. They were on a mission near Camp Corregidor in Ramadi to check another vehicle and dismounted to meet with the Iraqi police. As they were walking, an IED detonated nearby. As a result, several members of the Iraqi Police were killed. However, Kouhail survived the terrorist attack and received a Purple Heart.

**251**

c. The December 28, 2005 Terrorist Attack against Ahmed Kouhail constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the December 28, 2005 Terrorist Attack, Ahmed Kouhail sustained significant injuries, including shrapnel wounds to his left knee, loss of consciousness, PTSD, a TBI, vertigo, and Tinnitus.

e. Because of these injuries, Ahmed Kouhail is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 212.    The October 23, 2005 Terrorist Attack - Kirkuk, Iraq
### Plaintiff: Paul M. Morris Family

a. Plaintiff Paul M. Morris is a citizen of the United States and is domiciled in the State of Tennessee.

b. Plaintiff Andrea Morris is a citizen of the United States and is domiciled in the state of Tennessee. She is the wife of Paul M. Morris.

c. Paul M. Morris was in the United States Army as a sergeant first class, a part of the 101st Airborne. He deployed to Kirkuk, Iraq. On October 23, 2005, Mr. Morris was a passenger in an up-armored Humvee, part of a three-vehicle convoy. They were traveling in Kirkuk near Forward Operating Base (FOB) Warrior when an IED struck the front left side of the Humvee, penetrating it. As a result, the vehicle was disabled. Morris survived the terrorist attack.

d. The October 23, 2005 Terrorist Attack against Paul M. Morris constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. As a result of the October 23, 2005 Terrorist Attack, Paul M. Morris sustained significant injuries, including PTSD.

f. Because of these injuries, Paul M. Morris is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Andrea Morris

incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Paul M. Morris on October 23, 2005.

### 213.    The February 22, 2005 Terrorist Attack - Fallujah, Iraq
### Plaintiff: Randall T. Wackerly Jr.

a.   Plaintiff Randall T. Wackerly Jr. is a citizen of the United States and is domiciled in the State of Oklahoma.

b.   Randall T. Wackerly Jr. was in the United States Marine Corps as a staff sergeant, a part of the Fox 2/14 Artillery. He deployed to Baghdad, Iraq. On February 22, 2005, Mr. Wackerly was the rear passenger in an up-armored Humvee. They were in route to pick up mail in Fallujah, when an IED was remote detonated on the driver's side of the vehicle. As a result, all tires were blown and the vehicle was disabled. Wackerly survived the attack.

c.   The February 22, 2005 Terrorist Attack against Randall T. Wackerly Jr. constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.   As a result of the February 22, 2005 Terrorist Attack, Randall T. Wackerly Jr. sustained significant injuries, including a spinal injury causing chronic neck and back pain, a shoulder injury ultimately requiring surgery, a concussion, a TBI, migraines, vertigo, Tinnitus, and Post-PTSD.

e.   Because of these injuries, Randall T. Wackerly Jr. is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 214.    The February 22, 2006 Terrorist Attack - Kirkuk, Iraq
### Plaintiff: Deandre K. Brown

a.   Plaintiff Deandre K. Brown is a citizen of the United States and is domiciled in the State of Alabama.

b.   Deandre K. Brown was in the United States Army as a staff sergeant, a part of the 2nd 320th Field Artillery Unit. He deployed to Kirkuk, Iraq. On the afternoon of February 22, 2006, Mr. Brown was a passenger in an up-armored Palletized Load System, part of a five-vehicle convoy. They were in route to deliver supplies in Kirkuk when Brown's vehicle ran over a pressure plate IED. Brown survived the terrorist attack.

c.  The February 22, 2006 Terrorist Attack against Deandre K. Brown constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the February 22, 2006 Terrorist Attack, Deandre K. Brown sustained significant injuries, including bilateral shoulder injury, a back injury, a neck injury, a TBI, PTSD, and migraines.

e.  Because of these injuries, Deandre K. Brown is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 215.  The November 11, 2004 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Daniel Fouch

a.  Plaintiff Daniel Fouch is a citizen of the United States and is domiciled in the State of Virginia.

b.  Daniel Fouch was in the United States Army as first Lieutenant, a part of the 182 First Cavalry Division. He deployed to Baghdad, Iraq. On November 11, 2004, Mr. Fouch was a passenger in an unarmored Humvee, the lead vehicle of a four-vehicle convoy. They were patrolling the Diyala River in Baghdad when a daisy chained IED detonated under the vehicle. As a result, the vehicle was completely disabled. After the blast, Fouch saved an injured motorist from his car and rescued other nearby drivers as well. As a result of this heroism, Fouch was awarded an Army Commendation Medal (ARCOM).

c.  The November 11, 2004 Terrorist Attack against Daniel Fouch constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the November 11, 2004 Terrorist Attack, Daniel Fouch sustained significant injuries, including bilateral hearing loss, PTSD, and a TBI resulting in chronic headaches.

e.  Because of these injuries, Daniel Fouch is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 216.    The August 13, 2005 Terrorist Attack - Al Taqaddum, Iraq
### Plaintiff: Amber R. Moore

a. Plaintiff Amber R. Moore is a citizen of the United States and is domiciled in the State of North Carolina.

b. Amber R. Moore was in the United States Marine Corps as a lance corporal. She deployed to Baghdad, Iraq. On August 13, 2005, Ms. Moore was the passenger in an up-armored Humvee, the lead vehicle of a convoy. Moore was on a route clearance mission in Al Taqaddum when an IED detonated, penetrating the right side of the Humvee. As a result, the vehicle was disabled. Moore survived the attack and received a Purple Heart.

c. The August 13, 2005 Terrorist Attack against Amber R. Moore constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the August 13, 2005 Terrorist Attack, Amber R. Moore sustained significant injuries, including an eye injury, a TBI, and PTSD.

e. Because of these injuries, Amber R. Moore is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 217.    The June 17, 2007 Terrorist Attack - Rustamiyah, Iraq (Route Brewers)
### Plaintiff: Bobby D. Estes Family

a. Plaintiff Bobby D. Estes, Individually and as Next Friend of J.E., a minor, is a citizen of the United States and is domiciled in the State of North Carolina.

b. J.E. is a United States citizen domiciled in the State of North Carolina. She is the minor daughter of Bobby D. Estes.

c. Plaintiff Lakeisha Estes is a citizen of the United States and is domiciled in the state of North Carolina. She is the wife of Bobby D. Estes.

d. Bobby Estes was a in the United States Army as a specialist, a part of the 134th Armored Unit. He deployed to Rustamiyah, Iraq. On June 17, 2007, around 0017 hours, Mr. Estes was the driver of an up-armored Humvee, the lead of a twenty-two vehicle convoy. The convoy was conducting a combat logistics patrol from Camp Liberty to Forward Operating Base (FOB) in Rustamiyah, traveling east on Route Brewers. The convoy passed a mosque on the north side of Route Brewers (about 600 meters west of the Brewers/Pluto intersection) when they were

255

suddenly ambushed by enemy insurgents. The insurgents fired multiple RPGs near Estes followed by small arms fire. However, the convoy successfully fought off the insurgents and Estes survived the terrorist attack.

e.  The June 17, 2007 Terrorist Attack against Bobby D. Estes constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[184]

f.  As a result of the June 17, 2007 Terrorist Attack, Bobby D. Estes sustained significant injuries, including Tinnitus, a TBI, and PTSD.

g.  Because of these injuries, Bobby D. Estes is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Lakeisha Estes and J.E. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Bobby D. Estes on June 17, 2007.

### 218.    The January 20, 2009 Terrorist Attack – Nasiriyah, Iraq
### Plaintiff: David W. Tanner Jr.

a.  Plaintiff David W. Tanner Jr. is a citizen of the United States and is domiciled in the State of Massachusetts.

b.  David Tanner Jr. was in the United States Army as a sergeant, a part of the 167 CSSB. He deployed to Tallil Airbase in Nasiriyah, Iraq. On the night of January 20, 2009, Tanner was attacked from outside of the wire of his Base with RPGs and mortars. As a result, the rounds landed approximately 20 feet away from Mr. Tanner and the explosion threw him into a ditch. Tanner survived the attack.

c.  The January 20, 2009 Terrorist Attack against David W. Tanner Jr. constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[185]

---

[184] Latif and Sands, *Mehdi Fighters Trained by Hizbollah in Lebannon*, INDEPENDENT, Aug. 20, 2007 (London Newspaper) (a Iraqi Shia militant stating that Hezbollah "showed us real tactics and taught our snipers.").

[185] *See The Situation in Iraq and Progress by the Government of Iraq in Meeting Benchmarks and Achieving Reconciliation: Hearing before the Comm. on Armed Services*, 110th Cong., 2d

d.  As a result of the January 20, 2009 Terrorist Attack, David W. Tanner Jr. sustained significant injuries, including a concussion, back pain, neck pain, Tinnitus, migraines, and PTSD.

e.  Because of these injuries, David W. Tanner Jr. is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 219.  The January 30, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: George F. Barton Family

a.  Plaintiff George F. Barton is a citizen of the United States and is domiciled in the State of South Carolina.

b.  Plaintiff Heloisa Barton is a citizen of the United States and is domiciled in the state of South Carolina. She is the wife of George F. Barton.

c.  George F. Barton was in the United States Army National Guard as a specialist, a part of the 1-128 Eng. Battalion. On January 30, 2005, Mr. Barton was returning to Forward Operating Base O'Ryan in Baghdad when an IED impacted the front of his vehicle. Barton survived the terrorist attack.

d.  The January 30, 2005 Terrorist Attack against George F. Barton constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the January 30, 2005 Terrorist Attack, George F. Barton sustained significant injuries, including PTSD.

f.  Because of these injuries, George F. Barton is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Heloisa Barton incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by George F. Barton on January 30, 2005.

---

sess., (April 8-10, 2008) (General Petraeus concluding that it is certainly fair to conclude that Iranian-backed Special Groups in Iraq were responsible for killing hundreds of American soldiers).

**220.**   **The March 13, 2004 Terrorist Attack - Baghdad, Iraq (Main Supply Route)**
**Plaintiff: Darby Day Family**

a. Plaintiff Darby Day is a citizen of the United States and is domiciled in the State of North Carolina.

b. Plaintiff Joshua Day is a citizen of the United States and is domiciled in the state of North Carolina. He is the son of Darby Day.

c. Plaintiff Nathaniel Day is a citizen of the United States and is domiciled in the state of Ohio. He is the son of Darby Day.

d. Darby N. Day was a specialist in the United States Army National Guard, a part of Headquarters and Headquarters Company 1-20th Infantry Regiment Unit. He was deployed to Baghdad, Iraq. On March 13, 2004, Mr. Day was in a convoy from Kuwait headed back to their post in Baghdad. During the journey, they passed an IED covered in gasoline on the side of the road. The IED was then remotely detonated within close proximity of Day's convoy. Day survived the terrorist attack. However, one of Day's fellow soldiers, Jocelyn L. Carrasquillo, was tragically KIA.

e. The March 13, 2004 Terrorist Attack against Darby Day constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f. As a result of the March 13, 2004 Terrorist Attack, Darby Day sustained significant injuries, including PTSD, a lower back injury, sleep apnea, and Tinnitus in both ears.

g. Because of these injuries, Darby Day is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Joshua Day and Nathaniel Day incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Darby Day on March 13, 2004.

**221.**   **The September 30, 2009 Terrorist Attack - Baghdad, Iraq**
**Plaintiff: Derek W Brown Family**

a. Plaintiff Derek W Brown is a citizen of the United States and is domiciled in the State of Texas.

b. Plaintiff Haley Brown is a citizen of the United States and is domiciled in the state of Texas. She is the daughter of Derek W Brown.

c.  Derek W. Brown was a specialist in the United States Army a part of the Delta SSC 4-9 Cavalry unit. On September 30, 2009, Brown was in the front seat passenger side of the first Mine-Resistant Ambush Protected Vehicle (MRAP) in a six-vehicle convoy traveling in Baghdad. After driving over a buried crush wire, an IED suddenly detonated beneath Brown's vehicle. As a result, the vehicle's rear axles and tires fell off and several soldiers in the convoy were injured, including Brown. Brown survived the attack and received a Purple Heart.

d.  The September 30, 2009 Terrorist Attack against Derek W Brown constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the September 30, 2009 Terrorist Attack, Derek W Brown sustained significant injuries, including a concussion, PTSD, an ankle injury, and Tinnitus.

f.  Because of these injuries, Derek W Brown is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Haley Brown incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Derek W Brown on September 30, 2009.

## 222.  The November 26, 2003 Terrorist Attack - Balad, Iraq
### Plaintiff: Wilber Mayer

a.  Plaintiff Wilber Mayer is a citizen of the United States and is domiciled in the State of California.

b.  Wilber Mayer was a Private First Class in the United States Army. He deployed to Tikrit, Iraq. On November 26, 2003, his convoy was heading from Balad back to Tikrit after a mission. Mr. Mayer was the rear gunner in the third Humvee, part of a four-vehicle convoy. His vehicle was crossing a bridge approximately 5km outside of Camp Anaconda in Balad when an IED detonated. The explosion caused several vehicles in the convoy to collide into each other, disabling Meyer's vehicle. Mayer survived the attack.

c.  The November 26, 2003 Terrorist Attack against Wilber Mayer constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the November 26, 2003 Terrorist Attack, Wilber Mayer sustained significant injuries, including PTSD, Tinnitus, and a left knee injury.

e. Because of these injuries, Wilber Mayer is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 223.    The January 19, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Don Joseph Glory Jr.

a. Plaintiff Don Joseph Glory Jr. is a citizen of the United States and is domiciled in the State of Tennessee.

b. Don Joseph Glory Jr. was a specialist in the United States Army a part of the 227th Transportation Company out of North Carolina. He deployed to Kuwait. On January 19, 2005, Mr. Glory was on a mission from Kuwait to Baghdad travelling on MSR Tampa. He was the gunner of an up-armored Humvee a part of a sixty-vehicle convoy. When Glory reached Baghdad, an IED was remote detonated from the left side of his vehicle. As a result, the vehicle sustained shrapnel damage. Glory survived the attack.

c. The January 19, 2005 Terrorist Attack against Don Joseph Glory Jr. constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the January 19, 2005 Terrorist Attack, Don Joseph Glory Jr. sustained significant injuries, including PTSD and hearing loss.

e. Because of these injuries, Don Joseph Glory Jr. is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 224.    The July 10, 2004 Terrorist Attack - Mosul, Iraq
### Plaintiff: Sheena Renee Westmoreland

a. Plaintiff Sheena Renee Westmoreland is a citizen of the United States and is domiciled in the State of Pennsylvania.

b. Sheena R. Westmoreland was a Captain in the United States Army a part of the 630th Transportation Company out of Pennsylvania. She deployed to Fallujah, Iraq. On July 10, 2004, she was traveling from Camp Anaconda delivering supplies to Mosul. Ms. Westmoreland was the driver of an Armored Combat Earthmover vehicle that was a part of a

23-vehicle convoy. The truck in front of Westmoreland ran over a buried IED that detonated. As a result of the ensuing blast, Ms. Westmoreland hit her head violently against the vehicle and was knocked unconscious. She survived the attack.

c.  The July 10, 2004 Terrorist Attack against Sheena Renee Westmoreland constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the July 10, 2004 Terrorist Attack, Sheena Renee Westmoreland sustained significant injuries, including PTSD.

e.  Because of these injuries, Sheena Renee Westmoreland is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 225.    The October 3, 2006 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Travis J. Tysinger

a.  Plaintiff Travis J. Tysinger is a citizen of the United States and is domiciled in the State of Ohio.

b.  Travis Tysinger was a Specialist in the United States Army. He deployed to Baghdad, Iraq. On October 3, 2006, Tysinger was travelling in Baghdad on Route Metallica to a decommissioned Soviet power plant. Tysinger was on a combat mission involving an insurgent bomb-making training facility and was travelling in an up armored RG-31 Nyala, part of a five-vehicle convoy. An EFP suddenly hit the armor on the back of the driver's seat at a 45-degree angle and exited the vehicle through the gunner's turret. As a result, Tysinger received a Purple Heart.

c.  The October 3, 2006 Terrorist Attack against Travis J. Tysinger constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[186]

d.  As a result of the October 3, 2006 Terrorist Attack, Travis J. Tysinger sustained significant injuries, including PTSD, a right shoulder injury, Tinnitus, and a concussion.

---

[186]*See, e.g.*, *Karcher*, 396 F. Supp. 3d at 15–25, 33.

e.  Because of these injuries, Travis J. Tysinger is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 226.  The May 20, 2004 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Vince Lawrence Pelanca Family

a.  Plaintiff Vince Lawrence Pelanca is a citizen of the United States and is domiciled in the State of Hawaii.

b.  Plaintiff Jayden Pelanca is a citizen of the United States and is domiciled in the state of Hawaii. He is the son of Vince Lawrence Pelanca.

c.  Plaintiff Alyssa Pelanca is a citizen of the United States and is domiciled in the state of Hawaii. She is the daughter of Vince Lawrence Pelanca.

d.  Vince Pelanca was a sergeant in the United States Army a part of the 1st Calvary Division out of Hawaii. He deployed to Baghdad, Iraq. On May 20, 2004, Mr. Pelanca was performing a construction operation at Camp War Eagle in Baghdad when a mortar attack occurred. A mortar round landed in close proximity and knocked him unconscious. As a result, he received medical attention at the medic station on base at Camp Victory.

e.  The May 20, 2004 Terrorist Attack against Vince Lawrence Pelanca constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[187]

f.  As a result of the May 20, 2004 Terrorist Attack, Vince Lawrence Pelanca sustained significant injuries, including a right wrist injury, a right shoulder injury, a concussion, Tinnitus, a lower back injury, left knee injury, migraines, PTSD, and a TBI.

g.  Because of these injuries, Vince Lawrence Pelanca is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Jayden Pelanca and Alyssa Pelanca incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Vince Lawrence Pelanca on May 20, 2004.

---

[187] *See* Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (U.S. officials found mortar shells following the capture of IRGC-QF leaders in Iraq).

### 227.   The January 25, 2007 Terrorist Attack - Baghdad, Iraq
#### Plaintiff: Keith Douglas Johnson Family

a.  Plaintiff Keith Douglas Johnson is a citizen of the United States and is domiciled in the State of Texas.

b.  Plaintiff Mariela Johnson is a citizen of the United States and is domiciled in the state of Texas. She is the wife of Keith Douglas Johnson.

c.  Keith D. Johnson was a Sergeant First Class in the United States Army, a part of the 1st Brigade, HHC 2-5 Cavalry out of Fort Hood, Texas. He deployed to Baghdad, Iraq. On January 25, 2007, Johnson was on a patrol mission travelling from Muhala to Camp Liberty in Baghdad. He was a passenger in an up-armored Humvee traveling in a three-vehicle convoy. Suddenly, Johnson's vehicle ran over a buried IED in Baghdad that was remote detonated by copper wire. The resulting explosion flipped over the Humvee and killed PFC Darrell W. Ship. Keith Johnson was transported to Camp Liberty for medical treatment and ultimately survived the Terrorist Attack.

d.  The January 25, 2007 Terrorist Attack against Keith Douglas Johnson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the January 25, 2007 Terrorist Attack, Keith Douglas Johnson sustained significant injuries, including 2nd degree facial burns, shrapnel, and a left leg injury.

f.  Because of these injuries, Keith Douglas Johnson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Mariela Johnson incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Keith Douglas Johnson on January 25, 2007.

### 228.   The July 19, 2007 Terrorist Attack - Baghdad, Iraq
#### Plaintiff: Jeffrey Eugene Wikle Family

a.  Plaintiff Jeffrey Eugene Wikle is a citizen of the United States and is domiciled in the State of Texas.

b.  Plaintiff Aracelis Elena Wikle is a citizen of the United States and is domiciled in the state of Texas. She is the wife of Jeffrey Eugene Wikle.

c.  Plaintiff Anthony Jeff Wikle is a citizen of the United States and is domiciled in the state of Texas. He is the son of Jeffrey Eugene Wikle.

d.  Plaintiff Stephanie Michelle Wikle is a citizen of the United States and is domiciled in the state of Texas. She is the daughter of Jeffrey Eugene Wikle.

e.  Jeffrey Wikle was a Sergeant in the United States Army a part of the 2-12 Cavalry Regiment. He deployed to Baghdad, Iraq. On July 19, 2007, Mr. Wikle was a passenger in an up-armored vehicle that was in the middle of a convoy with approximately ten others. They were about 200 yards past an Iraqi checkpoint in Baghdad, en route to the old casino building to replace a generator, when an (IED detonated. The IED directly hit Mr. Wikle's vehicle from the front. As a result, the shrapnel penetrated through the vehicle. Wikle survived the terrorist attack and received a Combat Action Badge.

f.  The July 19, 2007 Terrorist Attack against Jeffrey Eugene Wikle constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  As a result of the July 19, 2007 Terrorist Attack, Jeffrey Eugene Wikle sustained significant injuries, including PTSD, bilateral hearing loss, and bilateral Tinnitus.

h.  Because of these injuries, Jeffrey Eugene Wikle is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Aracelis Elena Wikle, Anthony Jeff Wikle, and Stephanie Michelle Wikle incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Jeffrey Eugene Wikle on July 19, 2007.

### 229.    The September 11, 2007 Terrorist Attack - Tarmiyah, Iraq
### Plaintiff: Joseph Bernard Morse III

a.  Plaintiff Joseph Bernard Morse III is a citizen of the United States and is domiciled in the State of Texas.

b.  Joseph B. Morse III was a specialist in the United States Army a part of the 4-9 Infantry out of Fort Lewis, Washington. He deployed to Taji, Iraq. On September 11, 2007, Morse was the gunner in an up-armored Stryker that was the lead vehicle of a four-vehicle convoy. While on a mission to the JSS in Tarmiyah, the second vehicle of the convoy was hit by a roadside IED. While attempting to recover, their vehicle also struck a buried IED. As a result, the engine pushed through the vehicle and the vehicle was disabled.

**264**

c.  The September 11, 2007 Terrorist Attack against Joseph Bernard Morse III constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the September 11, 2007 Terrorist Attack, Joseph Bernard Morse III sustained significant injuries, including a left hand injury, right knee injury, and PTSD.

e.  Because of these injuries, Joseph Bernard Morse III is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 230.    The August 26, 2004 Terrorist Attack - Najaf, Iraq
### Plaintiff: Brian Daniel McCluskey

a.  Plaintiff Brian Daniel McCluskey is a citizen of the United States and is domiciled in the State of Texas.

b.  Brian Daniel McCluskey was a sergeant in the United States Army; part of the Alpha Company out of Fort Hood, Texas. On August 26, 2004, around 9:00am, McCluskey was involved in the battle of the City of the Dead in Najaf, Iraq. He was providing cover in a building in AO Michigan which began to receive direct enemy fire. As a result of injuries sustained, Mr. McCluskey received a Purple Heart.

c.  The August 26, 2004 Terrorist Attack against Brian Daniel McCluskey constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the August 26, 2004 Terrorist Attack, Brian Daniel McCluskey sustained significant injuries, including shrapnel wounds in his shoulder and left hand and PTSD.

e.  Because of these injuries, Brian Daniel McCluskey is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 231.    The June 10, 2005 Terrorist Attack - Latifiya, Iraq
### Plaintiff: Jonathan R. James

a.  Plaintiff Jonathan R. James is a citizen of the United States and is domiciled in the State of Alabama.

b.  Jonathan R. James was a sergeant in the United States Army a part of the 167th Infantry out of Fort Stewart, Georgia. He deployed to Latifiya, Iraq. On June 10, 2005, he was a passenger in an up-armored Humvee that was the lead vehicle of a thirty-vehicle convoy. After passing through a checkpoint in Latifiya, a roadside IED detonated on the driver's side of the vehicle. As a result, his vehicle sustained damage but James survived the terrorist attack.

c.  The June 10, 2005 Terrorist Attack against Jonathan R. James constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the June 10, 2005 Terrorist Attack, Jonathan R. James sustained significant injuries, including a TBI, PTSD, and nerve damage to his left elbow and forearm.

e.  Because of these injuries, Jonathan R. James is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 232.    The October 8, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Stuart Edward Riley Jr. Family

a.  Plaintiff Stuart Edward Riley Jr. is a citizen of the United States and is domiciled in the State of Wisconsin.

b.  Plaintiff Anita Riley is a citizen of the United States and is domiciled in the state of Wisconsin. She is the wife of Stuart Edward Riley Jr.

c.  Plaintiff Ezekiel Riley is a citizen of the United States and is domiciled in the state of Wisconsin. He is the son of Stuart Edward Riley Jr.

d.  Plaintiff Amber G. Koronkiewicz is a citizen of the United States and is domiciled in the state of Wisconsin. She is the daughter of Stuart Edward Riley Jr.

e.  Stuart Riley Jr. was a sergeant in the United States Army, a part of the 2nd Battalion 127th Infantry out of Wisconsin. He deployed to Baghdad, Iraq. On October 8, 2005, he was the truck commander in an up-armored Humvee that was a part of a thirty-three vehicle convoy. While

traveling in Baghdad, an IED detonated at the right front side of the vehicle. As a result, Riley received a Combat Infantry Badge.

f.   The October 8, 2005 Terrorist Attack against Stuart Edward Riley Jr. constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.   As a result of the October 8, 2005 Terrorist Attack, Stuart Edward Riley Jr. sustained significant injuries, including PTSD resulting in alcohol abuse, and bilateral Tinnitus.

h.   Because of these injuries, Stuart Edward Riley Jr. is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Anita Riley, Ezekiel Riley, and Amber G Koronkiewicz incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Stuart Edward Riley Jr. on October 8, 2005.

