# **EXHIBIT 11**

# Sergeant Joseph F. Morcerf



MORCERF 001

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MARY B. HEATON, et al.,

               Plaintiffs,

     v.

THE ISLAMIC REPUBLIC OF IRAN,

               Defendant.

Civil Action No. 1:19-cv-03003-JMC

**TESTIMONIAL AFFIDAVIT OF PLAINTIFF JOSEPH MORCERF IN SUPPORT OF
PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST IRAN**

Pursuant to 28 U.S.C. § 1746, I, **JOSEPH F. MORCERF**, hereby declare as follows:

     1.     "I am one of the Plaintiffs in this case. I am over the age of 18, of sound mind, and make this Affidavit from personal knowledge.

     2.     I was born in September 1987 and am now 35 years old. I am a resident of the State of New York. In accordance with 28 U.S.C. §§ 1605A(a)(2)(A)(ii)(I)–(II) and 1605A(c)(1)–(2), at the time of the December 26, 2007 terrorist attack in which I was injured (hereinafter '**the Attack'**) I was a United States citizen and member of the United States armed forces. Specifically, I was a member of the U.S. Army.

     3.     I was 19 years old at the time of the Attack. The photograph on the preceding page was taken in approximately November 2007 at Combat Outpost ('COP') Callahan in Baghdad, Iraq and accurately depicts me in my Army uniform.

     4.     I am presenting this Affidavit in support of my request for the Court to enter a Default Judgment against Defendant Islamic Republic of Iran ('**Iran'**). More specifically, I am submitting this Affidavit to provide the Court with the facts concerning the December 26, 2007

MORCERF 002

terrorist attack, the injuries I suffered in the Attack, the medical care and treatments I have received for my injuries, my current condition, and how the attack and injuries have impacted me and my life. *See* Pls.' First Amend. Compl. at 168—169.

5.      Prior to signing this Affidavit, my attorneys asked me series of questions about the Attack, my resulting injuries, the medical care and treatments I have  received since the Attack, and my life today. Below are the questions and my answers:

Q. When did you first join the United States Army and why did you enlist?

**A.** I joined Army active duty in July 2006. I enlisted because I love my country.

**Q**. What your mission, and what happened to you, on December 26, 2007?

**A.** On December 26, 2007, our mission was to train and assist the Iraqi Police. I was driving a Humvee, the lead vehicle in a 4-vehicle convoy. On the day of the Attack, we were returning to COP (Combat Outpost) Callahan when we were struck by a 2 array Explosively Formed Penetrator ('**EFP**'). My driver's–side door took one blast and the gunner turret took the other blast.

I lost consciousness briefly and when I came to I realized we had been hit with an Improvised Explosive Device ('IED'). We lost communications with our squad trucks who were behind us, and we had no communication with our Tactical Operations Center ('TOC'). I had shrapnel in my left knee and all of my above-neck Personal Protective Equipment ('PPE') was blown off from the blast. My PPE included my helmet, glasses, hearing protection, and radio headset. Our vehicle had stalled and we were in the middle of the intersection when I became aware of what happened.

Next, I remember stomping down on the gas to push through the kill zone. This is what we had been trained to do during an IED attack and have done in real life in the past. Our truck was disabled, but after a few moments of trying, the engine started. We were able to drive back to COP Callahan, which was in our line of sight from the blast location.

**Q.** Would you please describe what you remember about the Attack?

**A**. I remember approaching an intersection and telling our gunner to 'drop down' (meaning enter the cab and no longer be exposed). Dropping down was our standard procedure when approaching an intersection. A few seconds later, a huge explosion happened.

An EFP had struck the side of our Humvee in two locations. The first location was my driver's door, dead center of the door. The EFP had blown off all the armor and additional armor the Army

3

installed on the Humvee to prevent EFP's from penetrating the cab. The second location on our vehicle stuck by an EFP was the gunner turret.

**Q.** Why do you believe the Attack involved an EFP?

**A.** This was 100% an EFP. A few days after the Attack, I was told by the Explosive Ordinance Division ('EOD') team leader that it was an EFP strike while standing next to my Humvee in the mechanic bay of COP Callahan. Specifically, I was told by the EOD Team Leader that the EFP was a 2-array EFP hidden behind a traffic control barrier known as a 'Jersey barrier.'

Because of this placement, the insurgents who fired the EFP at us failed to 'take out' our vehicle as the Jersey barrier absorbed the initial force and 'split' the EFP before it hit our vehicle.

**Q.** Please describe the injuries you suffered in the Attack?

**A.** I took a direct hit from an EFP to my driver's-side door while driving a Humvee. As a result, I sustained a Traumatic Brain Injury ('TBI'), loss of consciousness, Post Traumatic Stress Disorder ('PTSD') and shrapnel wounds in my left knee causing permeant knee pain, and Tinnitus in my left ear.

**Q**. What was your condition and how were you feeling after the Attack?

**A**. Later that evening and days to follow I had trouble sleeping and horrible headaches. I experienced constant ringing in my ears, which I later found out to be tinnitus and hearing loss. My knee was swollen and had fluid built up. I was sent to Qatar for a couple of weeks of rest & relaxation because I was on crutches from the shrapnel in my left knee.

**Q.** What were your doctors telling you about your recovery and what your future would be like after the Attack?

**A.** I was told by my doctors at Fort Bragg in North Carolina that my TBI, PTSD, and knee injuries are permanent and I will need medical assistance in the future, including physical therapy and medication.

**Q**. What activities did you enjoy doing before the Attack that you can no longer do?

**A.** Before the Attack, I used to enjoy concerts, amusement parks, family gatherings, large parties, and sporting events. After the Attack, I no longer can find peace in these types of activities due to my PTSD, TBI, and tinnitus from the Attack.