### 233.   The July 12, 2005 Terrorist Attack - Yusufiya, Iraq
### Plaintiff: Jerry Gilbert Family

a.   Plaintiff Jerry Gilbert is a citizen of the United States and is domiciled in the State of Georgia.

b.   Plaintiff Margaret Gilbert is a citizen of the United States and is domiciled in the state of Georgia. She is the wife of Jerry Gilbert.

c.   Jerry Gilbert was a sergeant in the United States Army a part of the 48th Battalion 108th Armor out of Fort Stewart, Georgia. He deployed to Yusufiya, Iraq. On July 12, 2005, he was on a mission on Highway Malaria. Mr. Gilbert was the gunner in an up-armored truck that was the fourth vehicle of a twelve-vehicle convoy. While traveling in Yusufiya, there was a 55-gallon drum on the passenger side of the road that contained an IED. The IED detonated and as a result, Gilbert's vehicle was burned and disabled. Gilbert survived the terrorist attack and received a Purple Heart.

d.   The July 12, 2005 Terrorist Attack against Jerry Gilbert constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. As a result of the July 12, 2005 Terrorist Attack, Jerry Gilbert sustained significant injuries, including shrapnel wounds to his right arm, face, and right hand, a back injury causing lower back pain, PTSD, and a TBI causing memory loss.

f. Because of these injuries, Jerry Gilbert is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Margaret Gilbert incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Jerry Gilbert on July 12, 2005.

## 234.    The April 7, 2003 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Juan Castaneda Family

a. Plaintiff Juan Castaneda is a citizen of the United States and is domiciled in the State of Texas.

b. Plaintiff Maria Castaneda is a citizen of the United States and is domiciled in the state of Texas. She is the mother of Juan Castaneda.

c. Plaintiff Isaias Castaneda is a citizen of the United States and is domiciled in the state of California. Isaias Castaneda is the sibling of Juan Castaneda.

d. Plaintiff Esmerelda Tatum is a citizen of the United States and is domiciled in the state of Texas. Esmerelda Tatum is the sibling of Juan Castaneda.

e. Plaintiff Eloy Castaneda is a citizen of the United States and is domiciled in the state of California. Eloy Castaneda is the sibling of Juan Castaneda.

f. Juan Castaneda served as a Sergeant in the 4th Marine Regiment and was deployed to Iraq. On April 7, 2003, Sergeant Castaneda was involved in "close fighting" at the Diyala Bridge crossing over the Nahr Diyala River (east of Baghdad). Specifically, Castaneda had dismounted an up-armored assault amphibious assault vehicle (AAV) and experienced enemy fire. Castaneda took cover next to the AAV, which received a direct hit from enemy artillery. The vehicle was destroyed, killing two Marines inside. Sergeant Castaneda assisted with transporting the bodies of his fallen Marines and survived the attack.

g. The April 7, 2003 Terrorist Attack against Juan Castaneda constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

h.  As a result of the April 7, 2003 Terrorist Attack, Juan Castaneda sustained significant injuries, including bilateral hearing loss, a TBI, and cranium disease.

i.  Because of these injuries, Juan Castaneda is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Maria Castaneda, Isaias Castaneda, Esmerelda Tatum, and Eloy Castaneda incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Juan Castaneda on April 7, 2003.

### 235.  The November 29, 2004 Terrorist Attack - Samarra, Iraq
#### Plaintiff: Justin Gaughan

a.  Plaintiff Justin Gaughan is a citizen of the United States and is domiciled in the State of Kansas.

b.  Justin Gaughan was a Specialist was in the United States Army, a part of the 915 Transportation Co. out of Iowa. He deployed to Mosul, Iraq. On November 29, 2004, Mr. Gaughan was transporting a semi travelling over the Samarra Bypass. Once the vehicle crossed over the bypass, an IED was remotely detonated on the driver's side of the vehicle. Gaughan survived the terrorist attack and received a Purple Heart.

c.  The November 29, 2004 Terrorist Attack against Justin Gaughan constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the November 29, 2004 Terrorist Attack, Justin Gaughan sustained significant injuries, including a ruptured (perforated) left ear drum and Tinnitus.

e.  Because of these injuries, Justin Gaughan is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 236.  The October 16, 2004 Terrorist Attack - Baghdad, Iraq
#### Plaintiff: Darby Lee Johnson

a.  Plaintiff Darby Lee Johnson is a citizen of the United States and is domiciled in the State of Arizona.

b.  Darby Lee Johnson was a specialist in the United States Army Reserves a part of the 458 Engineer Battalion out of Pennsylvania. He deployed to Baghdad, Iraq. On October 16, 2004, Mr. Johnson was the passenger in an up-armored Humvee that was the second vehicle of a

five-vehicle convoy. While awaiting a recovery truck for one of the vehicles in the convoy, a suspicious package was dropped off a bridge in Baghdad on Route Irish and next to Mr. Johnson. The package, an IED, then detonated. As a result, Johnson received shrapnel wounds and was awarded a Purple Heart.

c.  The October 16, 2004 Terrorist Attack against Darby Lee Johnson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the October 16, 2004 Terrorist Attack, Darby Lee Johnson sustained significant injuries, including shrapnel wounds in his left leg and left hand, Achilles tendonitis, a concussion, a shoulder injury, a TBI, and PTSD.

e.  Because of these injuries, Darby Lee Johnson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 237.    The April 20, 2010 Terrorist Attack - Al-Hay, Iraq
### Plaintiff: Christopher Shaun McCoig Family

a.  Plaintiff Christopher Shaun McCoig is a citizen of the United States and is domiciled in the State of Tennessee.

b.  Plaintiff Krystle McCoig is a citizen of the United States and is domiciled in the state of Tennessee. She is the wife of Christopher Shaun McCoig.

c.  Christopher McCoig was a specialist in the United States Army National Guard, a part of the 252nd Military Police Company out of Cleveland, Tennessee. He deployed to Al Hay, Iraq. On April 20 2010, Mr. McCoig was the driver of an up-armored Cayman Mine-Resistant Ambush Protected Vehicle (MRAP), the third vehicle in a four-vehicle convoy. His vehicle ran over a buried IED, which detonated on the right side underneath the vehicle. McCoig survived the terrorist attack and received a combat action badge.

d.  The April 20, 2010 Terrorist Attack against Christopher Shaun McCoig constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the April 20, 2010 Terrorist Attack, Christopher Shaun McCoig sustained significant injuries, including a concussion, a TBI, PTSD, bilateral Tinnitus, and migraine headaches.

f.  Because of these injuries, Christopher Shaun McCoig is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Krystle McCoig incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Christopher Shaun McCoig on April 20, 2010.

### 238.    The October 8, 2006 Terrorist Attack - Kirkuk, Iraq
#### Plaintiff: George Stiltner Family

a.  Plaintiff George Stiltner is a citizen of the United States and is domiciled in the State of Oklahoma.

b.  Plaintiff Crystal Stiltner is a citizen of the United States and is domiciled in the state of Oklahoma. She is the wife of George Stiltner.

c.  Plaintiff Sarah Stiltner is a citizen of the United States and is domiciled in the state of Oklahoma. She is the daughter of George Stiltner.

d.  Plaintiff Kayla Castegnetta is a citizen of the United States and is domiciled in the state of Oklahoma. She is the daughter of George Stiltner.

e.  George Stiltner was a Master sergeant in the United States Air Force. He deployed to Forward Operating Base (FOB) Warrior in Kirkuk, Iraq. At FOB Warrior, Stiltner was part of the Explosive Ordinance Disposal (EOD) team and would attempt to safely defuse various IEDs. On October 8, 2006, Stiltner and his EOD team were attacked while on a route clearance mission in Kirkuk. Specifically, while traveling in a ten vehicle convoy, an IED hit the fifth vehicle. Two soldiers sustained shrapnel wounds but Stiltner survived the terrorist attack.

f.  The October 8, 2006 Terrorist Attack against George Stiltner constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  As a result of the October 8, 2006 Terrorist Attack, George Stiltner sustained significant injuries, including PTSD and Tinnitus.

h. Because of these injuries, George Stiltner is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Crystal Stiltner, Sarah Stiltner, and Kayla Castegnetta incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by George Stiltner on October 8, 2006.

### 239.    The November 28, 2006 Terrorist Attack – Balad, Iraq
### Plaintiff: Eric Ryan Nichols

a. Plaintiff Eric Ryan Nichols is a citizen of the United States and is domiciled in the State of Michigan.

b. Eric Ryan Nichols was a specialist in the United States Army. He deployed to Tikrit, Iraq. On November 28, 2006, Mr. Nichols was a part of a convoy that was leaving Camp Speicher towards Camp Rustamiyah. At Grid Point 2566152623, a few miles outside the Balad Market Area, Mr. Nichols' heavy equipment truck was impacted by an IED that detonated from the driver side less than a foot away from the front tire. The impact of the bomb occurred around 23:00 hours and damaged two front tires, ruptured the air tanks and killed the engine block. As a result, the Explosive Ordinance Disposal team arrived on scene and determined the IED was 152mm round placed in a pre-existing hole triggered by a pressure wire. Nichols survived the terrorist attack and received a Combat Action Badge.

c. The November 28, 2006 Terrorist Attack against Eric Ryan Nichols constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the November 28, 2006 Terrorist Attack, Eric Ryan Nichols sustained significant injuries, including PTSD and Tinnitus.

e. Because of these injuries, Eric Ryan Nichols is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 240.    The July 30, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Anthony Snyder

a. Plaintiff Anthony Snyder is a citizen of the United States and is domiciled in the State of Missouri.

b. Anthony Snyder served in the United States Army and was deployed to Iraq. On July 30, 2005, around 12:30pm, Snyder was providing route clearance patrol on MSR Detroit in Baghdad (CP 128). Suddenly, a remote detonated IED exploded from the ground. The ensuing shockwaves knocked Snyder unconscious temporarily but he survived the terrorist attack.

c. The July 30, 2005 Terrorist Attack against Anthony Snyder constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the July 30, 2005 Terrorist Attack, Anthony Snyder sustained significant injuries, including PTSD and Tinnitus.

e. Because of these injuries, Anthony Snyder is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 241.    The August 18, 2003 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Michael D. Rogers Family

a. Plaintiff Michael D. Rogers is a citizen of the United States and is domiciled in the State of Virginia.

b. Plaintiff Yilin Rogers is a citizen of the United States and is domiciled in the state of Virginia. She is the wife of Michael D. Rogers.

c. Michael D. Rogers was a Specialist in the United States Army and served in the 307th MP Company. He was deployed to Baghdad, Iraq. On August 18, 2003, Mr. Rogers was the gunner of the rear vehicle in a four-vehicle convoy. The convoy was traveling down an off ramp in Eastern Baghdad at the Clover Leaf Interchange. Suddenly, an IED hidden underneath the guardrail exploded. The ensuing blast disabled Roger' vehicle. As a result, SPC Eric Hull was tragically KIA. Further, other soldiers in the convoy, including Rogers, sustained serious injuries.

d. The August 18, 2003 Terrorist Attack against Michael D. Rogers constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the August 18, 2003 Terrorist Attack, Michael D. Rogers sustained significant injuries, including a TBI, PTSD, Tinnitus, and migraines.

f.  Because of these injuries, Michael D. Rogers is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Yilin Rogers incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Michael D. Rogers on August 18, 2003.

### 242.  The June 13, 2005 Terrorist Attack - Yusufiyah, Iraq (Grid MB 58828).
### Plaintiff: Elliott T. Ingram

a.  Plaintiff Elliott T. Ingram is a citizen of the United States and is domiciled in the State of Alabama.

b.  Elliott T. Ingram was a Staff Sergeant in the Army National Guard. He was deployed to Yusufiyah, Iraq. On June 13, 2005, at 19:23, Mr. Ingram was on a routine patrol, about two miles from his compound in Yusufiyah. Mr. Ingram was the front passenger in an unarmored Humvee traveling in a four-vehicle convoy. Suddenly, a remoted detonated IED detonated from the side of the road. The explosion occurred at Grid MB 588282 in Yusufiyah. The shrapnel from the IED penetrated Ingram's' vehicle and peeled the roof of the Humvee. As a result, Ingram received medical treatment in Baghdad and Landstuhl, Germany. Ingram survived the attack and received a Purple Heart.

c.  The June 13, 2005 Terrorist Attack against Elliott T. Ingram constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the June 13, 2005 Terrorist Attack, Elliott T. Ingram sustained significant injuries, including a right elbow fracture requiring surgery.

e.  Because of these injuries, Elliott T. Ingram is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 243.  The June 26, 2005 Terrorist Attack - Yusufiyah, Iraq
### Plaintiff: John Roberts Family

a.  Plaintiff John Roberts is a citizen of the United States and is domiciled in the State of Georgia.

b.  Plaintiff Eva Roberts is a citizen of the United States and is domiciled in the state of Georgia. She is the wife of John Roberts.

c.  John Roberts was a Sergeant First Class in the United States Army. Mr. Roberts was deployed to Yusufiyah, Iraq from May 2005 until June 2006. On June 26, 2005, Roberts was on a mission heading toward the Yusufiyah Potato factory. Mr. Roberts was the gunner in his Humvee traveling in a convoy of four other vehicles. A remotely detonated IED struck Roberts' vehicle from the left side. As a result, he had to be medevacked to the nearest medic station. Roberts survived the Terrorist Attack and received a Purple Heart.

d.  The June 26, 2005 Terrorist Attack against John Roberts constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the June 26, 2005 Terrorist Attack, John Roberts sustained significant injuries, including a TBI, PTSD, hearing loss, a lower back injury, a neck injury, and a left shoulder injury.

f.  Because of these injuries, John Roberts is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Eva Roberts incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by John Roberts on June 26, 2005.

### 244.    The April 24, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Marquilo R. Rhynes

a.  Plaintiff Marquilo R. Rhynes is a citizen of the United States and is domiciled in the State of Texas.

b.  Marquilo Rhynes was a Specialist in the United States Army in the 36th Engineer Brigade out of Fort Hood, Texas. He was deployed to Baghdad, Iraq. On April 24, 2005, Mr. Rhynes was patrolling a village in Eastern Baghdad near Sadr City. He was driving an unarmored Humvee in a five-vehicle convoy. Suddenly, and IED hit the right side of the vehicle and penetrated the exterior. As a result, two soldiers were killed and many others, including Rhynes, sustained significant injuries.

c.  The April 24, 2005 Terrorist Attack against Marquilo R. Rhynes constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the April 24, 2005 Terrorist Attack, Marquilo R. Rhynes sustained significant injuries, including a TBI, PTSD, bilateral hearing loss, a back injury, a neck injury, and vertigo.

e.  Because of these injuries, Marquilo R. Rhynes is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 245.  The November 29, 2004 Terrorist Attack - Baghdad, Iraq
### Plaintiff: John A. Moore

a.  Plaintiff John A. Moore is a citizen of the United States and is domiciled in the State of North Carolina.

b.  John A. Moore was a Private First Class in the United States Army in the 57th Signal Battalion. He was deployed to Baghdad, Iraq. On November 29, 2004, Mr. Moore and his team were conducting maintenance on their vehicles and preparing for a mission. During the loading of the vehicles, a mortar round attack suddenly came down from the sky and landed about 10-15 feet from Mr. Moore's vehicle. The impact of the blast threw Mr. Moore about eight feet away from his vehicle. Mr. Moore survived the terrorist attack and received a Purple Heart.

c.  The November 29, 2004 Terrorist Attack against John A. Moore constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[188]

d.  As a result of the November 29, 2004 Terrorist Attack, John A. Moore sustained significant injuries, including shrapnel wounds and PTSD.

e.  Because of these injuries, John A. Moore is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

---

[188] *See* Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (U.S. officials found mortar shells following the capture of IRGC-QF leaders in Iraq).

### 246.    The March 7, 2005 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Mike Bravo Family

a.  Plaintiff Mike Bravo is a citizen of the United States and is domiciled in the State of North Carolina.

b.  Plaintiff Cecilia Colbeck is a citizen of the United States and is domiciled in the state of Illinois. She is the mother of Mike Bravo.

c.  Plaintiff Natalie Montero is a citizen of the United States and is domiciled in the state of North Carolina. Natalie Montero is the sibling of Mike Bravo.

d.  Mike Bravo was a Specialist in the United States Army, a part of the Forty-fourth Engineer Battalion, Second Brigade Combat Team out of Camp Howze, Korea. He deployed to Yusufiyah, Iraq. On March 7, 2005, Mr. Bravo was traveling on Route Michigan near a Combat Outpost in Ramadi. Bravo was on a mission to search a soccer field for an arms cache. Bravo was the gunner in a Humvee protected by scrap metal armour, part of a 2- vehicle convoy. Suddenly, a VBIED exploded about 100 meters left of Bravo's vehicle. Bravo survived the terrorist attack; however, two of his fellow soldiers (SSG Andrew L Bossert & PFC Michael Franklin) were tragically KIA.

e.  The March 7, 2005 Terrorist Attack against Mike Bravo constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the March 7, 2005 Terrorist Attack, Mike Bravo sustained significant injuries, including PTSD with cognitive impairment.

g.  Because of these injuries, Mike Bravo is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Cecilia Colbeck and Natalie Montero incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Mike Bravo on March 7, 2005.

### 247.    The July 22, 2007 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Jesse Lee Avent II Family

a.  Plaintiff Jesse Lee Avent II is a citizen of the United States and is domiciled in the State of Pennsylvania.

b. Plaintiff Harriet Avent is a citizen of the United States and is domiciled in the state of Pennsylvania. She is the wife of Jesse Lee Avent II.

c. Jesse Lee Avent II was a Sergeant in the United States Army, a part of the 298 Transportation unit. He deployed to Camp Anaconda in Baghdad, Iraq. On the evening of July 22, 2007, Jesse Lee Avent II was on a routine mission en route back to Camp Anaconda from MSR Tampa. Jesse Lee Avent II was the driver in the lead transportation truck in a convoy of approximately fifteen vehicles. An underground IED suddenly detonated, penetrating his vehicle on the right side. As a result, he received a Combat Action Badge.

d. The July 22, 2007 Terrorist Attack against Jesse Lee Avent II constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e. As a result of the July 22, 2007 Terrorist Attack, Jesse Lee Avent II sustained significant injuries, including PTSD, a back injury, a knee injury, a shoulder injury, and Tinnitus.

f. Because of these injuries, Jesse Lee Avent II is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Harriet Avent incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Jesse Lee Avent II on July 22, 2007.

### 248.    The October 5, 2006 Terrorist Attack - Fallujah, Iraq
### Plaintiff: Leon D. Hernandez

a. Plaintiff Leon D. Hernandez is a citizen of the United States and is domiciled in the State of Texas.

b. Leon Hernandez was deployed with the USMC as a part of 1MHG Force Protection Company to Camp Fallujah, Iraq from 2006-2007. On October 5, 2006, Mr. Hernandez was on patrol in Fallujah looking for IEDs in a convoy consisting of three up-armored Humvees. Mr. Hernandez was driving the lead Humvee. Suddenly, Mr. Hernandez spotted an empty weighed-down vehicle on the side of the road. The second patrol in the convoy stopped and one soldier began to inspect the roadside vehicle. Hernandez yelled at this soldier, telling him to get away from the roadside vehicle immediately and call the Explosive Ordnance Disposal (EOD) team. However, at this moment a bomb inside the vehicle suddenly detonated. The ensuing explosion from the VBIED tragically killed the inspecting soldier. Hernandez survived the Terrorist Attack but sustained multiple injuries. As a result of this incident, Hernandez received a Combat Action Ribbon.

c. The October 5, 2006 Terrorist Attack against Leon D. Hernandez constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the October 5, 2006 Terrorist Attack, Leon D. Hernandez sustained significant injuries, including Chronic PTSD, a spinal injury, bilateral Tinnitus, and depression.

e. Because of these injuries, Leon D. Hernandez is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 249.    The April 25, 2006 Terrorist Attack - Al Karmah, Iraq
### Plaintiff: Byron J. Owen

a. Plaintiff Byron J. Owen is a citizen of the United States and is domiciled in the State of Maryland.

b. Byron J Owens served as a First Lieutenant in the United States Marines and was deployed to Iraq and Afghanistan. On April 25, 2006, Owens was traveling in Al Karmah when the side of his vehicle was hit by an IED. As a result, Owen received a Purple Heart.

c. The April 25, 2006 Terrorist Attack against Byron J. Owen constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the April 25, 2006 Terrorist Attack, Byron J. Owen sustained significant injuries, including a TBI resulting in constant headaches, multiple concussions, Tinnitus, and PTSD.

e. Because of these injuries, Byron J. Owen is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 250.    The March 21, 2006 Terrorist Attack - North Baghdad, Iraq
### Plaintiff: Charles T. Schertle

a. Plaintiff Charles T. Schertle is a citizen of the United States and is domiciled in the State of Oklahoma.

b. Charles T Schertle enlisted in the United States Army and was deployed to Baghdad, Iraq from Fort Sill, Oklahoma. On March 21, 2006, while heading towards Kuwait on a routine mission, Mr. Schertle was involved in a remote detonated IED attack in North Baghdad. Mr. Schertle was the driver of a semi-truck and the IED penetrated through the passenger side. Schertle survived the attack.

c. The March 21, 2006 Terrorist Attack against Charles T. Schertle constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the March 21, 2006 Terrorist Attack, Charles T. Schertle sustained significant injuries, including anxiety and Tinnitus.

e. Because of these injuries, Charles T. Schertle is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 251. The October 30, 2006 Terrorist Attack - Al Anbar, Iraq
### Plaintiff: Christopher D. Williamson Family

a. Plaintiff Christopher D. Williamson is a citizen of the United States and is domiciled in the State of Tennessee.

b. Plaintiff Sandra Williamson is a citizen of the United States and is domiciled in the state of Tennessee. She is the wife of Christopher D. Williamson.

c. Christopher D. Williamson was in the United States Army and served in the 2nd Bravo Infantry Unit. He was deployed to Al Anbar, Iraq. Around 7:10am on October 30, 2006, Williamson was traveling in a convoy in Ramadi during a mission to gather food. At this time, Williamson was sitting inside a M1113 Humvee. Suddenly, the convoy was attacked by RPGs. One of the RPGs detonated near Williamson, causing shrapnel to strike his forehead. Williamson survived this Terrorist Attack and received a Purple Heart.

d. The October 30, 2006 Terrorist Attack against Christopher D. Williamson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[189]

---

[189] *See* Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (U.S. officials found RPGs and mortar shells following the capture of IRGC-QF leaders in Iraq).

e.  As a result of the October 30, 2006 Terrorist Attack, Christopher D. Williamson sustained significant injuries, including shrapnel wounds to the face, PTSD, migraines, and a TBI.

f.  Because of these injuries, Christopher D. Williamson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Sandra Williamson incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Christopher D. Williamson on October 30, 2006.

### 252.    The July 21, 2007 Terrorist Attack - Taji, Iraq
### Plaintiff: Arthur M. Orona

a.  Plaintiff Arthur M. Orona is a citizen of the United States and is domiciled in the State of Colorado.

b.  Arthur Orona enlisted in the United States Army and served as an Army-Heavy Equipment Mechanic in the 887th Engineers out of Fort Campbell, Kentucky. Orona was deployed to Taji, Iraq. On July 21, 2007, Mr. Orona was on a mission outside of Camp Taji on foot. He was adding dirt to an observation post to protect soldiers from snipers and other enemy fire. Suddenly, Orona experienced incoming mortar fire. The ensuing shrapnel struck Orona throughout his body and knocked him unconscious. As a result of the Terrorist Attack, Orona was medevacked to the Green Zone in Baghdad. Orona survived and was awarded a Purple Heart and Combat Action Badge.

c.  The July 21, 2007 Terrorist Attack against Arthur M. Orona constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[190]

d.  As a result of the July 21, 2007 Terrorist Attack, Arthur M. Orona sustained significant injuries, including PTSD, permanent shrapnel wounds (6 pieces still remain in his body in arms, neck, ears, forehead, cheek and back), and a TBI.

e.  Because of these injuries, Arthur M. Orona is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

---

[190] *See* Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (U.S. officials found RPGs and mortar shells following the capture of IRGC-QF leaders in Iraq).

### 253.    The February 28, 2006 Terrorist Attack - Mosul, Iraq
#### Plaintiff: Samuel Lee Ayers Family

a.  Plaintiff Samuel Lee Ayers is a citizen of the United States and is domiciled in the State of North Carolina.

b.  Plaintiff Shauna Ayers is a citizen of the United States and is domiciled in the state of North Carolina. She is the wife of Samuel Lee Ayers.

c.  Plaintiff Janite Ayers is a citizen of the United States and is domiciled in the state of North Carolina. She is the mother of Samuel Lee Ayers.

d.  Plaintiff Zacchaues Ayers is a citizen of the United States and is domiciled in the state of North Carolina. He is the father of Samuel Lee Ayers.

e.  Samuel Ayers was in the United States Army National Guard as a Specialist; part of the 8-82 Engineer Battalion out of North Carolina. He was deployed to Mosul, Iraq. On February 28, 2006, Mr. Ayers was headed back to his Forward Operating Base (FOB) after pulling security at a polling station. He was the gunner in an up-armored M11-19; the second vehicle of a six-vehicle convoy. An IED suddenly struck Ayers' vehicle on the passenger side, hitting the back quarter panel. Ayers survived this attack and received a Combat Action Badge for this incident.

f.  The February 28, 2006 Terrorist Attack against Samuel Lee Ayers constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  As a result of the February 28, 2006 Terrorist Attack, Samuel Lee Ayers sustained significant injuries, including PTSD, right hearing loss, and Tinnitus.

h.  Because of these injuries, Samuel Lee Ayers is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Shauna Ayers, Janite Ayers, and Zacchaues Ayers incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Samuel Lee Ayers on February 28, 2006.