**Q.** What activities do you wish you could do that are not possible now?

**A.** I miss being able to spend time with my loved ones in public without having debilitating anxiety and discomfort.

**Q.** What activities can you still do, but you need help to do it?

4

MORCERF 004

**A**. Pretty much everything throughout my day. For example, I need to have my wife with me and my dog with me to help with my anxiety. I also don't take the train to my job in Manhattan even though it would save me a lot of money and time because of my anxiety.

Having my support system around me is everything and I'm so thankful for my loved ones.

**Q**. How does it make you feel to need help and to be dependent on others to do things that you used to be able to do yourself?

**A.** It makes me feel horrible.

**Q**. Where are you living now?

**A.** I am now living with my wife and daughter in Shoreham, New York.

**Q.** Are you working? Before the attack, is this the job you imagined having at this point in your life?

**A.** Yes. I build elevators for Kone and work in Manhattan. No, this is not the job I imagined having at this point in my life.

**Q.** Would you please describe a typical day in your life now?

**A**. Every day I wake up to make sure my wife and daughter have the best life possible.  Every day I also wake up with either a headache or a ringing in my left ear, which then reminds me of the Attack.

When I drive to work, a garbage bag on the side of the road or a piece of cardboard will set my heart into a flutter and remind me of the Attack. The EFP that struck my Humvee was fired from garbage on the side of the road and behind a jersey barrier.

By the time I get to work, my left knee has swollen up from my hour and half car ride to work in Manhattan. For this reason, I use a knee brace while at work some days. Some days both of my knees will become inflamed and I'm told this is due to my right leg overcompensating for the past 14+ years.

**Q**. What ongoing health care are you receiving?

**A.** To this day, I receive medical and mental care (from the VA) due to the injuries I suffered in the Attack.

**Q**. What does the future look like for you?

**A.** Hopefully a peaceful future filled with love with and spending time with my family.

MORCERF 005

6.     The medical and military records attached to this Affidavit are true and correct copies of my military service records from the Army and my medical records from the VA. These records fairly and accurately describe my military service experience and my related medical history.[1]

7.     The Department of Veteran Affairs ('VA') rates my PTSD with a TBI as a combined 50% disabling and the shrapnel wounds in my left knee as 10% disabling. Overall, I am rated 60% disabled by the VA.

8.     Lastly, my attorneys informed me that they received a redacted 6 page OPS Report, a redacted 5 page IED Report, and a redacted 8 page Attack Narrative from United States Central Command ('CENTCOM') in response to a *Touhy* Request for records related to the Attack. After reviewing the OPS Report, IED Report, and Attack Narrative (all attached to this Affidavit), it is my opinion that these records **describe a different attack than the attack at issue in this lawsuit.** For instance, the location of the attack in the OPS Report (struck by an IED…'on right side of road while traveling northeast on Route Budweiser, under Brewers bridge') is inaccurate. The bridge depicted on Page 5 of the Narrative is also not where the Attack occurred. In fact, the date seen at the bottom of the Narrative (see excerpt below) suggests that the Narrative actually involved a December 26, **2017** EFP attack. Thus, the attack dates in the OPS Report, IED Report, and Narrative could be typographical errors ('typo's')."



---

[1]The Purple Heart seen in my DD-214 was awarded to me following injuries sustained in a different incident than the Attack at issue in this lawsuit.

MORCERF 006

**"I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT."**

_____

Joseph Morcerf

SIGNED under oath before me on this 14th day of April 2023.

_____

Notary Public – State of New York

HOLLY A KELLER
Notary Public - State of New York
NO. 01KE6438350
Qualified in Suffolk County
My Commission Expires Aug 8, 2026

7

MORCERF 007

UN-REDACTED VERSION FILED UNDER SEAL

USCENTCOM MDR 22-0120                    **MORCERF 008**                    11/18/22 001
Approved for Release to OGC- Confidential Privacy Act Protective Order Applies

UN-REDACTED VERSION FILED UNDER SEAL

USCENTCOM MDR 22-0120
**MORCERF 009**
Approved for Release to OGC- Confidential Privacy Act Protective Order Applies
11/18/22 002

UN-REDACTED VERSION FILED UNDER SEAL

USCENTCOM MDR 22-0120   **MORCERF 010**   11/18/22 003
Approved for Release to OGC- Confidential Privacy Act Protective Order Applies

UN-REDACTED VERSION FILED UNDER SEAL

USCENTCOM MDR 22-0120     **MORCERF 011**     11/18/22 004
Approved for Release to OGC- Confidential Privacy Act Protective Order Applies

UN-REDACTED VERSION FILED UNDER SEAL

USCENTCOM MDR 22-0120
**MORCERF 012**
Approved for Release to OGC- Confidential Privacy Act Protective Order Applies
11/18/22 005



UN-REDACTED VERSION FILED UNDER SEAL

USCENTCOM MDR 22-0120
**MORCERF 013**
Approved for Release to OGC- Confidential Privacy Act Protective Order Applies
11/18/22 006

UN-REDACTED VERSION FILED UNDER SEAL

USCENTCOM MDR 22-0120
MORCERF 014
Approved for Release to OGC- Confidential Privacy Act Protective Order Applies
11/18/22 001

UN-REDACTED VERSION FILED UNDER SEAL

USCENTCOM MDR 22-0120                                    11/18/22 002
**MORCERF 015**
Approved for Release to OGC- Confidential Privacy Act Protective Order Applies