### 254.    The May 21, 2006 Terrorist Attack - Balad, Iraq
#### Plaintiff: Erik M. Castillo Family

a.  Plaintiff Erik M. Castillo, Individually and as Next Friend of T.C., is a citizen of the United States and is domiciled in the State of Oregon.

b.   Plaintiff Kristina Castillo is a citizen of the United States and is domiciled in the state of Oregon. She is the wife of Erik M. Castillo.

c.   Plaintiff T.C. is a citizen of the United States and is domiciled in the state of Oregon. She is the daughter of Erik M. Castillo.

d.   Erik Castillo was in the United States Army as a Sergeant; part of the 3rd of 321st Field Artillery Regiment out of Fort Bragg, North Carolina. He was deployed to Balad, Iraq. On May 21, 2006, Mr. Castillo was on a mission as the gunner in an up-armored support vehicle; the lead of a 23-vehicle convoy, in Balad. Near Forward Operating Base (FOB) Anaconda, an object in the road was spotted. As Castillo's vehicle moved closer to view said object, it turned out to be an IED. The IED then exploded and struck Castillo's vehicle. The vehicle was hit by shrapnel to the front and sides, causing three flat tires. The vehicle was completely disabled.

e.   The May 21, 2006 Terrorist Attack against Erik M. Castillo constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.   As a result of the May 21, 2006 Terrorist Attack, Erik M. Castillo sustained significant injuries, including a TBI, back injuries, and PTSD.

g.   Because of these injuries, Erik M. Castillo is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Kristina Castillo, and T.C. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Erik M. Castillo on May 21, 2006.

### 255.    The July 12, 2003 Terrorist Attack – Al Duluah, Iraq
#### Plaintiff: Kenny Ray Cox

a.   Plaintiff Kenny Ray Cox is a citizen of the United States and is domiciled in the State of Kentucky.

b.   Kenny Ray Cox served in the United States Army as a Specialist in the 64th Military Police Company out of Fort Hood, Texas. Cox was deployed to Balad and Tikrit in Iraq. On July 12, 2003, SPC Cox was involved in an IED attack in Al Duluah Iraq. Cox was on combat patrol late at night driving a Humvee in a convoy on the North Main Road. The convoy was going to investigate an IED explosion from the night prior. Cox began to slow down his Humvee as he

got closer to the explosion site. However, at this time about 4 or 5 insurgents opened fire on Cox and his team using RPGs and small arms fire. The RPG penetrated Cox's vehicle, struck the right side of Cox's neck, and destroyed part of his right hand. Cox was knocked unconscious. When he woke up, Cox began firing back at the enemy insurgents using his M4 Rifle. After the fire fight ended, Cox was flown to Camp Anaconda for emergency medical treatment. Cox survived the Terrorist Attack and received a Purple Heart.

c. The July 12, 2003 Terrorist Attack against Kenny Ray Cox constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[191]

d. As a result of the July 12, 2003 Terrorist Attack, Kenny Ray Cox sustained significant injuries, including losing a section of his right hand, shrapnel wounds, PTSD, and Tinnitus.

e. Because of these injuries, Kenny Ray Cox is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 256. The August 30, 2006 Terrorist Attack - Fallujah, Iraq
### Plaintiff: Chance Wade Nix Family

a. Plaintiff Chance Wade Nix is a citizen of the United States and is domiciled in the State of Texas.

b. Plaintiff Jennifer Nix is a citizen of the United States and is domiciled in the state of Texas. She is the wife of Chance Wade Nix.

c. Chance Wade Nix was a lance corporal in the United States Marine Corps. He deployed to Fallujah, Iraq in 2006. On August 30, 2006, Mr. Nix was travelling through Fallujah on a mission driving the lead vehicle in a convoy. Nix spotted a small IED in the road and initiated an immediate retreat. However, the IED exploded approximately fifteen feet from Nix's vehicle before he could safely leave the scene. The ensuing shrapnel penetrated Nix's vehicle. Nix survived the Terrorist Attack and received a Purple Heart.

d. The August 30, 2006 Terrorist Attack against Chance Wade Nix constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

---

[191] *See* Pound and Jack, *Special Report: The Iran Connection*, U.S. NEWS & WORLD REPORT (2003 U.S. and Israeli intelligence reports concluded that Hezbollah was training the Mahdi Army, an Iraqi militant group, at Iran's request and providing them weapons like RPGs).

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the August 30, 2006 Terrorist Attack, Chance Wade Nix sustained significant injuries, including a concussion, PTSD, a TBI, hearing loss, and shrapnel wounds.

f.  Because of these injuries, Chance Wade Nix is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Jennifer Nix incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Chance Wade Nix on August 30, 2006.

### 257.    The June 21, 2003 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Alvin Lugo Family

a.  Plaintiff Alvin Lugo is a citizen of the United States and is domiciled in the State of Nevada.

b.  Plaintiff Gretchen Padro is a citizen of the United States and is domiciled in the state of Nevada. She is the mother of Alvin Lugo.

c.  Plaintiff Jaime Padro is a citizen of the United States and is domiciled in the state of Nevada. Jaime Padro is the sibling of Alvin Lugo.

d.  Plaintiff Nuvia Rodriguez is a citizen of the United States and is domiciled in the state of Nevada. Nuvia Rodriguez is the sibling of Alvin Lugo.

e.  Alvin Lugo was in the United States Marine Corps as a Lance Corporal, a part of the Bravo MP Company out of Camp Pendleton, CA. He was deployed to Baghdad. On April 21, 2003, Lugo was a rear passenger in the middle vehicle of a 20-vehicle convoy. They were on patrol in Baghdad when an IED detonated on the driver side of the vehicle, knocking Lugo unconscious. As a result, he was awarded a Combat Action Ribbon.

f.  The June 21, 2003 Terrorist Attack against Alvin Lugo constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  As a result of the June 21, 2003 Terrorist Attack, Alvin Lugo sustained significant injuries, including PTSD, a TBI, and a concussion.

h. Because of these injuries, Alvin Lugo is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Gretchen Padro, Jaime Padro, and Nuvia Rodriguez incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Alvin Lugo on June 21, 2003.

### 258.    The September 10, 2006 Terrorist Attack - Fallujah, Iraq
### Plaintiff: Jeffrey D. Shaw

a. Plaintiff Jeffrey D. Shaw is a citizen of the United States and is domiciled in the State of Massachusetts.

b. Jeffrey Shaw was in an Infantryman in the United States Marine Corps, 1st Battalion, 25th Regiment. He was deployed to Fallujah, Iraq. On September 10, 2006, Mr. Shaw was a gunner in a three-vehicle patrol traveling in an unarmored Humvee. Suddenly, an IED detonated in Fullujah and penetrated the right side of Shaw's Humvee. Mr. Shaw was knocked unconscious. Shaw received emergency medical treatment at Camp Fallujah and was then medevacked to Landstuhl, Germany. As a result, he was awarded a Purple Heart and Combat Action Badge.

c. The September 10, 2006 Terrorist Attack against Jeffrey D. Shaw constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the September 10, 2006 Terrorist Attack, Jeffrey D. Shaw sustained significant injuries, including a TBI, nerve damage, shrapnel wounds, and scarring.

e. Because of these injuries, Jeffrey D. Shaw is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 259.    The February 8, 2007 Terrorist Attack - Fallujah, Iraq
### Plaintiff: Michael L. Lamon Family

a. Plaintiff Michael L. Lamon is a citizen of the United States and is domiciled in the State of New York.

b. Plaintiff Julia E. Lamon is a citizen of the United States and is domiciled in the state of New York. She is the wife of Michael L. Lamon.

c.  Michael Lamon was in the United States Army National Guard as a Sergeant, a part of the 34th Infantry Division. He was deployed to Fallujah, Iraq. On February 8, 2007, Mr. Lamon was the driver of the third vehicle in a 20-30 vehicle convoy. They were going down a dirt road to create a security perimeter around the base in Fallujah when an IED suddenly detonated underneath Mr. Lamon's vehicle. The impact of the blast blow a hole through the vehicle and hit the fuel cell, which caused the vehicle to catch fire. Lamon survived the terrorist attack and was awarded a Purple Heart.

d.  The February 8, 2007 Terrorist Attack against Michael L. Lamon constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the February 8, 2007 Terrorist Attack, Michael L. Lamon sustained significant injuries, including a TBI, PTSD, burns to his face and neck, a concussion, and migraines.

f.  Because of these injuries, Michael L. Lamon is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Julia E. Lamon incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Michael L. Lamon on February 8, 2007.

### 260.  The February 23, 2007 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Michael John Volkman

a.  Plaintiff Michael John Volkman is a citizen of the United States and is domiciled in the State of Wisconsin.

b.  Michael John Volkman was a specialist in the United States Army. Mr. Volkman was deployed to Ramadi, Iraq. On February 23, 2007, Mr. Volkman was doing a routine route clearance patrol in Ramadi. He was the passenger in an armored Buffalo that ran over a pressure plate IED. As a result of the Terrorist Attack, Volkman and three other soldiers were taken to a nearby hospital for observation.

c.  The February 23, 2007 Terrorist Attack against Michael John Volkman constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the February 23, 2007 Terrorist Attack, Michael John Volkman sustained significant injuries, including a back injury, a neck injury, an ankle injury, a concussion, PTSD, hearing loss, and tension headaches.

e.  Because of these injuries, Michael John Volkman is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 261.    The August 3, 2008 Terrorist Attack - Diyala Province, Iraq
### Plaintiff: Christopher Allen Stephens Family

a.  Plaintiff Christopher Allen Stephens is a citizen of the United States and is domiciled in the State of Texas.

b.  Plaintiff Olivia Stephens is a citizen of the United States and is domiciled in the state of Texas. She is the wife of Christopher Allen Stephens.

c.  Plaintiff Sarah Stephens is a citizen of the United States and is domiciled in the state of Texas. She is the mother of Christopher Allen Stephens.

d.  Christopher Allen Stephens was in the United States Army and served as an E-4 Specialist out of Baumholder, Germany. He was deployed to the Diyala Province, Iraq. On August 3, 2008, Mr. Stephens performed a route clearance mission in a six vehicle convoy. He was the driver of an up armored Bradley vehicle with three other passengers. Mr. Stephen's vehicle ran directly over an IED that was buried in the ground. Stephens survived the attack and received a Combat Action Badge.

e.  The August 3, 2008 Terrorist Attack against Christopher Allen Stephens constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the August 3, 2008 Terrorist Attack, Christopher Allen Stephens sustained significant injuries, including a TBI, PTSD, a left knee injury, a back injury, and Tinnitus.

g.  Because of these injuries, Christopher Allen Stephens is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Olivia Stephens and Sarah Stephens incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Christopher Allen Stephens on August 3, 2008.

### 262.    The January 1, 2004 Terrorist Attack - Balad, Iraq
### Plaintiff: Brett A. Pelezo

a.  Plaintiff Brett A. Pelezo is a citizen of the United States and is domiciled in the State of Missouri.

b.  Brett A. Pelezo was a Specialist in the United States Army and was deployed to Camp Anaconda in Balad, Iraq. January 1, 2004, while performing a routine mission heading towards Forward Operating Base (FOB) Brassfield-Mora, Mr. Pelezo was driving an unarmored M998 Humvee in his convoy. Suddenly, an IED exploded south of Balad from the side of the road impacting the rear of the vehicle. As a result, there were shrapnel holes to the backside of his vehicle, all windows were broken, and the left rear tire was flat. Pelezo survived the terrorist attack and received a Purple Heart.

c.  The January 1, 2004 Terrorist Attack against Brett A. Pelezo constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the January 1, 2004 Terrorist Attack, Brett A. Pelezo sustained significant injuries, including migraine headaches, PTSD, Tinnitus, and shrapnel wounds.

e.  Because of these injuries, Brett A. Pelezo is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 263.    The June 27, 2005 Terrorist Attack - Balad, Iraq
### Plaintiff: Jason E. Davis Family

a.  Plaintiff Jason E. Davis is a citizen of the United States and is domiciled in the State of Oregon.

b.  Plaintiff Barbara Davis is a citizen of the United States and is domiciled in the state of Oregon. She is the wife of Jason E. Davis.

c.  Plaintiff Cole Davis is a citizen of the United States and is domiciled in the state of Oregon. He is the son of Jason E. Davis.

d.  Plaintiff Sarah Davis is a citizen of the United States and is domiciled in the state of Oregon. She is the daughter of Jason E. Davis.

e.  Jason Davis enlisted in the United States Army and served as a Staff Sergeant in the 82nd Cavalry. Davis was deployed to Balad, Iraq. On or around June 27, 2005, Davis and a fellow

solider were on an overwatch mission looking over Elgimah. Elgimah is a dangerous village just north of FSA Anaconda in Balad known for insurgent activity. Suddenly, enemy insurgents fired mortar rounds at Davis. The rounds were initially fired 100 to 50 meters from Davis but the mortar fire kept coming closer to him. Davis then retreated to a nearby convoy. When Davis was about 25 meters away from the convoy, one of the mortar rounds hit and destroyed a nearby vehicle. However, Davis ultimately escaped and survived the Terrorist Attack.

f.  The June 27, 2005 Terrorist Attack against Jason E. Davis constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[192]

g.  As a result of the June 27, 2005 Terrorist Attack, Jason E. Davis sustained significant injuries, including a TBI, PTSD, Tinnitus, and migraines.

h.  Because of these injuries, Jason E. Davis is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Barbara Davis, Cole Davis, and Sarah Davis incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Jason E. Davis on June 27, 2005.

### 264. The July 27, 2006 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Luke D. Melvin

a.  Plaintiff Luke D. Melvin is a citizen of the United States and is domiciled in the State of Ohio.

b.  Luke Melvin was in the United States Army as a Lance Corporal, part of the 3rd Battalion, 8th Marines. He was deployed to Ramadi, Iraq. On July 27, 2006, Melvin was involved in an Improvised Explosive Device (IED) attack while conducting combat operations in Ramadi, Iraq. Melvin survived the attack. However, three of Melvin's close friends and fellow Marines were KIA - Enrique C. Sanchez, Adam R. Murray, and Timothy Roos. As a result of this incident, Melvin continues to suffer from severe emotional trauma.

c.  The July 27, 2006 Terrorist Attack against Luke D. Melvin constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

---

[192] See Lathem, *House of Jihad* (Hezbollah chief Hassan Nasrallah announcing that they support the adoption of an armed "jihad" resistance against American occupation forces in Iraq).

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the July 27, 2006 Terrorist Attack, Luke D. Melvin sustained significant injuries, including PTSD and Tinnitus.

e.  Because of these injuries, Luke D. Melvin is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 265.    The December 26, 2010 Terrorist Attack - Kirkuk, Iraq
### Plaintiff: Isaac McKee

a.  Plaintiff Isaac McKee is a citizen of the United States and is domiciled in the State of Texas.

b.  Isaac McKee was in the United States Army as a Staff Sergeant, part of the Bravo Co., Twelfth Cavalry Regiment out of Fort Hood, Texas. He was deployed to Kirkuk, Iraq. On December 26, 2010, McKee was on the Quick Reaction Force patrolling in downtown Kirkuk. He was the truck commander of the fourth RG33 armored vehicle in a convoy of four others. The convoy was en route to Forward Operating Base Warrior driving through the Azadi district in Kirkuk. At approximately 1750, an RKG3 was suddenly fired at the convoy. The RKG3 hit the front right part of the front passenger's window of McKee's vehicle, penetrating on contact, and rerouting to exit through the engine. McKee survived the attack and was awarded a Purple Heart.

c.  The December 26, 2010 Terrorist Attack against Isaac McKee constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the December 26, 2010 Terrorist Attack, Isaac McKee sustained significant injuries, including a concussion, a Major TBI, PTSD, Tinnitus, anxiety, and depression.

e.  Because of these injuries, Isaac McKee is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

**266.    The August 8, 2006 Terrorist Attack - Fallujah, Iraq**
**Plaintiff: Mark R. Espinosa**

a.  Plaintiff Mark R. Espinosa is a citizen of the United States and is domiciled in the State of Ohio.

b.  Mark Espinosa was a Private First Class in the United States Marine Corps, a part of the 1st Battalion, 25th Marines, 4th Marine Division. Mr. Espinosa was deployed to Fallujah, Iraq. On August 8, 2006, Mr. Espinosa was traveling to Fallujah with a regimental escort in a large convoy of over 1000 vehicles. He was positioned outside of the roof of an Amtrak tank when the tank was hit by an IED. The IED knocked Espinosa unconscious and destroyed Espinosa's tank. Espinosa survived the Terrorist Attack and received a Purple Heart.

c.  The August 8, 2006 Terrorist Attack against Mark R. Espinosa constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the August 8, 2006 Terrorist Attack, Mark R. Espinosa sustained significant injuries, including a TBI, PTSD, and ankylosing spondylitis causing severe mid to low back pain, and Tinnitus.

e.  Because of these injuries, Mark R. Espinosa is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

**267.    The June 15, 2003 Terrorist Attack - Baghdad, Iraq**
**Plaintiff: Orlando U. Andrews Sr. Family**

a.  Plaintiff Orlando U. Andrews Sr. is a citizen of the United States and is domiciled in the State of Alabama.

b.  Plaintiff Daijah Andrews is a United States citizen domiciled in the State of Alabama. She is the daughter of Orlando U. Andrews Sr.

c.  Plaintiff Deborah Andrews is a citizen of the United States and is domiciled in the state of Alabama. She is the wife of Orlando U. Andrews Sr.

d.  Plaintiff Linda Andrews is a citizen of the United States and is domiciled in the state of Alabama. She is the mother of Orlando U. Andrews Sr.

e.  Orlando U. Andrews Sr. was a sergeant in the United States Army a part of the 3-77 Transportation Company out of Mannheim, Germany. On June 15, 2003, around noon, Andrews was in a convoy of about ten vehicles. He was the driver of M1070 with a trailer M1000. The M1070 was not equipped with rhino or any other safeguarding devices. His convoy was heading towards the Victory Arch in Baghdad, Iraq when they were attacked with small arms fire. The first four vehicles were hit causing one of the vehicles to come to a stop. In turn, this vehicle caused a collision among the convoy. While waiting for an ambulance to arrive, Andrews' vehicle was struck on the back of the catwalk with a RPG. As a result, Andrews was immediately evacuated the 98th Combat Support Hospital in a Humvee. Orlando U. Andrews Sr. survived the Terrorist Attack and was awarded a Combat Action Badge.

f.  The June 15, 2003 Terrorist Attack against Orlando U. Andrews Sr. constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[193]

g.  As a result of the June 15, 2003 Terrorist Attack, Orlando U. Andrews Sr. sustained significant injuries, including a TBI, spinal injuries and back injuries including lumbar damage and a ruptured disc requiring surgery.

h.  Because of these injuries, Orlando U. Andrews Sr. is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Deborah Andrews, Linda Andrews, and Daijah Andrews incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Orlando U. Andrews Sr. on June 15, 2003.

### 268.    The May 15, 2003 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Frank James Wilson Family

a.  Plaintiff Frank James Wilson is a citizen of the United States and is domiciled in the State of California.

b.  Plaintiff Deadra Wilson is a citizen of the United States and is domiciled in the state of California. She is the mother of Frank James Wilson.

c.  Plaintiff Randy Wilson is a citizen of the United States and is domiciled in the state of California. He is the father of Frank James Wilson.

---

[193] *See* Pound and Jack, *Special Report: The Iran Connection*, U.S. NEWS & WORLD REPORT (2003 U.S. and Israeli intelligence reports concluded that Hezbollah was training the Mahdi Army, an Iraqi militant group, at Iran's request and providing them weapons like RPGs).

d. Plaintiff Paige Wilson is a citizen of the United States and is domiciled in the state of California. Paige Wilson is the sibling of Frank James Wilson.

e. Frank J. Wilson was in the United States Army a part of the 204th Military Police Company unit. Mr. Wilson was deployed to Baghdad, Iraq. On May 15, 2003, Mr. Wilson was driving an up-armored Humvee down the road in the industrial outskirts of Baghdad. He just passed a bus stop when he saw someone running with a cell phone down the sidewalk toward oncoming traffic. Immediately thereafter, an IED containing a 155mm high explosive projectile hidden in the median exploded. Wilson was knocked unconscious as a result of the blast but survived the Terrorist Attack.

f. The May 15, 2003 Terrorist Attack against Frank James Wilson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g. As a result of the May 15, 2003 Terrorist Attack, Frank James Wilson sustained significant injuries, including PTSD, a concussion, headaches, a back injury, a neck injury, and Tinnitus.

h. Because of these injuries, Frank James Wilson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Deadra Wilson, Randy Wilson, and Paige Wilson incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Frank James Wilson on May 15, 2003.

### 269.  The September 29, 2004 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Jonathan Levi Wilmert Family

a. Plaintiff Jonathan Levi Wilmert, Individually and as Next Friend of D.W., J.W., and D.W., minors, is a citizen of the United States and is domiciled in the State of Arizona.

b. Plaintiff Brittany Wilmert is a citizen of the United States and is domiciled in the state of Arizona. She is the wife of Jonathan Levi Wilmert.

c. Jonathan Levi Wilmert was an MP in the Army assigned to the 95th Military Police Battalion. Wilmert was deployed to Baghdad, Iraq. On September 29, 2004, at 2130 hours outside of Camp Victory, Mr. Wilmert was heading out for an escort mission in an up-armored Humvee with three people. An additional six vehicles were in the convoy. While going underneath a bridge underpass, an underground IED blew up and the convoy began to get ambushed by

small arms fire and mortars. During the Terrorist Attack, Wilmert had to change out the tires on the vehicle to escape. He ultimately survived the Terrorist Attack.

d. The September 29, 2004 Terrorist Attack against Jonathan Levi Wilmert constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[194]

e. As a result of the September 29, 2004 Terrorist Attack, Jonathan Levi Wilmert sustained significant injuries, including shrapnel wounds, PTSD, a TBI, and Post Traumatic Headaches.

f. Because of these injuries, Jonathan Levi Wilmert is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Brittany Wilmert, incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Jonathan Levi Wilmert on September 29, 2004.

## 270.    The July 20, 2006 Terrorist Attack - Mosul, Iraq
### Plaintiff: Jeremy Penman Family

a. Plaintiff Jeremy Penman is a citizen of the United States and is domiciled in the State of Utah.

b. Plaintiff Sean Johnson-Penman is a citizen of the United States and is domiciled in the state of Utah. Sean Johnson-Penman is the sibling of Jeremy Penman.

c. Jeremy Penman was in the United States Army as a Sergeant, a part of the 872nd Direct Support Maintenance Company. He was deployed to LSA Diamondback in Mosul, Iraq. On July 20, 2006, Penman was the commander of an up-armored M117 Armored Security Vehicle, the fifth vehicle in a ten-vehicle convoy. They were on a mission on Route Tampa when Mr. Penman was notified of a possible IED up ahead. Mr. Penman was in charge of stopping the convoy so he drove out of line and to the front to redirect them. When he came to a corner, an IED detonated about two meters in front and to the right of Mr. Penman's vehicle. As a result, Mr. Penman was awarded a Combat Action Badge.

d. The July 20, 2006 Terrorist Attack against Jeremy Penman constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

---

[194] *See* Lathem, *House of Jihad* (Hezbollah chief Hassan Nasrallah announcing that they support the adoption of an armed "jihad" resistance against American occupation forces in Iraq).

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.   As a result of the July 20, 2006 Terrorist Attack, Jeremy Penman sustained significant injuries, including a TBI, PTSD, minor burns, a back injury, a concussion, and bleeding of the ears.

f.   Because of these injuries, Jeremy Penman is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Sean Johnson-Penman incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Jeremy Penman on July 20, 2006.

### 271.    The May 2, 2005 Terrorist Attack – Baghad, Iraq
### Plaintiff: Keith Moore

a.   Plaintiff Keith Moore is a citizen of the United States and is domiciled in the State of South Carolina.

b.   Keith Moore served in the United States Army as a Sergeant First Class and was deployed to Baghdad Iraq. On May 2, 2007, while on a mission in Baghdad, Moore was a part of large vehicle convoy. He was the front passenger in an unarmored Humvee, located in the rear of the convoy. A remote detonated IED suddenly exploded from the side of the road, impacting the right side of Moore's vehicle. As a result, it shook up the vehicle. Moore survived the terrorist attack.

c.   The May 2, 2007, Terrorist Attack against Keith Moore constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.   As a result of the May 2, 2007 Terrorist Attack, Keith Moore sustained significant injuries, including PTSD.

e.   Because of these injuries, Keith Moore is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 272.    The April 28, 2008 Terrorist Attack – Baghdad, Iraq
### Plaintiff: Drew W. Schmidt Family

a.   Plaintiff Drew W. Schmidt is a citizen of the United States and is domiciled in the State of Ohio.

**296**

b.  Plaintiff Lisa Antonucci is a citizen of the United States and is domiciled in the state of Ohio. She is the mother of Drew W. Schmidt.

c.  Plaintiff William Schmidt is a citizen of the United States and is domiciled in the state of Ohio. He is the father of Drew W. Schmidt.

d.  Plaintiff Caleb Schmidt is a citizen of the United States and is domiciled in the state of Ohio. Caleb Schmidt is the sibling of Drew W. Schmidt.

e.  Drew Schmidt was in the United States Army as a Specialist, a part of the 4th Brigade, 10th Mountain Division. He was deployed to Rustamiyah, Iraq. On April 28, 2008, Schmidt was in a large convoy on a mission in Baghdad. Suddenly, fourteen (14) four-hundred (400) pound bombs were dropped on them by enemy insurgents. The bombs exploded about 200 meters from the convoy. The bombs killed two of Schmidt's fellow soldiers, Sgt. Mark Stone and Sgt. Marcus Mathew, but Schmidt survived the attack.

f.  The April 28, 2008 Terrorist Attack against Drew W. Schmidt constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  As a result of the April 28, 2008 Terrorist Attack, Drew W. Schmidt sustained significant injuries, including PTSD, a neck injury resulting in chronic pain, and Tinnitus.

h.  Because of these injuries, Drew W. Schmidt is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Lisa Antonucci, William Schmidt, and Caleb Schmidt incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Drew W. Schmidt on April 28, 2008.