UN-REDACTED VERSION FILED UNDER SEAL

USCENTCOM MDR 22-0120

**MORCERF 016**

Approved for Release to OGC- Confidential Privacy Act Protective Order Applies

11/18/22 003

UN-REDACTED VERSION FILED UNDER SEAL

USCENTCOM MDR 22-0120
**MORCERF 017**
Approved for Release to OGC- Confidential Privacy Act Protective Order Applies
11/18/22 004

UN-REDACTED VERSION FILED UNDER SEAL

USCENTCOM MDR 22-0120
**MORCERF 018**
Approved for Release to OGC- Confidential Privacy Act Protective Order Applies
11/18/22 005

UN-REDACTED VERSION FILED UNDER SEAL

UN-REDACTED VERSION FILED UNDER SEAL

UN-REDACTED VERSION FILED UNDER SEAL

UN-REDACTED VERSION FILED UNDER SEAL

UN-REDACTED VERSION FILED UNDER SEAL

UN-REDACTED VERSION FILED UNDER SEAL

UN-REDACTED VERSION FILED UNDER SEAL

UN-REDACTED VERSION FILED UNDER SEAL

| CAUTION: NOT TO BE USED FOR IDENTIFICATION PURPOSES | THIS IS AN IMPORTANT RECORD. SAFEGUARD IT. | ANY ALTERATIONS IN SHADED AREAS RENDER FORM VOID |
|---|---|---|

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY
This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1. NAME (Last, First, Middle)<br>MORCERF, JOSEPH FRANCES | 2. DEPARTMENT, COMPONENT AND BRANCH<br>ARMY/RA | 3. SOCIAL SECURITY NUMBER |
|---|---|---|

| 4a. GRADE, RATE OR RANK<br>SGT | b. PAY GRADE<br>E05 | 5. DATE OF BIRTH (YYYYMMDD)<br>198709█ | 6. RESERVE OBLIGATION TERMINATION DATE (YYYYMMDD)  20140514 |
|---|---|---|---|

| 7a. PLACE OF ENTRY INTO ACTIVE DUTY<br>BROOKLYN, NEW YORK | b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known)<br><br>ROCKY POINT NEW YORK 11778-0000 |
|---|---|

| 8a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND<br>0042MPTEAM PM SECTION FC | b. STATION WHERE SEPARATED<br>FORT BRAGG, NC 28310-5000 |
|---|---|

| 9. COMMAND TO WHICH TRANSFERRED<br>USAR CON GP (REINF) 1600 SPEARHEAD DIVISION AVE, FT KNOX, KY 40122 | 10. SGLI COVERAGE  NONE<br>AMOUNT: $ 400,000.00 |
|---|---|

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.)<br>31B2O MILITARY POLICE - 4 YRS 6 MOS//NOTHING FOLLOWS | 12. RECORD OF SERVICE | YEAR(S) | MONTH(S) | DAY(S) |
|---|---|---|---|---|
| | a. DATE ENTERED AD THIS PERIOD | 2006 | 07 | 18 |
| | b. SEPARATION DATE THIS PERIOD | 2011 | 07 | 17 |
| | c. NET ACTIVE SERVICE THIS PERIOD | 0005 | 00 | 00 |
| | d. TOTAL PRIOR ACTIVE SERVICE | 0000 | 00 | 00 |
| | e. TOTAL PRIOR INACTIVE SERVICE | 0000 | 00 | 00 |
| | f. FOREIGN SERVICE | 0001 | 02 | 15 |
| | g. SEA SERVICE | 0000 | 00 | 00 |
| | h. INITIAL ENTRY TRAINING | 0000 | 00 | 00 |
| | i. EFFECTIVE DATE OF PAY GRADE | 2010 | 02 | 01 |

| 13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service)<br>ARMY COMMENDATION MEDAL WITH V DEVICE//ARMY COMMENDATION MEDAL (3RD AWARD)//PURPLE HEART//ARMY ACHIEVEMENT MEDAL//ARMY GOOD CONDUCT MEDAL//NATIONAL DEFENSE SERVICE MEDAL//GLOBAL WAR ON TERRORISM SERVICE MEDAL//IRAQ CAMPAIGN MEDAL W/ CAMPAIGN STAR //ARMY SERVICE RIBBON//CONT IN BLOCK 18 | 14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed)<br>MILITARY POLICE OFFICER, 12 WEEKS, 2006// NOTHING FOLLOWS |
|---|---|

| 15a. COMMISSIONED THROUGH SERVICE ACADEMY | | YES | | NO X |
|---|---|---|---|---|
| b. COMMISSIONED THROUGH ROTC SCHOLARSHIP (10 USC Sec. 2107b) | | YES | | NO X |
| c. ENLISTED UNDER LOAN REPAYMENT PROGRAM (10 USC Chap. 109) (If Yes, years of commitment:  NA          ) | | YES | | NO X |

| 16. DAYS ACCRUED LEAVE PAID 0 | 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | YES | NO X |
|---|---|---|---|

| 18. REMARKS //////////////////////////////////////////////////////////////////////////////////////<br>SUBJECT TO ACTIVE DUTY RECALL, MUSTER DUTY AND/OR ANNUAL SCREENING//BLOCK 6, PERIOD OF DELAYED ENTRY PROGRAM: 20060515-20060717//SERVED IN A DESIGNATED IMMINENT DANGER PAY AREA//SERVICE IN IRAQ 20070518-20080802//MEMBER HAS COMPLETED FIRST FULL TERM OF SERVICE //CONT FROM BLOCK 13: //OVERSEAS SERVICE RIBBON//COMBAT ACTION BADGE//DRIVER AND MECHANIC BADGE W/DRIVER-WHEELED VEHICLE(S) CLASP//NOTHING FOLLOWS<br><br>The information contained herein is subject to computer matching within the Department of Defense or with any other affected Federal or non-Federal agency for verification purposes and to determine eligibility for, and/or continued compliance with, the requirements of a Federal benefit program. |
|---|