### 273.  The September 26, 2003 Terrorist Attack – Balad, Iraq
### Plaintiff: Kathy A. Ruddy Family

a.  Plaintiff Kathy A. Ruddy is a citizen of the United States and is domiciled in the State of Texas.

b.  Plaintiff Allen Ruddy is a citizen of the United States and is domiciled in the state of Texas. He is the husband of Kathy A. Ruddy.

c.  Kathy Ruddy was a Specialist in the United States Army, part of the 122 Infantry Brigade, 4th Infantry Division out of Fort Hood, Texas. She was deployed to Saladin, Iraq. On September

26, 2003, Ms. Ruddy was in the open back, rear passenger seat in the middle Humvee among a three-vehicle convoy. They were on a mission taking personnel to Balad. Along the route, the rear vehicle was hit by an IED. The impact of the blast caused the back of Ms. Ruddy's vehicle to lift in the air and the driver slammed on the brakes. As a result, Ms. Ruddy was thrown forward against her vehicle and sustained a concussion.

d.  The September 26, 2003 Terrorist Attack against Kathy A. Ruddy constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the September 26, 2003 Terrorist Attack, Kathy A. Ruddy sustained significant injuries, including a TBI and PTSD.

f.  Because of these injuries, Kathy A. Ruddy is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Allen Ruddy incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Kathy A. Ruddy on September 26, 2003.

### 274.  The October 6, 2004 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Jesse Perry Family

a.  Plaintiff Jesse Perry, Individually and as Next Friend of K.A., a minor, is a citizen of the United States and is domiciled in the State of Texas.

b.  K.A. is a United States citizen domiciled in the State of Texas. She is the minor daughter of Jesse Perry.

c.  Plaintiff Melinda Perry is a citizen of the United States and is domiciled in the state of Texas. She is the wife of Jesse Perry.

d.  Jesse Perry was a specialist in United States Army and served in the Third Squadron of the Sixty First Cavalry Regiment out of Fort Carson, Colorado. He was deployed to Rustimiyah, Iraq. On October 6, 2004, at 17:19, Mr. Perry was conducting a route clearance mission near the Martyr Monument in Baghdad. He was driving the lead up-armored Humvee in a convoy of three others. Suddenly, an IED struck his Humvee in the right, front side and penetrated the engine. Perry survived the attack.

e.  The October 6, 2004 Terrorist Attack against Jesse Perry constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the October 6, 2004 Terrorist Attack, Jesse Perry sustained significant injuries, including a concussion, a TBI with cluster migraine headaches, and Tinnitus.

g.  Because of these injuries, Jesse Perry is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Melinda Perry and K.A. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Jesse Perry on October 6, 2004.

### 275.  The September 3, 2005 Terrorist Attack - Taji, Iraq
#### Plaintiff: James E. Berube Family

a.  Plaintiff James E. Berube is a citizen of the United States and is domiciled in the State of Kentucky.

b.  Plaintiff Susan Berube is a citizen of the United States and is domiciled in the state of Kentucky. She is the wife of James E. Berube.

c.  Plaintiff Makayla Berube is a citizen of the United States and is domiciled in the state of Texas. She is the daughter of James E. Berube.

d.  James B. Berube was a Sergeant in the United States Army a part of the Multi-National Division Forces. He was deployed to Taji, Iraq. On September 3, 2005, Mr. Berube was the second vehicle in a five-vehicle convoy. Their convoy was headed back from a checkpoint when an IED that was initially trying to hit the lead tanker vehicle missed and hit Mr. Berube's vehicle. The attack occurred about 6-10 kilometers away from Camp Taji. Berube survived the attack and received a Combat Action Badge.

e.  The September 3, 2005 Terrorist Attack against James E. Berube constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the September 3, 2005 Terrorist Attack, James E. Berube sustained significant injuries, including a TBI, PTSD, and Tinnitus.

g. Because of these injuries, James E. Berube is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Susan Berube and Makayla Berube incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by James E. Berube on September 3, 2005.

### 276.    The June 9, 2007 Terrorist Attack - Al Diwaniyah, Iraq
### Plaintiff: Schoen S. Flax

a. Plaintiff Schoen S. Flax is a citizen of the United States and is domiciled in the State of Texas.

b. Schoen S. Flax was a Sergeant First Class in the United States Army a part of the 4th Brigade, 25th Infantry Division. He was deployed to Al Diwaniyah, Iraq. On June 9, 2007, at approximately 7:30 am, Mr. Flax was on a three-vehicle patrol in an up-armored Humvee in Al Diwaniyah. He was the machine gunner with an additional four people inside of the Humvee. Within a fifteen-second time span, two separate IEDs were remote detonated from underground. The first IED went off between the first and second truck. The second IED exploded and hit Flax's Humvee, damaging the driver's side and the windows. As a result, the shockwave from the blast caused Mr. Flax to slam his chest into a 50 caliber weapon. The attack occurred at Check Point S130 near Salem Street. Flax survived the terrorist attack.

c. The June 9, 2007 Terrorist Attack against Schoen S. Flax constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the June 9, 2007 Terrorist Attack, Schoen S. Flax sustained significant injuries, including PTSD, a TBI, and Tinnitus.

e. Because of these injuries, Schoen S. Flax is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 277.    The July 11, 2007 Terrorist Attack - Besmaya, Iraq (FOB Hammer)
### Plaintiff: Fredy Mendoza Family

a. Plaintiff Fredy Mendoza is a citizen of the United States and is domiciled in the State of New York.

b.  Plaintiff Vanessa Mendoza is a citizen of the United States and is domiciled in the state of New York. She is the wife of Fredy Mendoza.

c.  Plaintiff Woodrow Mendoza is a citizen of the United States and is domiciled in the state of New York. He is the son of Fredy Mendoza.

d.  Plaintiff Andrea Mendoza is a citizen of the United States and is domiciled in the state of New York. She is the daughter of Fredy Mendoza.

e.  Fredy Mendoza was a Specialist in the United States Army and served in the Bravo Company, 203rd Brigade Support Battalion. He was deployed to Baghdad, Iraq. On July 11, 2007, Mendoza was in his tent at Forward Operating Base Hammer in Besmaya when a RPG attack began. Mendoza was instructed to get in his Humvee and locate the attack origin. When he got out of his vehicle, another RPG hit, causing Mendoza to be thrown to the ground. Around the same time, one of Mendoza's fellow soldiers, Sgt Courtney Johnson, was tragically KIA. Mendoza survived the attack.

f.  The July 11, 2007 Terrorist Attack against Fredy Mendoza constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[195]

g.  As a result of the July 11, 2007 Terrorist Attack, Fredy Mendoza sustained significant injuries, including a TBI causing headaches, PTSD, and Tinnitus.

h.  Because of these injuries, Fredy Mendoza is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Vanessa Mendoza, Woodrow Mendoza, and Andrea Mendoza incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Fredy Mendoza on July 11, 2007.

### 278.    The June 26, 2006 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Chase E. Messer

a.  Plaintiff Chase E. Messer is a citizen of the United States and is domiciled in the State of New Mexico.

---

[195] *See The Situation in Iraq and Progress by the Government of Iraq in Meeting Benchmarks and Achieving Reconciliation: Hearing before the Comm. on Armed Services*, 110th Cong., 2d sess., (April 8-10, 2008) (General Petraeus concluding that it is certainly fair to conclude that Iranian-backed Special Groups in Iraq were responsible for killing hundreds of American soldiers).

b. Chase Messer was a Sergeant in the United States Army and was deployed to at Camp Blue Diamond in Ramadi, Iraq. On June 26, 2006, Mr. Messer was a rear passenger in an up-armored Humvee traveling in an eight-vehicle convoy in Ramadi. Mr. Messer's vehicle then ran over an IED that was buried in the ground. As a result, the IED blast disabled the vehicle. Messer survived the Terrorist Attack and received a Combat Action Badge.

c. The June 26, 2006 Terrorist Attack against Chase E. Messer constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the June 26, 2006 Terrorist Attack, Chase E. Messer sustained significant injuries, including a TBI, migraine headaches, and PTSD.

e. Because of these injuries, Chase E. Messer is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 279.   The April 28, 2005 Terrorist Attack - Balad, Iraq
#### Plaintiff: Hector Perez

a. Plaintiff Hector Perez is a citizen of the United States and is domiciled in the State of California.

b. Hector Perez was a Specialist in the United States Army assigned to Forward Operating Base Paliwoda, Balad, Iraq. On April 28, 2005, around 1600 hours, Mr. Perez was part of a four vehicle convoy conducting a mission to ensure that Main Supply Route Tampa was clear of IEDs. Mr. Perez was the gunner in an up-armored Humvee. A daisy-chain IED suddenly detonated underneath a small bridge (at about Grid 38S MC 208582) on Highway 1 in Balad that was angled towards the road. Thereafter, a second IED explosion occurred followed by small arms fire. As a result, Mr. Perez was knocked unconscious and fell out of the turret. Perez then received medical treatment at a nearby medical tent and survived the terrorist attack and received a Combat Action Badge.

c. The April 28, 2005 Terrorist Attack against Hector Perez constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the April 28, 2005 Terrorist Attack, Hector Perez sustained significant injuries, including a concussion, migraines, PTSD, and a TBI.

e.  Because of these injuries, Hector Perez is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 280.  The May 14, 2004 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Jesse H. Emery

a.  Plaintiff Jesse H. Emery is a citizen of the United States and is domiciled in the State of New Hampshire.

b.  Jesse H. Emery was a Specialist in the United States Army, 197th Field Artillery. Emery was deployed to Baghdad, Iraq. On the late morning of May 14, 2004, Mr. Emery was the machine gunner in a convoy escort vehicle. He was on the way to Route Irish to Relay Point 1 outside of Baghdad, escorting a VIP for a meeting. Suddenly, Emery witnessed a remote detonated IED buried on the side of the road explode. The force of the explosion pushed Emery forward and his knees hit the front dashboard of his vehicle. However, because enemy insurgents misaligned the angle of the IED, the ensuing shrapnel missed Emery's vehicle. Emery survived the Terrorist Attack and received a Combat Action Badge.

c.  The May 14, 2004 Terrorist Attack against Jesse H. Emery constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the May 14, 2004 Terrorist Attack, Jesse H. Emery sustained significant injuries, including a knee injury (patellofemoral syndrome), a back injury, and Tinnitus.

e.  Because of these injuries, Jesse H. Emery is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 281.  The February 27, 2005 Terrorist Attack - Iskandariya, Iraq
### Plaintiff: Gregory McIntyre

a.  Plaintiff Gregory McIntyre is a citizen of the United States and is domiciled in the State of Nevada.

b.  Gregory McIntyre was a Staff Sergeant in the Unites States Army, a part of the 2-11 Armored Calvary Regiment out of Fort Irwin, California. He was deployed to Iskandariya, Iraq. On

February 27, 2005, Mr. McIntyre was involved in a 12-man foot patrol pulling security for the Explosive Ordinance Disposal (EOD) team. The EOD was conducting a post blast inspection on an IED that had detonated earlier that day. As McIntyre's patrol was pulling security around the EOD team, a second IED buried about five to six feet underneath them was suddenly detonated. Mr. McIntyre was hit by the ensuing shrapnel but survived the Terrorist Attack. As a result, he received a Purple Heart.

c.  The February 27, 2005 Terrorist Attack against Gregory McIntyre constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the February 27, 2005 Terrorist Attack, Gregory McIntyre sustained significant injuries, including Tinnitus and shrapnel wounds.

e.  Because of these injuries, Gregory McIntyre is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 282.  The September 27, 2004 Terrorist Attack – Al Anbar, Iraq
### Plaintiff: Kyle D. Zipf Family

a.  Plaintiff Kyle D. Zipf is a citizen of the United States and is domiciled in the State of Arizona.

b.  Plaintiff Allyson M Zipf is a citizen of the United States and is domiciled in the state of Arizona. She is the wife of Kyle D. Zipf.

c.  Mr. Kyle Zipf was a Corporal in the United States Marines, a part of the 2nd Battalion, 5th Marines Regiment out of Camp Pendleton, California. He was deployed to Ramadi, Iraq. On September 27, 2004, at 0131 hours, Mr. Zipf was at Intersection 296 returning from a mission to recover a 50-caliber weapon lost during a recent attack against an Army unit. He was in an up-armored Humvee in a convoy of four vehicles. An IED suddenly hit the right side of his Humvee on the flank and turret penetrating the armor. The attack occurred in the Al Anbar Province. As a result, Mr. Zipf received a Purple Heart.

d.  The September 27, 2004 Terrorist Attack against Kyle D. Zipf constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the September 27, 2004 Terrorist Attack, Kyle D. Zipf sustained significant injuries, including a TBI, PTSD, shrapnel wounds to his fingers, a leg injury, a forearm injury, a face injury, Tinnitus, and hearing loss.

f.  Because of these injuries, Kyle D. Zipf is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Allyson M Zipf incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Kyle D. Zipf on September 27, 2004.

### 283.    The April 19, 2007 Terrorist Attack - Mahmudiyah, Iraq
### Plaintiff: Michael A. Stennis Family

a.  Plaintiff Michael A. Stennis is a citizen of the United States and is domiciled in the State of South Carolina.

b.  Plaintiff Teona Stennis is a citizen of the United States and is domiciled in the state of South Carolina. She is the wife of Michael A. Stennis.

c.  Plaintiff Gloria Henry is a citizen of the United States and is domiciled in the state of Kansas. She is the mother of Michael A. Stennis.

d.  Plaintiff Jason Mills is a citizen of the United States and is domiciled in the state of Texas. Jason Mills is the sibling of Michael A. Stennis.

e.  Mr. Stennis was a Sergeant in the United States Army, a part of the 215th Field Artillery Battalion. He deployed to Forward Operating Base (FOB) Mahmudiyah. On the evening of April 19, 2007, while on his FOB, Stennis experienced a rocket attack initiated from outside of the base. Once the rocket hit FOB Mahmudiyah, Stennis was knocked unconscious for an unknown amount of time. As a result, Mr. Stennis received a Combat Action Badge.

f.  The April 19, 2007 Terrorist Attack against Michael A. Stennis constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[196]

g.  As a result of the April 19, 2007 Terrorist Attack, Michael A. Stennis sustained significant injuries, including a TBI, headaches, PTSD, Tinnitus, anxiety, and depression.

---

[196] *See* Ware, *Inside Iran's Secret War for Iraq*, TIME, Aug. 15, 2005 (reporting that Iran shipped weapons like 107mm and 122mm rockets across the border to Iraq).

305

h.  Because of these injuries, Michael A. Stennis is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Teona Stennis, Gloria Henry, and Jason Mills incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Michael A. Stennis on April 19, 2007.

### 284.    The June 30, 2003 Terrorist Attack - Baghdad, Iraq
### Plaintiff: John T. Parker Family

a.  Plaintiff John T. Parker is a citizen of the United States and is domiciled in the State of Missouri.

b.  Plaintiff Elizabeth Parker is a citizen of the United States and is domiciled in the state of Missouri. She is the wife of John T. Parker.

c.  Plaintiff Jonathan Niedringhaus is a citizen of the United States and is domiciled in the state of Missouri. He is the son of John T. Parker.

d.  Plaintiff John E. Parker is a citizen of the United States and is domiciled in the state of Missouri. He is the father of John T. Parker.

e.  Plaintiff Lisa Hastings is a citizen of the United States and is domiciled in the state of Missouri. Lisa Hastings is the sibling of John T. Parker.

f.  John T. Parker was a Staff Sergeant in the United States Army. On midnight, on June 30, 2003, Parker was conducting a two vehicle patrol in an unarmored Humvee. Parker was traveling on MSR Irish in Baghdad. Suddenly, a roadside remote detonated IED exploded penetrating his vehicle. As a result, Parker sought medical treatment at his Forward Operating Base in Baghdad.

g.  The June 30, 2003 Terrorist Attack against John T. Parker constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

h.  As a result of the June 30, 2003 Terrorist Attack, John T. Parker sustained significant injuries, including a TBI and PTSD.

i.  Because of these injuries, John T. Parker is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Elizabeth Parker,

Jonathan Niedringhaus, John E. Parker, and Lisa Hastings incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by John T. Parker on June 30, 2003.

### 285.    The January 7, 2007 Terrorist Attack – Tikrit, Iraq
### Plaintiff: Cory Woodstock

a.  Plaintiff Cory Woodstock is a citizen of the United States and is domiciled in the State of Arizona.

b.  Cory Woodstock was a specialist in the Army a part of the 259th Engineer Company unit. On January 7, 2007, Mr. Woodstock was leading a convoy security operation consisting of approximately twelve vehicles traveling approximately four miles long along MSR Tampa. They were located near CP78a, about 18-29 KM from FOB Speicher in Tikrit. An IED suddenly exploded impacting the left side of the Bradley truck Woodstock was driving. As a result, the truck became completely disabled, destroying tires and armored plates. Woodstock survived the attack and received a Purple Heart.

c.  The January 7, 2007 Terrorist Attack against Cory Woodstock constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the January 7, 2007 Terrorist Attack, Cory Woodstock sustained significant injuries, including shrapnel wounds to his left leg and hip, Tinnitus, a TBI, vision issues, and PTSD.

e.  Because of these injuries, Cory Woodstock is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 286.    The May 15, 2005 Terrorist Attack – Basra, Iraq
### Plaintiff: Daniel Courtney Family

a.  Plaintiff Daniel Courtney is a citizen of the United States and is domiciled in the State of North Carolina.

b.  Plaintiff Andrew Courtney is a citizen of the United States and is domiciled in the state of North Carolina. He is the son of Daniel Courtney.

c.  Plaintiff Madison Courtney is a citizen of the United States and is domiciled in the state of North Carolina. She is the daughter of Daniel Courtney.

d.  Plaintiff Daniel Courtney Sr. is a citizen of the United States and is domiciled in the state of Mississippi. He is the father of Daniel Courtney.

e.  Daniel Courtney was a Staff Sergeant in the United States Marine Corps. He deployed to the Al Anbar Province, Iraq. On May 15, 2005, Mr. Courtney was near Basra when he was engaged in a firefight by enemy insurgents. The insurgents fired a RPG near Courtney, sending him flying into the air and causing serious injuries. Courtney later received a Combat Action Ribbon.

f.  The May 15, 2005 Terrorist Attack against Daniel Courtney constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[197]

g.  As a result of the May 15, 2005 Terrorist Attack, Daniel Courtney sustained significant injuries, including shrapnel wounds, a back injury, shoulder injury, fractured skull, fifteen broken ribs, a torn rotator cuffs, Post-Traumatic Stress Disorder, and a Traumatic Brain Injury.

h.  Because of these injuries, Daniel Courtney is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Andrew Courtney, Madison Courtney, and Daniel Courtney Sr. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Daniel Courtney on May 15, 2005.

### 287.    The March 28, 2007 Terrorist Attack - Fallujah, Iraq
### Plaintiff: John Reed

a.  Plaintiff John Reed is a citizen of the United States and is domiciled in the State of Florida.

b.  John Reed was a petty officer third class in the United States Navy. He deployed to Fallujah, Iraq. On March 28, 2007, Mr. Reed was asleep at the Fallujah Government Center when it was attacked by mortar rounds and a VBIED that released Chlorine Gas when it detonated. As a result, Mr. Reed inhaled the chlorine gas and had to be medevacked to the Fallujah Medical Center.

c.  The March 28, 2007 Terrorist Attack against John Reed constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees,

---

[197] *See* Lathem, *House of Jihad* (Hezbollah chief Hassan Nasrallah announcing that they support the adoption of an armed "jihad" resistance against American occupation forces in Iraq).

and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[198]

d.  As a result of the March 28, 2007 Terrorist Attack, John Reed sustained significant injuries, including facial scarring, Tinnitus, and PTSD.

e.  Because of these injuries, John Reed is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 288.    The August 26, 2006 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Jonathan Langford Family

a.  Plaintiff Jonathan Langford, Individually and as Next Friend of C.D., a minor, is a citizen of the United States and is domiciled in the State of Florida.

b.  C.D. is a United States citizen domiciled in the State of Florida. He is the minor son of Jonathan Langford.

c.  Plaintiff Kristina Maria Langford is a citizen of the United States and is domiciled in the state of Florida. She is the wife of Jonathan Langford.

d.  Plaintiff Ian Michael Langford is a citizen of the United States and is domiciled in the state of Florida. He is the son of Jonathan Langford.

e.  Mr. Jonathan Langford was a sergeant in the United States Army Reserves. He deployed to Baghdad, Iraq. On August 15, 2006, Mr. Langford was traveling in Jisdir Diyala, a village near southern Baghdad. He was on foot guiding his vehicle so that the driver could maneuver around debris. A command wired IED suddenly detonated about 10 feet away from Langford. Langford survived the attack and received a Purple Heart.

f.  The August 26, 2006 Terrorist Attack against Jonathan Langford constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  As a result of the August 26, 2006 Terrorist Attack, Jonathan Langford sustained significant injuries, including a TBI with post concussion syndrome, migraine headaches, and PTSD.

---

[198] *See* Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (U.S. officials found mortar shells following the capture of IRGC-QF leaders in Iraq).

h.  Because of these injuries, Jonathan Langford is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Kristina Maria Langford, Ian Michael Langford, and C.D. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Jonathan Langford on August 26, 2006.

### 289.    The July 7, 2005 Terrorist Attack – Mosul, Iraq (Q West) Plaintiff: Joshua T. Webley Family

a.  Plaintiff Joshua T. Webley is a citizen of the United States and is domiciled in the State of Ohio.

b.  Plaintiff Kimberly Webley is a citizen of the United States and is domiciled in the state of Ohio. She is the wife of Joshua T. Webley.

c.  Joshua T. Webley was as sergeant in the United States Army. He deployed to Mosul, Iraq. On July 7, 2005, he was traveling from Tal Afar back to his Forward Operating Base (FOB) - Qayyarah Airfield West ("Q-West") in Mosul. Mr. Webley was in the gunner in the lead vehicle of a 20-vehicle convoy. He traveled in an armored MH14 Humvee with three others. Suddenly, a 155 round pressure plate IED detonated on the driver's side of the vehicle. Webley survived the terrorist attack.

d.  The July 7, 2005 Terrorist Attack against Joshua T. Webley constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the July 7, 2005 Terrorist Attack, Joshua T. Webley sustained significant injuries, including a concussion, a left ear drum injury resulting in Tinnitus, abdominal pain, back pain, and Post-Traumatic Stress Disorder.

f.  Because of these injuries, Joshua T. Webley is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Kimberly Webley incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Joshua T. Webley on July 7, 2005.

### 290.  The April 16, 2006 Terrorist Attack - Fallujah, Iraq
#### Plaintiff: Matthew Zeimys

a.  Plaintiff Matthew Zeimys is a citizen of the United States and is domiciled in the State of Illinois.

b.  Matthew Zeimys was a Lance Corporal in the United States Marines Corps. On April 16, 2006, Mr. Zeimys was on a mounted patrol in a four vehicle convoy. Mr. Zeimys was the driver of the third vehicle, an up-armored Humvee. The convoy just completed a raid in a large house south of Fallujah. While on their way back to the camp, a remote detonated IED exploded near Zeimys' vehicle. As a result, shrapnel lodged into the tires and windshield, disabling the vehicle. Mr. Zeimys and four others were then medically evacuated from the scene.

c.  The April 16, 2006 Terrorist Attack against Matthew Zeimys constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the April 16, 2006 Terrorist Attack, Matthew Zeimys sustained significant injuries, including shrapnel wounds in his legs, a grade three concussion, bleeding ears, and PTSD.

e.  Because of these injuries, Matthew Zeimys is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 291.  The June 14, 2009 Terrorist Attack - Kirkuk, Iraq
#### Plaintiff: Anthony T. Hartman Family

a.  Plaintiff Anthony T. Hartman, Individually and as Next Friend of L.H. and C.H., minors, is a citizen of the United States and is domiciled in the State of Texas.

b.  C.H. is a United States citizen domiciled in the State of Texas. He is the minor son of Anthony T. Hartman.

c.  L.H. is a United States citizen domiciled in the State of Texas. She is the minor daughter of Anthony T. Hartman.

d.  Plaintiff Keshia Hartman is a citizen of the United States and is domiciled in the state of Texas. She is the wife of Anthony T. Hartman.

e.  Anthony T. Hartman was a Specialist in the United States Army a part of the 1st Cavalry Division 2nd Brigade Combat Team out of Fort Hood, Texas. He deployed to Kirkuk, Iraq. On June 14, 2009, Mr. Hartman was the driver of an up-armored Husky; the lead vehicle of a six-vehicle convoy. While on a mission from Forward Operating Base Warrior in Kirkuk, he was traveling on Route Gold. A roadside IED suddenly detonated on the right side of the vehicle, heavily damaging it. As a result, the vehicle was disabled but Hartman survived the terrorist attack.

f.  The June 14, 2009 Terrorist Attack against Anthony T. Hartman constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  As a result of the June 14, 2009 Terrorist Attack, Anthony T. Hartman sustained significant injuries, including a TBI, Tinnitus, a back injury, light sensitivity, and PTSD.

h.  h. Because of these injuries, Anthony T. Hartman is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Keshia Hartman, L.H., and C.H. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Anthony T. Hartman on June 14, 2009.