| 19a. MAILING ADDRESS AFTER SEPARATION (Include ZIP Code)<br><br>FAYETTEVILLE NORTH CAROLINA 28306 | b. NEAREST RELATIVE (Name and address - include ZIP Code)<br>NANCY MORCERF<br><br>ROCKY POINT NEW YORK 11778-0000 |
|---|---|

| 20. MEMBER REQUESTS COPY 6 BE SENT TO (Specify state/locality)<br>NC       OFFICE OF VETERANS AFFAIRS | X | YES | | NO |
|---|---|---|---|---|
| a. MEMBER REQUESTS COPY 3 BE SENT TO THE CENTRAL OFFICE OF THE DEPARTMENT OF VETERANS AFFAIRS (WASHINGTON, DC) | X | YES | | NO |

| 21.a. MEMBER SIGNATURE<br>ESIGNED BY: MORCERF.JOSE PH.FRANCES.1291469660 | b. DATE (YYYYMMDD)<br>20110614 | 22.a. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title, signature)<br>ESIGNED BY: FRAZIER.ANCHALEE.C.1082692033<br><br>ANCHALEE FRAZIER, HUMAN RESOURCE ASSISTANT | b. DATE (YYYYMMDD)<br>20110614 |
|---|---|---|---|

## SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)

| 23. TYPE OF SEPARATION<br>RELEASE FROM ACTIVE DUTY | 24. CHARACTER OF SERVICE (Include upgrades)<br>HONORABLE |
|---|---|

| 25. SEPARATION AUTHORITY<br>AR 635-200, CHAP 4 | 26. SEPARATION CODE<br>MBK | 27. REENTRY CODE<br>1 |
|---|---|---|

| 28. NARRATIVE REASON FOR SEPARATION<br>COMPLETION OF REQUIRED ACTIVE SERVICE |
|---|

| 29. DATES OF TIME LOST DURING THIS PERIOD (YYYYMMDD)<br>NONE | 30. MEMBER REQUESTS COPY 4<br>(Initials)  JFM |
|---|---|

| DD FORM 214, AUG 2009 | PREVIOUS EDITION IS OBSOLETE.<br>GENERATED BY TRANSPROC | MEMBER - 4 |
|---|---|---|

MORCERF 027

radiology reports.
Pt seen for evaluation of migrainous headaches. last seen in 2015 for the same
but was lost to follow up due to social stressors/depression. He reports >15
headache days a month. bitemporal--> frontal location. No aura, +
photophobia/phonophobia. He does take Excedrin more than half the days of
the month
will begin a trial of propanolol SA 80mg QD with a slow taper o the Excdrin.
rtc 4m


/es/ DEBBY GALLOWAY
M.D., NEUROLOGY ATTENDING
Signed: 01/15/2019 10:32

| | | | |
|---|---|---|---|
| Dec 19, 2018, 08:30 AM | PHYSICAL THERAPY CONSULT :<br>LOCAL TITLE: PM&R PT OUTPATIENT CONSULT<br>STANDARD TITLE: PHYSICAL THERAPY CONSULT<br>DATE OF NOTE: DEC 19, 2018@08:30 ENTRY DATE: DEC 19, 2018@09:13:53<br>AUTHOR: EKELUND,ANDREW MICH EXP COSIGNER: CHISENA,ERNEST C<br>URGENCY: STATUS: COMPLETED<br><br>PHYSICAL THERAPY OUTPATIENT EVALUATION<br><br>DX: chondromalcia patella, L knee<br><br>PMH: low back pain, TBI as per pt<br><br>----------------------------------------------------------------------<br><br>HPI: pt reports a sudden onset of L knee pain 2007 when he was in the service his vehicle was hit by an IED and his L knee hit the side of the car, has had pain since, no prior knee pain, has done some PT a few years ago, pain has been getting worse<br><br>pain location: peripatellar knee pain L side<br>pain type: ""sharp, cruches"<br>pain levels 5/10<br>pain duration: hours to days a few times a week<br><br>functional complaints: pain with stairs, squatting and kneeling | EKELUND,ANDREW MICHAEL | NORTHPORT VAMC |

relief with: NSAIDS, knee brace, heating pad

---------------------------------------------------------------------------

observations: non antalgic steady gait

palpation: mild peripatellar pain, no pain over patella tendon, MCL, LCL

ROM: full AROm with no pain in knee

MMT's: 4+/5 hip all directions,
4/5 quad due to pain

special tests:
- MCL, ACL, LCL testing
- mcmurry;s
+ pain with patellar apprehension
+ pain with patellar grind test
+ ELY' test quad tightness
- OBERS test

treatment:
pt education in use of bracing and cold pac to reduce pain
pt eduation in HEP with handout as follows
SLR's 4 directions
standing quad, gatroc and hamstring stretches

---------------------------------------------------------------------------

A: pt with chronic patellar pain from truama in the service, will benefit from
doing HEP, pt declines formal therapy, (this PT agrees with this plan of care)

symptoms are fairly stable, pt advised to follow up with ortho is pain and
function gets worse.

P: pt to cont with HEP and self care

/es/ ANDREW MICHAEL EKELUND
PHYSICAL THERAPIST



May 13, 2019
JOSEPH FRANCIS MORCERF

███████████

SHOREHAM NY 11786

## We made a decision on your VA benefits.

Dear Joseph Morcerf,

This letter will guide you through the information you should know and steps you may take now that VA has made a decision about your benefits.