## 292.    The June 16, 2008 Terrorist Attack – Zaidan, Iraq
### Plaintiff: Owen J. Simpson

a.  Plaintiff Owen J. Simpson is a citizen of the United States and is domiciled in the State of Virginia.

b.  Owen Simpson was a 1st Lieutenant in the United States Army Reserves as a 1st Lieutenant; part of the 812th Military Police Company out of Orangeburg, New York. He deployed to Fallujah, Iraq. On June 15, 2008, Mr. Simpson was a passenger in an up-armored Humvee that was equipped with a Rhino safe guarding device. He was in the fourth vehicle of an eight-vehicle convoy. While traveling in Al-Zaidan, the lead vehicle, an Iraqi police vehicle was struck by an IED followed by small arms fire. Thereafter, Simpson exited his vehicle to render medical aid to the injured Iraqi Police Officers and help them safely exit the scene.

c.  The June 16, 2008 Terrorist Attack against Owen J. Simpson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the June 16, 2008 Terrorist Attack, Owen J. Simpson sustained significant injuries, including PTSD and Tinnitus.

e. Because of these injuries, Owen J. Simpson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 293.    The May 4, 2011 Terrorist Attack - Taji, Iraq
### Plaintiff: Luke Henderson Family

a. Plaintiff Luke Henderson is a citizen of the United States and is domiciled in the State of Wisconsin.

b. Plaintiff Michele Henderson is a citizen of the United States and is domiciled in the state of Wisconsin. She is the mother of Luke Henderson.

c. Plaintiff Quincy Clay Henderson is a citizen of the United States and is domiciled in the state of Texas. Quincy Clay Henderson is the sibling of Luke Henderson.

d. Plaintiff Xaviera Henderson is a citizen of the United States and is domiciled in the state of Wisconsin. Xaviera Henderson is the sibling of Luke Henderson.

e. Plaintiff Raphael Henderson is a citizen of the United States and is domiciled in the state of Wisconsin. Raphael Henderson is the sibling of Luke Henderson.

f. Luke Henderson was a Chief Warrant Officer II in the United States Army Mississippi State National Guard a part of the 185th Aviation Regiment, C Company out of Army Aviation Support Facility Jackson, Mississippi. He deployed to Camp Taji, Iraq. On May 4, 2011, Mr. Henderson was at Camp Taji, in the airfield area. The entire camp was attacked by Iranian-made Improvised Rocket-Assisted Munitions (IRAMs) and mortars from three different points of origin. As a result, Mr. Henderson was awarded a Combat Action Badge.

g. The May 4, 2011 Terrorist Attack against Luke Henderson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[199]

---

[199] *World Wide Threat Assessment: Statement before the Comm. on Armed Services Joint Hearing* 112th Cong., 1st Sess. (March 10, 2011) (statement of Lt. Gen. Ronald L. Burgess Jr.,

h.  As a result of the May 4, 2011 Terrorist Attack, Luke Henderson sustained significant injuries, including PTSD.

i.  Because of these injuries, Luke Henderson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Michele Henderson, Quincy Clay Henderson, Xaviera Henderson, and Raphael Henderson incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Luke Henderson on May 4, 2011.

**294.**    **The November 22, 2007 Terrorist Attack - Baghdad, Iraq**
**Plaintiff: Bryan Persinger Family**

a.  Plaintiff Bryan Persinger is a citizen of the United States and is domiciled in the State of Florida.

b.  Plaintiff Sarah Persinger is a citizen of the United States and is domiciled in the state of Florida. She is the wife of Bryan Persinger.

c.  Bryan Persinger was a specialist in the United States Army. He deployed to Baghdad, Iraq. On November 22, 2007, while driving the lead vehicle amongst a forty-vehicle convoy, Persinger ran over an IED on the North Bound Lanes of MSR Tampa (between CP21A and CP22A) that was partially covered in the sand. The IED detonated but Persinger survived the attack. As a result, he received a Combat Action Badge.

d.  The November 22, 2007 Terrorist Attack against Bryan Persinger constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the November 22, 2007 Terrorist Attack, Bryan Persinger sustained significant injuries, including Traumatic Brain Injury.

f.  Because of these injuries, Bryan Persinger is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Sarah Persinger incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Bryan Persinger on November 22,

---

Dir., Defense Intelligence Agency) (concluding that the IRGC continues to provide "money, weapons, safe haven and training to select Iraqi Shia militants and terrorists.").

2007.

### 295.    The April 17, 2006 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Aaron Williams

a.  Plaintiff Aaron Williams is a citizen of the United States and is domiciled in the State of North Carolina.

b.  Aaron Williams was a Lance Corporal in the United States Marines, a part of the 38 3rd Battalion 8th Marine Regiment, Lima, out of Ramadi, Iraq. On April 17, 2006, sometime between 1100-1200 hours, Mr. Williams was traveling in Ramadi outside his post in an up-armored Humvee. At this time, Williams encountered a suspicious vehicle. Suddenly, the VBIED detonated near Williams' Humvee. The ensuing shrapnel penetrated the vehicle. Williams was sitting in the right rear seat of the Humvee on the same side of the explosion and suffered shrapnel wounds accordingly. Several other solders in the Humvee also suffered 2nd and 3rd degree burns. Aaron Williams survived the terrorist attack and was awarded a Purple Heart.

c.  The April 17, 2006 Terrorist Attack against Aaron Williams constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the April 17, 2006 Terrorist Attack, Aaron Williams sustained significant injuries, including a concussion, PTSD, a TBI, Tinnitus, Post-Traumatic Headaches, and Shrapnel Scars.

e.  Because of these injuries, Aaron Williams is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 296.    The September 7, 2007 Terrorist Attack -  Baqubah, Iraq
### Plaintiff: Keith Krudwig Family

a.  Plaintiff Keith Krudwig is a citizen of the United States and is domiciled in the State of Texas.

b.  Plaintiff Nathan Krudwig is a citizen of the United States and is domiciled in the state of Texas. He is the son of Bryan Persinger.

c.  Keith Krudwig was in the United States Army as a Captain; part of the 3rd Brigade Combat Team, 1st Cavalry Division out of Fort Hood, Texas. He deployed to Baqubah, Iraq. On September 7, 2007, Mr. Krudwig was southeast of Baqubah, setting up equipment for a

battalion. An IED was suddenly remote detonated on the opposite side of the wall, knocking him unconscious. He survived the attack.

d.  The September 7, 2007 Terrorist Attack against Keith Krudwig constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the September 7, 2007 Terrorist Attack, Keith Krudwig sustained significant injuries, including a TBI and Tinnitus.

f.  Because of these injuries, Keith Krudwig is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Nathan Krudwig incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Keith Krudwig on September 7, 2007.

### 297.   The February 13, 2007 Terrorist Attack – Iskandariya, Iraq
### Plaintiff: Roderick Pugh

a.  Plaintiff Roderick Pugh is a citizen of the United States and is domiciled in the State of Alabama.

b.  Roderick Pugh was in the United States Army a part of 2-12 CAV Unit with the Bravo Co. He was deployed to FOB Kalsu in Iskandariya, Iraq. One late evening on February 13, 2007, Pugh was traveling on MSR Tampa in a Humvee equipped with a Rhino with sandbags. Pugh was leading a convoy of four when a remote detonated IED exploded and impacted Pugh's vehicle. As a result, he was treated at the closest medical station.

c.  The February 13, 2007 Terrorist Attack against Roderick Pugh constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the February 13, 2007 Terrorist Attack, Roderick Pugh sustained significant injuries, including PTSD, chronic headaches, and a TBI.

e.  Because of these injuries, Roderick Pugh is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 298.    The April 22, 2005 Terrorist Attack - Bayji, Iraq
#### Plaintiff: Donald Scee

a.  Plaintiff Donald Scee is a citizen of the United States and is domiciled in the State of Texas.

b.  Donald Scee was a Staff Sergeant in the United States Army, a part of 95 Division Military Police. On April 22, 2005, around 2200, he was in a up-armoured Humvee operating as a gunner and positioned on top of the vehicle. Suddenly, the convoy was hit with a remote detonated IED outside Bayji. Specifically, the convoy was traveling from Forward Operating Base (FOB) Sumerall escorting an Iraqi battalion to Al Kasik military base. When the IED attack occurred, the convoy was on Vic Grid 38SKF96011819. Scee survived the terrorist attack and received a Combat Action Badge.

c.  The April 22, 2005 Terrorist Attack against Donald Scee constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the April 22, 2005 Terrorist Attack, Donald Scee sustained significant injuries, including Tinnitus, Vertigo, a concussion, a TBI, PTSD, migraines, and a neck injury.

e.  Because of these injuries, Donald Scee is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 299.    The February 15, 2009 Terrorist Attack - Kirkuk, Iraq
#### Plaintiff: Amanda Morris

a.  Plaintiff Amanda Morris is a citizen of the United States and is domiciled in the State of Iowa.

b.  Amanda Morris was in the United States Army as a Specialist, a part of the 382 FA Company out of Fort Hood, Texas. Ms. Morris was deployed to Kirkuk, Iraq. She was the rear passenger in the rear vehicle of a four-vehicle convoy. On February 15, 2009, Morris was on route back to her FOB in Kirkuk when an insurgent hidden on the side of the road fired an RKG-3 (anti-tank grenade) at her vehicle. In turn, the RKG-3 hit the rear passenger door. As a result, Amanda Morris was awarded a Purple Heart and a Combat Action Badge.

c.  The February 15, 2009 Terrorist Attack against Amanda Morris constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the February 15, 2009 Terrorist Attack, Amanda Morris sustained significant injuries, including TBI, PTSD, shrapnel wounds, a hand injury, a back injury, hip injury, migraines, Tinnitus, and hearing loss.

e. Because of these injuries, Amanda Morris is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 300.    The December 30, 2009 Terrorist Attack - FOB Scania, Iraq
### Plaintiff: Favio Melendez

a. Plaintiff Favio Melendez is a citizen of the United States and is domiciled in the State of Texas.

b. Favio Melendez was in the United States Army as a Specialist; part of 52nd Infantry out of Fort Bliss, Texas. He was deployed to Nasiriyah, Iraq. On December 30, 2009, Melendez was leaving Forward Operating Base (FOB) Scania for a nighttime mission. He was the gunner in an up-armoured Humvee, the lead vehicle of a 30-vehicle convoy. While traveling, a remote detonated IED exploded on the right side of the vehicle. As a result, the vehicle was lifted in the air, the right tires were blown, and all the lights were blown out. Melendez ultimately survived the Terrorist Attack and received a Combat Action Badge.

c. The December 30, 2009 Terrorist Attack against Favio Melendez constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the December 30, 2009 Terrorist Attack, Favio Melendez sustained significant injuries, including a knee injury, a back injury, a TBI, PTSD, and Tinnitus.

e. Because of these injuries, Favio Melendez is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 301.    The September 25, 2006 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Francis Brennan

a. Plaintiff Francis Brennan is a citizen of the United States and is domiciled in the State of New Jersey.

b. Mr. Francis Brennan was in the United States Marine Corps Reserves as a Sergeant, part of the Fourth Civil Affairs Group out of Washington, D.C. He was deployed to Iraq. On September

25, 2006, Brennan left a government building and was headed back to Camp Ramadi after performing a movement to contact mission on Route Michigan. He was the driver of an up-armored Humvee with four other soldiers. An IED suddenly hit the Humvee on the front drivers' side, destroying the entire engine and disabling the vehicle. He was taken to a small outpost near Camp Ramadi for treatment. After being assessed at the aid station, he was sent back to Camp Ramadi. However, on the way back to Camp Ramadi, a second IED hit Brennan's vehicle. Brennan ultimately survived both attacks.

c. The September 25, 2006 Terrorist Attack against Francis Brennan constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the September 25, 2006 Terrorist Attack, Francis Brennan sustained significant injuries, including a concussion, a TBI, PTSD, and bilateral Tinnitus.

e. Because of these injuries, Francis Brennan is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 302.  The February 28, 2008 Terrorist Attack - Mosul, Iraq
### Plaintiff: Nicholas D Bullard

a. Plaintiff Nicholas D Bullard is a citizen of the United States and is domiciled in the State of Texas.

b. Nicholas Bullard was in the United States Army as a Specialist part of the 3/3 Armored Calvary Regiment. On an early morning on February 28, 2008; in Mosul, Iraq, Mr. Bullard was coming from the Badush Prison on the Northwest side when an IED detonated. Bullard was the lead vehicle in a two tank convoy. The IED detonated underneath the left side of Bullard's tank. As a result, Bullard received a Combat Action Badge.

c. The February 28, 2008Terrorist Attack against Nicholas D Bullard constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the February 28, 2008Terrorist Attack, Nicholas D Bullard sustained significant injuries, including PTSD, and Tinnitus.

e.  Because of these injuries, Nicholas D Bullard is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 303.    The April 8, 2003 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Patrick Llamas

a.  Plaintiff Patrick Llamas is a citizen of the United States and is domiciled in the State of California.

b.  Patrick Llamas was in the United States Marine Corps as a Sergeant, part of the 2nd Battalion 23rd Marines Company out of Pasadena, California. He was deployed to Baghdad, Iraq. On April 8, 2003, after performing a route clearance operation, Llamas was travelling towards the UN compound in Baghdad. Prior to arriving, Llamas and his unit encountered small arms and RPG fire from enemy insurgents. As a result, Llamas was hit in the leg by small arms fire. Patrick Lamas survived the attack and received a Purple Heart.

c.  The April 8, 2003 Terrorist Attack against Patrick Llamas constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[200]

d.  As a result of the April 8, 2003 Terrorist Attack, Patrick Llamas sustained significant injuries, including shrapnel to left leg and left ear, along with nerve damage of left thigh and left hip.

e.  Because of these injuries, Patrick Llamas is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 304.    The January 15, 2005 Terrorist Attack - Mosul, Iraq
### Plaintiff: Daniel Gonzalez

a.  Plaintiff Daniel Gonzalez is a citizen of the United States and is domiciled in the State of California.

b.  Daniel Gonzalez was in the United States Army as a Specialist, part of the 579th Engineer Battalion out of Fort Lewis, Washington. He deployed to Mosul, Iraq. On January 15, 2005, Mr. Gonzalez was the gunner of the lead vehicle in a 20-vehicle convoy traveling in Mosul.

---

[200] See Pound and Jack, *Special Report: The Iran Connection*, U.S. NEWS & WORLD REPORT (2003 U.S. and Israeli intelligence reports concluded that Hezbollah was training the Mahdi Army, an Iraqi militant group, at Iran's request and providing them weapons like RPGs).

They were in route back to Forward Operating Base (FOB) Marez when Mr. Gonzalez noticed an explosive like device in the middle of the road. His warning to the driver was too late, and the driver drove over the IED, causing it to detonate. Mr. Gonzalez hit his head on his weapon, knocking him unconscious. The explosion blew the back of the vehicle off, causing them to crash into a ditch, and completely disabling the vehicle. As a result, Mr. Gonzalez was awarded a Purple Heart.

c.  The January 15, 2005 Terrorist Attack against Daniel Gonzalez constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the January 15, 2005 Terrorist Attack, Daniel Gonzalez sustained significant injuries, including loss of consciousness, a concussion, a neck injury, a back injury, Tinnitus, and PTSD.

e.  Because of these injuries, Daniel Gonzalez is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 305. The March 31, 2005 Terrorist Attack – Bayji, Iraq
### Plaintiff: David C. Hernandez

a.  Plaintiff David C. Hernandez is a citizen of the United States and is domiciled in the State of Utah.

b.  David C. Hernandez was a Combat Gunner Signal specialist in the Army, part of 578th Signal. On March 31, 2005, Hernandez was conducting security in a four-vehicle convoy around 1620 hours. He was in the rear truck and positioned as the gunner on top of a 99-8 Humvee that was unarmored and equipped with Rhino. Hernandez was returning from Camp Speicher in Tikrit headed to Forward Operating Base Summerall in Bayji. Suddenly, an IED was remote detonated on ASR Hershey near Bayji. The ensuing blast penetrated and dismantled Hernandez's vehicle. Because of this attack, Hernandez received a Purple Heart.

c.  The March 31, 2005 Terrorist Attack against David C. Hernandez constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the March 31, 2005 Terrorist Attack, David C. Hernandez sustained significant injuries, including PTSD, a right shoulder injury, shrapnel burns, and a TBI.

e.  Because of these injuries, David C. Hernandez is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

## 306.  The September 27, 2005 Terrorist Attack – Nasser Wa Salaam, Iraq (Camp India) Plaintiff: Timothy Reeves Family

a.  Plaintiff Timothy Reeves is a citizen of the United States and is domiciled in the State of Pennsylvania.

b.  Plaintiff Kimberly Alosi is a citizen of the United States and is domiciled in the state of Pennsylvania. She is the wife of Timothy Reeves.

c.  Timothy Reeves was in the United States Army Reserves as a Sergeant, part of the 1st and 2nd Marine Division out of Camp Atterbury, Indiana. He was deployed to Iraq. On September 27, 2005, Reeves was at Camp India in Nassser Wa Salaam. At approximately 1350 hours, four incoming mortar rounds were fired at Camp India in tandem. They landed and exploded within 75 yards of Reeves. Five (5) civilian contractors were wounded during the attack and one died. However, Reeves survived the attack and received a Combat Medical Badge.

d.  The September 27, 2005 Terrorist Attack against Timothy Reeves constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[201]

e.  As a result of the September 27, 2005 Terrorist Attack, Timothy Reeves sustained significant injuries, including a TBI, chronic headaches, Tinnitus, and PTSD.

f.  Because of these injuries, Timothy Reeves is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Kimberly Alosi incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Timothy Reeves on September 27, 2005.

---

[201] *See The Situation in Iraq and Progress by the Government of Iraq in Meeting Benchmarks and Achieving Reconciliation: Hearing before the Comm. on Armed Services*, 110th Cong., 2d sess., (April 8-10, 2008) (General Petraeus concluding that it is certainly fair to conclude that Iranian-backed Special Groups in Iraq were responsible for killing hundreds of American soldiers).

**307.    The May 21, 2007 Terrorist Attack - Baghdad, Iraq**
**Plaintiff: John J Brown Jr.**

a.  Plaintiff John J Brown Jr. is a citizen of the United States and is domiciled in the State of Virginia.

b.  John J. Brown Jr. was in the United States Coast Guard as a Chief Warrant Officer 4, part of the US Coast Guard International Affairs out of Washington, DC. He was deployed to Baghdad, Iraq. On May 21, 2007, while at the Baghdad Embassy, rockets and mortars were suddenly fired from outside the Green Zone. Brown was standing near glass windows and yelled to a person on a balcony to seek shelter inside. Thereafter, a rocket landed approximately 35 yards from Brown and exploded. The force of the blast shattered the nearby window and knocked Brown to the ground. Brown survived the terrorist attack.

c.  The May 21, 2007 Terrorist Attack against John J Brown Jr. constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[202]

d.  As a result of the May 21, 2007 Terrorist Attack, John J Brown Jr. sustained significant injuries, including Tinnitus, partial hearing loss, a Traumatic Brain Injury, and PTSD.

e.  Because of these injuries, John J Brown Jr. is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

**308.    The December 30, 2005 Terrorist Attack – Baghdad, Iraq**
**Plaintiff: Marcel Dentremont Family**

a.  Plaintiff Marcel Dentremont is a citizen of the United States and is domiciled in the State of California.

b.  Plaintiff Sharelle Dentremont is a citizen of the United States and is domiciled in the state of California. She is the wife of Marcel Dentremont.

c.  Marcel Dentremont was in the United States National Guard as a Specialist, part of the 1-184th Infantry Division out of California. He was deployed to Baghdad, Iraq. On December 30, 2005, Mr. Dentremont was the gunner in an up-armored Humvee, the second vehicle of a five-vehicle convoy. While en route to recover a vehicle outside Baghdad, a buried IED detonated.

---

[202] *See* Ware, *Inside Iran's Secret War for Iraq*, TIME, Aug. 15, 2005 (reporting that Iran shipped weapons like 107mm and 122mm rockets across the border to Iraq).

Dentremont's vehicle sustained damage and was disabled. As a result, Dentremont received medical treatment at Forward Operating Base (FOB) Falcon.

d.  The December 30, 2005 Terrorist Attack against Marcel Dentremont constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the December 30, 2005 Terrorist Attack, Marcel Dentremont sustained significant injuries, including neck burns due to shrapnel, a back injury, a neck injury, a shoulder injury, a TBI causing facial nerve damage, right ear hearing loss, and migraines.

f.  Because of these injuries, Marcel Dentremont is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Sharelle Dentremont incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Marcel Dentremont on December 30, 2005.

### 309.  The August 30, 2007 Terrorist Attack – MSR Tampa, Iraq
### Plaintiff: Rodney Bennett

a.  Plaintiff Rodney Bennett is a citizen of the United States and is domiciled in the State of Texas.

b.  Rodney Bennett was in the United States Army National Guard, part of the 3/144 Infantry Unit. On August, 30, 2007, around 2045 hours, Bennett was in a combat logistical patrol while travelling in the south-bound lane on MSR Tampa, in the vicinity of Check Point 59A. During this mission, Bennett's convoy suddenly received small arms fire, muzzle flashes and tracers from enemy insurgents. Bennett's convoy was also attacked by RPGs. Bennett survived the terrorist attack and received a Combat Action Badge.

c.  The August 30, 2007 Terrorist Attack against Rodney Bennett constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[203]

---

[203] *See* Latif and Sands, *Mehdi Fighters Trained by Hizbollah in Lebannon*, INDEPENDENT, Aug. 20, 2007 (London Newspaper) (a Iraqi Shia militant stating that Hezbollah "showed us real tactics and taught our snipers.").

d.  As a result of the August 30, 2007 Terrorist Attack, Rodney Bennett sustained significant injuries, including a TBI with post- concussion syndrome, a low back injury resulting in chronic pain, and PTSD.

e.  Because of these injuries, Rodney Bennett is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 310.    The March 13, 2005 Terrorist Attack - Kirkuk, Iraq
### Plaintiff: Matthew Salisbury Family

a.  Plaintiff Matthew Salisbury, Individually and as Next Friend of M.S., a minor, is a citizen of the United States and is domiciled in the State of Idaho.

b.  M.S. is a United States citizen domiciled in the State of Idaho. She is the minor daughter of Matthew Salisbury.

c.  Plaintiff Christian Salisbury is a United States citizen domiciled in the State of Idaho. He is the son of Matthew Salisbury.

d.  Plaintiff Chandra Salisbury is a citizen of the United States and is domiciled in the state of Idaho. She is the wife of Matthew Salisbury.

e.  Plaintiff Claire Salisbury is a citizen of the United States and is domiciled in the state of Idaho. She is the daughter of Matthew Salisbury.

f.  Plaintiff Nancy Salisbury is a citizen of the United States and is domiciled in the state of Idaho. She is the mother of Matthew Salisbury.

g.  Matthew Salisbury was in the United States Army, part of the 216th MI Company. He was deployed to Kirkuk, Iraq. On March 13, 2005, Salisbury was the gunner of the middle vehicle in a three-vehicle convoy. They were conducting raids southwest of Kirkuk in order to disrupt and eliminate insurgent operations. Along the route, an EFP hit the right side of his vehicle and exploded. The EFP blast took out the headlight of Salisbury's vehicle and caused it to swerve to the right side of the road. Salisbury survived the terrorist attack and received a Combat Action Badge.

h.  The March 13, 2005 Terrorist Attack against Matthew Salisbury constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[204]

i.  As a result of the March 13, 2005 Terrorist Attack, Matthew Salisbury sustained significant injuries, including PTSD, a back injury, and a knee injury.

j.  Because of these injuries, Matthew Salisbury is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Chandra Salisbury, Claire Salisbury, Nancy Salisbury, M.S., and Christian Salisbury incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Matthew Salisbury on March 13, 2005.

### 311.    The January 16, 2004 Terrorist Attack – MSR Tampa, Iraq
### Plaintiff: Efrain Morales Jr. Family

a.  Plaintiff Efrain Morales Jr. is a citizen of the United States and is domiciled in the State of California.

b.  Plaintiff Delia Morales is a citizen of the United States and is domiciled in the state of California. She is the wife of Efrain Morales Jr.

c.  Efrain Morales Jr. was in the Army National Guard as a Sergeant, part of the 670th Military Police Company out of California. He was deployed to Abu Ghraib, Iraq. On January 16, 2004, Mr. Morales was the gunner of an up-armored Humvee, the lead vehicle of a three-vehicle convoy. While doing a security patrol between MSR Tampa and MSR Sword, a roadside IED was detonated on the passenger side of the vehicle. The vehicle sustained damage and needed immediate repairs. Morales survived the attack.

d.  The January 16, 2004 Terrorist Attack against Efrain Morales Jr. constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the January 16, 2004 Terrorist Attack, Efrain Morales Jr. sustained significant injuries, including migraines, Tinnitus, and PTSD.

f.  Because of these injuries, Efrain Morales Jr. is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Delia Morales

---

[204]*See, e.g., Karcher,* 396 F. Supp. 3d at 15-25, 33

incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Efrain Morales Jr. on January 16, 2004.

### 312.    The December 30, 2003 Terrorist Attack - Fallujah, Iraq
### Plaintiff: Rory O'Brien Family

a.  Plaintiff Rory O'Brien is a citizen of the United States and is domiciled in the State of Georgia.

b.  Plaintiff Danielle O'Brien is a citizen of the United States and is domiciled in the state of Georgia. She is the wife of Rory O'Brien.

c.  Plaintiff Linda O'Brien is a citizen of the United States and is domiciled in the state of Missouri. She is the mother of Rory O'Brien.

d.  Plaintiff Hugh O'Brien is a citizen of the United States and is domiciled in the state of Missouri. He is the father of Rory O'Brien.

e.  Plaintiff Shannon O'Brien is a citizen of the United States and is domiciled in the state of Missouri. Shannon O'Brien is the sibling of Rory O'Brien.

f.  Rory O'Brien was in the United States Army as a 2nd Lieutenant, part of the 1/505th Infantry Regiment, 82nd Airborne Division out of Fort Bragg, North Carolina. He was deployed to Fallujah, Iraq. On December 30, 2003, Mr. O'Brien was on a security patrol in Al Fallujah. He was the driver of an unarmored Humvee, the lead vehicle of a five-vehicle convoy. Mr. O'Brien dismounted the vehicle in search of IEDs As he approached the middle of the road, a roadside IED was remote detonated from the left side. The vehicle received fragments in the engine area. O'Brien survived the terrorist attack.

g.  The December 30, 2003 Terrorist Attack against Rory O'Brien constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

h.  As a result of the December 30, 2003 Terrorist Attack, Rory O'Brien sustained significant injuries, including a TBI, PTSD, traumatic headaches, and Tinnitus.

i.  Because of these injuries, Rory O'Brien is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Danielle O'Brien, Linda O'Brien, Hugh O'Brien, and Shannon O'Brien incurred solatium damages as

a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Rory O'Brien on December 30, 2003.