## Your Benefit Information:

- Service connection for gastroesophageal reflux disease [GERD] (previously deferred as peptic ulcer disease) is granted with an evaluation of 10 percent effective July 18, 2011.
- Evaluation of shrapnel wound, left knee, which is currently 0 percent disabling, is increased to 10 percent effective March 18, 2019. A higher evaluation is deferred.
- Evaluation of post traumatic stress disorder [PTSD] with traumatic brain injury (TBI), which is currently 30 percent disabling, is increased to 50 percent effective March 18, 2019.
- Service connection for scar, right posterior neck is granted with an evaluation of 0 percent effective March 18, 2019.
- Service connection for residual scar, left patella is granted with an evaluation of 0 percent effective March 18, 2019.

Your combined rating evaluation is:

| Combined Rating Evaluation | Effective Date |
|---|---|
| 40% | Jul 18, 2011 |
| 60% | Mar 18, 2019 |

## How VA Combines Percentages

If you have more than one condition, VA will combine percentages to determine your overall disability rating. The percentages assigned for

**We have included with this letter:**

1. Explanation of Payment
2. Additional Benefits
3. Where to Send Written Correspondence
4. VA Form 20-0998
5. Rating Decision

**Contact information:**

Web: www.vets.gov
Phone: 1-800-827-1000
TDD: 711
To send questions online: visit
https://iris.custhelp.com/

**Social Media:**

Twitter: @VAVetBenefits
Facebook: www.facebook.com/
VeteransBenefits

**Your representative:**

You appointed AMERICAN LEGION as your accredited representative. They have also received a copy of this letter.

They can help you with any questions you have about your claim.

If you or someone you know is in crisis, call the *Veterans Crisis Line* at 1-800-273-8255 and press 1.

2.560 oz  214186-C05-0/502963  0000065  0001417  I=000000



 **U.S. Department**
**of Veterans Affairs**

**Member Services**
**Health Eligibility Center**
2957 Clairmont Rd NE STE 200
Atlanta GA 30329-1647

May 23, 2019

1018265973V515475

 0523_BI_K_0001603 **********MIXED AADC 159
Joseph Francis Morcerf

Shoreham, NY 11786-1942

Dear Joseph Morcerf,

Our records indicate that the information used to establish your benefits for VA health care have recently changed and that you are now enrolled in Priority Group 1 effective 05/13/2019. Your unique eligibility factors are:

- 60% Service-connected
- Awardee of the Purple Heart

Your new copay, if applicable, and benefits information are provided on the reverse of this letter.

If you wish to appeal our decision, follow the instructions on the enclosed VA Form 4107VHA, — Your Rights to Appeal Our Decision. — Return your Notice of Disagreement to:

Associate Director
Eligibility & Enrollment Division
Health Eligibility Center
Department of Veterans Affairs
2957 Clairmont Road STE 200
Atlanta, GA 30329

If you have questions, you may contact the VA at the toll-free number, 1-877-222-VETS (8387) or visit your local VA medical health care facility. You may also find additional information on eligibility and enrollment on VA's website at http://www.va.gov/healthbenefits.

Sincerely,

Dane Cornelius

Dane Cornelius

Acting Director, Health Eligibility Center
VHA Member Services



## DEPARTMENT OF VETERANS AFFAIRS
### Veterans Benefits Administration
### Regional Office

### JOSEPH MORCERF

### VA File Number
██████████

### Represented By:
### AMERICAN LEGION
### Rating Decision
### 05/10/2019

### INTRODUCTION

The records reflect that you are a veteran of the Gulf War Era. You served in the Army from July 18, 2006 to July 17, 2011. You filed a new claim for benefits that was received on March 18, 2019. Based on a review of the evidence listed below, we have made the following decisions on your claim.

### DECISION

1. Evaluation of post traumatic stress disorder [PTSD] with traumatic brain injury (TBI), which is currently 30 percent disabling, is increased to 50 percent effective March 18, 2019.

2. Evaluation of shrapnel wound, left knee, which is currently 0 percent disabling, is increased to 10 percent effective March 18, 2019. A higher evaluation is deferred.

3. Service connection for gastroesophageal reflux disease [GERD] (previously deferred as peptic ulcer disease) is granted with an evaluation of 10 percent effective July 18, 2011.

4. Service connection for residual scar, left patella is granted with an evaluation of 0 percent

2.560 oz 214186-O65-035029663_0000065_0001429_i=000000



JOSEPH MORCERF

2 of 9

effective March 18, 2019.

5. Service connection for scar, right posterior neck is granted with an evaluation of 0 percent effective March 18, 2019.

## EVIDENCE

- VA Form 21-526EZ Application for Disability Compensation and Related Compensation Benefits, March 18, 2019
- VA Form 21-4138, Statement in Support of Claim, received March 20, 2019
- VA letter, acknowledging receipt fo your application for VA benefits, dated March 28, 2019
- VA letter concerning your claim, dated April 1, 2019
- VA letter, dated April 2, 2019
- VA contract examination, QTC Medical Services, Review Post Traumatic Stress Disorder, April 22, 2019
- VA contract examination, QTC Medical Services, Muscles Injuries, April 16, 2019
- VA contract examination, QTC Medical Services, Knee and Lower Leg Conditions, April 16, 2019
- VA contract examination, QTC Medical Services, Scars/Disfigurement, April 16, 2019
- VA contract examination, QTC Medical Services, Review Evaluation of Residuals of Traumatic Brain Injury, April 16, 2019
- DD Form 214, Certificate of Release or Discharge from Active Duty, United States Army, from July 18, 2006 through July 17, 2011
- Service Treatment Records, for the period July 2006 through July 2011, received October 4 and November 3, 2011
- VAMC (Veterans Affairs Medical Center) treatment records, Northport, from April 10, 2012 through May 8, 2019
- VAMC (Veterans Affairs Medical Center) treatment records, Fayetteville, from August 17, 2011 through October 20, 2012
- VA Form 21-526EZ Application for Disability Compensation and Related Compensation Benefits, September 30, 2011
- VA contract examination, QTC Medical Services, November 10, 2011
- Rating Decision, dated January 13, 2012

## REASONS FOR DECISION

### 1. Evaluation of post traumatic stress disorder [PTSD] with traumatic brain injury (TBI) currently evaluated as 30 percent disabling.