### 313. The October 8, 2004 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Devin Gates

a. Plaintiff Devin Gates is a citizen of the United States and is domiciled in the State of Missouri.

b. Mr. Gates was in the United States Army as a Sergeant, part of the 91st Engineers, 1st Cavalry Division out of Fort Hood, Texas. He was deployed to Baghdad, Iraq. On October 8, 2004, Gates was conducting stationary mounted operations at 2124 hours in Baghdad (Grid Coordinates MB 32928778). Suddenly, enemy insurgents fired an RPG at Gates' vehicle. The ensuing blast caused Gates to fall to the ground, have a stinging sensation to his face, and sustain a concussion. Gates survived the terrorist attack and received a Purple Heart.

c. The October 8, 2004 Terrorist Attack against Devin Gates constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[205]

d. As a result of the October 8, 2004 Terrorist Attack, Devin Gates sustained significant injuries, including a concussion, shrapnel wounds, PTSD, a TBI, Tinnitus, and headaches.

e. Because of these injuries, Devin Gates is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 314. The August 3, 2010 Terrorist Attack - Baghdad, Iraq (Camp Striker)
### Plaintiff: Justin Bardwell

a. Plaintiff Justin Bardwell is a citizen of the United States and is domiciled in the State of Connecticut.

b. Justin Bardwell was a specialist in the United States Army as part of the 250th Engineer Company out of Fort McCoy, Wisconsin. He was deployed to Camp Striker in Baghdad, Iraq. On August 3, 2010, Justin Bardwell was at Camp Striker when the base suddenly experienced a mortar attack fired from enemy insurgents. Mortar shells exploded near Bardwell, causing him to hit his head against a wall with significant force. Bardwell survived the Terrorist Attack.

---

[205] *See* Pound and Jack, *Special Report: The Iran Connection*, U.S. NEWS & WORLD REPORT (2003 U.S. and Israeli intelligence reports concluded that Hezbollah was training the Mahdi Army, an Iraqi militant group, at Iran's request and providing them weapons like RPGs).

c.  The August 3, 2010 Terrorist Attack against Justin Bardwell constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[206]

d.  As a result of the August 3, 2010 Terrorist Attack, Justin Bardwell sustained significant injuries, including loss of consciousness, a TBI, a concussion, a back injury, bilateral hearing loss, bilateral Tinnitus, and PTSD causing drug and alcohol abuse.

e.  Because of these injuries, Justin Bardwell is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 315.    The October 6, 2004 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Andrew Davis Family

a.  Plaintiff Andrew Davis, Individually and as Next Friend of J.D., a minor, is a citizen of the United States and is domiciled in the State of Tennessee.

b.  J.D. is a United States citizen domiciled in the State of Tennessee. She is the minor daughter of Andrew Davis.

c.  Plaintiff Jill Russell is a citizen of the United States and is domiciled in the state of Tennessee. She is the mother of Andrew Davis.

d.  Andrew Davis was in the United States Army as a Specialist, part of the 2nd Infantry Division 2nd Brigade Combat Team out of South Korea. He was deployed to Ramadi, Iraq. On October 6, 2004, Mr. Davis, the driver of an up-armored Humvee, was in the rear vehicle of a two-vehicle convoy. The convoy was traveling west on MSJ Michigan in Al Ramadi, Iraq. While doing security patrol, his vehicle was struck on the passenger side by an IED. The front right corner of the vehicle was damaged as a result. Davis survived the attack.

e.  The October 6, 2004 Terrorist Attack against Andrew Davis constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

---

[206] *See* Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (U.S. officials found mortar shells following the capture of IRGC-QF leaders in Iraq).

f.  As a result of the October 6, 2004 Terrorist Attack, Andrew Davis sustained significant injuries, including a TBI, tension headaches, and PTSD.

g.  Because of these injuries, Andrew Davis is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Jill Russell and J.D. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Andrew Davis on October 6, 2004.

### 316.   The July 5, 2007 Terrorist Attack - Baghdad, Iraq
### Plaintiff: James Cano

a.  Plaintiff James Cano is a citizen of the United States and is domiciled in the State of Washington.

b.  James Cano was in the United States Army as a Sergeant, part of the Alpha Company 138, 42nd Infantry Division out of Fort Lewis, Washington. He was deployed to Baghdad, Iraq. On July 5, 2007, while walking in Baghdad, Mr. Cano encountered an area that contained buried IEDs. Accordingly, Mr. Cano stepped on an IED, which exploded. He was thrown to the ground and knocked unconscious. Cano survived the attack and received a Purple Heart.

c.  The July 5, 2007 Terrorist Attack against James Cano constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the July 5, 2007 Terrorist Attack, James Cano sustained significant injuries, including a concussion, a TBI, Tinnitus, and PTSD.

e.  Because of these injuries, James Cano is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 317.   The April 10, 2009 Terrorist Attack - Mosul, Iraq
### Plaintiff: Noe Abad Family

a.  Plaintiff Noe Abad, Individually and as Next Friend of R.A., a minor, is a citizen of the United States and is domiciled in the State of Florida.

b.  R.A. is a United States citizen domiciled in the State of Florida. He is the minor son of Noe Abad.

**330**

c.  Plaintiff Janina G Abad is a citizen of the United States and is domiciled in the state of . She is the wife of Noe Abad.

d.  Noe Abad is a staff sergeant that is currently serving in the United States Air Force. He deployed to Mosul, Iraq, at Forward Operating Base Camp Diamondback. On April 10, 2009, Abad was involved in a VBIED in Mosul. Specifically, a VBIED exploded at the serpentine section of Abad's main gate. As a result, five (5) Army soldiers were tragically killed – Army Sgt. Edward W. Forrest, Staff Sgt. Gary L. Woods, Jr., Sgt. 1st Class Bryan E. Hall, Cpl. Jason G. Pautsch, and PFC Bryce Gautier. Abad received medical treatment at FOB Marez after this attack and survived.

e.  The April 10, 2009 Terrorist Attack against Noe Abad constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

f.  As a result of the April 10, 2009 Terrorist Attack, Noe Abad sustained significant injuries, including intracranial hemorrhaging, a TBI and PTSD.

g.  Because of these injuries, Noe Abad is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Janina G Abad and R.A. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Noe Abad on April 10, 2009.

### 318.  The November 21, 2006 Terrorist Attack - Balad, Iraq
### Plaintiff: Lucius Sykes Family

a.  Plaintiff Lucius Sykes is a citizen of the United States and is domiciled in the State of Arkansas.

b.  Plaintiff Tonesha Sykes is a citizen of the United States and is domiciled in the state of Arkansas. She is the wife of Lucius Sykes.

c.  Lucius Sykes was in the United States Army as a 1st Lieutenant, part of the 1-5 Field Artillery, 1st Brigade Combat team out of Fort Riley, Kansas. He was deployed to Balad, Iraq. On November 21, 2006, Mr. Sykes was the truck commander in an up-armored Humvee, the eighth vehicle of a 28-vehicle convoy. While traveling on Highway 1 in Balad, the convoy encountered a staged burning vehicle, which forced them to suddenly switch lanes. Sykes' vehicle then hit a remote detonated IED that was located in the middle of the road. The IED

blew out the engine, driver's tires, and disabled the vehicle. Sykes survived the Terrorist Attack.

d.  The November 21, 2006 Terrorist Attack against Lucius Sykes constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the November 21, 2006 Terrorist Attack, Lucius Sykes sustained significant injuries, including whiplash, a wounded lip, and PTSD.

f.  Because of these injuries, Lucius Sykes is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Tonesha Sykes incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Lucius Sykes on November 21, 2006.

### 319.  The April 27, 2007 Terrorist Attack - Mosul, Iraq
### Plaintiff: Edmund Lucas

a.  Plaintiff Edmund Lucas is a citizen of the United States and is domiciled in the State of Virginia.

b.  Mr. Edmund Lucas was a specialist in the United States Army as part of 4th Brigade, 1st Cavalry Division; 2-7 Cavalry Battalion, B Company out of Fort Bliss, Texas. He was deployed to Mosul, Iraq. On April 27, 2007, Mr. Lucas was on his way back from providing security for a large mission in Mosul. He was in the gunner's turret in an up-armored Humvee in a convoy of around twenty vehicles. An IED suddenly struck the rear left side of the vehicle exploding on contact. As a result, Mr. Lucas was medevacked to Ballad and awarded a Purple Heart.

c.  The April 27, 2007 Terrorist Attack against Edmund Lucas constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the April 27, 2007 Terrorist Attack, Edmund Lucas sustained significant injuries, including a concussion, loss of consciousness, and a Traumatic Brain Injury.

e.  Because of these injuries, Edmund Lucas is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 320.  The April 10, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Raymond Dorminey Family

a.  Plaintiff Raymond Dorminey is a citizen of the United States and is domiciled in the State of Georgia.

b.  Plaintiff Carrie Dorminey is a citizen of the United States and is domiciled in the state of Georgia. She is the wife of Raymond Dorminey.

c.  Raymond Dorminey was in the United States Army as a Specialist, part of the 411th Military Police Company out of Fort Hood, Texas. He was deployed to Baghdad, Iraq. On April 10, 2005, at 1657 hours, Dorminey was the driver of an up-armored Humvee, the third vehicle of a four-vehicle convoy. While conducting an in transit security mission to Baghdad International Airport, the convoy hit an IED at the base of the on-ramp entering Route Brewers (MB46908747). Dorminey survived the attack.

d.  The April 10, 2005 Terrorist Attack against Raymond Dorminey constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the April 10, 2005 Terrorist Attack, Raymond Dorminey sustained significant injuries, including left leg second degree burns, and PTSD.

f.  Because of these injuries, Raymond Dorminey is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Carrie Dorminey incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Raymond Dorminey on April 10, 2005.

### 321.  The March 28, 2004 Terrorist Attack - Al Asad, Iraq
### Plaintiff: Donald Farris Family

a.  Plaintiff Donald Farris is a citizen of the United States and is domiciled in the State of Alabama.

b.  Plaintiff Paula Farris is a citizen of the United States and is domiciled in the state of Alabama. She is the wife of Donald Farris.

**333**

c.  Plaintiff Jodi Farris is a citizen of the United States and is domiciled in the state of Alabama. She is the daughter of Donald Farris.

d.  Plaintiff Phillip Farris is a citizen of the United States and is domiciled in the state of Alabama. He is the father of Donald Farris.

e.  Donald Farris was a sergeant in the United Stated Army. On the evening of March 28, 2004, while inside of Al Asad Airbase, eight 122mm rockets were fired into the base. Mr. Farris attempted to grab his protective gear during the chaos, but he tripped and hit his elbow on a metal socket. The injury he sustained required surgery.

f.  The March 28, 2004 Terrorist Attack against Donald Farris constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  As a proximate result of the March 28, 2004 Terrorist Attack, Donald Farris sustained significant injuries, including a right elbow injury requiring surgery, Tinnitus, and PTSD.[207] More specifically, these injuries are reasonably connected to the March 28, 2004 hostile attack by enemy forces who were trained and/or supplied with weapons by Iran.[208]

h.  Because of these injuries, Donald Farris is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Paula Farris, Jodi Farris, and Phillip Farris incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Donald Farris on March 28, 2004.

### 322.  The January 4, 2011 Terrorist Attack - Balad, Iraq
### Plaintiff: Maximillian Miller Family

a.  Plaintiff Maximillian Miller, Individually and as Next Friend of K.M., a minor, is a citizen of the United States and is domiciled in the State of Oregon.

---

[207] *See Karcher*, 396 F. Supp. 3d at 32 (under the FSIA, "Plaintiffs' must establish that Iran's material support or resources were the 'proximate cause' of Plaintiffs' personal injuries…."); *See* Ware, *Inside Iran's Secret War for Iraq*, TIME, Aug. 15, 2005 (reporting that Iran shipped weapons like 107mm and 122mm rockets across the border to Iraq).

[208] *See id.* (quoting *Prosser & Keeton on the Law of Torts*, 263 (5th ed. 1984) ("Proximate cause requires 'some reasonable connection between the act omission of the defendant and the damage which the plaintiff has suffered).

b.  K.M. is a United States citizen domiciled in the State of Oregon. He is the minor son of Maximillian Miller.

c.  Plaintiff Caitlin Miller is a citizen of the United States and is domiciled in the state of Oregon. She is the wife of Maximillian Miller.

d.  Maximillian Miller was in the United States Army as a Specialist, part of the 3116 Cavalry, out of Oregon. On January 4, 2011, he was the gunner of an up-armored Mine-Resistant Ambush Protected (MRAP) vehicle, the third vehicle of a six-vehicle convoy. The convoy was on a mission traveling down Route Tampa near Balad. Miller's vehicle was suddenly struck by an EFP on the right side, which penetrated the vehicle, and formed a large hole. The MRAP vehicle then caught on fire and was disabled. Miller survived the terrorist attack and received a Purple Heart.

e.  The January 4, 2011 Terrorist Attack against Maximillian Miller constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[209]

f.  As a result of the January 4, 2011 Terrorist Attack, Maximillian Miller sustained significant injuries, including a left shoulder injury, a lower back injury, a TBI, and PTSD.

g.  Because of these injuries, Maximillian Miller is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Caitlin Miller and K.M. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Maximillian Miller on January 4, 2011.

### 323.    The February 10, 2004 Terrorist Attack – Iskandariya, Iraq
### Plaintiff: Paul Murphy Family

a.  Plaintiff Paul Murphy is a citizen of the United States and is domiciled in the State of Georgia.

b.  Plaintiff Jessica Murphy is a citizen of the United States and is domiciled in the state of Georgia. She is the wife of Paul Murphy.

c.  Paul Murphy was in the United States Army as a Sergeant, part of the Alpha Company 132 out of Fort Drum, NY. He was deployed to Fallujah, Iraq. On February 10, 2004, while on patrol

---

[209] *See, e.g.*, *id.* at 15–25, 33.

in Iskandariya, Iraq, Murphy and his unit came under attack by Anti-Coalition forces at an Iraqi police station. The attack was a combination of a VBIED followed by small-arms fire. The ensuing blast briefly knocked Murphy unconscious. However, he quickly took heroic action and secured the northwest side of the Iskandariya police station. As a result of his heroism, Murphy received a Bronze Star.

d.  The February 10, 2004 Terrorist Attack against Paul Murphy constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the February 10, 2004 Terrorist Attack, Paul Murphy sustained significant injuries, including a left ear drum rupture, Tinnitus, hearing loss, a TBI, and PTSD.

f.  Because of these injuries, Paul Murphy is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Jessica Murphy incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Paul Murphy on February 10, 2004.

### 324.  The December 29, 2004 Terrorist Attack - Tal Afar, Iraq
### Plaintiff: Preston Granillo

a.  Plaintiff Preston Granillo is a citizen of the United States and is domiciled in the State of California.

b.  Preston Granillo was in the United States Army as a Sergeant, part of the 360 Transportation Company out of Colorado. He was deployed to Mosul, Iraq. On December 29, 2004, Mr. Granillo was the truck commander in an up-armored Humvee, the twelfth vehicle of a twenty-vehicle convoy. Granillo was on a mission in Tal Afar providing security to a fuel-transporting unit when a buried IED detonated. The windows in multiple vehicles were shattered, including Granillo's, as a result of the blast. Granillo survived the attack and received a Combat Action Badge.

c.  The December 29, 2004 Terrorist Attack against Preston Granillo constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the December 29, 2004 Terrorist Attack, Preston Granillo sustained significant injuries, including PTSD, back pain, and Tinnitus.

e.  Because of these injuries, Preston Granillo is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 325.  The November 7, 2004 Terrorist Attack - Fallujah, Iraq
### Plaintiff: Justin Bernatz

a.  Plaintiff Justin Bernatz is a citizen of the United States and is domiciled in the State of Minnesota.

b.  Justin Bernatz was a Sergeant in the United States Army. He deployed to Fallujah, Iraq. On November 7, 2004, Bernatz became involved in continuous combat operations against enemy insurgents in Fallujah. For instance, Bernatz's company was tasked with securing the "Palm Grove", the Northeastern Bridge and Southeastern "Blackwater Bridge" in the Jolan District of Al Fallujah, Iraq. This operation, known as the "Battle of Fallujah", lasted until November 17th 2004. During these ten (10) days, Bernatz was engaged in battle with over 5,000 enemy insurgents and faced numerous IED attacks. Bernatz ultimately survived the "Battle of Fallujah" and received a Combat Action Ribbon.

c.  The November 7, 2004 Terrorist Attack against Justin Bernatz constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the November 7, 2004 Terrorist Attack, Justin Bernatz sustained significant injuries, including PTSD, a TBI, and Tinnitus.

e.  Because of these injuries, Justin Bernatz is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 326.  The June 12, 2006 Terrorist Attack - Habdaniyah, Iraq
### Plaintiff: Erwin Cano Family

a.  Plaintiff Erwin Cano is a citizen of the United States and is domiciled in the State of California.

b.  Plaintiff Aide Cano is a citizen of the United States and is domiciled in the state of California. She is the wife of Erwin Cano.

c.  Mr. Erwin Cano was an E3 in the United States Marines deployed to Habdaniyah, Iraq with the 3/5 3rd Battalion, 5th Marines. On June 12, 2006, a suicide bomber drove a VBIED, a large truck, into Mr. Cano's housing and detonated the explosives. The resulting explosion sent Cano flying in the air, causing him to lose his Kevlar and slam onto the floor. He survived the attack and received a Purple Heart.

d.  The June 12, 2006 Terrorist Attack against Erwin Cano constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the June 12, 2006 Terrorist Attack, Erwin Cano sustained significant injuries, including a grade three concussion, a brain hemorrhage, and shrapnel to his right leg.

f.  Because of these injuries, Erwin Cano is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Aide Cano incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Erwin Cano on June 12, 2006.

### 327.    The April 17, 2004 Terrorist Attack – Baghdad, Iraq
### Plaintiff: George Morelli Family

a.  Plaintiff George Morelli is a citizen of the United States and is domiciled in the State of Florida.

b.  Plaintiff Stefanie Morelli is a citizen of the United States and is domiciled in the state of Florida. She is the wife of George Morelli.

c.  George Morelli was in the United States Army as a Sergeant, part of the 1st Infantry 6th Division out of Germany. He was deployed to Baquba, Iraq. On April 17, 2004, Mr. Morelli was on a mission to recover soldiers along with vehicles that had been hit with IEDs. At that time, another IED blew up, throwing Mr. Morelli 15 feet. The attack occurred outside Baghdad and Morelli received a Combat Action Badge.

d.  The April 17, 2004 Terrorist Attack against George Morelli constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the April 17, 2004 Terrorist Attack, George Morelli sustained significant injuries, including a right hip injury, a lower back injury, right knee damage, and a TBI.

f.  Because of these injuries, George Morelli is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Stefanie Morelli incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by George Morelli on April 17, 2004.

### 328.  The May 24, 2011 Terrorist Attack - Basra, Iraq
### Plaintiff: Frank Sullivan

a.  Plaintiff Frank Sullivan is a citizen of the United States and is domiciled in the State of Tennessee.

b.  Frank Sullivan was a specialist in the United States Army, as part of the A Company, 112 Cavalry Regiment, 3rd Brigade, 1st Cavalry Division out of Fort Hood, Texas. Sullivan was deployed to Iraq. On May 24, 2011, in the morning, Sullivan was in a convoy of about five vehicles traveling in Basara. He was in the back passenger's side of a Mine-Resistant Ambush Protected (MRAP) vehicle. The MRAP was equipped with a Rhino-safeguarding device. His convoy had departed Forward Operating Base (FOB) Basra to conduct a mission when they were attacked by an IED. The IED exploded on contact with the mid-passenger's side of the MRAP. As a result, Sullivan was provided medical attention at the FOB Basra Aid Station. Frank Sullivan survived the Terrorist Attack and was awarded a Combat Infantryman Badge.

c.  The May 24, 2011 Terrorist Attack against Frank Sullivan constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the May 24, 2011 Terrorist Attack, Frank Sullivan sustained significant injuries, including a TBI, Tinnitus, and migraines.

e.  Because of these injuries, Frank Sullivan is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 329.  The July 2, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Dale Scott Family

a.  Plaintiff Dale Scott, Individually and as Next Friend of A.S., a minor, is a citizen of the United States and is domiciled in the State of Virginia.

b. A.S. is a United States citizen domiciled in the State of Virginia. She is the minor daughter of Dale Scott.

c. Plaintiff Tanya James-Scott is a citizen of the United States and is domiciled in the state of Virginia. She is the wife of Dale Scott.

d. Plaintiff Dorothy Scott is a citizen of the United States and is domiciled in the state of Tennessee. She is the mother of Dale Scott.

e. Plaintiff Alexander Scott is a citizen of the United States and is domiciled in the state of Tennessee. He is the father of Dale Scott.

f. Dale Scott was in the United States Army as a specialist, part of the Alpha Company 703 MSB. He deployed to Iraq. On July 2, 2005, Mr. Scott was a passenger in a fuel truck, part of a twelve-vehicle convoy. While returning to FOB Falcon near Baghdad from a mission to deliver fuel and supplies, Mr. Scott's vehicle was struck by an IED. The fuel truck was hit on the right side and Mr. Scott's vehicle sustained burn marks, internal damage and fuel leakage. As a result, the vehicle was ultimately disabled. Scott survived the attack and received a Combat Action Badge.

g. The July 2, 2005 Terrorist Attack against Dale Scott constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

h. As a result of the July 2, 2005 Terrorist Attack, Dale Scott sustained significant injuries, including a concussion, anxiety, right ear Tinnitus, a TBI, migraines, vertigo, Tinnitus, and PTSD.

i. Because of these injuries, Dale Scott is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Tanya James-Scott, Dorothy Scott, Alexander Scott, and A.S. incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Dale Scott on July 2, 2005.

### 330.    The February 23, 2007 Terrorist Attack – Saqlawiyah, Iraq
### Plaintiff: Bobby Kling Family

a. Plaintiff Bobby Kling is a citizen of the United States and is domiciled in the State of Virginia.

b.  Plaintiff Andrea Kling is a citizen of the United States and is domiciled in the state of Virginia. She is the wife of Bobby Kling.

c.  Bobby Kling was a PFC in the United States Marines a part of the 2-7 Fox Company, 29 Palms Infantry Division. He was deployed to Saqlawiyah, Iraq. On February 23, 2007, Kling was the gunner of a M1134 high mobility multi-purpose wheeled vehicle in Saqlawiyah when a remote detonated IED exploded and struck Kling's vehicle. As a result, Mr. Kling lost consciousness but survived the attack.

d.  The February 23, 2007 Terrorist Attack against Bobby Kling constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the February 23, 2007 Terrorist Attack, Bobby Kling sustained significant injuries, including a concussion, shrapnel wounds, a ruptured eardrum, PTSD, a chronic cough, and a TBI.

f.  Because of these injuries, Bobby Kling is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Andrea Kling incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Bobby Kling on February 23, 2007.

### 331.  The January 2, 2005 Terrorist Attack - Tikrit, Iraq
### Plaintiff: Robin Coby-Ranzy Family

a.  Plaintiff Robin Coby-Ranzy is a citizen of the United States and is domiciled in the State of Texas.

b.  Plaintiff Jason Ranzy is a citizen of the United States and is domiciled in the state of Texas. He is the husband of Robin Coby-Ranzy.

c.  Plaintiff Chance Coby is a citizen of the United States and is domiciled in the state of Texas. He is the son of Robin Coby-Ranzy.

d.  Plaintiff Carl Coby is a citizen of the United States and is domiciled in the state of Texas. He is the father of Robin Coby-Ranzy.

e.  Robin Coby-Ranzy was in the United States Army Reserves as a specialist, part of the 298 Transportation Company. She deployed to Iraq. On January 2, 2005, Ms. Coby-Ranzy was the truck commander in an unarmored palletized load system, part of a twenty-vehicle convoy.

While on a mission to Forward Operating Base McKenzie, the driver ran over a pothole which contained an IED. The IED detonated on the driver's side of the vehicle. As a result, the vehicle sustained damage. However, the convoy proceeded.

f. The January 2, 2005 Terrorist Attack against Robin Coby-Ranzy constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g. As a result of the January 2, 2005 Terrorist Attack, Robin Coby-Ranzy sustained significant injuries, including facial cuts, glass in her eyes, ear ringing, bilateral Tinnitus, and PTSD.

h. Because of these injuries, Robin Coby-Ranzy is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Jason Ranzy, Chance Coby, and Carl Coby incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Robin Coby-Ranzy on January 2, 2005.

### 332.   The September 23, 2005 Terrorist Attack – Al Karmah, Iraq
### Plaintiff: Michael Burten Family

a. Plaintiff Michael Burten is a citizen of the United States and is domiciled in the State of New York.

b. Plaintiff Meghan Justice is a citizen of the United States and is domiciled in the state of New York. She is the wife of Michael Burten.

c. Michael Burten was in the United States Marine Corps as a lance corporal, part of the 2nd Battalion, 2nd Marines out of Camp Lejeune, North Carolina. He deployed to Iraq. On September 23, 2005, Mr. Burten was the driver of an unarmored Humvee; the lead of a four-vehicle convoy. They were traveling in Al Karmah when the convoy encountered a brand new Jeep Grand Cherokee. Unbeknownst to Burten, the Jeep was a VBIED. Burten approached the VBIED which suddenly detonated. As a result, Burten's Humvee was destroyed and Burten sustained serious injuries. However, he managed to attend to his fallen soldiers and help medevac others injured soldiers. Because of his heroic actions, Burten received a Marine Corps Achievement Medal and Purple Heart.

d. The September 23, 2005 Terrorist Attack against Michael Burten constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the September 23, 2005 Terrorist Attack, Michael Burten sustained significant injuries, including a concussion, facial lacerations, perforated ear drums, temporary hearing loss, sleep apnea, Tinnitus, and PTSD.

f.  Because of these injuries, Michael Burten is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Meghan Justice incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Michael Burten on September 23, 2005.