The evaluation of post traumatic stress disorder [PTSD] with traumatic brain injury (TBI) is increased to 50 percent disabling effective March 18, 2019. (38 CFR 4.1, 38 CFR 3.400)

We have assigned a 50 percent evaluation for your post traumatic stress disorder [PTSD] with traumatic brain injury (TBI) based on:

MORCERF 033



JOSEPH MORCERF

- Forgetting names
- Suspiciousness
- Depressed mood
- Disturbances of motivation and mood
- Mild memory loss
- Forgetting recent events
- Chronic sleep impairment
- Panic attacks (weekly)
- Difficulty in adapting to stressful circumstances
- Difficulty in adapting to work
- Panic attacks (less than weekly)
- Difficulty in adapting to a worklike setting
- Anxiety
- Difficulty in establishing and maintaining effective work and social relationships
- Occupational and social impairment with reduced reliability and productivity
- Forgetting directions

The overall evidentiary record shows that the severity of your disability most closely approximates the criteria for a 50 percent disability evaluation. (38 CFR 4.7, 38 CFR 4.126)

A higher evaluation of 70 percent is not warranted for posttraumatic stress disorder unless the evidence shows occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as:
- suicidal ideation
- obsessional rituals which interfere with routine activities
- speech intermittently illogical, obscure, or irrelevant
- near-continuous panic or depression affecting the ability to function independently, appropriately and effectively
- impaired impulse control (such as unprovoked irritability with periods of violence)
- spatial disorientation
- neglect of personal appearance and hygiene
- difficulty in adapting to stressful circumstances (including work or a worklike setting)
- inability to establish and maintain effective relationships. (38 CFR 4.130)

Please note that we have considered your TBI along with your PTSD disability as the VA examiners have stated that the two conditions share the same signs and symptoms and it is not possible to differentiate what portion of each symptom is attributable to each diagnosis. Therefore, your TBI condition has been evaluated under your PTSD disability as the diagnosis of PTSD reflects the true disability picture and provides the highest evaluation that can be assigned by law.

TBI would warrant a 40 percent evaluation if TBI was rated separately based on:

The rating schedule contains ten important facets of TBI related to cognitive impairment and subjective symptoms. It provides criteria for levels of impairment for each facet, as appropriate, ranging from 0 to 3, and a 5th level, the highest level of impairment, labeled "total." However,

2_560 oz 214186-O55-O3502963_0000065_0001431_I=000000



JOSEPH MORCERF



4 of 9

not every facet has every level of severity. The Consciousness facet, for example, does not provide for an impairment level other than "total" since any level of impaired consciousness would be totally disabling. A 100 percent evaluation will be assigned if "total" is the level of evaluation for one or more facets. If no facet is evaluated as "total," the overall percentage evaluation will be assigned based on the level of the highest facet as follows: 0 = noncompensable; 1 = 10 percent; 2 = 40 percent; and 3 = 70 percent. For example, a 70 percent evaluation will be assigned if 3 is the highest level of evaluation for any facet.

A level of severity of "0" has been assigned for your Judgement Facet based on:
• Normal. (38 CFR 4.124a)

A level of severity of "2" has been assigned for your Social Interaction Facet based on:
• Social interaction is frequently inappropriate. (38 CFR 4.124a)

A level of severity of "0" has been assigned for your Orientation Facet based on:
• Always oriented to person, time, place, and situation. (38 CFR 4.124a)

A level of severity of "0" has been assigned for your Motor Activity (with intact motor and sensory system) Facet based on:
• Motor activity normal. (38 CFR 4.124a)

A level of severity of "0" has been assigned for your Visual Spatial Orientation Facet based on:
• Normal. (38 CFR 4.124a)

A level of severity of "1" has been assigned for your Subjective Symptoms Facet based on:
• Three or more subjective symptoms that mildly interfere with work; instrumental activities of daily living; or work, family, or other close relationships. Examples of findings that might be seen at this level of impairment are: intermittent dizziness, daily mild to moderate headaches, tinnitus, frequent insomnia, hypersensitivity to sound, hypersensitivity to light. (38 CFR 4.124a)

A level of severity of "1" has been assigned for your Neurobehavioral Effects Facet based on:
• One or more neurobehavioral effects that occasionally interfere with workplace interaction, social interaction, or both but do not preclude them. (38 CFR 4.124a)

A level of severity of "0" has been assigned for your Communication Facet based on:
• Able to communicate by spoken and written language (expressive communication), and to comprehend spoken and written language. (38 CFR 4.124a)

The following facet(s) cannot be used to support your evaluation as it is being used to support an evaluation for separate disability or has been found to be unrelated:

• Memory, Attention, Concentration, Executive Functions Facet

An overall 40 percent evaluation is assigned for your residuals of traumatic brain injury [TBI] based on the highest level of severity of "2". (38 CFR 4.124a)