### 333.    The September 5, 2005 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Jermaine Norman

a.  Plaintiff Jermaine Norman is a citizen of the United States and is domiciled in the State of Arizona.

b.  Jermaine Norman was a specialist in the United States Army. He deployed to Baghdad, Iraq. On September 5, 2005, Norman was on a mission to check the water and sewage lines in a suburban Baghdad community. He was the gunner of an up-armored Humvee, the second vehicle of five vehicle convoy. While in the turret, Norman was instructed to turn to the three o'clock position when a buried roadside IED detonated. Shrapnel from the IED penetrated the vehicle and hit Norman. As a result, he was treated for his injuries at the nearest Forward Operating Base (FOB) and received a Combat Action Badge.

c.  The September 5, 2005 Terrorist Attack against Jermaine Norman constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the September 5, 2005 Terrorist Attack, Jermaine Norman sustained significant injuries, including shrapnel wounds to both hands, neck, and face, right arm neuropathy and PTSD.

e.  Because of these injuries, Jermaine Norman is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 334.    The August 23, 2004 Terrorist Attack - Balad, Iraq
### Plaintiff: Jennifer Miller

a.  Plaintiff Jennifer Miller is a citizen of the United States and is domiciled in the State of Kansas.

b.  Jennifer Miller (Norland) was in the United States Air Force as a Staff Sergeant, part of the 2632 Medium Gun Truck Detachment. She deployed to Balad, Iraq. On the night of August 23, 2004, Ms. Miller was the gunner in an unarmored gun truck; part of a thirty-vehicle convoy. While on a mission from LSA Anaconda in Balad to Kuwait, a roadside IED detonated on the driver's side of the vehicle, causing some damage to the engine. The explosion occurred at 21:45 at MSR Force (MB33509206). As a result, the vehicle was temporarily disabled. Miller survived the terrorist attack and received a Purple Heart.

c.  The August 23, 2004 Terrorist Attack against Jennifer Miller constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the August 23, 2004 Terrorist Attack, Jennifer Miller sustained significant injuries, including shrapnel in her neck.

e.  Because of these injuries, Jennifer Miller is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 335.    The January 30, 2006 Terrorist Attack - Mosul, Iraq
### Plaintiff: Simon Strating Family

a.  Plaintiff Simon Strating is a citizen of the United States and is domiciled in the State of Hawaii.

b.  Plaintiff Eve Strating is a citizen of the United States and is domiciled in the state of Hawaii. She is the wife of Simon Strating.

c.  Simon Strating was in the United States Army as a first lieutenant, part of the 101st Airborne out of Fort Campbell, Kentucky. He deployed to Mosul, Iraq. On January 30, 2006, Mr. Strating was the passenger of an up-armored Humvee, the rear vehicle of a three-vehicle convoy. While on a mission in Mosul to provide preventive medicine to an MITT team, Strating's vehicle ran over a buried IED, which detonated. Strating survived the terrorist attack.

d.  The January 30, 2006 Terrorist Attack against Simon Strating constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the January 30, 2006 Terrorist Attack, Simon Strating sustained significant injuries, including left leg sciatica, a damaged tailbone, hemorrhoids, memory loss, a TBI, and PTSD.

f.  Because of these injuries, Simon Strating is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Eve Strating incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Simon Strating on January 30, 2006.

### 336.    The July 24, 2006 Terrorist Attack - Tikrit, Iraq
### Plaintiff: Laveto Davidson

a.  Plaintiff Laveto Davidson is a citizen of the United States and is domiciled in the State of Georgia.

b.  Laveto Davidson was in the United States Army as a staff sergeant, part of the 1-5 Infantry. He deployed to Tikrit, Iraq. On July 24, 2006, Davidson was the truck commander in an up-armored Bradley, along with the driver. They were at a checkpoint at OP Crater on Route Browers when the vehicle was struck on the right side by an improvised rocket launcher. Thereafter, Davidson accelerated forward and hit his head violently, resulting in teeth damage and head lacerations. Following the initial blast, Davidson's unit was attacked by small arms fire from enemy personnel. Davidson exited the vehicle, engaged the enemy, and disabled multiple enemy trucks. As a result of his heroic acts, Davidson was awarded a Bronze Star.

c.  The July 24, 2006 Terrorist Attack against Laveto Davidson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[210]

d.  As a result of the July 24, 2006 Terrorist Attack, Laveto Davidson sustained significant injuries, including a cracked front right tooth, a head laceration, and PTSD.

---

[210] *See* Pound and Jack, *Special Report: The Iran Connection*, U.S. NEWS & WORLD REPORT (2003 U.S. and Israeli intelligence reports concluded that Hezbollah was training the Mahdi Army, an Iraqi militant group, at Iran's request and providing them with improvised RPGs).

e.  Because of these injuries, Laveto Davidson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 337.  The May 26, 2004 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Arthur Connor Family

a.  Plaintiff Arthur Connor is a citizen of the United States and is domiciled in the State of Georgia.

b.  Plaintiff Kelly Connor is a citizen of the United States and is domiciled in the state of Georgia. She is the wife of Arthur Connor.

c.  Plaintiff Arthur W Connor is a citizen of the United States and is domiciled in the state of Oklahoma. He is the son of Arthur Connor.

d.  Plaintiff Joseph Connor is a citizen of the United States and is domiciled in the state of Oklahoma. He is the son of Arthur Connor.

e.  Plaintiff Samuel Connor is a citizen of the United States and is domiciled in the state of Ohio. He is the son of Arthur Connor.

f.  Plaintiff Elizabeth C Connor is a citizen of the United States and is domiciled in the state of New York. She is the daughter of Arthur Connor.

g.  Arthur Connor was a Commander in the United States Army, a part of the First Brigade, First Infantry Division, attached to the First Marines Division. He deployed to Ramadi, Iraq. On May 26, 2004, Mr. Connor had departed the Junction City Military Facility in Ramadi and was about 10 minutes out on Hwy 10, eastbound toward a forward operating base outside of Ramadi to visit one of the units under his command. Mr. Connor was in the front, passenger's seat in the fourth Humvee of a five-vehicle convoy, along with his security detachment which was comprised of about 30 US soldiers. An IED hit the front right side of his Humvee causing some of the shrapnel to penetrate. As a result, Mr. Connor was awarded a Purple Heart.

h.  The May 26, 2004 Terrorist Attack against Arthur Connor constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

i.  As a result of the May 26, 2004 Terrorist Attack, Arthur Connor sustained significant injuries, including a concussion and a right shoulder impingement injury.

j. Because of these injuries, Arthur Connor is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Kelly Connor, Arthur W Connor, Joseph Connor, Samuel Connor, and Elizabeth C Connor incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Arthur Connor on May 26, 2004.

### 338.    The April 4, 2004 Terrorist Attack - Abu Ghraib, Iraq
### Plaintiff: Lajawn Gladney

a. Plaintiff Lajawn Gladney is a citizen of the United States and is domiciled in the State of Florida.

b. Lajawn Gladney was a Staff Sergeant in the Army Reserves as part of the 351st Military Police Company out of Ocala, Florida. On April 4, 2004 around 11:30 PM, Gladney was in a convoy of about four vehicles. She was the passenger's side of an up-armored Humvee. Her convoy was southbound headed from Abu Ghraib Prison to Scania when they were attacked with IEDs. The vehicle in front of Gladney and her vehicle were both hit on the right side. Lajawn Gladney survived the terrorist attack and was awarded a Combat Action Badge.

c. The April 4, 2004 Terrorist Attack against Lajawn Gladney constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the April 4, 2004 Terrorist Attack, Lajawn Gladney sustained significant injuries, including headaches, PTSD, a right shoulder injury, and a left knee injury.

e. Because of these injuries, Lajawn Gladney is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 339.    The January 9, 2004 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Raymond Rodriguez

a. Plaintiff Raymond Rodriguez is a citizen of the United States and is domiciled in the State of Texas.

b. Raymond Samaniego Rodriguez was a specialist in the United States Army as part of the Headquarters Company, One Hundred Sixteenth Infantry Regiment, First Infantry Division out of Fort Riley, Kansas. On January 9, 2004, around 11:00 AM, Rodriguez was in a convoy of about five vehicles. He was the riding on the right side of the flatbed in a deuce vehicle. The

deuce vehicle was not equipped with rhino or any other safeguarding devices. His convoy had departed the Thunder FOB near Ramadi and was traveling to Camp Casey for a supply mission. The convoy was in the vicinity of Ramadi when they were attacked by an IED that hit Rodriguez's truck on the right side. As a result, Rodriguez was immediately provided medical attention at the Camp Casey Combat Aide Station and later medevacked to the Combat Support Hospital at the Baghdad Airport. Raymond Rodriguez ultimately survived the Terrorist Attack and was awarded a Purple Heart.

c. The January 9, 2004 Terrorist Attack against Raymond Rodriguez constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the January 9, 2004 Terrorist Attack, Raymond Rodriguez sustained significant injuries, including a TBI, a back injury, a shoulder injury, PTSD, and Tinnitus.

e. Because of these injuries, Raymond Rodriguez is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 340.  The March 20, 2004 Terrorist Attack - Balad, Iraq
### Plaintiff: Don Gates Family

a. Plaintiff Don Gates is a citizen of the United States and is domiciled in the State of Michigan.

b. Plaintiff Rola Bazzi-Gates is a citizen of the United States and is domiciled in the state of Michigan. She is the wife of Don Gates.

c. Don Gates was in the United States Army as a major, part of the 415 Civil Affairs Battalion out of Michigan. He deployed to Balad, Iraq. On March 20, 2004, he was the truck commander in an unarmored Humvee; the fifth vehicle of a six-vehicle convoy. While on a mission to a city council meeting near the Euphrates River, the convoy was struck by a daisy-chained IED in Balad. As a result, the vehicle sustained damage. Gates survived the terrorist attack and received a Combat Action Badge.

d. The March 20, 2004 Terrorist Attack against Don Gates constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

e.  As a result of the March 20, 2004 Terrorist Attack, Don Gates sustained significant injuries, including bilateral hearing loss, a TBI, and PTSD).

f.  Because of these injuries, Don Gates is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Rola Bazzi-Gates incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Don Gates on March 20, 2004.

### 341.  The December 9, 2003 Terrorist Attack - Tal-Afar, Iraq
### Plaintiff: Jacob Rodgers

a.  Plaintiff Jacob Rodgers is a citizen of the United States and is domiciled in the State of Ohio.

b.  Jacob Rodgers was in the United States Army as a Sergeant, part of the HHC 187 Infantry Regiment out of Fort Campbell, Kentucky. He deployed to Tal-Afar, Iraq. On December 9, 2003, Rodgers was serving as a Combat Medic at his compound in Tal-Afar when a suicide VBIED exploded. As a result, the compound was damaged and Rodgers was hit in the chest by shrapnel. However, he survived the attack.

c.  The December 9, 2003 Terrorist Attack against Jacob Rodgers constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the December 9, 2003 Terrorist Attack, Jacob Rodgers sustained significant injuries, including shrapnel in his left ribs, shrapnel in his feet, a concussion, a TBI, and PTSD.

e.  Because of these injuries, Jacob Rodgers is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 342.  The February 11, 2005 Terrorist Attack - Al-Asad, Iraq
### Plaintiff: John Gamble Family

a.  Plaintiff John Gamble is a citizen of the United States and is domiciled in the State of Ohio.

b.  Plaintiff Ivy Gamble is a citizen of the United States and is domiciled in the state of Ohio. She is the wife of John Gamble.

c.  United States Marine Corps Aviation Operations Specialist (E3) John Gamble was deployed to Al-Asad, Iraq from Okinawa, Japan in 2005 with HMM-265 Reinforced. On February 11,

2005, around 12:00 hours, Specialist Gamble was walking out of a hanger on base in Al-Asad when a rocket hit a fuel bladder at the "Fuel Farm." The 50k gallon bladder that was hit caused an explosion that then ignited four other bladders as well. As a result, Specialist Gamble was thrown to the ground by the explosions and knocked unconscious.

d.  The February 11, 2005 Terrorist Attack against John Gamble constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[211]

e.  As a result of the February 11, 2005 Terrorist Attack, John Gamble sustained significant injuries, including PTSD, anxiety, and depression.

f.  Because of these injuries, John Gamble is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Ivy Gamble incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by John Gamble on February 11, 2005.

### 343.    The June 3, 2006 Terrorist Attack - Balad, Iraq
#### Plaintiff: Ronaldo Jumbo

a.  Plaintiff Ronaldo Jumbo is a citizen of the United States and is domiciled in the State of Arizona.

b.  Ronaldo Jumbo was a corporal in the United States Marine Corps; part of 1st Battalion 1st Marine Division out of Camp Pendleton, California. On June 3, 2006, Jumbo was in a convoy of four vehicles. He was the rear passenger of the third vehicle, an unarmored Humvee. His convoy was responding to a call when they were struck with an IED in Balad. The IED caused Jumbo's vehicle to flip over. As a result, the vehicle was blown in half and deemed a total loss. Jumbo survived the terrorist attack; however, one of his fellow soldiers, Marine Cpl. Ryan Cummings, was tragically KIA.

c.  The June 3, 2006 Terrorist Attack against Ronaldo Jumbo constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

---

[211] *See* Ware, *Inside Iran's Secret War for Iraq*, TIME, Aug. 15, 2005 (reporting that Iran shipped weapons like 107mm and 122mm rockets across the border to Iraq).

d.  As a result of the June 3, 2006 Terrorist Attack, Ronaldo Jumbo sustained significant injuries, including spinal whiplash, hearing loss, Tinnitus, a TBI, and PTSD.

e.  Because of these injuries, Ronaldo Jumbo is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 344.  The March 7, 2008 Terrorist Attack - Diyala Province, Iraq
**Plaintiff: Benjamin Little**

a.  Plaintiff Benjamin Little is a citizen of the United States and is domiciled in the State of Arizona.

b.  Benjamin Little was a Sergeant in the United States Army, part of the 3rd Armored Cavalry Regiment. He deployed to Diyala Province, Iraq. On March 7, 2008. Benjamin was riding a Bradley in the turret position when the vehicle traveled over an IED. The IED exploded in the Diyala Province and Benjamin was exposed to the blast from the chest up. He survived the attack and received a Combat Action Badge.

c.  The March 7, 2008 Terrorist Attack against Benjamin Little constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the March 7, 2008 Terrorist Attack, Benjamin Little sustained significant injuries, including a TBI, a concussion, a left knee injury, and PTSD.

e.  Because of these injuries, Benjamin Little is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 345.  The March 16, 2005 Terrorist Attack - Tikrit, Iraq
**Plaintiff: Frank Wayne Fuller**

a.  Plaintiff Frank Wayne Fuller is a citizen of the United States and is domiciled in the State of Texas.

b.  Frank Wayne Fuller was a specialist in the United States Texas Army National Guard as part of the 3rd Battalion of 144th Infantry Regiment and attached to 3rd Battalion 133rd Field Artillery Regiment, 36th Infantry Division out of Fort Hood, Texas. On March 16, 2005, around 1530 hours, Fuller was in a convoy of about ten vehicles. He was the gunner in the lead up-armored Humvee. His convoy was located at MD046604, near ASR Clemson and RRP

Midland in the vicinity of Tikrit, transporting supplies and senior officers when they were attacked with an IED. The IED detonated about 40 feet from Fuller. As a result, Fuller was transported to FOB Danger for medical treatment. Frank Wayne Fuller survived the Terrorist Attack and was awarded a Purple Heart.

c. The March 16, 2005 Terrorist Attack against Frank Wayne Fuller constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the March 16, 2005 Terrorist Attack, Frank Wayne Fuller sustained significant injuries, including shrapnel wounds to his right hand, a TBI, and PTSD.

e. Because of these injuries, Frank Wayne Fuller is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 346. The March 27, 2007 Terrorist Attack – Baghdad, Iraq
### Plaintiff: Manuel Roman

a. Plaintiff Manuel Roman is a citizen of the United States and is domiciled in Puerto Rico.

b. Manuel Roman was a specialist in the United States Army; part of the 130th Engineer Battalion out of Wisconsin. He deployed to Camp Liberty in Baghdad, Iraq. On March 27, 2007, Mr. Roman was in the rear vehicle of a five-vehicle convoy. He was the gunner of an RG31, which was equipped with Rhino armor. His convoy was performing route clearance along Route Husky when the vehicle was penetrated on the right side by an EFP. The vehicle was damaged and the convoy came to a stop. As a result, Roman was medically evacuated. Roman survived the Terrorist Attack and was awarded a Purple Heart and Combat Action Badge.

c. The March 27, 2007 Terrorist Attack against Manuel Roman constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[212]

d. As a result of the March 27, 2007 Terrorist Attack, Manuel Roman sustained significant injuries, including shrapnel wounds requiring surgery, herniated discs (L1-L4), a lumbar spinal fracture requiring, PTSD and a TBI.

---

[212]*See, e.g.*, *Karcher*, 396 F. Supp. 3d at 15–25, 33.

e.  Because of these injuries, Manuel Roman is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 347.  The April 2, 2005 Terrorist Attack – Abu Ghraib, Iraq
### Plaintiff: Pedro Viorato

a.  Plaintiff Pedro Viorato is a citizen of the United States and is domiciled in the State of Colorado.

b.  Pedro Viorato served in the United States Marines, a part of 3531 Motor Transport. Viorato was deployed to Fallujah, Iraq. On April 2, 2005, during the daytime, Viorato was guarding a tower at the Abu Ghraib Prison when a VBIED drove near him and detonated. As a result, Pedro was awarded a Purple Heart.

c.  The April 2, 2005 Terrorist Attack against Pedro Viorato constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the April 2, 2005 Terrorist Attack, Pedro Viorato sustained significant injuries, including perforated ear drums, PTSD, and a TBI.

e.  Because of these injuries, Pedro Viorato is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 348.  The March 13, 2010 Terrorist Attack – Balad, Iraq (FOB Cobra)
### Plaintiff: Jerry S. Thomas

a.  Plaintiff Jerry S. Thomas is a citizen of the United States and is domiciled in the State of Tennessee.

b.  Jerry Thomas was in the United States Army as a 96 Gulf Cook. On March 13, 2010, Mr. Thomas was serving dinner in a Mobile Kitchen Trailer at FOB Cobra in Balad. Suddenly, FOB Cobra was attacked by grenades and mortar fire that landed inside the wire. The explosion killed fellow solider Erin McLyman and others were injured. However, Thomas survived the terrorist attack.

c.  The March 13, 2010 Terrorist Attack against Jerry S. Thomas constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[213]

d. As a result of the March 13, 2010 Terrorist Attack, Jerry S. Thomas sustained significant injuries, including PTSD and Tinnitus.

e. Because of these injuries, Jerry S. Thomas is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 349. The October 8, 2005 Terrorist Attack - Al Anbar Province, Iraq
### Plaintiff: Chad Thomson

a. Plaintiff Chad Thomson is a citizen of the United States and is domiciled in the State of New York.

b. Lance Corporal Chad Thompson served in the United States Marine Corp and was deployed to the Al Anbar Province in Iraq. On October 8, 2005, Thompson was traveling in an up-armored Humvee leading a convoy. Thompson's vehicle ran over a buried pressure-plated IED which detonated. The IED exploded on ASR Long Island about 20 meters away from Thompson's vehicle. Thompson survived the terrorist attack.

c. The October 8, 2005 Terrorist Attack against Chad Thomson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the October 8, 2005 Terrorist Attack, Chad Thomson sustained significant injuries, including Tinnitus, a TBI, migraine headaches, chronic neck pain, and PTSD.

e. Because of these injuries, Chad Thomson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

---

[213] *See The Situation in Iraq and Progress by the Government of Iraq in Meeting Benchmarks and Achieving Reconciliation: Hearing before the Comm. on Armed Services*, 110th Cong., 2d sess., (April 8-10, 2008) (General Petraeus concluding that it is certainly fair to conclude that Iranian-backed Special Groups in Iraq were responsible for killing hundreds of American soldiers).

### 350. The July 11, 2007 Terrorist Attack - Mosul, Iraq (FOB Marez)
### Plaintiff: Joseph Asbery

a. Plaintiff Joseph Asbery is a citizen of the United States and is domiciled in the State of New York.

b. Joseph Asbery was a Major in the United States Army who was deployed to Mosul, Iraq. On July 11, 2007, around 13:00, a mortar attack occurred on Forward Operating Base (FOB) Marez. Asberry was with fellow soldiers when the attack occurred and they immediately dropped to the ground for cover. The mortar impacts landed about 10-20 meters from Asbery and the other soldiers. Asbery survived the attack and received a Combat Action badge.

c. The July 11, 2007 Terrorist Attack against Joseph Asbery constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[214]

d. As a result of the July 11, 2007 Terrorist Attack, Joseph Asbery sustained significant injuries, including PTSD and sleep apnea.

e. Because of these injuries, Joseph Asbery is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 351. The May 3, 2004 Terrorist Attack – ASR Detroit, Iraq
### Plaintiff: Michael Smith

a. Plaintiff Michael Smith is a citizen of the United States and is domiciled in the State of New York.

b. Michael John Smith served in the United States Army and was deployed to Camp Speicher in Mosul, Iraq. On May 3, 2004, Smith was traveling on MSR Detroit near Corner Bismarck in a truck. Suddenly, an IED detonated in front of Smith's vehicle. Smith survived the terrorist attack.

c. The May 3, 2004 Terrorist Attack against Michael Smith constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this

---

[214] *See* Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (U.S. officials found mortar shells following the capture of IRGC-QF leaders in Iraq).

attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the May 3, 2004 Terrorist Attack, Michael Smith sustained significant injuries, including Tinnitus, a right knee injury, and PTSD.

e. Because of these injuries, Michael Smith is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 352.    The November 22, 2006 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Jose Baggett

a. Plaintiff Jose Baggett is a citizen of the United States and is domiciled in the State of Georgia.

b. Jose Baggett was a private first class in the United States Army as part of the Alpha Troop, First Battalion, 40th Cavalry Regiment out of Fort Richardson, Alaska. On November 22, 2006, Baggett was providing security on foot patrol near an Iraqi Police Station in Baghdad with his platoon. He was on the left side of the road when an IED detonated on the other side of the road. The force of the explosion knocked Baggett to the ground. Baggett was immediately provided medical attention by his platoon medic. Baggett survived the Terrorist Attack and was awarded a Combat Infantryman Badge.

c. The November 22, 2006 Terrorist Attack against Jose Baggett constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the November 22, 2006 Terrorist Attack, Jose Baggett sustained significant injuries, including bilateral Tinnitus, spinal degenerative disc disease of lumbar spine, and PTSD.

e. Because of these injuries, Jose Baggett is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 353.    The October 21, 2007 Terrorist Attack - MSR Tampa, Iraq
### Plaintiff: Leif Meisinger Family

a. Plaintiff Leif Meisinger is a citizen of the United States and is domiciled in the State of California.

b.  Plaintiff Divita Meisinger is a citizen of the United States and is domiciled in the state of California. She is the wife of Leif Meisinger.

c.  Plaintiff Seth Meisinger is a citizen of the United States and is domiciled in the state of California. He is the son of Leif Meisinger.

d.  Plaintiff Asbjorg Meisinger is a citizen of the United States and is domiciled in the state of California. She is the mother of Leif Meisinger.

e.  Plaintiff Terry Meisinger is a citizen of the United States and is domiciled in the state of California. He is the father of Leif Meisinger.

f.  Leif Meisinger was a Specialist in the United States Army, part of the 1-160th out of California. Meisinger was deployed to Iraq. On October 21, 2007, Meisinger was in a convoy of about fifty vehicles and was the gunner of an up-armored Humvee equipped with Rhino. The convoy was conducting a supply run when they saw a vehicle ahead slowing down on Main Supply Route Tampa. While moving forward, an IED detonated between Bridge 21 and 22, causing the Humvee to hit a hole. The force of impact caused Meisinger severe pain but he survived the terrorist attack.

g.  The October 21, 2007 Terrorist Attack against Leif Meisinger constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

h.  As a result of the October 21, 2007 Terrorist Attack, Leif Meisinger sustained significant injuries, including compression fractures in his vertebrae, a left shoulder injury, and a TBI.

i.  Because of these injuries, Leif Meisinger is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Divita Meisinger, Seth Meisinger, Asbjorg Meisinger, and Terry Meisinger incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Leif Meisinger on October 21, 2007.