JOSEPH MORCERF

A higher evaluation of 70 percent is not warranted for traumatic brain injury (TBI) unless the evidence shows:
• Inability to communicate either by spoken language, written language, or both, at least half of the time but not all of the time, or to comprehend spoken language, written language, or both, at least half of the time but not all of the time. May rely on gestures or other alternative modes of communication. Able to communicate basic needs; or,
• Moderately severely impaired judgment. For even routine and familiar decisions, occasionally unable to identify, understand, and weigh the alternatives, understand the consequences of choices, and make a reasonable decision; or,
• Objective evidence on testing of moderate impairment of memory, attention, concentration, or executive functions resulting in moderate functional impairment; or,
• Motor activity moderately decreased due to apraxia; or,
• One or more neurobehavioral effects that interfere with or preclude workplace interaction, social interaction, or both on most days or that occasionally require supervision for safety of self or others; or,
• Often disoriented to two or more of the four aspects (person, time, place, situation) of orientation; or,
• Social interaction is inappropriate most or all of the time; or,
• Moderately severely impaired. Gets lost even in familiar surroundings, unable to use assistive devices such as GPS (global positioning system). (38 CFR 4.124a)

Additionally, a higher evaluation of 100 percent is not warranted for traumatic brain injury (TBI) unless the evidence shows:
• Persistently altered state of consciousness, such as vegetative state, minimally responsive state, coma under the consciousness facet. (38 CFR 4.124a)

## 2. Evaluation of shrapnel wound, left knee currently evaluated as 0 percent disabling.

The evaluation of shrapnel wound, left knee is increased to 10 percent disabling effective March 18, 2019. (38 CFR 4.1, 38 CFR 3.400)

The effective date of this grant is March 18, 2019. Entitlement to an increased evaluation has been established from the date the claim was received. When an increased evaluation is granted based on VA medical evidence showing an increase in disability after the date the claim was received, the effective date of the increase is the date the claim was received. (38 CFR 3.400)

We have assigned a 10 percent evaluation for your shrapnel wound, left knee based on:
• Painful motion of the knee (38 CFR §4.59 allows consideration of functional loss due to painful motion to be rated to at least the minimum compensable rating for a particular joint. Since you demonstrate painful motion of the knee, the minimum compensable evaluation of 10 percent is assigned)

The provisions of 38 CFR §4.40 and §4.45 concerning functional loss due to pain, fatigue, weakness, or lack of endurance, incoordination, and flare-ups, as cited in DeLuca v. Brown and Mitchell v. Shinseki, have been considered and applied under 38 CFR §4.59.



JOSEPH MORCERF

6 of 9

A higher evaluation of 20 percent is not warranted for limitation of flexion of the knee unless the evidence shows:
• Limitation of flexion of 16 to 30 degrees. (38 CFR 4.71a)

Additionally, a higher evaluation of 20 percent is not warranted for limitation of extension of the knee unless the evidence shows:
• Limitation of extension of 15 to 19 degrees. (38 CFR 4.71a)

A higher evaluation may be warranted if:
• Flexion is limited to 45 degrees or less; AND,
• Extension is limited to 10 degrees or more. (38 CFR 4.71a)

A higher evaluation is deferred pending clarification of diagnosis from VA examiner.

## 3. Service connection for gastroesophageal reflux disease [GERD] (previously deferred as peptic ulcer disease).

Service connection for gastroesophageal reflux disease [GERD] has been established as directly related to military service. (38 CFR 3.303, 38 CFR 3.304)

An evaluation of 10 percent is assigned from July 18, 2011.

We have assigned a 10 percent evaluation for your gastroesophageal reflux disease [GERD] based on:
• Dysphagia
• Pyrosis (Heartburn and/or Reflux)
• Regurgitation
• Vomiting

A higher evaluation of 30 percent is not warranted for hiatal hernia unless the evidence shows persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health. (38 CFR 4.114)

This disability is not specifically listed in the rating schedule; therefore, it is rated analogous to a disability in which not only the functions affected, but anatomical localization and symptoms, are closely related. (38 CFR 4.20)

## 4. Service connection for residual scar, left patella as secondary to the service-connected disability of shrapnel wound, left knee.

Service connection for residual scar, left patella has been established as related to the service-connected disability of shrapnel wound, left knee. (38 CFR 3.310)



JOSEPH MORCERF

7 of 9

Although you did not claim service connection for residual scar, left patella it was noted during your VA contract Knee and Lower Leg Conditions examination. Therefore, we have granted service connection effective March 18, 2019, the date VA received you claim for an increase in service connected benefits for shrapnel wound, left knee.

A noncompensable evaluation is assigned from March 18, 2019.

We have assigned a 0 percent evaluation for your residual scar, left patella based on:
• Left lower extremity: area or areas less than 144 square inches (929 sq. cm.) (Not associated with underlying soft tissue damage)

Additional symptom(s) include:
• Scar 1 Location: Left lower extremity
• Scar 1 type: scar

Note: In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. {38 CFR §4.31}

Your first scar/area has a length of 1.5 cm and a width of 0.5 cm for a total area of 0.75 sq. cm.