### 354.    The May 22, 2009 Terrorist Attack - Sadr City, Iraq
#### Plaintiff: Rodney Foust

a.  Plaintiff Rodney Foust is a citizen of the United States and is domiciled in the State of North Carolina.

b. Rodney Allan Foust was a sergeant in the United States Army, a part of the 82 of 3rd Brigade 2505, Bravo Company out of Ft. Bragg, North Carolina. Foust deployed to Iraq. On May 22, 2009, around noon, Foust was at the supply conex at a Forward Operating Base (FOB) in Sadr City doing inventory. An IED suddenly exploded outside of the FOB behind the supply conex, detonating about 100 feet from Foust. As a result, Foust received a Combat Action Badge.

c. The May 22, 2009 Terrorist Attack against Rodney Foust constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the May 22, 2009 Terrorist Attack, Rodney Foust sustained significant injuries, including PTSD and Tinnitus.

e. Because of these injuries, Rodney Foust is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 355.     The December 3, 2006 Terrorist Attack – Baqubah, Iraq
### Plaintiff: George Hanhauser IV

a. Plaintiff George Hanhauser IV is a citizen of the United States and is domiciled in the State of North Carolina.

b. Major George Hanhauser IV served in the United States Army and was deployed to Forward Operating Warhorse in Baqubah, Iraq. On December 3, 2006, at 14:55 hours, Hanhauser was returning to the Baqubah Government Center to FOB Warhorse. Hanhauser was traveling on Route Bluebabe at 38S MC 696 385 when his vehicle struck an IED. Hanhauser received a Purple Heart as a result and survived the Terrorist Attack.

c. The December 3, 2006 Terrorist Attack against George Hanhauser IV constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the December 3, 2006 Terrorist Attack, George Hanhauser IV sustained significant injuries, including neck pain, Post Traumatic Headaches, and PTSD.

e.  Because of these injuries, George Hanhauser IV is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 356.    The March 23, 2003 Terrorist Attack - Mosul, Iraq
### Plaintiff: Clayton Ferguson

a.  Plaintiff Clayton Ferguson is a citizen of the United States and is domiciled in the State of North Carolina.

b.  Clayton Ferguson was a Specialist in the United States Army and was deployed to Iraq. On March 23, 2003, Mr. Ferguson and other members of the Army were driving in convoy in Mosul when a VBIED suddenly detonated near Ferguson's vehicle. Ferguson survived the attack and received a Combat Action Badge.

c.  The March 23, 2003 Terrorist Attack against Clayton Ferguson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the March 23, 2003 Terrorist Attack, Clayton Ferguson sustained significant injuries, including PTSD, Tinnitus, and a TBI.

e.  Because of these injuries, Clayton Ferguson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 357.    The September 24, 2007 Terrorist Attack - Tikrit, Iraq
### Plaintiff: Lindsey Rowland

a.  Plaintiff Lindsey Rowland is a citizen of the United States and is domiciled in the State of District of Columbia.

b.  Lindsey Rowland was a first lieutenant in the United States Army, part of the 21st Theatre Support Command out of Germany. On September 24, 2007, Rowland was in a convoy of about fifteen vehicles. She was the truck commander of an up-armored Humvee equipped with Rhino. Rowland's convoy was on a mission in Tikrit when it was hit by a daisy chained IED outside of Camp Speicher. The IED detonated in front of the vehicle. Rowland survived the terrorist attack and received a Combat Action Badge.

c.  The September 24, 2007 Terrorist Attack against Lindsey Rowland constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials,

employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the September 24, 2007 Terrorist Attack, Lindsey Rowland sustained significant injuries, including PTSD and Tinnitus resulting in near permanent hearing loss in her left ear.

e.  Because of these injuries, Lindsey Rowland is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 358.   The February 1, 2007 Terrorist Attack - Ramadi, Iraq
### Plaintiff: Jorge Fernandez-Davila

a.  Plaintiff Jorge Fernandez-Davila is a citizen of the United States and is domiciled in the State of Kansas.

b.  Jorge Davila-Fernandez was a Staff Sergeant in the United States Army, part of the 118th Infantry out of Germany. Fernandez deployed to Iraq. On February 1, 2007, Fernandez-Davila was on foot patrol in Ramadi when an IED detonated approximately 15 to 20 meters away from Fernandez-Davila, knocking him to the ground. Fernandez-Davila survived the terrorist attack and received a Purple Heart.

c.  The February 1, 2007 Terrorist Attack against Jorge Fernandez-Davila constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the February 1, 2007 Terrorist Attack, Jorge Fernandez-Davila sustained significant injuries, including ears burst, Tinnitus, an eye injury, a spinal injury causing lower back & neck pain, and PTSD.

e.  Because of these injuries, Jorge Fernandez-Davila is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 359.   The March 28, 2007 Terrorist Attack - Tikrit, Iraq
### Plaintiff: Cheryl Eberg

a.  Plaintiff Cheryl Eberg is a citizen of the United States and is domiciled in the State of Connecticut.

360

b. Cheryl Eberg was a Sergeant in the United States Army National Guard and deployed to Iraq. On March 28, 2007, around 1800 hours, Eberg was a passenger of the third vehicle in a 6 vehicle convoy. The convoy was traveling from Tirkit to Balad when an IED detonated, hitting the vehicle directly behind Eberg. Eberg survived the attack.

c. The March 28, 2007 Terrorist Attack against Cheryl Eberg constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the March 28, 2007 Terrorist Attack, Cheryl Eberg sustained significant injuries, including PTSD.

e. Because of these injuries, Cheryl Eberg is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 360.   The October 7, 2011 Terrorist Attack - Tikrit, Iraq
### Plaintiff: Leo Richardson

a. Plaintiff Leo Richardson is a citizen of the United States and is domiciled in the State of Texas.

b. Leo Richardson was a specialist in the United States Army. On October 7, 2011, Mr. Richardson was the gunner in an in Mine Resistant Ambush Protected (MRAP) vehicle equipped with Rhino. Richardson was in the 4th vehicle of a 5 vehicle convoy performing a mission in Tikrit. Suddenly, a command detonated IED exploded from the right side and the ensuing shrapnel penetrated Richardson's vehicle. Richardson survived the attack and received a Purple Heart.

c. The October 7, 2011 Terrorist Attack against Leo Richardson constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the October 7, 2011 Terrorist Attack, Leo Richardson sustained significant injuries, including a knee injury, a neck injury, a concussion with loss of consciousness, a TBI, and Tinnitus.

e. Because of these injuries, Leo Richardson is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 361. The December 21, 2004 Terrorist Attack - Mosul, Iraq
### Plaintiff: Creed McCaslin

a. Plaintiff Creed McCaslin is a citizen of the United States and is domiciled in the State of Arizona.

b. Creed McCaslin was a sergeant first class in the United States Army, part of the 1-25 Infantry Division out of Fort Lewis, Washington. McCaslin deployed to Iraq. On December 21, 2004, McCaslin was at Forward Operating Base Marez in Mosul. While in the dining facility, a suicide bomber blew himself up, killing twenty-two soldiers. McCaslin was in close proximity to the bomber but survived the Terrorist Attack. As a result, he was awarded a Purple Heart.

c. The December 21, 2004 Terrorist Attack against Creed McCaslin constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[215]

d. As a result of the December 21, 2004 Terrorist Attack, Creed McCaslin sustained significant injuries, including right arm shrapnel wounds, a concussion, vertigo, Tinnitus, a TBI, and PTSD.

e. Because of these injuries, Creed McCaslin is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 362. The February 16, 2006 Terrorist Attack - Baghdad, Iraq
### Plaintiff: Frank Guzman

a. Plaintiff Frank Guzman is a citizen of the United States and is domiciled in the State of California.

b. Frank Guzman was a Lance Corporal in the United States Marine Corps, part of the 1st Tank Battalion out of 29 Palms, California. He deployed to Iraq. On February 16, 2006, around 0100 hours, Guzman was in a two-vehicle convoy traveling in Baghdad. He was the gunner of an up-armored M1 Abrams Tank. His convoy was on a routine patrol and headed towards their

---

[215] *See* Lathem, *House of Jihad* (Hezbollah chief Hassan Nasrallah announcing that they support the adoption of an armed "jihad" resistance against American occupation forces in Iraq).

Forward Operating Base (FOB) when the Tank ran over a buried IED. The IED detonated and as a result the vehicle was totally disabled. Frank Guzman survived the Terrorist Attack and was awarded a Purple Heart.

c. The February 16, 2006 Terrorist Attack against Frank Guzman constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[216]

d. As a result of the February 16, 2006 Terrorist Attack, Frank Guzman sustained significant injuries, including shrapnel wounds in his right leg, Tinnitus, and PTSD.

e. Because of these injuries, Frank Guzman is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 363. The July 22, 2006 Terrorist Attack - Riyadh, Iraq
### Plaintiff: Rashon Hill

a. Plaintiff Rashon Hill is a citizen of the United States and is domiciled in the State of Georgia.

b. Rashon Hill was a Platoon Sargent in the United States Army and deployed to Iraq. On July 22, 2006, around mid-day, Hill and nine other soldiers were providing protection for civilian engineers who were working on a building and repairing a pipeline near Riyadh, Iraq. While the soldiers were awaiting for a helicopter to remove the civilian engineers, the area was hit by an IED followed by RPG and mortar round fire. Hill and the remaining nine soldiers were evacuated to Forward Operating Base (FOB) McHenry. Hill survived the attack and received a Purple Heart.

c. The July 22, 2006 Terrorist Attack against Rashon Hill constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d. As a result of the July 22, 2006 Terrorist Attack, Rashon Hill sustained significant injuries, including shrapnel wounds in his thigh requiring surgical removal, Tinnitus, a Traumatic Brain Injury (TBI), Vertigo, and PTSD.

---

[216] *See* Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (U.S. officials found metal charges, RPGs, and mortar shells following the capture of IRGC-QF leaders in Iraq).

e.   Because of these injuries, Rashon Hill is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 364.    The May 9, 2009 Terrorist Attack – Mosul, Iraq
### Plaintiff: Timothy Boyd Family

a.   Plaintiff Timothy Boyd, Individually and as Next Friend of E.B., T.B., and K.L., minors, is a citizen of the United States and is domiciled in the State of North Carolina.

b.   E.B. is a United States citizen domiciled in the State of North Carolina. He is the minor son of Timothy Boyd.

c.   T.B. is a United States citizen domiciled in the State of North Carolina. He is the minor son of Timothy Boyd.

d.   K.L. is a United States citizen domiciled in the State of North Carolina. He is the minor son of Timothy Boyd.

e.   Plaintiff Hattie Boyd is a citizen of the United States and is domiciled in the state of North Carolina. She is the wife of Timothy Boyd.

f.   Timothy Boyd was a private first class in the United States Army, part of the 282nd Field Artillery out of Fort Hood, Texas. He was deployed to Iraq and was stationed at FOB Diamondback in Mosul. On May 9, 2009, Boyd was in a convoy of about four vehicles. He was the gunner of a Mine-Resistant Ambush Protected Vehicle, which was equipped with Rhino. His convoy was on a patrol mission in Mosul when an IED detonated on the left side of the vehicle. As a result, the vehicle sustained damage. Timothy Boyd survived the Terrorist Attack and was awarded a Combat Action Badge.

g.   The May 9, 2009 Terrorist Attack against Timothy Boyd constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

h.   As a result of the May 9, 2009 Terrorist Attack, Timothy Boyd sustained significant injuries, including a head injury, a knee injury, and PTSD.

i.   Because of these injuries, Timothy Boyd is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Hattie Boyd, E.B., T.B., and K.L. incurred solatium damages as a result of mental anguish, bereavement,

grief, and loss of society and comfort suffered following the injuries sustained by Timothy Boyd on May 9, 2009.

### 365.  The January 22, 2011 Terrorist Attack - Baqubah, Iraq
### Plaintiff: Carl Vickers

a.  Plaintiff Carl Vickers is a citizen of the United States and is domiciled in the State of Mississippi.

b.  Carl Vickers was a specialist in the United States Army, part of the 25th Infantry Division out of Hawaii. Vickers was deployed to Forward Operating Base (FOB) Warhorse in Baqubah, Iraq. On January 22, 2011, in the afternoon, Vickers was in his living quarters at FOB Warhorse when the FOB was attacked with mortars. One of the mortars landed less than ten feet away from Vickers. As a result, he sustained a shrapnel injury. Carl Vickers survived the Terrorist Attack and was awarded a Purple Heart and Combat Action Badge.

c.  The January 22, 2011 Terrorist Attack against Carl Vickers constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

d.  As a result of the January 22, 2011 Terrorist Attack, Carl Vickers sustained significant injuries, including shrapnel wounds to the head, a TBI, and PTSD.

e.  Because of these injuries, Carl Vickers is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 366.  The May 23, 2005 Terrorist Attack - Samarra, Iraq
### Plaintiff: Sheridan Puckett

a.  Plaintiff Sheridan Puckett is a citizen of the United States and is domiciled in the State of Tennessee.

b.  Sheridan Puckett was a Specialist in the United States Army and was deployed to Iraq. On May 23, 2005, Puckett was preforming patrol around the Patrol Base Uvanni in Samarra, Iraq when insurgents launched an attack. The attacked began with mortar rounds followed by 2 VBIEDs that detonated and knocked down the berm surrounding the base. Mr. Puckett was able to assist in securing the breech of the perimeter wall and ultimately survived the attack.

c.  The May 23, 2005 Terrorist Attack against Sheridan Puckett constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees,

and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[217]

d.  As a result of the May 23, 2005 Terrorist Attack, Sheridan Puckett sustained significant injuries, including a TBI, migraines, PTSD, and Tinnitus.

e.  Because of these injuries, Sheridan Puckett is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

### 367.    The June 16, 2005 Terrorist Attack - Balad, Iraq (FOB Anaconda)
### Plaintiff: Archie Bates III

a.  Plaintiff Archie Bates III is a citizen of the United States and is domiciled in the State of Virginia.

b.  Archie Bates III was a Major in the Unites States Army and was deployed to Iraq. On June 16, 2005, Bates was traveling from the laundry facility on Forward Operating Base (FOB) Anaconda in Balad. At this time, Bates' tactical vehicle was hit by indirect fire from mortar rounds. Bates survived the attack and received a Combat Action Badge.

c.  The June 16, 2005 Terrorist Attack against Archie Bates III constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to tactical training and furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.[218]

d.  As a result of the June 16, 2005 Terrorist Attack, Archie Bates III sustained significant injuries, including PTSD.

e.  Because of these injuries, Archie Bates III is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity.

---

[217] *See* Latif and Sands, *Mehdi Fighters Trained by Hizbollah in Lebannon*, INDEPENDENT, Aug. 20, 2007 (London Newspaper) (a Iraqi Shia militant stating that Hezbollah "showed us real tactics….").

[218] *See* Glanz, *U.S. Says Arms Link Iranians to Iraqi Shiites* (U.S. officials found mortar shells following the capture of IRGC-QF leaders in Iraq).

**368.**  **The December 13, 2007 Terrorist Attack - Balad, Iraq**
**Plaintiff: Guy Lohr Family**

a.  Plaintiff Guy Lohr is a citizen of the United States and is domiciled in the State of Texas.

b.  Plaintiff Diane Lohr is a citizen of the United States and is domiciled in the State of Texas. She is the wife of Guy Lohr.

c.  Plaintiff Seira Lohr is a citizen of the United States and is domiciled in the state of Texas. She is the daughter of Guy Lohr.

d.  Plaintiff Cheyenne Lohr is a citizen of the United States and is domiciled in the State of Texas. She is the daughter of Guy Lohr.

e.  Guy Lohr served in the United States Army in the 3rd Platoon, A Company. He was deployed to Iraq. On December 13, 2007, Lohr was traveling to COB Spiecher from LSA Anaconda IVO CP 71A in Balad, Iraq. Lohr was in the lead vehicle of the convoy. The convoy spotted a possible IED about 200 meters north of the "Golden Arches" and stopped. Thereafter, the IED exploded on the east side of the road. The ensuing shrapnel penetrated Lohr's vehicle and struck him. He was treated for these wounds at LSA Anaconda and survived the attack.

f.  The December 13, 2007 Terrorist Attack against Guy Lohr constitutes an attempted act of extrajudicial killing. Upon information and belief, Iran, including its officials, employees, and/or agents, provided material support or resources to the enemy forces who committed this attack - including but not limited to furnishing, supplying, and/or manufacturing all or part of the weapon(s) used in the attack.

g.  As a result of the December 13, 2007 Terrorist Attack, Guy Lohr sustained significant injuries, including shrapnel wounds and PTSD.

h.  Because of these injuries, Guy Lohr is entitled to past and future economic and noneconomic damages. Specifically, damages for severe mental anguish, extreme physical pain and suffering, and past and future loss of earning capacity. Additionally, Diane Lohr, Seira Lohr, and Cheyenne Lohr incurred solatium damages as a result of mental anguish, bereavement, grief, and loss of society and comfort suffered following the injuries sustained by Guy Lohr on December 13, 2007.

367

# VI.
# LIABILITY

6.1     The FSIA establishes that state sponsors of terrorism shall be liable "for personal injury or death caused by acts described in subsection (a)(1) of that foreign state, or of an official, employee, or agent of that foreign state, for which the courts of the United States may maintain jurisdiction under this section of money damages." 28 U.S.C. § 1605A(c).  As this Court has explained, "[i]n other words, this section creates a cause of action for the same conduct that gives rise to subject-matter jurisdiction under the terrorism exception to sovereign immunity." *Karcher*, 396 F. Supp. 3d at 59.

6.2     Under the FSIA, damages "may include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A.

## A.     Intentional Inflection of Emotional Distress (IIED).

6.3     This Court has previously held that "[a]cts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009) (citing *Stethem v. Islamic Republic of Iran*, 202 F. Supp. 2d 78, 89 (D.D.C. 2002)). The material support and resources that Defendant Iran, by and through the active support of the IRGC, IRGC-QF, and/or Hezbollah,[219] provided to the enemy forces responsible for the Terrorist Attacks at issue were instrumental in planning and ultimately executing these attacks. Therefore, this provision of material support

---

[219] *See Cohen,* 238 F. Supp. 3d at 80–81 (concluding that "it is well established by courts in this district" that the IRGC is the functional equivalent of Iran and qualifies as a foreign state under the FSIA); *Valore,* 700 F. Supp. 2d at 74 (D.D.C. 2010) (holding that Hezbollah acts at Iran's behest and is therefore an agent of Iran); *Karcher*, 396 F.Supp. 3d at 33 (holding that material support for a terrorist act must be provided by an Iranian "official, employee, or agent" for Iran to be held liable under the FSIA).

constitutes extreme and outrageous conduct intended to cause Plaintiffs severe emotional distress.

6.4    These actions were undertaken deliberately and recklessly, with knowledge that the material support provided to enemy forces responsible for the Terrorist Attacks would cause severe emotional distress to Plaintiffs. More specifically, severe emotional distress to the KIA Family-Plaintiffs (who all lost a loved one as a result of the Terrorist Attacks), the Surviving-Plaintiffs who served in Iraq (who were all extremely fortunate to survive the Terrorist Attacks), and the remaining Surviving-Plaintiffs (who all suffered emotional trauma following their immediate-family member's experience during the Terrorist Attacks).

6.5    Defendant, by engaging in this deliberate unlawful conduct, intentionally inflicted emotional distress upon these Plaintiffs and may be held jointly and severally liable for Plaintiffs' damages under 28 U.S.C. § 1605A(c). *See Flanagan,* 87 F. Supp. 3d at 116.

**B.    Solatium**

6.6    Moreover, because of Defendant's intentional, outrageous, and extreme conduct, the KIA Family-Plaintiffs and the Surviving-Plaintiffs have collectively suffered mental anguish, bereavement, grief, and loss of society and comfort. Accordingly, Defendants are liable for solatium damages suffered by these Plaintiffs. *See Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010) (noting that family members of both deceased and surviving servicemen qualify for solatium damages under the FSIA).

**C.    Punitive Damages**

6.7    Following a 2008 amendment to the FSIA, 28 U.S.C. § 1605A(c) specifically authorizes a claim for punitive damages arising from state-sponsored acts of terrorism. In *Opati v. Republic of Sudan,* the United States Supreme Court held the FSIA expressly authorized

terrorist victims to recover punitive damages for past conduct. *Opati,* 140 S. Ct. 1601, 1608–09, (2020). In other words, the FSIA applies retroactively. *Id*.

6.8    The planning and execution of the Terrorist Attacks at issue in this lawsuit by various enemy forces in Iraq was malicious, willful, unlawful, reckless, and done so in wanton disregard for life and the standards of law that govern the actions of civilized nations. However, Iran's provision of material support and resources to these enemy forces is equally heinous. *See, e.g.*, *Flanagan,* 87 F. Supp. 3d at 119 (concluding that Iran's support for Al-Qaeda, the terrorist organization responsible for the USS Cole attack, is equally as heinous as the attack itself). Additionally, by supporting these enemy forces, Iran clearly intended to further their own anti-American agenda in Iraq and destabilize the region through terrorism. *See supra* pp. 11–12 (Dr. Levitt concluding that Operation Iraqi Freedom provided Iran with a unique opportunity to both weaken the neighboring country of Iraq and push the U.S. out of the Middle East).

6.9    In FSIA actions, this Court has also acknowledged the significant need to impose punitive damages to deter liable defendants from committing future acts of terrorism. *See, e.g.*, *Flanagan,* 87 F. Supp. 3d at 119 ("Were this Court not to impose punitive damages for what was a spectacular terrorist act, this would be read by Iranian government officials as indicating a significant weakening of U.S. pressure on Iran to end its support for terrorism against Americans."). Furthermore, Iran remains the most significant threat to active members of the U.S. armed forces operating in the Middle East. *See supr*a p. 41 and accompanying sources (in September 2020, the Department of State concluded that "Iran's support for Shia militants in Iraq remains the primary threat to US personnel [in Iraq]" and that Iran "provides Lebanese Hizballah about $700 million each year") (emphasis added). Lastly, Iran's tremendous wealth supports an award for punitive damages. Specifically, the Heritage Foundation estimated Iran's

2020 GDP at $**1.6 trillion.** *See* https://www.heritage.org/index/country/iran (last visited Jan. 26, 2021) (emphasis added).

      6.10    For these reasons, Plaintiffs are entitled to recover punitive damages from Defendant Iran under 28 U.S.C. § 1605A(c). *See Flanagan,* 87 F. Supp. 3d at 118–122.

**VII.**
**DAMAGES & PRAYER FOR RELIEF**

      7.1    **WHEREFORE**, Plaintiffs request that this Court grant judgment in their favor against Defendant Iran, and grant the following —

**A.**    **The KIA Family-Plaintiffs**

      7.2    The One Hundred Twenty-Two (122) KIA Family-Plaintiffs in this Complaint[220] seek these damages and other relief against Iran as a result of their tragic loss:

    **a.**    Solatium damages for the mental anguish, bereavement, grief, and loss of society and comfort consistent with the framework for awarding such damages for family members of deceased terrorist victims in previous FSIA cases, including any upward departure the Court's deems appropriate for aggravating circumstances;[221]

    **b.**    Punitive damages against Defendant in an amount consistent with the 3.44 to 1 ratio used by this Court in previous FSIA cases;[222]

    **c.**    Pain & mental anguish survival damages and wrongful death damages under applicable state law for the following Plaintiffs: Elizabeth Kormanyos, Jerry Ramey, Lisa Hundley, Lisa Ruiz, and Robin Towns;[223]

---

[220]*See* supra pp. 41–82 (detailed description of person's KIA in Iraq and resulting damages).
[221]*See Valore,* 700 F.Supp 2d at 86; *Opati v. Republic of Sudan,* 60 F. Supp. 3d 68, 79 (D.D.C. 2014) (noting that the standard solatium award for family members of deceased terrorism victims is $8 million to spouses, $5 million to parents and children, and $2.5 million to siblings); *see also Greenbaum v. Islamic Republic of Iran,* 451 F.Supp. 2d 90, 108 (departing upward from $8 million to $9 million in a widower's solatium award).
[222]*See, e.g.,* *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 82  (D.D.C. 2010) (holding that for every dollar of compensatory damages awarded, the appropriate amount to punish and deter Iran from supporting terrorism was $3.44).
[223]*See* supra pp. 44 (Kormayos), 45 (Ramey), 51 (Hundley), 67 (Ruiz), and 76 (Towns).

    **d.**  Punitive damages against Defendant in an amount consistent with the 3.44 to 1 ratio used by this Court in previous FSIA cases;[224]

    **e.**  Interest[225];

    **f.**  Reasonable cost and expenses;

    **g.**  Reasonable attorney's fees; and

    **h.**  Such other and further relief that the Court may determine to be just and equitable under the circumstances.

**B.**    **The Surviving-Plaintiffs**

    7.3    The remaining Plaintiffs seek the following damages and other relief against Iran:

    **a.**  For the three hundred sixty eight (368) Plaintiffs injured in Iraq as a direct result of the Terrorist Attacks – Loss of earning capacity in the past and future;[226]

    **b.**  For the three hundred sixty eight (368) Plaintiffs injured in Iraq as a direct result of the Terrorist Attacks – Damages for pain and suffering consistent with the framework for assessing such damages developed by this Court in previous FSIA cases, including any upward departures the Court deems appropriate;[227]

    **c.**  For the three hundred eighty two (382) Plaintiffs who are immediate family members of former Armed Forces members and contractors injured in Iraq – Solatium damages for the mental anguish, bereavement, grief, and loss of society and comfort consistent with the framework for awarding such damages for family members of surviving terrorist victims in previous FSIA cases, including any upward departure the Court's deems appropriate for aggravating circumstances;[228]

---

[224]*See Murphy,* 740 F. Supp. 2d at 82.

[225]*See, e.g.*, *Certain Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab Jamahiriya,* 811 F. Supp. 2d 53, 75–76 (D.D.C. 2011) (awarding pre-judgment interest against Syria from the date of attack until final judgment under the FSIA).

[226]*See supra* pp. 82–374 (detailed descriptions of former U.S. Armed Forces members and contractors injured in Iraq and resulting damages).

[227]*See id.; Opati,* 60 F. Supp.3d at 77 ("courts in this district have developed a general framework for assessing pain-and-suffering damages for victims of terrorist attacks…"); *see also Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 54 (D.D.C. 2007) (departing upward from a $ 5 million baseline in more severe instances of physical and psychological pain).

[228]*See supra* pp. 82-374 *(*detailed descriptions of immediate family members of former U.S. Armed Forces members and contractors injured in Iraq and their resulting damages); *see also Opati,* 60 F.Supp.3d at 79*; Murphy,* 740 F. Supp. 2d at 79 (noting that the standard solatium

**d.** Punitive damages against Defendant in an amount consistent with the 3.44 to 1 ratio used by this Court in previous FSIA cases;[229]

**e.** Interest;[230]

**f.** Reasonable cost and expenses;

**g.** Reasonable attorney's fees; and

**h.** Such other and further relief that the Court may determine to be just and equitable under the circumstances.

Dated:  January 29, 2021                    Respectfully submitted,

/s/ Matthew D. McGill

**Matthew D. McGill** (D.C. Bar No. 481430)
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:  (202) 955-8500
Facsimile: (202) 530-9522
mmcgill@gibsondunn.com
**Attorney for Plaintiffs**

**Craig W. Carlson** (D.C. Bar No. TX0182)
**THE CARLSON LAW FIRM, P.C.**
100 East Central Expressway
Killeen, TX 76541
Telephone: (254) 526-5688
Facsimile: (254) 526-8204
ccarlson@carlsonattorneys.com
**Attorney for Plaintiffs**

---

award for family members of injured terrorism victims is $4 million to spouses, $2.5 million to parents, $2.5 million to children, and $1.25 million to siblings).
[229]*See Murphy,* 740 F. Supp. 2d at 82.
[230]*See supra* note 225.