An additional, separate compensable evaluation under Diagnostic Code 7804 is not warranted unless there is at least one scar that is painful or unstable. (38 CFR 4.118)

A higher evaluation of 10 percent is not warranted for burn scar(s) or scar(s) due to other causes, not of the head, face, or neck, that are not associated with underlying soft tissue damage (left lower extremity) unless the evidence shows:
• Area or areas of 144 square inches (929 sq. cm.) or greater. (38 CFR 4.118)

Additionally, a higher evaluation of 10 percent is not warranted for burn scar(s) or scar(s) due to other causes, not of the head, face, or neck that are associated with underlying soft tissue damage (entire body) unless the evidence shows:
• Area or areas of at least 6 square inches (39 sq. cm.) but less than 12 square inches (77 sq. cm.). (38 CFR 4.118)

Additionally, a higher evaluation of 10 percent is not warranted for burn scar(s) or scar(s) due to other causes, not of the head, face, or neck, that are not associated with underlying soft tissue damage (entire body) unless the evidence shows:
• Area or areas of 144 square inches (929 sq. cm.) or greater. (38 CFR 4.118)

## 5. Service connection for scar, right posterior neck as secondary to the service-connected disability of post traumatic stress disorder [PTSD] with traumatic brain injury (TBI).

Service connection for scar, right posterior neck has been established as related to the service-connected disability of post traumatic stress disorder [PTSD] with traumatic brain injury (TBI).

MORCERF 038





JOSEPH MORCERF

8 of 9

(38 CFR 3.310)

Although you did not claim service connection for scar, right posterior neck, this condition was noted during your VA Review Evaluation of Residuals of Traumatic Brain Injury examination as due to the traumatic brain injury you incurred. Therefore, service connection has been granted effective March 18, 2019, the date VA received your VA Form 21-526EZ, Application for Disability Compensation requesting an increase in your service connected disability.

A noncompensable evaluation is assigned from March 18, 2019.

We have assigned a 0 percent evaluation for your scar, right posterior neck based on:
• Scar / Area of the head, face or neck with no compensable symptoms

Additional symptom(s) include:
• Scar 1 Location: Head, face, or neck
• Scar 1 type: scar
• cm

Note: In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. {38 CFR §4.31}

Your first scar/area has a length of 1.5 cm and a width of 0.5 cm for a total area of 0.75 sq. cm.

An additional, separate compensable evaluation under Diagnostic Code 7804 is not warranted unless there is at least one scar that is painful or unstable. (38 CFR 4.118)

A higher evaluation of 10 percent is not warranted for burn scar(s), scar(s) due to other causes, or other disfigurement of the head, face, or neck unless the evidence shows:
• One characteristic of disfigurement. (38 CFR 4.118)

The eight characteristics of disfigurement, for purposes of evaluation under 38 CFR §4.118 are: scar 5 or more inches 13 or more cm) in length; scar at least one-quarter inch 0.6 cm) wide at widest part; surface contour of scar elevated or depressed on palpation; scar adherent to underlying tissue; skin hypo- or hyper-pigmented in an area exceeding six square inches 39 cm² skin texture abnormal irregular, atrophic, shiny, scaly, etc.) in an area exceeding six square inches 39 cm² underlying soft tissue missing in an area exceeding six square inches 39 cm² and, skin indurated and inflexible in an area exceeding six square inches 39 cm²) The characteristics) of disfigurement may be caused by one scar or by multiple scars; the characteristics) required to assign a particular evaluation need not be caused by a single scar in order to assign that evaluation. A characteristic of disfigurement, even if present in more than one scar, is only counted once for evaluation purposes.





JOSEPH MORCERF

9 of 9

## REFERENCES:

Title 38 of the Code of Federal Regulations, Pensions, Bonuses and Veterans' Relief contains the regulations of the Department of Veterans Affairs which govern entitlement to all veteran benefits. For additional information regarding applicable laws and regulations, please consult your local library, or visit us at our website, www.va.gov.



**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MARY B. HEATON, et al.,

        Plaintiffs,

    v.

THE ISLAMIC REPUBLIC OF IRAN,

        Defendant.

Civil Action No. 1:19-cv-03003-JMC

~~**AFFIDAVIT OF NON-PARTY TIMOTHY**~~ GIPSON IN SUPPORT OF PLAINTIFFS'
DAMAGE AWARD AGAINST THE ISLAMIC REPUBLIC OF IRAN

Pursuant to 28 U.S.C. § 1746, I, **TIMOTHY GIPSON,** hereby declare as follows:

1. "I am over the age of 18, of sound mind, and make this Affidavit from personal knowledge.

2. I am a citizen of the United States of America and currently reside District of Columbia. I am submitting this Affidavit to provide the Court with facts and evidence concerning the December 26, 2007 terrorist attack ('**the Attack**') involving Plaintiff Joseph Morcerf.

3. I formerly served in the United States Army and was deployed overseas to Iraq. In Iraq, I served alongside Joseph Morcerf in the 108th MP Company. At the time of the Attack, I was Joseph Morcerf's Platoon Sergeant. For the following reasons, I believe the Attack involved an Explosively Formed Penetrator ('**EFP'**):

   There was a large circular hole (about the size of a coffee can) in the vehicle Joseph Morcerf was traveling in on December 26, 2007. A regular Improvised Explosive Device ('IED') contains miscellaneous objects like rocks, nails, and various pieces of metal and does not create this type of hole. A regular IED, once it explodes, has a 'pepper effect' where the shrapnel is spread everywhere. A vehicle hit by a regular IED would have small holes all over it that are about the size of a pebble. Stated differently, a vehicle hit by a regular IED looks like a target where the shooter has very poor aim.

   Furthermore, the maintenance shop at Combat Outpost ('COP') Callahan determined in their Battle Damage Assessment ('BDA') that the Attack involved an EFP.

4. Prior to December 26, 2007, I received training from the Army regarding the unique characteristics of an EFP attack.  Thus, based on my training and experience in the Army, I believe that the Attack involved an EFP."

1

MORCERF 041

**"I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT."**

_____

Timothy Gipson

SIGNED under oath before me on ___4-17-2023___.

_____

Notary Public – District of Columbia

